_____ FILED  _  ___ ENTERED
_____ LODGED_ ____ RECEI ___

FEB  2 2007   DJ

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ERWIN SINGH BRAICH, )
)  CASE NO. **CV7  0177C**
Plaintiff, )
)
v. )
)  COMPLAINT for
)  DECLARATORY and
)  INJUNCTIVE RELIEF,
STEVE MITTELSTAEDT, individually and in his )  and for MONEY DAMAGES
official capacity as an employee of the Department )
of Homeland Security; )
KEITH M. OLSON, individually and in his official )
capacity as an employee of the Department )
of Homeland Security; )
THE CITY OF BELLINGHAM; )  **JURY TRIAL DEMANDED**
TYLER LETEY, individually and in his )
official capacity as an employee of the State of )
Washington; )
SHREE SHARMA, individually and in his official )
capacity as an employee of the State of Washington; )
DEBORAH BORTNER, individually and in her )
official capacity as an employee of the State of )
Washington; )
THE STATE OF WASHINGTON; )
BRIAN G. MCLEAN, individually and in his capacity as )
an agent on behalf of the Government of Canada; )
MCLEAN & ARMSTRONG, a Canadian law firm; )
ROBERT RUSKO, individually and in his capacity as )
an agent on behalf of the Government of Canada; )
DAVID WOOD individually and in his )
capacity as an agent on behalf of the Government of )
Canada; )
KPMG Inc., individually and in its official capacity as an )

07-CV-00177-CMP

COMPLAINT - 1

HWB-ESQ., PLLC
PO BOX 13085
Mill Creek Washington
Telephone 206-774-0845
Facsimile: 206-350-0134

1   agent on behalf of the Government of Canada;        )
    KPMG LLP;                                            )
2   RCMP SARGEANT TIM ALDER, individually and in his    )
3   official capacity as an employee of the Government of )
    Canada;                                              )
4   THE GOVERNMENT OF CANADA; and                        )
    JOHN/JANE DOES 1-10,                                 )
5                                                        )
6                       Defendants.                      )
    ─────────────────────────────────────────────       )

7

8                          **PRELIMINARY STATEMENT**

9
        This Complaint arises out of an agreement among the Defendants to discredit, punish,
10
    and seek revenge against the Plaintiff and that included, among other things, the abuse of the
11
    Canadian bankruptcy laws to fraudulently petition Plaintiff into bankruptcy; the abuse of the
12
    Canadian bankruptcy and criminal laws for the purpose of falsely obtaining civil and criminal
13
    arrest warrants against the Plaintiff, and causing Plaintiff to be unable to return to the country of
14
    his birth unhindered by the threat of an indefinite length of imprisonment; and the methodical
15
    orchestration, planning, and execution of unlawful searches of Plaintiff's Property, and seizure,
16
    and detention of the Plaintiff's Property in the State of Washington. All of these actions were
17
    done under the color of law, and all in an effort to compromise Plaintiff's business ventures,
18
    diminish Plaintiff's standing in his community, and to unlawfully gain possession of Plaintiff's
19
    assets.
20
        Said agreement was motivated, in part, by jealousy and an invidiously discriminatory
21
    animus towards a businessman, born in Canada of Indian heritage, who sought to provide for his
22
    family, and preserve and expand the business fortune and philanthropic legacy that his father, an
23
    Indian immigrant to Canada, had built over a period of years. To a great extent he was successful
24
    in those efforts. Through his personal wealth, and business entities, Plaintiff through the years,
25
    has donated hundreds of thousands of dollars to charitable and community organizations,
26
    including but not limited to the Sikh community in Mission, British Columbia. Plaintiff's success
27
    as a businessman and philanthropist engendered animosity and jealousy among certain of the
28
    COMPLAINT - 2

1  Defendants. All the Defendants combined, conspired, confederated and agreed together, and with
2  each other, to deprive the Plaintiff of his Property in violation of various federal and state
3  constitutional rights, as well as federal and state laws as set forth herein.

5  PLAINTIFF, by his attorney, for his Complaint against the Defendants, alleges and avers
6  as follows:

8  **I.   INTRODUCTION**

9  1.   Plaintiff brings this action against Steve Mittelstaedt ("Mittelstaedt"), Keith M. Olson
10      ("Olson"), the City of Bellingham, Tyler Letey ("Letey"), Shree Sharma ("Sharma"),
11      Deborah Bortner ("Bortner"), the State of Washington; Brian G. Mclean ("McLean");
12      McLean & Armstrong ("M&A"); Robert Rusko ("Rusko"); David Wood ("Wood");
13      KPMG Inc.; KPMG LLP; Tim Alder ("Alder"); the Government of Canada ("Canada"),
14      and John/Jane Does 1-10 ("DOES")( collectively the "Defendants").

16  2.   Plaintiff seeks declaratory and injunctive relief for the planning, preparing and execution
17      of a scheme to conduct unlawful warrantless searches, the seizure and detention of
18      Plaintiff's Property, and the unlawful dissemination of Plaintiff's Property, and the
19      information contained therein, committed "under the color of law," in violation of his
20      rights under the United States Constitution and federal law, specifically the Alien Tort
21      Claims Act/Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, the Treaty with Canada on
22      Mutual Legal Assistance in Criminal Matters ("MLAT-Canada"), the Hague Convention
23      on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial
24      Matters ("Hague Convention on Service Abroad"), Request for Letter Rogatory, 28
25      U.S.C.§ 1781, the Assistance to Foreign Tribunals Statute ("AFTS"), 28 U.S.C. §1782,
26      *Bivens v. Six Unknown Narcotics Agents*, 403 U.S. 388 (1971), *Tower v. Glover*, 467 U.S.
27      914 (1984), *Dennis v. Sparks*, 449 U.S. 24 (1980), and 42 U.S.C. §§ 1983, 1985 and 1986.

COMPLAINT - 3

1    Plaintiff further seeks nominal, compensatory, special, and punitive damages, and other

2    equitable relief for the tortious acts and omissions of Defendants.

3

4  3.  Plaintiff's rights under the United States and Washington State Constitutions, and federal

5    and Washington State laws, were violated by the acts of the Defendants, including, but not

6    limited to, the unlawful warrantless searches, seizure, and detention of Plaintiff's Property.

7    The tortious acts and omissions committed, conspired to be committed, and aided and

8    abetted in their commission, by the Defendants were reckless, purposeful, willful and

9    wanton, intentional, malicious and otherwise not objectively reasonable in light of the

10    rights violated.

11

12  4.  At issue in this case are the Plaintiff's:

13    a.  Right to Property which was taken and held in violation of the United States

14      Constitution Amendments 4 and 14, and Washington State Constitution Article I,

15      Sections 3 and 7;

16    b.  Right to Privacy which was invaded in violation of the United States Constitution

17      Amendments 1, 4, 5, 9, and 14, and Washington State Constitution Article I,

18      Section 7;

19    c.  Right to Equal Protection which was denied in violation of the United States

20      Constitution Amendment 14;

21    d.  Right to Procedural Due Process of Law which was denied in violation of the

22      United States Constitution Amendments 5 and 14, and Washington State

23      Constitution Article I, Section 3;

24    e.  Right to Substantive Due Process of Law which was denied in violation of the

25      United States Constitution Amendments 5 and 14, and the Washington State

26      Constitution Article I, Section 3; and

27    f.  Right to be free from various common law torts committed upon him, in violation

28

COMPLAINT - 4

HWB-ESQ., PLLC
PO BOX 13085
Mill Creek Washington
Telephone:206-774-0845
Facsimile: 206-350-0134

1    of Washington state law, as further enumerated below.

2    These violations of Plaintiff's rights occurred prior to, in the course of, and continued

3    after, the unlawful warrantless search and seizure of Plaintiff's Property, on or about

4    February 5, 2004.

5

6    5.   As used above and hereinafter, "Property" means any and all private property, business

7         related or otherwise, including but not limited to contracts, agreements, receipts, notes or

8         similar documents, subscription agreements, promissory notes, loan agreements,

9         memoranda, other evidence of investment or indebtedness, bank or brokerage accounts,

10        promotional and advertising materials including prospectus, brochures, flyers, books,

11        records, ledgers, journals and similar documents, storage and media devices, monetary

12        instruments, notes, pictures, blueprints, hand written notes, business cards, address books,

13        personal organizers, computer hardware and software, checking and savings account bank

14        statements; deposit and withdrawal records, safe deposit box records and keys, investment

15        and brokerage account statements, cashier's check receipts, check books, receipts, wire

16        transfer records, cancelled checks, credit card account statements and receipts, records of

17        earnings, bank loan or credit applications, financial records related to the purchase,

18        payment and ownership of any type of assets in any form, attorney-client privileged

19        correspondences and information, confidential business information, legal documents and

20        documentation regarding past, pending, and anticipated lawsuits, briefcases, suitcases and

21        any other type of document or tangible item.  Property also includes intellectual property

22        which is able to be gleaned, discovered, read, copied, transmitted, transferred, and

23        otherwise disseminated or imparted to another person or entity.

24

25    6.   Plaintiff seeks a ruling from this court that the actions by Defendants violated his rights

26        under the United States Constitution and federal law and arose out of the participation of

27        Defendants in a conspiracy to unlawfully obtain the Plaintiff's Property, and information

28

COMPLAINT - 5

1  contained therein.

2

3  7.    Plaintiff further seeks temporary and permanent injunctions barring the dissemination of
4        any documents, materials, information, and knowledge, in any form, gained from the
5        unlawful warrantless search and seizure of Plaintiff's Property.

6

7  8.    Plaintiff further seeks nominal, compensatory, and  punitive damages, as well as costs, and
8        disbursements. Plaintiff has suffered severe emotional pain and suffering, deprivation of
9        constitutional rights, fear, and humiliation as a result of the Defendant's actions and
10       conduct.

11

12  9.   Pursuant to 42 U.S.C. § 1988,  Plaintiff also seeks reasonable attorneys' fees.

13

14  10.  Plaintiff further seeks special damages relating to damage to his reputation, loss of
15       business income, loss of potential profits, and expenses incurred for hiring attorneys to
16       pursue recovery of his Property in an amount to be established at the time of trial, but at
17       present believed to be in excess of $500,000,000 (five hundred million dollars).

18

19  11.  Plaintiff has been specifically injured in his business income and loss of potential profits
20       by being unlawfully deprived of, *inter alia*, his right to and possession of Property
21       containing, among other things, sensitive business information relating to numerous and
22       varied business ventures, pending and ongoing civil legal proceedings, as well as
23       anticipated civil legal proceedings both in the United States and Canada.

24

25  12.  Plaintiff has been specifically injured by having to pay for the costs and expense of hiring
26       attorneys to assist in the retrieval of his Property from the possession of the State of
27       Washington, as well as paying for the costs and expense of legal proceedings in Canada

28

COMPLAINT - 6

HWB-ESQ., PLLC
PO BOX 13085
Mill Creek Washington
Telephone:206-774-0845
Facsimile: 206-350-0134

1    directly and indirectly related to the seizure and detention of his Property.

2

3    **II.    JURISDICTION**

4    13.    The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because it

5    presents a federal question arising under the Constitution and laws of the United States.

6    The Court also has jurisdiction over this action pursuant to 28 U.S.C. §1350, because

7    Plaintiff is an alien who has had various torts committed against him in violation of the

8    law of nations and treaties of the United States. The Court also has jurisdiction over this

9    action pursuant to 28 U.S.C. §§ 1602, and 1605(a)(5) because Plaintiff suffered damage to

10   and loss of property, occurring in the United States, and caused by the tortious acts or

11   omissions of the Government of Canada and officials, employees and agents of the

12   Government of Canada while they were acting within the scope of their office, and

13   employment, and agency relationship.  With respect to Plaintiff's claims based on 42

14   U.S.C. §§ 1983, 1985, and 1986, the Court also has jurisdiction pursuant to 28 U.S.C. §§

15   1343(a)(1), (a)(2).  Supplemental jurisdiction over the Plainitff's pendent state-law claims

16   are also conferred pursuant to 28 U.S.C. § 1367.  Plaintiff has complied with the

17   requirements of RCW 4.92.100, by presenting and filing a Standard Tort Claim Form with

18   the Tort Claims Division - Office of the Attorney General of the State of Washington.

19   Pursuant to RCW 4.92.110, Plaintiff has waited at least sixty days from the presentment

20   and filing of his Tort Claim prior to the commencement of this action.

21

22   **III.    VENUE**

23   14.    Venue is appropriate in the Western District of Washington pursuant to 28 U.S.C. § 1332

24   because a substantial part of the events, acts, and omissions giving rise to the Plaintiff's

25   claims occurred in this district.

26

27   **IV.    PARTIES**

28

COMPLAINT - 7

HWB-ESQ., PLLC
PO BOX 13085
Mill Creek Washington
Telephone:206-774-0845
Facsimile: 206-350-0134

## A.   The Plaintiff

15.   Erwin Singh Braich is a Canadian citizen and resident of British Columbia, Canada.  Mr.
Braich is, and was at the time of the facts alleged in this Complaint, a well respected and
internationally known industrialist and philanthropist.  Mr. Braich, while engaged in his
numerous business dealings, traveled world-wide to destinations spanning from Singapore
to Bulgaria.  Mr. Braich routinely stayed in hotels in various locations for extended
periods of time throughout the world; often times simultaneously occupying several rooms
in various hotels in numerous countries and cities.  From these hotels he would keep and
maintain various Property including, but not limited to, business documents used to
conduct his business affairs.  From the period of time relevant in this Complaint and from
approximately, during the calendar year 2002, and continue through to at least, in or about
August, of the calendar year 2004, Mr. Braich stayed in Room 305, as well as other rooms,
at the Travel House Inn (also know as the Traveller's Inn) ("the Inn"), in Bellingham,
Washington.  Mr. Braich  maintained Property in Room 305 throughout his stay at the Inn,
including times when he traveled on business and/or personal matters.  At all times
relevant to this Complaint, Mr. Braich had a bailor-to-bailee relationship with the Travel
House Inn, in relationship to the  Property he possessed and maintained in Room 305 at
the Inn.  At no time relevant to this Complaint,  did Mr. Braich by his words, acts, or other
objective indicators, manifest any intention to abandon his Property, located in Room 305
at the Inn, or to relinquish his reasonable expectation of privacy in the Property.

## B.   The Defendants

16.   Defendant Steve Mittelstaedt, at all times relevant to this Complaint, was a Border Patrol
Agent with United States Customs and Border Protection ("CBP"), and was employed by
the Department of Homeland Security ("DHS").  At all times relevant herein Mittelstaedt
was acting within the scope and course of his employment with the Department of
Homeland Security, and was acting under color of the statutes, ordinances, customs, laws,

COMPLAINT - 8

1   and usage of the United States of America, State of Washington, and Department of

2   Homeland Security.

3

4   17.   Defendant Keith M. Olson, at all times relevant to this Complaint, was a Supervisory

5         Border Patrol Agent with the United States Customs and Border Protection, and was

6         employed by the United States Department of Homeland Security.  At all times relevant

7         herein Olson was acting within the scope and course of his employment with the

8         Department of Homeland Security, and was acting under color of the statutes, ordinances,

9         customs, laws, and usage of the United States of America, State of Washington, and

10        Department of Homeland Security.

11

12  18.   Defendant City of Bellingham is a municipal corporation, located within the County of

13        Whatcom, in the State of Washington.  The Bellingham Police Department is a department

14        of defendant City of Bellingham.  Certain Defendants Jane/John Does are persons whose

15        identities are unknown but who are believed to have been employees of the Bellingham

16        Police Department at all times relevant to this Complaint.  At all times relevant herein

17        those Jane/John Does were acting within the scope and course of their employment with

18        the Bellingham Police Department, and acted under color of the statutes, ordinances,

19        customs, laws, and usage of the State of Washington, City of Bellingham, and the

20        Bellingham Police Department.  At all times relevant to this Complaint the City of

21        Bellingham was, the public employer of certain Defendants Jane/John Does, and all other

22        Bellingham Police Department employees, and it is responsible for the policies,

23        procedures, and practices implemented through its various agencies (including the

24        Bellingham Police Department), agents, departments, and employees, and for injury

25        occasioned thereby.

26

27  19.   Defendant Tyler Letey, at all times relevant to this Complaint, was a Staff

28

COMPLAINT - 9

Attorney/Financial Legal Examiner employed by the Department of Financial Institutions, Securities Division ("DFI-SD"). At all times relevant herein Letey was acting within the scope and course of his employment with DFI-SD, and was acting under color of the statutes, ordinances, customs, laws, and usage of the United States of America, State of Washington, and DFI-SD.

20. Defendant Shree Sharma, at all times relevant to this Complaint, was a Financial Examiner employed by DFI-SD. At all times relevant herein Sharma was acting within, the scope and course of his employment with DFI-SD, and was acting under color of the statutes, ordinances, customs, laws, and usage of the United States of America, State of Washington, and DFI-SD.

21. Defendant Deborah Bortner, at all times relevant to this Complaint, was a Securities Administrator/Director of Securities employed by DFI-SD. At all times relevant herein Defendant Bortner was acting within the scope and course of her employment with DFI-SD, and was acting under color of the statutes, ordinances, customs, laws, and usage of the United States of America, State of Washington, and DFI-SD. Defendant Bortner in her capacity as Administrator/Director of Securities is responsible for the policies, procedures, and practices implemented through the various offices/departments/units within DFI-SD, and practiced by DFI-SD employees (including Defendants Letey and Sharma), and for injury occasioned thereby. Defendant Bortner, in her capacity as Administrator /Director, is liable for the acts of DFI-SD employees, agents, and contractors (including but not limited to the acts of Defendants Letey and Sharma) under the doctrine of respondeat superior or by estoppel.

22. Defendant the State of Washington is the 42nd state of the United States of America, and is responsible for enforcing and defending the laws of the State of Washington and the

COMPLAINT - 10

BWH-ESQ., PLLC
PO BOX 13085
Mill Creek Washington
Telephone:206-774-0845
Facsimile: 206-350-0134

1    Washington State and the United States Constitutions.  The Department of Financial

2    Institutions ("DFI") is a department of defendant, State of Washington. The Securities

3    Division is a division of DFI.  At all times relevant to this Complaint the State of

4    Washington was, and is, the public employer of Defendants Letey, Sharma, Bortner, and

5    all other DFI-SD employees, and it is responsible for the policies, procedures, and

6    practices implemented through its various agencies (including DFI-SD), agents,

7    departments, and employees, and for injury occasioned thereby.

8

9   23.    Defendant Brian G. McLean, at all times relevant to this Complaint, was an attorney in

10     British Columbia, Canada, with a business address of 405-100 Park Royal, West

11     Vancouver, B.C. V7T 182, and at all times relevant herein was acting within the scope and

12     course of his employment as the attorney for KPMG Inc, in its role as Trustee in the

13     Bankruptcy proceeding of Erwin Singh Braich, and as an attorney and owner of the law

14     firm McLean & Armstrong.

15

16   24.    Defendant McLean & Armstrong, at all times relevant to this Complaint was a law firm

17     based in British Columbia, Canada, with a business address of 405-100 Park Royal, West

18     Vancouver, B.C. V7T 182.  At all times relevant to this complaint the law firm of M&A

19     had Defendant McLean as an owner.  At all times relevant to this complaint Defendant

20     McLean acted within the scope of his ownership/employment relationship with Defendant

21     M&A.  At all times relevant to this complaint Defendant McLean used Defendant M&A

22     as an instrumentality by which to carry out the allegations set forth above and herein as

23     they relate to Plaintiff.  Defendant M&A is liable for the acts of Defendant McLean

24     conducted within the scope of his ownership/employment relationship under the doctrine

25     of respondeat superior or by estoppel.

26

27   25.    Defendant Robert Rusko at all times relevant to this Complaint, was a Chartered

28

COMPLAINT - 11

HWB-ESQ., PLLC
PO BOX 13085
Mill Creek Washington
Telephone:206-774-0845
Facsimile: 206-350-0134

1  Accountant and a Senior Vice-President of KPMG Inc., and at all times relevant herein

2  was acting within the scope and course of his employment as an employee of KPMG Inc.,

3  in its role as Trustee of the bankruptcy of Erwin Singh Braich. Defendant Rusko in his

4  capacity as Senior Vice-President of KPMG Inc., is liable for the acts of KPMG Inc.'s

5  employees, agents, and contractors under the doctrine of respondeat superior or by

6  estoppel, including but not limited to the acts of Defendants McLean and Wood.

7

8  26.  Defendant David Wood, at all times relevant to this Complaint was a Chartered

9  Accountant, and at all times relevant herein was acting within the scope and course of his

10  employment as an employee of KPMG Inc., in its role as Trustee of the bankruptcy of

11  Erwin Singh Braich.

12

13  27.  Defendant KPMG Inc., is a wholly owned subsidiary of Defendant KPMG LLP., the

14  Canadian member firm of KPMG International, the coordinating entity for a global

15  network of professional services firms. KPMG Inc., has its principal place of business at

16  Vancouver, British Columbia, Canada. KPMG Inc. is chartered by the Government of

17  Canada through the Office of the Superintendent of Bankruptcy to act as a licensed

18  Bankruptcy Trustee. At all times relevant to this Complaint, KPMG. Inc., had an agency

19  relationship with the Government of Canada, for the purpose of performing its duties

20  within the scope of its Bankruptcy Trustee activities. KPMG Inc. is liable for the acts of

21  its partners, employees, agents, and contractors (including but not limited to Defendants

22  McLean, Rusko, and Wood) under the doctrine of respondeat superior or by estoppel.

23

24  28.  Defendant KPMG LLP, is a Canadian limited liability partnership and the Canadian

25  member firm of KPMG International. Defendant KPMG Inc. is a wholly owned

26  subsidiary of Defendant KPMG LLP. KPMG LLP is liable for the acts of its, subsidiaries,

27  and its subsidiaries' partners, employees, agents, and contractors (including but not limited

28

COMPLAINT - 12

1    to Defendants KPMG Inc., McLean, Rusko, and Wood) under the doctrine of respondeat
2    superior or by estoppel.

3

4    29.    Defendant RCMP Sargent Tim Alder, at all times relevant to this complaint, was a Staff
5           Sergeant and employee of the Royal Canadian Mounted Police ("RCMP"). At all times
6           relevant herein he was acting within the scope and course of his employment with the
7           RCMP. The RCMP is the Canadian national police service and an agency of the Ministry
8           of Public Safety and Emergency Preparedness Canada ("PSEPC-Canada"). PSEPC-
9           Canada is a Department within the Government of Canada.

10

11   30.    Defendant the Government of Canada ("Canada") is a foreign state, as defined in 28
12          U.S.C. § 1603(a). Industry Canada ("IC") is a Department within the Government of
13          Canada. IC is an agency or instrumentality of a foreign state, as defined in 28 U.S.C.
14          §1603(b)(2). The Office of the Superintendent of Bankruptcy ("OSB") is an agency of
15          Industry Canada which regulates licensed bankruptcy trustees. OSB is an agency or
16          instrumentality of a foreign state, as defined in 28 U.S.C. §1603(b)(2). OSB's stated
17          purpose is to "ensure that bankruptcy and insolvency proceedings are conducted in a fair
18          and orderly manner under the Bankruptcy and Insolvency Act." At all times relevant to
19          this Complaint the Government of Canada was, and is, the public employer of certain
20          Defendants RCMP Officer Jane/John Doe, and all other Canadian government employees,
21          and it is responsible for the policies, procedures, and practices implemented through its
22          various agencies (including the OSB), agents, departments, and employees, and for injury
23          occasioned thereby. Canada is liable for the acts of its employees, agents, and contractors
24          (including but not limited to Defendants KPMG Inc., KPMG LLP, McLean, Rusko,
25          Wood, and Alder) under the doctrine of respondeat superior or by estoppel.

26

27   31.    Defendants John/Jane Does 1-10 are past and present individuals, private parties, officials,

28

COMPLAINT - 13

1   representatives, agents, and employees believed to be liable to Plaintiff and will be cited in

2   appropriate areas as necessary in the body of this complaint, and further identified during

3   discovery, and will be identified by name and the nature of their conduct described with

4   sufficient specificity as necessary in any amended Complaint(s).

5

6   **V       BACKGROUND FACTS**

7   32.   Unless otherwise indicated, the "Background" section of this Complaint is stated upon

8         information and belief, based on personal knowledge of the Plaintiff, published

9         documentation, reports, court documents, Public Disclosure Requests responses, Freedom

10        of Information Act request responses, Canadian Freedom of Information and Protection of

11        Privacy Act requests responses, and other materials. This Background is recited herein as

12        a factual basis underlying the Causes of Action and Claims for Relief in this Complaint.

13

14        **A.       The Plama Refinery Negotiations**

15  33.   In, and during, approximately 1998, Plaintiff became aware of a business opportunity in

16        relation to the purchase of an oil refinery in Pleven, Bulgaria, known as the Plama

17        Refinery ("Plama"). Plaintiff, by means of offshore business entities, acquired

18        approximately 99% of the shares of Plama.

19

20  34.   In, approximately, May of 1999, in an effort to accumulate capital to finance the re-start of

21        Plama, Plaintiff met with, and after numerous meetings and discussions, entered into an

22        agreement with a Canadian businessman named Glen Walsh who owned a company called

23        Tercon Contractors Ltd. ("Tercon").

24

25  35.   Plaintiff and Mr. Walsh agreed to a financial agreement, which included among other

26        terms, the conversion of monies previously advanced by Mr. Walsh/Tercon from a loan to

27

28

COMPLAINT - 14

1    equity interest in twenty five percent (25%) of Plama's accounts receivable, which was

2    estimated at the time to be approximately twenty-eight million dollars ($28,000,000).

3

4    36.   Prior to consummation of the full terms of the agreement between Plaintiff and

5    Walsh/Tercon, a letter was sent to one of Plaintiff's attorneys by Defendant McLean.  In

6    that letter Defendant McLean altered the terms of the agreement entered into by Plaintiff

7    and Glen Walsh.  The McLean letter specifically required that Plaintiff agree not to

8    Walsh/Tercon receiving an interest of 25% of the Plama receivables, but instead 25% of

9    the Carpe Diem Trust.

10

11   37.   The Carpe Diem Trust was a trust created by Plaintiff for the benefit of his children.

12   Although the trust--through several subsidiaries it controlled--owned 99% of Plama, it had

13   assets independent of Plama in excess of $250,000,000 (two hundred and fifty million

14   dollars).

15

16   38.   Defendant McLean was aware--at the time he sent the altered written terms--of the value

17   of the Carpe Diem Trust.  Defendant McLean was also familiar with the original terms

18   agreed to between Plaintiff and Glen Walsh, as to the conversion from debt to equity and

19   investment in the Plama receivables.

20

21   39.   In addition to the requirement of Walsh/Tercon receiving a  25% interest in the Carpe

22   Diem trust, Defendant McLean's letter went further by specifying an additional

23   requirement that any future investments by Walsh/Tercon in Plama be secured by Plaintiff

24   assigning his beneficial interest in the residual of his deceased father's Estate.  The

25   residual of the Estate today may be worth upwards of $100,000,000 (one hundred million

26   dollars).

27

28

COMPLAINT - 15

1   40.   Plaintiff, after reviewing the McLean letter and its terms, summarily rejected it.

2

3   **B.    The Petitioning Into Bankruptcy of Erwin Singh Braich**

4

5   41.   On or about June 28, 1999, and less than one (1) month after the rejection of the terms

6         outlined in McLean's letter, Glenn Walsh, with the assistance of Defendant McLean,

7         commenced the petitioning process, in order to attempt to petition Plaintiff into

8         bankruptcy in Canadian Court.

9

10  42.   Twelve (12) days before the actual commencement of proceedings for the petitioning of

11        Plaintiff into bankruptcy, a correspondence between Defendant McLean and Defendant

12        Rusko indicated the two defendants agreement that KPMG Inc., would act as Trustee in

13        the, as yet unfiled, bankruptcy matter.

14

15  43.   After the formal filing of the bankruptcy petition, KPMG Inc., through Defendant Rusko,

16        formally approved Defendant McLean as its attorney in its role as Trustee of the Plaintiff's

17        bankruptcy proceeding. At all times, Plaintiff objected to the bankruptcy proceeding as

18        fraudulent, and vehemently asserted this fact to Defendant Rusko and others.

19

20  44.   The approval and appoint of Defendant McLean, by KPMG Inc., as their attorney within

21        weeks of the petitioning into Bankruptcy of Plaintiff, although he was, and remained

22        throughout the proceeding, the attorney for the petitioning bankruptcy creditor, was

23        objected to by Plaintiff to KPMG and OSB as a clear conflict of interest.

24

25  45.   At the time the aforementioned approval and appointment was made by Defendants

26        Rusko and KPMG Inc., they were aware, or reasonably should have been aware, of the fact

27        that Defendant McLean was, and remained as, the attorney for Mr. Walsh/Tercon and that

28        there was an actual conflict of interest in Defendant McLean being both the attorney for

COMPLAINT - 16

HWB-ESQ., PLLC
PO BOX 13085
Mill Creek Washington
Telephone:206-774-0845
Facsimile: 206-350-0134

1    the Trustee in bankruptcy while simultaneously representing the interests of

2    Walsh/Tercon.

3

4    46.    After the commencement of the bankruptcy proceedings against the Plaintiff, Defendants

5    in Canada and the US manipulated and misused the Canadian bankruptcy proceedings, and

6    the laws of the Governments of Canada and the United States in a purposeful effort to

7    deprive Plaintiff of his civil rights and Property both in the United States and Canada.

8

9    **C.     The Unconstitutional and Unlawful Searches of Room 305 at the Inn by
         Agents of the US Border Patrol, and the Bellingham Police Department.**

10

11   47.    In February of 2003, Erwin Singh Braich began staying at the Travel House Inn.  The

12   Travel House Inn is located in the City of Bellingham, Whatcom County, Washington.

13   The Travel House Inn is a commercial establishment, engaged in the business of providing

14   lodging to the general public.

15

16   48.    Plaintiff stayed in various rooms, at different times, at the Inn. Unless otherwise noted

17   herein Room 305 is the room the violations alleged in this Complaint refer to.

18

19   49.    During a period of time unknown to the Plaintiff, but during and in the fall of 2003, two

20   individuals who appeared to be law enforcement agents came to the Inn.  The individuals

21   identified themselves as being with "United States Customs."  One of the agents presented

22   a business card identifying himself as Supervisory Patrol Agent Keith M. Olson, with the

23   Department of Justice, United States Border Patrol-Bellingham Station.  The other

24   individual was not identified at the time.  The Border Patrol agents stated they were at the

25   Inn, in an attempt to assist Canadian authorities in finding the whereabouts of Erwin

26   Braich.  The Border Patrol agents did not specify what Canadian authorities they were

27   assisting or why they wanted to find Plaintiff.

28

COMPLAINT - 17

50.   The Border Patrol agents asked which room was Plaintiff's. They were told that Plaintiff was staying in Room 305, but was not presently at the Inn. The Border Patrol Agents proceeded to Room 305. Room 305 was found to be locked. The Border Patrol Agents instructed an Inn employee to open the locked door. Once the room was opened at least one of the Border Patrol agents entered the room and looked around in various locations.

51.   At no time before, during, or after they went into Plaintiff's room did either of the Border Patrol Agents present a warrant or indicate they had any other type of legal authorization to enter Room 305.

52.   The Border Patrol Agents also obtained from the Inn employee a printout of Plaintiff's stay at the Inn. The printout, detailed the dates Plaintiff had stayed in rooms at the Inn, as well as long distance phone calls he had made, and the specific numbers dialed.

53.   At the time the Border Patrol agent entered Room 305, Plaintiff had not abandoned or in any other way relinquished any possessory interest or reasonable expectation of privacy in Room 305 or any Property contained in Room 305.

54.   Upon information and belief, the two Border Patrol Agents were Defendants Mittelstaedt and Olson.

55.   Upon information and belief Defendants Mittelstaedt and Olson did not prepare any official report, or other investigatory material documenting their actions in regard to the search of Room 305.

56.   Upon information and belief Defendants Mittelstaedt and Olson did not prepare any official report, or other investigatory material documenting their actions in regard to the

COMPLAINT - 18

HWB-ESQ., PLLC
PO BOX 13085
Mill Creek Washington
Telephone:206-774-0845
Facsimile: 206-350-0134

1 search of Room 305, as a means by which to intentionally conceal the material facts in

2 order to prevent discovery of the Defendants' wrongful acts that form the basis of the

3 Causes of Action stated above and herein.

4

5 57. At all times relevant to this Complaint the actions of Defendants Mittelstaedt and Olson

6 were conducted pursuant to and in conformance with official policies and customs of the

7 Department of Homeland Security, Bureau of Customs and Border Protection, and Border

8 Patrol in the searching, seizing, and detaining of private property without a warrant or

9 other lawful authority

10

11 58. At a time unknown to the Plaintiff, but several weeks after the Border Patrol agents

12 searched Room 305, employees at the Inn received a phone call from a person identifying

13 himself as a Bellingham Police Officer ("BPO"). The BPO asked questions about

14 Plaintiff. The BPO specifically asked if Plaintiff was still away from the Inn, and if the

15 employee knew when he was coming back. A few days after the phone call a person

16 identifying himself as a BPO, came to the Travel House Inn inquiring about Plaintiff.

17 After being told by an employee of the Inn that Plaintiff was not presently at the Inn, the

18 BPO stated he wished to look inside Plaintiff's room. The BPO went to Room 305 at

19 found that it was locked. The BPO asked to be let into the room and an employee at the In

20 opened the door. The BPO entered Room 305 and proceeded to look around in various

21 locations for approximately several minutes and then came out of the room. It is

22 specifically believed by the Plaintiff that the BPO looked inside of the closet; in the

23 bathroom; and on the counter tops where Plaintiff had left various paperwork. The BPO

24 indicated to an Inn employee that he had been contacted by "U.S. Customs" and was asked

25 to come by the Inn and inquire about Plaintiff.

26

27 59. At no time before, during, or after looking inside of Room 305 did the BPO show anyone

28

COMPLAINT - 19

HWB-ESQ., PLLC
PO BOX 13085
Mill Creek Washington
Telephone 206-774-0845
Facsimile: 206-350-0134

1    at the Inn a warrant or any other type of legal authorization to enter the room.

2

3    60.    At the time the BPO came to the Inn and looked inside Room 305, Plaintiff had not

4           abandoned or in any other way relinquished any possessory interest or reasonable

5           expectation of privacy in Room 305 or any Property contained in Room 305.

6

7    61.    Upon information and belief, no BPO, or other employee of the Bellingham Police

8           Department, prepared any official report, or other investigatory material documenting their

9           actions in regard to the search of Room 305.

10

11   62.    Upon information and belief no BPO or other employee of the Bellingham Police

12          Department prepared any official report, or other investigatory material documenting the

13          actions of the BPO in regards to the search of Room 305, as a means by which to

14          intentionally conceal the material facts in order to prevent discovery of the Defendants'

15          wrongful acts that form the basis of the Causes of Action stated above and herein.

16

17   63.    At all times relevant to this Complaint the actions of the BPO who entered and searched

18          Room 305 were conducted pursuant to and in conformance with official policies and

19          customs of the Bellingham Police Department in the searching, seizing, and detaining of

20          private property without a warrant or other lawful authority.

21

22   **D.    The Illegal Search, Seizure, and Detention of Property from Room 305 at the
            Inn by the DFI-SD**

23

24   64.    At a time unknown to the Plaintiff, but approximately several weeks after the BPO had

25          come by the Inn, an Inn employee received a phone call from a person identifying himself

26          as "Tyler Letey."   Letey told the employee that he was employed with the Washington

27          State Department of Financial Institutions (DFI).  He spoke to the employee about Plaintiff

28

COMPLAINT - 20

1    and indicated that he had been contacted by "U.S. Customs" and the Bellingham Police

2    Department. He told the employee that both agencies had asked him to contact the Inn

3    regarding Plaintiff, and that he wanted to come up and take documents from Plaintiff's

4    room.

5

6    65.    Defendant Letey was told by the employee that in order to take anything from the room he

7           needed to have some document authorizing him to take property from the room.

8           Defendant Letey indicated he would obtain legal authorization, and that he would be

9           coming up to get the property.

10

11   66.    Upon information and belief, prior to Letey contacting the Inn he had already agreed with

12          other Defendants to search, seize and detain the Property of Erwin Braich contained in

13          Room 305 of the Inn, without lawful authority to do so, and to use his position as an

14          employee of DFI-SD to pursue that objective.

15

16   67.    On or about February 4, 2004, Defendants Letey, Bortner, Sharma, and others known and

17          unknown prepared and aided and abetted in the preparation of a document entitled

18          "Subpoena Duces Tecum" with a designated case number of 14835 ("SDT-14835").

19          **(EXHIBIT "A")**

20

21   68.    SDT-14835 cited as its authority for issuance RCW 21.20.380.

22

23   69.    At all times relevant to this Complaint Defendants Bortner, Letey, Sharma and any other

24          employee of DFI-SD were aware or reasonably should have been aware that RCW

25          21.20.380 did not grant authority to make a non-consensual and warrantless entry into a

26          private room and search, seize and detain private property.

27

28

COMPLAINT - 21

70.   At the time of the preparation and issuance of SDT-14835 Defendant Bortner held a supervisory role as related to Defendants Letey and Sharma.

71.   At not time, relevant to this Complaint, did Defendants Bortner, Letey, Sharma, and any other employee of DFI-SD comply with the requirements of the United States Constitution, Washington State Constitution, federal, and state law in reviewing the basis for authorizing the issuance of SDT-14835.

72.   At no time, relevant to this Complaint, did Defendants Bortner, Letey, Sharma, and any other employee of DFI-SD, require that the stated procedures for an individual filing a Complaint Report as outlined on the DFI-SD website be followed.

73.   At no time, relevant to this Complaint, did Bortner, Letey, Sharma, and any other employee of DFI-SD stop, or attempt to stop, the serving of SDT-14835.

74.   At no time, relevant to this Complaint, did Bortner, Letey, Sharma, and any other employee of DFI-SD stop, or attempt to stop, the search of Plaintiff's Room 305 at the Inn.

75.   At no time, relevant to this Complaint, did Bortner, Letey, Sharma, and any other employee of DFI-SD stop, or attempt to stop, the seizure of Plaintiff's Property from Room 305 at the Inn.

76.   At no time, relevant to this Complaint, did Bortner, Letey, Sharma, and any other employee of DFI-SD stop, or attempt to stop the detention, for a period of approximately six (6) months, of Plaintiff's Property seized from Room 305 at the Inn.

77.   At all times relevant to this Complaint the actions of Defendants Bortner, Letey, Sharma

COMPLAINT - 22

HWB-ESQ., PLLC
PO BOX 13085
Mill Creek Washington
Telephone:206-774-0845
Facsimile: 206-350-0134

1    and any other employee of DFI-SD were conducted pursuant to and in conformance with

2    official policies and customs of DFI-SD in the searching, seizing, and detaining of private

3    property with out a warrant or other lawful authority.

4

5    78.   At a time unknown to the Plaintiff, but after Defendant Letey had called the Inn, telephone

6          calls were exchanged between staff at the Inn and a person who identified himself as a

7          Canadian lawyer involved in a bankruptcy proceeding involving the Plaintiff.  The

8          Canadian lawyer asked the employee if he could come down from Canada and take

9          documents from Plaintiff's room.  The Canadian lawyer appeared to know details

10         regarding employees of the Inn, and also seemed to know that Plaintiff had a room at the

11         Inn, and that Plaintiff was not presently at the Inn.  The Canadian lawyer was persistent in

12         his attempts to have the Inn employee agree to his coming to the Inn and taking documents

13         out of Plaintiff's room.  The Canadian lawyer was told by the employee that it would not

14         be possible for the lawyer to take anything belonging to Plaintiff unless he had some type

15         of "court order."

16

17   79.   Upon information and belief, the person who identified himself as a Canadian lawyer and

18         sought to take possession of Plaintiff's documents located in Room 305 at the Inn was

19         Defendant McLean.

20

21   80.   Subsequent to the phone call from the Canadian lawyer and the refusal by the Inn

22         employee to allow the lawyer to take Plaintiff's Property, a second phone call was received

23         from Defendant Letey.  Defendant Letey told an employee at the Inn that he would be

24         coming up to take the Property located in Room 305 and that he would be bringing a

25         document  authorizing the taking of the Property.

26

27   81.   On or about February 5, 2004, Defendants Letey and Sharma went to the Inn. They

28

COMPLAINT - 23

1   presented SDT-14835 to an Inn employee. Defendants Letey and Sharma stated that the

2   document gave them legal authority to enter Plaintiff's room and to seize his Property. It

3   was specifically pointed out to the employee by Defendants Letey and Sharma that SDT-

4   14835, stated that "disobedience" or "failure" by anyone to comply with the subpoena

5   could result in a request that a court "compel obedience" by bringing a "contempt of court

6   proceeding" against the person.

7

8   82.   Defendants Letey and Sharma were shown to Room 305. The door to Room 305 was

9         found to be locked, and they requested the door be opened. An employee of the Inn

10        complied with their request and they then entered the room and proceeded to take

11        numerous and varied Property from the room. All of the Property taken from the room

12        was owned and exclusively possessed by Plaintiff. At the time Defendants Letey and

13        Sharma entered, searched, and seized Plaintiff's Property from Room 305, Plaintiff had

14        not abandoned or in any other way relinquished any possessory interest or reasonable

15        expectation of privacy in Room 305 or any Property contained in Room 305. After they

16        were done they left the Inn with the Property. Neither at the time the Property was taken

17        from Room 305, nor at any time after they left, was an inventory or list of what was taken

18        from Room 305 left in the room or at any other location at the Inn, or with any person or

19        employee at the Inn.

20

21  83.   According to a document maintained by Defendant Letey in the course and scope of his

22        employment with DFI-SD, on or about April 6, 2004, Defendant Letey communicated

23        with Defendant McLean and discussed with him how to make it possible for Defendant

24        McLean to view and take possession of the Property that had been seized from Room 305

25        at the Inn. Defendant Letey noted in the document that he told Defendant McLean he

26        would "look into how to make that happen."

27

28

COMPLAINT - 24

84. Upon information and belief Defendant Letey, at a time unknown to the Plaintiff, but after February 5, 2004,  without lawful authority copied and sent significant portions of the Property seized from Room 305 at the Inn, across the international border between the United States and Canada, to the British Columbia Securities Commission ("BCSC"). Included in the Property sent to this agency, located outside of both the jurisdictional boundaries of the State of Washington and the United States, was a significant amount of materials which were private facts consisting of, among other materials, messages, letters, and other correspondences, for which Defendant Letey did not have authority to open, read, publish, or disseminate. In so doing Defendant Letey publicly disclosed to third parties private information contained in Plaintiff's Property.

85. Upon information and belief, at all times relevant to the actions described above and herein regarding Defendants Bortner, Letey, Sharma and any other employee of DFI-SD, there was no official request from BCSC or any other authorized Canadian governmental entity pursuant to the Assistance to Foreign Tribunals Statute Treaty with Canada on Mutual Legal Assistance in Criminal Matters, or the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters, regarding the documents described in Paragraph 84, above.

86. The actions by Defendant Letey, and others, in sending the Plaintiff's Property outside of the legal jurisdictions of both the State of Washington and the United States, caused Plaintiff to be without the ability to contest the transmission of the information contained in the Property and to seek retrieval of the Property by means of the judicial process either under the jurisdiction of the State of Washington or the United States.

87. Upon information and belief Defendant Letey knowingly sent portions of the Property taken from Room 305 at the Inn, to BCSC because he was aware that he had no legal basis

COMPLAINT - 25

1   under Washington state or U.S. law to directly hand over the Property to Defendant

2   McLean, or any of the other Defendants located in Canada.

3

4   88.   Upon information and belief, at the time Defendant Letey sent the Plaintiff's Property to

5   BCSC, there was no active, or pending investigation by BCSC relating to Plaintiff which

6   any of the documents or other Property would have related to.

7

8   **E.    The Unlawful Detention and Refusal to Return the Seized Property for Room**

9   **305 by DFI-SD**

10

11  89.   After February 5, 2004, Defendant Letey was aware that Plaintiff wanted the Property back

12  that had been taken from Room 305 at the Inn, and that the documents and other Property

13  seized related to ongoing contractual relationships and business expectations of Plaintiff,

14  involving a variety of financial ventures in locations such as Canada, Vietnam, Mexico,

15  and Ghana.  Despite having knowledge of the ongoing contractual relations and business

16  expectancies of Plainitff relating to the Property that had been seized and detained,

17  Defendant Letey refused to return the Property. In his refusal to unconditionally return

18  Plaintiff's Property, Defendant Letey cited his authority under Washington state law as a

19  basis to do so.

20

21  90.   Defendant Letey after he was made aware of Plaintiff's request to have his Property

22  returned, required that Plaintiff submit to a personal interrogation, prior to the return of

23  Plaintiff's Property.

24

25  91.   The continued withholding of Plaintiff's Property, after its unlawful search, seizure, and

26  detention by Defendant Letey with knowledge of the importance of the documents to

27  Plaintiff and his business ventures,  and his requirement that Plaintiff submit to an

28

COMPLAINT - 26

1    interrogation before he could regain possession of his property, all conducted without

2    lawful authority, was outrageous in character, extreme in degree, and went beyond all

3    possible bounds of decency. The violation of Plaintiff's Privacy and Property rights by

4    Defendant Letey and the economic consequences that resulted therein were atrocious, and

5    intolerable in a civilized community.

6

7  92.   The continued withholding of Plaintiff's Property by Defendant Letey caused Plaintiff

8        severe emotional distress in that a significant portion of the documents related to multi-

9        million dollar business ventures and contained information that could not otherwise be

10       recreated, regained, or otherwise duplicated by Plaintiff.

11

12 93.   At no time prior to Plaintiff's agreement to subject himself to an interrogation by

13       Defendant Letey, did Defendant Letey agree to return Plaintiff's Property.

14

15 94.   At no time prior to, on or about July 28, 2004, when Plaintiff subjected himself to an

16       interrogation by Defendant Letey, was Plaintiff's Property returned to him.

17

18 95.   On or about July 28, 2004, Plaintiff subjected himself to an interrogation by Defendant

19       Letey, for the sole purpose of regaining possession of his Property that was taken from

20       Room 305 at the Inn.

21

22 96.   At the mandated interrogation at the DFI-SD office in Olympia, Washington, Defendant

23       Letey questioned Plaintiff regarding a variety of his business dealings, many of which did

24       not concern any commercial activity, business, or securities related interests occurring in

25       the state of Washington. Defendant Letey had knowledge of the details of these business

26       dealings from his meticulous review, inspection, and copying of Plaintiff's Property

27       including the opening and reading of documents relating to correspondences regarding

28

COMPLAINT - 27

1    business dealings in Canada, Vietnam, Mexico, and Ghana.

2

3   97.   During the interrogation by Defendant Letey, it was inquired of him under what authority

4         was an administrative subpoena, such as SDT-14835, issued and served for the search,

5         seizure and detention of Private Property from a private room in a hotel. Defendant Letey

6         responded that he conducted such searches, seizures, and detentions of property pursuant

7         to administrative subpoenas similar to SDT-14835 "all the time."

8

9   98.   During the interrogation, it was inquired why Defendant Letey had initiated a securities

10        investigation of Plaintiff. Defendant Letey responded that the manager at the Inn had told

11        him that an unnamed unidentified female former employee ("UUFFE") was "solicited" by

12        Plaintiff, in an attempt to have this UUFFE invest in a foreign business enterprise.

13        Defendant Letey did not know the name of the UUFFE. The UUFFE was not otherwise

14        identifiable by Defendant Letey. Defendant Letey indicated the UUFFE was no longer

15        working at the Inn, and that he had no information regarding her whereabouts. At no time

16        prior to the search, seizure, and detention of Plaintiff's Property from Room 305 at the Inn,

17        did Defendant Letey locate and question the UUFFE. Defendant Letey indicated that it

18        was the allegation regarding the UUFFE that was the basis for his initiating a securities

19        investigation of the Plaintiff, resulting in his search, seizure, and detention of Plaintiff's

20        Property.

21

22  99.   Upon information and belief, on or about July 28, 2004, after the seizure of Plaintiff's

23        Property, Defendant Letey intentionally concealed material facts by, among other things,

24        giving false, misleading, fraudulent, and malicious statements, by making up an untrue

25        account relating to an UUFFE, as described in Paragraph 98 above.

26

27  100.  Defendant Letey's intentional fraudulent concealment of material facts prevented

28

COMPLAINT - 28

HWB-ESQ., PLLC
PO BOX 13085
Mill Creek Washington
Telephone:206-774-0845
Facsimile: 206-350-0134

1    Plaintiff's discovery of the Defendants' wrongful acts that form the basis of the Causes of

2    Action stated above and herein.

3

4  101.  At the conclusion of the interrogation of Plaintiff, Defendant Letey indicated he had found

5       no evidence of any violations of federal or state securities laws.

6

7  102.  At the conclusion of the interrogation of Plaintiff by Defendant Letey–and almost six (6)

8       months after the seizure and detention– a quantity of Plaintiff's Property was returned.

9       **(EXHIBIT "B")** Defendant Letey kept an unknown quantity of copies of various

10      documents and other items of Plaintiff's Property and would not agree, to not transfer or

11      otherwise disseminate, to any other person or entity the information he had kept, copied, or

12      otherwise obtained from the documents in Plaintiff's Property.

13

14  103.  Defendant Letey by making and keeping copies of Plaintiff's Property, and refusing to

15      agree to not transfer or otherwise disseminate to any other person or entity any of the

16      information contained in the Property copied, denied Plaintiff exclusive possession of his

17      Property.

18

19  104.  Once returned, the Property was inspected by Plaintiff and certain items were found to be

20      missing.  Defendant Letey, when contacted about the missing items, indicated all of the

21      Property taken had been returned, on July 28th.

22

23  105.  Several weeks after Defendant Letey had been contacted regarding the missing items, and

24      denying he had in his possession any more of Plaintiff's Property, he sent additional

25      Property that he had found.

26

27  106.  As of the date of the filing of this Complaint, items of significant business related

28

COMPLAINT - 29

HWB-ESQ., PLLC
PO BOX 13085
Mill Creek Washington
Telephone:206-774-0845
Facsimile: 206-350-0134

1   importance that were taken from Room 305 at the Inn by Defendants Letey and Sharma

2   remain missing. The permanent loss of Plaintiff's Property is due directly to the actions of

3   Defendants Letey, Sharma, Bortner, and others.

4

5   **F.   ADDITIONAL BACKGROUND FACTS**

6

7   **Facts Relating to Civil Conspiracy to Violate Plaintiff's Rights  and Acts in**

8   **Furtherance**

9

10   107.   Beginning at a time unknown to Plaintiff, but during the calendar year 2003, and

11         continuing to at least on or about July 28, 2004, Defendants Mittelstaedt, Olson, Letey,

12         Sharma, Bortner, McLean, Rusko, Wood, Alder and others known and unknown,

13         combined, conspired, confederated, planned, schemed and agreed together and with each

14         other, and otherwise collectively arranged to deprive Plaintiff of his Property located in

15         Room 305, at the Travel House Inn.

16

17   108.   In furtherance of the agreement described in Paragraph 107 above, Defendants McLean,

18         Rusko, Wood, Alder and others known and unknown, willfully participated in joint action

19         with United States government employees, Washington State employees, and the City of

20         Bellingham employees in the search, seizure, and detention of Plaintiff's Property, and

21         they relied on and invoked these U.S. government, state, and city actors' actions, under

22         color of law, to aid in their agreement to deprive Plaintiff of his Property.

23

24   109.   In furtherance of the agreement described in Paragraph 107 above Mclean, Rusko, Wood,

25         Alder and others known and unknown created and aided and abetted in the creation and

26         dissemination of false, fraudulent, and misleading documents. These documents, which

27         were misleading and contained material omissions of fact, were sent to various persons

28

COMPLAINT - 30

HWB-ESQ., PLLC
PO BOX 13085
Mill Creek Washington
Telephone:206-774-0845
Facsimile: 206-350-0134

1    and governmental agencies in the United States in an effort to fraudulently present the

2    appearance of authority, or to lend "cover," to the attempt to unlawfully take Plaintiff's

3    Property from Room 305 at the Inn, and transfer that Property, and information contained

4    therein, to Canada.

5

6    110.    In furtherance of the agreement described in Paragraph 107 above, on or about April 7,

7            2004, Defendant McLean, in his capacities as an attorney working for the law firm

8            McLean & Armstrong and as attorney for the Trustee in bankruptcy Defendant KPMG

9            Inc., caused to be sent from a location in Canada, documents using a facsimile machine

10           with a phone number of 604-925-8984, to a facsimile machine located at the DFI-SD

11           office in Olympia, Washington with a facsimile machine number of 360-704-7023.

12           Among the several documents caused to be sent by Defendant McLean was a letter

13           addressed to the "Washington State Securities Division," and directed to the attention of

14           "Tyler Letey." In that letter Defendant McLean specifically states that he has "been

15           instructed by KPMG Inc. (Robert Rusko/David Wood of KPMG Vancouver office) to

16           request an opportunity to review the documents which you have in your possession seized

17           by Subpoena from the hotel room in Bellingham where Erwin Braich had been living."

18           **(EXHIBIT "C")**

19

20   111.    A day previous, on or about April 6, 2004, Defendant McLean in his capacities as an

21           attorney working for the law firm McLean & Armstrong, and as attorney for the Trustee in

22           bankruptcy Defendant KPMG Inc., sent a written "undertaking," which was a binding

23           agreement, to Plaintiff's bankruptcy attorney in Canada, acknowledging that he would

24           "not conduct, nor will any other lawyer in my firm, the examination of Erwin Singh Braich

25           on behalf of his Trustee, KPMG Inc." **(EXHIBIT "D")**

26

27   112.    Upon information and belief and in furtherance of the agreement described in Paragraph

28

COMPLAINT - 31

HWB-ESQ., PLLC
PO BOX 13085
Mill Creek Washington
Telephone:206-774-0845
Facsimile: 206-350-0134

1   107 above, Defendant McLean in his capacities as an attorney working for the law firm

2   McLean & Armstrong and as attorney for the Trustee in bankruptcy Defendant KPMG Inc

3   used Defendant Letey's position as an employee of DFI-SD, and his ability to act under the

4   color of U.S. and Washington state law, to seek to unlawfully obtain Plaintiff's Property.

6   113.  In furtherance of the agreement described in Paragraph 107 above, on or about May 14,

7   2004, Defendant Wood in his capacity as an employee of KPMG Inc., created a document

8   addressed to "Washington State Securities Division," and entitled "DEMAND FOR

9   PRODUCTION AND DELIVERY." In that document Wood on behalf of KPMG Inc., in

10   its role as "Trustee of the Estate of Erwin Singh Braich," required that DFI-SD "produce

11   and deliver to the Trustee any property of the Bankrupt, or any book, document or paper of

12   any kind, in your possession or control, relating in whole or in part to the Bankrupt, his

13   dealings and property, including any books, records or documents that you may have in

14   your possession." Defendant Wood specifically cited as authority for his demand the

15   Canadian Bankruptcy and Insolvency Act, and his authority as a representative of "KPMG

16   Inc. Trustee of the estate of ERWIN SINGH BRAICH." **(EXHIBIT "E")** At the

17   conclusion of this letter Defendant Wood affixed his signature in his capacity as a

18   representative for KPMG Inc. The document was sent to Defendant McLean who then

19   caused the document to be faxed from a facsimile machine located in Canada with a phone

20   number of 604-925-8984 to a facsimile machine located in the DFI-SD office in Olympia,

21   Washington with a fax machine number of 360-704-7023.

23   114.  Upon information and belief Defendant Wood, in his capacity as an employee of

24   Defendant KPMG Inc., used Defendant Letey's position as an employee of DFI-SD, and

25   his ability to act under the color of U.S. and Washington state law, to seek to unlawfully

26   obtain Plaintiff's Property.

COMPLAINT - 32

HWB-ESQ., PLLC
PO BOX 13085
Mill Creek Washington
Telephone:206-774-0845
Facsimile: 206-350-0134

115.   Upon information and belief, at the time the "DEMAND FOR PRODUCTION AND DELIVERY." document was caused to be sent by Defendants Wood and McLean they where aware, or reasonably should have been aware, that they had no authority, under the Canadian bankruptcy law cited in the document, or any other legal authority, to demand production of any document or Property of Plaintiff located in Washington State, that had been seized from Room 305 at the Inn.

116.   Upon information and belief and at all times relevant to this Complaint, Defendant Rusko in his capacity as Senior Vice-President of KPMG Inc., held a supervisory role as related to the actions of Defendants McLean and Wood in relation to all matters involving the bankruptcy of Plaintiff.

117.   In furtherance of the agreement described in Paragraph 107 above Defendant Alder aided and abetted in the preparation and presentation of affidavits containing material falsehoods and omissions of facts, in order to establish a basis for the issuance of a criminal warrant in Canada.  This criminal warrant, along with a civil warrant containing similar falsehoods and omissions, were later used by Defendant McLean, in his capacities as an attorney working for the law firm McLean & Armstrong and as attorney for the Trustee in bankruptcy Defendant KPMG Inc., in an effort to discredit and to otherwise malign Plaintiff and to assist in the unlawful search, seizure, and detention of Plaintiff's Property from Room 305 at the Inn.

118.   In furtherance of the agreement described in Paragraph 107 above, Mittelstaedt, Olson, and others known and unknown to the Plaintiff entered, and aided and abetted in the entering of Room 305 at the Inn,  without lawful authority and thereby obtained Property and knowledge of Property belonging to Plaintiff.

COMPLAINT - 33

HWB-ESQ., PLLC
PO BOX 13085
Mill Creek Washington
Telephone:206-774-0845
Facsimile: 206-350-0134

1   119.   In furtherance of the agreement described in Paragraph 107 above, at a time unknown to
2           the Plaintiff, but subsequent to the unlawful entry by Border Patrol Agents as described
3           above, at least one unknown BPO entered and searched Room 305 at the Inn.
4
5   120.   In furtherance of the agreement described in Paragraph 107 above, at a time unknown to
6           the Plaintiff, but subsequent to the unlawful entry by Border Patrol Agents as described
7           above, Defendant Mittelstaedt contacted Defendant Letey and without lawful authority
8           revealed information gained from the entry by Border Patrol Agent into Room 305 at the
9           Inn as described above.
10
11  121.   In furtherance of the agreement described in Paragraph 107 above, at a time unknown to
12          the Plaintiff, but subsequent to the unlawful entries by Border Patrol Agents and BPO into
13          Room 305 as described above, Defendant McLean contacted an employee at the Inn in an
14          effort to take the Property in Room 305.  He intended to enter the State of Washington and
15          the United States for the purpose of taking the Plaintiff's Property without lawful
16          authority, and to take the Property back across the U.S./Canada border, and into Canada.
17
18  122.   In furtherance of the agreement described in Paragraph 107 above, on or about April 4,
19          2004, Defendants Bortner, Letey, Sharma and others known and unknown to the Plaintiff
20          prepared, and aided and abetted in the preparation and presentment of SDT-14835.
21
22  123.   In furtherance of the agreement described in Paragraph 107 above, on or about April 4,
23          2004 Defendant Bortner authorized the issuance, and signed in her capacity as "Securities
24          Administrator" SDT-14835.  In so doing she authorized the use of SDT-14835, by Letey
25          and or any other DFI employee to seize Property located in Room 305 at the Inn, without
26          lawful authority to do so.
27
28

COMPLAINT - 34

124.   In furtherance of the agreement described in Paragraph 107 above, at no time relevant to this Complaint, did Defendants Letey, Sharma, Bortner or any other employee of DFI-SD afford Plaintiff the opportunity to be legally served with, provided notice of, or afforded an opportunity to contest the validity of SDT-14835, prior to the unlawful and warrantless search and seizure of Plaintiff's Property from Room 305 at the Inn.

125.   In furtherance of the agreement described in Paragraph 49 above, on or about February 5, 2004, Defendants Letey and Sharma unlawfully entered, and aided and abetted in the unlawful entry of, Plaintiff's Room 305, without the express or implied permission of Plaintiff, and conducted, and aided and abetted in the conducting, of a warrantless search of Plaintiff's room.

126.   In furtherance of the agreement described in Paragraph 107 above, on or about February 5, 2004, Defendants Letey and Sharma unlawfully seized, and aided and abetted in the unlawful seizure of, Plaintiff's Property from Room 305, without the express or implied permission of Plaintiff.

127.   In furtherance of the agreement described in Paragraph 107 above, on or about February 5, 2004, Defendants Letey's and Sharma's seizure of Plaintiff's Property from Room 305 exceeded the scope of SDT-14835, in that the search and seizure conducted was unfettered and not limited to the documents stated in the subpoena, and the subpoena itself was overbroad.

128.   Upon information and belief, in furtherance of the agreement described in Paragraph 107 above, at a time unknown to the Plaintiff but after February 5, 2004, but believed to be on or about April 6, 2004, Defendants Alder and McLean, who were both Canadian citizens and not federal, state, or local law enforcement or government employees, had contact

COMPLAINT - 35

1    with Defendant Letey and discussed with him his seizure of Plaintiff's Property in his

2    capacity as an employee with DFI-SD/State of Washington. Defendant Letey further

3    discussed in detail the quantity and type of documents he had seized with Defendant

4    McLean, and discussed the ability of KPMG Inc., through its agents and representatives, to

5    be allowed to view the documents he had seized.

6

7    129.   In furtherance of the agreement described in Paragraph 107 above, on or about July 6,

8           2004, Defendant McLean used the information he had received from Defendant Letey, as

9           described in Paragraph 128 above, to write a letter to Plaintiff's Canadian attorney. The

10          letter was written using the letterhead of the law firm M&A, and fully described

11          information received from Defendant Letey regarding the seizure of "certain documents."

12          The letter indicated the documents had been seized "at the request of the United States

13          Securities Exchange Commission on grounds of violations of United States securities

14          laws." The letter indicated that the seized documents were being reviewed "in the course

15          of investigating violations," and that it was Defendant McLean's understanding "the

16          documents in question reflect business activities carried on by your client [the Plaintiff] in

17          Washington State and that transactions attracting the interest of the Securities Exchange

18          Commission involve substantial amounts of money." The letter indicated it was "cc:

19          KPMG Inc. - David Wood."

20

21   130.   Upon information and belief there was no past, ongoing, or pending investigation

22          regarding Plaintiff by the United States Securities and Exchange Commission at the time

23          the letter described in Paragraph 129 above was sent to Plaintiff's attorney, relating to any

24          of the Property taken from Room 305, at the Inn.

25

26   131.   Upon information and belief the letter described in Paragraph 129 above, was written in an

27          effort to coerce and misrepresent facts in order to abuse the Canadian legal process in an

28

COMPLAINT - 36

1   effort to compromise Plaintiff's business ventures, diminish Plaintiff's standing in his

2   community, and to unlawfully gain possession of Plaintiff's assets. These actions by

3   defendant McLean where done with the direct support and affirmance of Defendants

4   Rusko, Wood, and KPMG Inc.

5

6   132.   Upon information and belief, at the time Defendant Letey related information regarding

7   the seizure of Plaintiff's Property to Defendant McLean, Defendant McLean was not a law

8   enforcement officer in any jurisdiction in Canada or the United States, nor was there any

9   MLAT-Canada, or other international treaty, or law in effect which authorized Defendant

10   Letey's sharing of information regarding the facts of his seizure of Plaintiff's Property

11   with a civilian Canadian citizen.

12

13   133.   In furtherance of the agreement described in Paragraph 107 above, at a time unknown to

14   the Plaintiff, Letey without lawful authority disseminated copies of Property seized from

15   Room 305, to the British Columbia Securities Commission, an independent agency of the

16   British Columbia government.  The BCSC did not solicit the dissemination of Plaintiff's

17   Property by Defendant Letey.

18

19   **Facts Relating to DFI-SD/State of Washington**

20

21   134.   At no time relevant to this Complaint did any of the Defendants seek authorization by

22   means of an MLAT-Canada, a Letter Rogatory, the Hague Convention on Service Abroad,

23   or any other treaty or law of the United States to search, seize, detain or transfer from the

24   United States to Canada the Plaintiff's Property taken from Room 305 at the Inn.

25

26   135.   At all times relevant to this Complaint, DFI-SD had as a policy, procedure, and custom the

27   authorization of subpoena duces tecums for the production, furnishing, search, and seizure

28

COMPLAINT - 37

1      of records, and other tangible items of private property in an arbitrary and capricious

2      manner not in conformity with the Washington Administrative Procedures Act ("APA").

3

4  136.   At all times relevant to this Complaint, DFI-SD had as a policy, procedure, and custom the

5      authorization, condoning, and allowance of unlawful searches and seizures of records and

6      other tangible property belonging to individuals, pursuant to invalidly, unlawfully, and

7      unconstitutionally issued subpoena duces tecums.

8

9  137.   At all times relevant to this Complaint DFI-SD had as a policy, procedure, and custom the

10     authorization, condoning, and allowance of the unlawful and unreasonable detention, for

11     an extended period of time, of private property without a minimum of procedural

12     safeguards to allow a judicial determination that (1) the subpoena was issued for a

13     lawfully authorized purpose, (2) that the information sought was relevant to that purpose,

14     (3) that the subpoena adequately described the information sought, and (4) that proper

15     procedures were employed in the issuance of the subpoena.

16

17  138.   At all times relevant to this Complaint, Defendant the State of Washington as manifested

18     by DFI-SD delegated final decision-making authority to Defendant Bortner with respect to

19     the issuance of administrative subpoenas from DFI-SD. Pursuant to this authority,

20     defendant Bortner in conjunction with Defendants Letey and Sharma planned, ordered,

21     orchestrated, and executed the issuance and service of SDT-14835 and the search of Room

22     305 at the Inn and the seizure and detention of Plaintiff's Property, without a lawful

23     purpose in so doing and caused the violation of Plainitff's rights and injury to him.

24

25  139.   At all times relevant to this Complaint, Defendant the State of Washington as manifested

26     by DFI-SD, failed to adequately train and supervise Defendants Letey, Sharma, Bortner,

27     and other employees of DFI-SD regarding requirements of the United States and

28

COMPLAINT - 38

1     Washington State constitutions, and federal and state laws and the limitations on their

2     power regarding search and seizure of property, property rights and privacy rights, and

3     subpoena authority.  The failure of the State of Washington as manifested by DFI-SD to

4     properly train amounted to a deliberate indifference to Plaintiff's rights and was the direct

5     and proximate cause of his constitutional deprivations.

6

7  140.   After on or about February 5, 2004, DFI-SD lacked any procedure, and refused to notify

8        Plaintiff of any procedure, to afford Plaintiff the ability to contest the issuance of SDT-

9        14835, and the search and seizure of his Property from Room 305 at the Inn.

10

11  141.   Defendant Letey's statement to Plaintiff, on or about July 28, 2004, that subpoenas such as

12        SDT-14835 were issued "all the time" indicates the State of Washington's, as manifested

13        by DFI-SD, ratification of the conduct of Defendants Letey, Bortner and Sharma on or

14        about February 5, 2004 in regards to SDT-14835.  The failure of the State of Washington,

15        as manifested by DFI-SD, to take any remedial action concerning the issuance of

16        subpoenas, such as SDT-14835, indicates the violations of Plaintiff's constitutional rights

17        were a part of the State of Washington's policy, procedure, and custom in the

18        authorization, condoning, and allowance of unlawful searches and seizures of private

19        property, equivalent to an official policy or practice.

20

21  142.   At all times relevant to this Complaint, the implementation of DFI-SD's policies,

22        procedures, and practices regarding the issuance of subpoena duces tecums represents

23        actionable official government policy that as implemented resulted in a violation of

24        Plaintiff's right to Property which was taken and held in violation of the United States

25        Constitution Amendments 4 and 14, and Washington State Constitution Article I, Sections

26        3 and 7; right to Privacy which was invaded in violation of the United States Constitution

27        Amendments 1, 4, 5, 9, and 14, and Washington State Constitution Article I, Section 7;

28

COMPLAINT - 39

HWB-ESQ., PLLC
PO BOX 13085
Mill Creek Washington
Telephone:206-774-0845
Facsimile: 206-350-0134

1    right to Equal Protection which was denied in violation of the United States Constitution

2    Amendment 14; right to Procedural Due Process of Law which was denied in violation of

3    the United States Constitution Amendments 5 and 14, and Washington State Constitution

4    Article I, Section 3; right to Substantive Due Process of Law which was denied in

5    violation the United States Constitution Amendments 5 and 14, and the Washington State

6    Constitution Article I, Section 3.

7

8    **Facts Relating to Defendants KPMG, Inc., and KPMG LLP**

9

10   143.   At all times relevant to this Complaint the statements, acts, and omissions of Defendant

11          KPMG LLP's wholly owned subsidiary Defendant  KPMG Inc, and Defendant  KPMG

12          Inc.'s agents, servants, and employees (including but not limited to Defendants McLean,

13          McLean & Armstrong, Rusko, and Wood) who acted under the explicit and implicit

14          instructions and supervision of Defendant Rusko, in his capacity as Senior Vice-President

15          for the Trustee in Bankruptcy Defendant KPMG Inc., bind and make liable KPMG Inc.,

16          and its owner Defendant KPMG LLP under the doctrines of agency, joint conduct, master-

17          servant, respondeat superior, estoppel, and conspiracy.

18

19   **Facts Relating to the Government of Canada**

20

21   144.   At all times relevant to this Complaint the statements, acts, and omissions of Defendant

22          the Government of Canada's agents, servants, and employees (including but not limited to

23          Defendants McLean, Mclean &Armstrong, Rusko, and Wood), who acted under the

24          explicit and implicit instructions and supervision, of Defendant Rusko, in his capacity as

25          Senior Vice-President for the Trustee in Bankruptcy Defendant KPMG Inc., who in turn

26          was acting under license as an agent of the Office of the Superintendent of Bankruptcy,

27          which was an agency of Industry Canada, which was a Department within the Government

28

COMPLAINT - 40

1    of Canada, bind and make liable the Government of Canada under the doctrines of agency,

2    joint conduct, master-servant, respondeat superior, estoppel, and conspiracy.

3

4    145.    At all times relevant to this Complaint the statements, acts, and omissions of Defendant

5            the Government of Canada's agents, servants, and employees, including but not limited to

6            Defendant Alder, who acted in his capacity as a Sargent in the RCMP., and who was

7            acting under color of law, bind and make liable the Government of Canada under the

8            doctrines of agency, joint conduct, master-servant, respondeat superior, estoppel, and

9            conspiracy.

10

11   146.    At all times relevant to this Complaint the statements, acts, and omissions of Defendant

12           McLean who acted in his capacity as an owner and attorney in the law firm of Defendant

13           McLean & Armstrong, bind and make liable Defendant McLean & Armstrong under the

14           doctrines of agency, joint conduct, master servant, respondeat superior, and conspiracy.

15

16           **Additional Miscellaneous Facts**

17

18   147.    Upon information and belief, at no time relevant to this Complaint, was a request for

19           assistance pursuant to the MLAT-Canada prepared, submitted, or otherwise authorized

20           between Defendants Mittelstaedt, Olson, or any other employee of the Department of

21           Homeland Security, the Bellingham Police Department, any employee of the City of

22           Bellingham, Defendants Letey, Sharma, Bortner, any other DFI-SD employee, McLean,

23           Rusko, Wood, Alder, or any other Canadian government official, to assist any Canadian

24           governmental entity in a criminal investigation of Plaintiff. At no time were the

25           requirements and procedures pursuant to Articles II, IV, VI, VII, IX, XII, or XVI of the

26           MLAT-Canada followed, prior to the Defendants' decision to unlawfully obtain Plaintiff's

27           Property.

28

COMPLAINT - 41

148. At no time relevant to this Complaint, was a request for assistance pursuant, to the Hague Convention on Service Abroad prepared, submitted, or otherwise authorized between Defendants Mittelstaedt, Olson, or any other employee of the Department of Homeland Security, the Bellingham Police Department, any employee of the City of Bellingham, Defendants Letey, Sharma, Bortner, any other DFI-SD employee, McLean, Rusko, Wood, Alder, or any other Canadian government official, to assist any Canadian individual or governmental entity in a foreign judicial or administrative matter involving Plaintiff.

149. At no time relevant to this Complaint, was a request for assistance pursuant to the requirements and procedures of 28 U.S.C. § 1781, Letter Rogatory, or 28 U.S.C. § 1782, Assistance to Foreign and International Tribunals, prepared, submitted or otherwise authorized between Defendants Mittelstaedt, Olson, or any other employee of the Department of Homeland Security, the Bellingham Police Department, any employee of the City of Bellingham, Defendants Letey, Sharma, Bortner, any other DFI-SD employee, McLean, Rusko, Wood, Alder, or any other Canadian government official, to assist any Canadian individual or governmental entity in a foreign judicial civil or criminal matter involving Plaintiff.

150. Upon information and belief, the Department of Homeland Security, including its subordinate divisions, does not have the authority [except in specific and unique circumstances inapplicable to the facts alleged herein] to enter a private room without a warrant and/or a finding of probable cause from a judge.

151. The City of Bellingham, including its departments and agencies, does not have the authority [except in specific and unique circumstances inapplicable to the facts alleged herein] to enter a private room without a warrant and/or a finding of probable cause from a judge.

COMPLAINT - 42

HWB-ESQ., PLLC
PO BOX 13085
Mill Creek Washington
Telephone:206-774-0845
Facsimile: 206-350-0134

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

152.    The State of Washington, including its departments and agencies, does not have the authority [except in specific and unique circumstances inapplicable to the facts alleged herein] to enter a private room without a warrant and/or a finding of probable cause from a judge.

153.    The Department of Homeland Security, including its departments and agencies, does not have authority [except in specific and unique circumstances inapplicable to the facts alleged herein] to search and seize private property without a warrant and/or a finding of probable cause from a judge, specifically describing the scope of the search and specific items to be seized.

154.    The City of Bellingham, including its departments and agencies, does not have authority [except in specific and unique circumstances inapplicable to the facts alleged herein] to search and seize private property without a warrant and/or a finding of probable cause from a judge, specifically describing the scope of the search and specific items to be seized.

155.    The State of Washington, including its departments and agencies, does not have authority [except in specific and unique circumstances inapplicable to the facts alleged herein] to search and seize private property without a warrant and/or a finding of probable cause from a judge, specifically describing the scope of the search and specific items to be seized.

156.    The Department of Homeland Security, including its departments and agencies, does not have authority [except in specific and unique circumstances inapplicable to the facts alleged herein] to detain private property without a warrant and/or a finding of probable cause from a judge, and without allowing the owner of that property a meaningful

COMPLAINT - 43

1    opportunity to contest the seizure of his property.

2

3    157.   The City of Bellingham, including its departments and agencies, does not have authority

4           [except in specific and unique circumstances inapplicable to the facts alleged herein]  to

5           detain private property without a warrant and/or a finding of probable cause from a judge,

6           and without allowing the owner of that property a meaningful opportunity to contest the

7           seizure of his property.

8

9    158.   The State of Washington, including its departments and agencies, does not have authority

10          [except in specific and unique circumstances inapplicable to the facts alleged herein]  to

11          detain private property without a warrant and/or a finding of probable cause from a judge,

12          and without allowing the owner of that property a meaningful opportunity to contest the

13          seizure of his property.

14

15   159.   As a direct and proximate result of all of the Defendants' acts and omissions, outlined

16          above, Plaintiff has suffered irreparable harm.  Unless restrained by this Court, Defendants

17          will continue to engage in the conduct and practices set forth above that deprive Plaintiff

18          of his rights, privileges, or immunities secured or protected by the Constitution of the

19          United States, and cause him irreparable harm.

20

21          I.      **Basis of Liability Pursuant to 42 U.S.C. § 1983**

22

23   160.   Plaintiff repeats and realleges each and every one of the above allegations in Paragraphs 1

24          through 159 above, as if fully set forth here.

25

26   161.   Defendants Mittelstaedt, Olson, John/Jane Doe Bellingham Police Officer, Letey, Sharma,

27          Bortner, McLean, Rusko, Wood, and Alder acted under the color of law, or were willful

28

COMPLAINT - 44

HWH-ESQ., PLLC
PO BOX 13085
Mill Creek Washington
Telephone:206-774-0845
Facsimile: 206-350-0134

1   participants in joint action with, and were jointly engaged with, others who acted under the

2   color of law, including under the color of federal and state law, custom, or usage when

3   taking the actions referenced above and herein.

4

5   162.   Pursuant to 42 U.S.C. § 1983, Plaintiff has been deprived, by the acts and omissions of

6          Defendants Mittelstaedt, Olson, John/Jane Does, Letey, Sharma, Bortner, McLean, Rusko,

7          Wood, and Alder, of fundamental rights to, *inter alia,* Property, Privacy, Equal Protection,

8          Procedural and Substantive Due Process.

9

10  163.   These rights are secured to Plaintiff by the Due Process Clause of the Fifth and Fourteenth

11         Amendments to the United States Constitution.

12

13  164.   These rights are secured to Plaintiff by Article 1, Sections 3 and 7 of the Washington State

14         Constitution.

15

16  165.   By virtue of the United States Supreme Court holdings in *Bivens v. Six Unknown*

17         *Narcotics Agents,* 403 U.S. 388 (1971), *Tower v. Glover*, 467 U.S. 914 (1984), and *Dennis*

18         *v. Sparks*, 449 U.S. 24 (1980), the Plaintiff has a Cause of Action against the individual

19         Defendants for their actions.

20

21  166.   By virtue of these violations of § 1983, Plaintiff has sustained, and is likely to sustain

22         irreparable harm.

23

24  167.   By virtue of these violations of § 1983, all Defendants are jointly and severally liable to

25         Plaintiff for nominal, compensatory, special, and punitive damages.

26

27                                    **FIRST CAUSE OF ACTION**

28

COMPLAINT - 45

**Violation of 42 U.S.C. §1985**

**Conspiracy to Deprive Plaintiff of his Civil Rights**

( As to Defendants Mittelstaedt, Olson, Jane/John Doe Bellingham Police Officer, Letey, Sharma, Bortner, McLean, McLean & Armstrong, Rusko, Wood, Alder KPMG Inc., KPMG LLP, the Government of Canada, and John/Jane Does 1-10)

168.  Plaintiff restates as if fully set forth here each and every claim, assertion, and allegation set forth in the foregoing Paragraphs 1 through 167 of this Complaint.

169.  Upon information and belief, Defendants Mittelstaedt, Olson, Jane/John Doe Bellingham Police Officer, Letey, Sharma, Bortner, McLean, Rusko, Wood, Alder, and John/Jane Does 1-10, reached an agreement to discredit, punish, and seek revenge against the Plaintiff and that included, among other things, the unlawful search, seizure, and detention of Plaintiff's Property from Room 305 at the Inn. Said agreement was motivated by jealousy and an invidiously discriminatory animus towards the Plaintiff. In so doing, the Defendants conspired for the purpose of depriving the Plaintiff of his Privacy, Property, Equal Protection, Procedural and Substantive Due Process rights, and other protected rights as set forth above.

170.  Pursuant to, and in furtherance of, this common scheme, Defendants acted under the color of law.

171.  Because of the conspiracy entered into by, and actions taken in furtherance thereof by, Defendants Mittelstaedt, Olson, Jane/John Doe Bellingham Police Officer, Letey, Sharma, Bortner, McLean, Rusko, Wood, Alder, and John/Jane Does 1-10, Plaintiff was injured as a direct and proximate result of said overt acts.

COMPLAINT - 46

1  172.  Because of the conspiracy entered into by, and actions taken in furtherance thereof by,
2         Defendants  Mittelstaedt, Olson, Jane/John Doe Bellingham Police Officer, Letey, Sharma,
3         Bortner, McLean, Rusko, Wood, Alder, and John/Jane Does 1-10, and others known and
4         unknown Plaintiff was deprived of his Privacy, Property, Equal Protection, Procedural and
5         Substantive Due Process rights, as well as his right to Interstate Travel, due to his inability
6         to freely travel and conduct business, while his Property had been seized and detained in
7         the State of Washington, and active warrants existed in Canada.
8
9  173.  The actions, orders, approvals and omissions of Defendants Mittelstaedt, Olson, Jane/John
10        Doe Bellingham Police Officer, Letey, Sharma, Bortner, McLean, Rusko, Wood, Alder,
11        and John/Jane Does 1-10 create a Cause of Action under 42 U.S.C. § 1985(3).
12
13  174.  By virtue of these violations of § 1985, Defendants  Mittelstaedt, Olson, Jane/John Doe
14        Bellingham Police Officer, Letey, Sharma, Bortner, McLean, Rusko, Wood, Alder, and
15        John/Jane Does 1-10 are jointly and severally liable to Plaintiff for nominal,
16        compensatory, special, and punitive damages.
17
18  175.  By virtue of these violations of § 1985, Plaintiff has sustained and is likely to sustain
19        irreparable harm.  Plaintiff requests Declaratory and Injunctive relief.
20
21  176.  By virtue of respondeat superior and estoppel Defendants McLean & Armstrong, KPMG
22        Inc., KPMG LLP, and the Government of Canada are also liable.
23
24                              **SECOND CAUSE OF ACTION**
25           **Violation of First, Fourth, Fifth, Ninth and Fourteenth Amendments**
26                                    **Right to Privacy**
27                        (as to Defendants Mittelstaedt and Olson)
28

COMPLAINT - 47

HWB-ESQ., PLLC
PO BOX 13085
Mill Creek Washington
Telephone 206-774-0845
Facsimile: 206-350-0134

177. Plaintiff restates as if fully set forth here each and every claim, assertion, and allegation set forth in the foregoing Paragraphs 1 through 167 of this Complaint.

178. Defendants Mittelstaedt's and Olson's actions described herein violate the Invasion of Privacy principle of the First Amendment to the United States Constitution, which prohibits government officials from violating an individual's right to privacy by unlawfully intruding into any individuals' seclusion, from unreasonable publicity given to any individuals' private life, and from publicity which unreasonably places any individual in a false light before the public.

179. Defendants Mittelstaedt's and Olson's actions described herein violate the Reasonable Expectation of Privacy principle of the Fourth Amendment to the United States Constitution, which prohibits government officials from intruding into areas were an individual has a reasonable expectation of freedom from governmental intrusion.

180. Defendants Mittelstaedt's and Olson's actions as described herein violate the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits government officials from violating any individual's right to privacy by publicly disclosing personal information.

181. Defendants Mittelstaedt's and Olson's actions as described herein violate the Right to Privacy Principle of the Ninth Amendment to the United States Constitution, which prohibits government infringement on an individual's right to privacy.

182. Defendants Mittelstaedt's and Olson's actions as described herein violate the Substantive Due Process Clause of the Fourteenth Amendment to the United States Constitution, which prohibits government officials from violating any individuals right to be free,

COMPLAINT - 48

1    except in very limited circumstances, from unwanted governmental intrusions into their

2    privacy.

3

4  183.   In their conduct set forth in this Complaint, Defendants Mittelstaedt and Olson acted

5         under the color of law.

6

7  184.   Defendants Mittelstaedt's and Olson's actions, orders, approvals, and omissions in

8         violation of the First, Fourth, Fifth, Ninth, and Fourteenth Amendments give rise to a

9         Cause of Action for damages directly under the United States Constitution under the rule

10        of *Bivens*.

11

12 185.   By virtue of these violations of the First, Fourth, Fifth, Ninth, and Fourteenth

13        Amendments Defendants Mittelstaedt and Olson are jointly and severally liable to Plaintiff

14        for nominal, compensatory, special, and punitive damages

15

16 186.   By virtue of these violations, Plaintiff has sustained and is likely to sustain irreparable

17        harm.  Plaintiff requests Declaratory and Injunctive relief.

18

19                          **THIRD CAUSE OF ACTION**

20        **Violation of First, Fourth, Fifth, Ninth and Fourteenth Amendments**

21                              **Right to Privacy**

22              (as to Defendant John/Jane Doe Bellingham Police Officer)

23

24 187.   Plaintiff restates as if fully set forth here each and every claim, assertion, and allegation set

25        forth in the foregoing Paragraphs 1 through 167 of this Complaint.

26

27 188.   Defendant John/Jane Doe Bellingham Police Officer's actions described herein violate the

28

COMPLAINT - 49

HWB-ESQ., PLLC
PO BOX 13085
Mill Creek Washington
Telephone:206-774-0845
Facsimile: 206-350-0134

Invasion of Privacy principle of the First Amendment to the United States Constitution, which prohibits government officials from violating an individual's right to privacy by unlawfully intruding into any individuals' seclusion, from unreasonable publicity given to any individuals' private life, and from publicity which unreasonably places any individual in a false light before the public.

189. Defendant John/Jane Doe Bellingham Police Officer's actions described herein violate the Reasonable Expectation of Privacy principle of the Fourth Amendment to the United States Constitution, which prohibits government officials from intruding into areas were an individual has a reasonable expectation of freedom from governmental intrusion.

190. Defendant John/Jane Doe Bellingham Police Officer's actions as described herein violate the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits government officials from violating any individual's right to privacy by publicly disclosing personal information.

191. Defendants John/Jane Doe Bellingham Police Officer's actions as described herein violate the Right to Privacy Principle of the Ninth Amendment to the United States Constitution, which prohibits government infringement on an individual's right to Privacy.

192. Defendant John/Jane Doe Bellingham Police Officer's actions as described herein violate the Substantive Due Process Clause of the Fourteenth Amendment to the United States Constitution, which prohibits government officials from violating any individuals right to be free, except in very limited circumstances, from unwanted governmental intrusions into their privacy.

193. In the conduct set forth in this Complaint, Defendant John/Jane Doe Bellingham Police

COMPLAINT - 50

1   Officer acted under the color of law.

2

3   194.   Defendant John/Jane Doe Bellingham Police Officer's actions, orders, approvals, and

4         omissions in violation of the First, Fourth, Fifth, Ninth, and Fourteenth Amendments give

5         rise to a Cause of Action for damages directly under the United States Constitution under

6         42 U.S.C. § 1983.

7

8   195.   By virtue of these violations of the First, Fourth, Fifth, Ninth, and Fourteenth

9         Amendments Defendant John/Jane Doe Bellingham Police Officer is liable for nominal,

10        compensatory, special, and punitive damages

11

12  196.   By virtue of these violations of § 1983, Plaintiff has sustained and is likely to sustain

13        irreparable harm.  Plaintiff requests Declaratory and Injunctive relief.

14

15                          **FOURTH CAUSE OF ACTION**

16      **Violation of First, Fourth, Fifth, Ninth, and Fourteenth Amendments**

17                             **Right to Privacy**

18                   (as to Defendants Letey, Bortner and Sharma)

19

20  197.   Plaintiff restates as if fully set forth here each and every claim, assertion, and allegation set

21        forth in the foregoing Paragraphs 1 through 167 of this Complaint.

22

23  198.   Defendants Letey's, Bortner's, and Sharma's actions described herein violate the Invasion

24        of Privacy principle of the First Amendment to the United States Constitution, which

25        prohibits government officials from violating an individual's right to privacy by

26        unlawfully intruding into any individuals' seclusion, from unreasonable publicity given to

27        any individuals' private life, and from publicity which unreasonably places any individual

28

COMPLAINT - 51

1    in a false light before the public.

2

3    199.    Defendants Letey's, Bortner's, and Sharma's actions described herein violate the

4            Reasonable Expectation of Privacy principle of the Fourth Amendment to the United

5            States Constitution, which prohibits government officials from intruding into areas were

6            an individual has a reasonable expectation of freedom from governmental intrusion.

7

8    200.    Defendants Letey's, Bortner's, and Sharma's actions as described herein violate the Due

9            Process Clause of the Fifth Amendment to the United States Constitution, which prohibits

10           government officials from violating any individual's right to privacy by publicly disclosing

11           personal information.

12

13   201.    Defendants Letey's, Bortner's, and Sharma's actions as described herein violate the Right

14           to Privacy Principle of the Ninth Amendment to the United States Constitution, which

15           prohibits government infringement on an  individual's right to privacy.

16

17   202.    Defendants Letey's, Bortner's, and Sharma's actions as described herein violate the

18           Substantive Due Process Clause of the Fourteenth Amendment to the United States

19           Constitution, which prohibits government officials from violating any individuals right to

20           be free, except in very limited circumstances, from unwanted governmental intrusions into

21           their privacy.

22

23   203.     In their conduct set forth in this Complaint, Defendants Letey, Bortner, and Sharma  acted

24           under the color of law.

25

26   204.    Defendants Letey's, Bortner's, and Sharma's actions, orders, approvals, and omissions in

27           violation of the First, Fourth, Fifth, Ninth, and Fourteenth Amendments give rise to a

28

COMPLAINT - 52

HWB-ESQ., PLLC
PO BOX 13085
Mill Creek Washington
Telephone:206-774-0845
Facsimile: 206-350-0134

1    Cause of Action for damages directly under the United States Constitution pursuant to 42

2    U.S.C. § 1983.

3

4  205.  By virtue of these violations of the First, Fourth, Fifth, Ninth, and Fourteenth

5          Amendments Defendants Letey, Bortner, and Sharma are jointly and severally liable to

6          Plaintiff for nominal, compensatory, special, and punitive damages.

7

8  206.  By virtue of these violations of the First, Fourth, Fifth, Ninth, and Fourteenth

9          Amendments, Plaintiff has sustained and is likely to sustain irreparable harm.  Plaintiff

10        requests Declaratory and Injunctive relief.

11

12                      **FIFTH CAUSE OF ACTION**

13               **Violation of Fourth and Fifth Amendments**

14                      **Right to Property**

15           (as to Defendants Letey, Bortner, and Sharma)

16

17  207.  Plaintiff restates as if fully set forth here each and every claim, assertion, and allegation set

18         forth in the foregoing Paragraphs 1 through 167 of this Complaint.

19

20  208.  The actions of Defendants Letey, Bortner, and Sharma as described herein violate the

21         Search and Seizure Clause of the Fourth Amendment to the Constitution prohibiting the

22         searching of a persons "houses, papers and effects," except with a warrant based on

23         probable cause.

24

25  209.  The actions of Defendants Letey, Bortner, and Sharma as described herein violate the Due

26         Process Clause of the Fifth Amendment to the Constitution, which prohibits government

27         officials from depriving any individual of private property interests without due process.

28

COMPLAINT - 53

210.    In their conduct set forth in this Complaint, Defendants Letey, Bortner, and Sharma each acted under color of law.

211.    Defendants Letey's, Bortner's, and Sharma's actions, orders, approvals, and omissions in violation of the Fourth and Fifth Amendments give rise to a Cause of Action for damages directly under the United States Constitution pursuant to 42 U.S.C. § 1983.

212.    By virtue of these violations of the Fourth and Fifth Amendments Defendants Letey, Bortner, and Sharma are jointly and severally liable to Plaintiff for nominal, compensatory, special, and punitive damages.

213.    By virtue of these violations of the Fourth and Fifth Amendments, Plaintiff has sustained and is likely to sustain irreparable harm.  Plaintiff requests Declaratory and Injunctive relief.

## SIXTH CAUSE OF ACTION

### Violation of Fifth Amendment

### Right to Equal Protection of the Law

(as to Defendants Mittelstaedt, Olson, John/Jane Doe Bellingham Police Officer,

Letey, Bortner, and Sharma)

214.    Plaintiff restates as if fully set forth here each and every claim, assertion, and allegation set forth in the foregoing Paragraphs 1 through 167 of this Complaint.

215.    Defendants Mittelstaedt's, Olson's, John/Jane Doe Bellingham Police Officer's, Letey's, Bortner's, and Sharma's actions described herein violate the Equal Protection Clause of the Fifth Amendment to the United States Constitution, which prohibits government

COMPLAINT - 54

HWB-ESQ., PLLC
PO BOX 13085
Mill Creek Washington
Telephone:206-774-0845
Facsimile: 206-350-0134

1   officials from intentionally subjecting any individual to treatment that is different from

2   that accorded to others similarly situated and is without legitimate basis.

3

4   216.   In addition, Defendants Mittelstaedt's, Olson's, John/Jane Doe Bellingham Police

5   Officer's, Letey's, Bortner's, and Sharma's actions in subjecting the Plaintiff to

6   differential treatment were motivated by an illegitimate animus due to Plaintiff's race,

7   color, ancestry, nationality, and alienage, thereby violating the Equal Protection Clause of

8   the Fifth Amendment to the United States Constitution.

9

10   217.   In their conduct set forth in this Complaint, Defendants Mittelstaedt, Olson, John/Jane

11   Doe Bellingham Police Officer, Letey, Bortner, and Sharma acted under color of law.

12

13   218.   Defendants Mittelstaedt's, Olson's, John/Jane Doe Bellingham Police Officer's, Letey's,

14   Bortner's, and Sharma's actions, orders, approvals, and omissions in violation of the Fifth

15   Amendment give rise to a Cause of Action for damages directly under the United States

16   Constitution pursuant to 42 U.S.C. § 1983 and under the rule of *Bivens*.

17

18   219.   By virtue of these violations of the Fifth Amendment Defendants Mittelstaedt, Olson,

19   John/Jane Doe Bellingham Police Officer, Letey, Bortner, and Sharma are jointly and

20   severally liable to Plaintiff for nominal, compensatory, special, and punitive damages.

21

22   220.   By virtue of these violations of the Fifth Amendment, Plaintiff has sustained and is likely

23   to sustain irreparable harm.  Plaintiff requests Declaratory and Injunctive relief.

24

25   **SEVENTH CAUSE OF ACTION**

26   **Violation of Fourth and Fifth Amendments**

27   **Right to Property**

28

COMPLAINT - 55

HWB-ESQ., PLLC
PO BOX 13085
Mill Creek Washington
Telephone:206-774-0845
Facsimile: 206-350-0134

1       (as to Defendants Letey, Bortner, Sharma, and the State of Washington )

2

3    221.   Plaintiff restates as if fully set forth here each and every claim, assertion, and allegation set

4           forth in the foregoing Paragraphs 1 through 167 of this Complaint.

5

6    222.   The actions of Defendants Letey, Bortner, Sharma and the State of Washington as

7           described herein violate the Search and Seizure Clause of the Fourth Amendment to the

8           Constitution prohibiting the searching of a persons "houses, papers and effects," except

9           with a warrant based on probable cause.

10

11   223.   The actions of Defendants Letey, Bortner, Sharma and the State of Washington as

12          described herein violate the Due Process Clause of the Fifth Amendment to the

13          Constitution, which prohibits government officials from depriving any individual of

14          private property interests without due process.

15

16   224.   In their conduct set forth in this Complaint, Defendants Letey, Bortner, and Sharma each

17          acted under color of law.

18

19   225.   Defendants Letey's, Bortner's, Sharma's and the State of Washington's actions, orders,

20          approvals, and omissions in violation of the Fourth and Fifth Amendments give rise to a

21          Cause of Action for damages directly under the United States Constitution pursuant to 42

22          U.S.C. § 1983.

23

24   226.   By virtue of these violations of the Fourth and Fifth Amendments Defendants Letey,

25          Bortner, Sharma and the State of Washington are jointly and severally liable to Plaintiff

26          for nominal, compensatory, special, and punitive damages.

27

28

COMPLAINT - 56

1    227.   By virtue of these violations of the Fourth and Fifth Amendments, Plaintiff has sustained
2           and is likely to sustain irreparable harm.  Plaintiff requests Declaratory and Injunctive
3           relief.

4

5                              **EIGHTH CAUSE OF ACTION**

6                          **Violation of Fourth and Fifth Amendments**

7                      **Right to Procedural and Substantive Due Process**

8                     (as to Defendants Letey, Bortner, Sharma, and State of Washington)

9

10   228.   Plaintiff restates as if fully set forth here each and every claim, assertion, and allegation set
11          forth in the foregoing Paragraphs 1 through 167 of this Complaint.

12

13   229.   The actions of Defendants Letey, Bortner, Sharma, and the State of Washington  as
14          described herein violate the Procedural and Substantive Due Process clauses of the Fourth
15          and Fifth Amendments to the Constitution prohibiting the depriving of life, liberty, or
16          property without procedural and substantive due process of law.

17

18   230.   The actions of Defendants Letey, Bortner, Sharma, and the State of Washington, as
19          manifested by DFI-SD's policy, procedure, and custom for the authorization, condoning,
20          and allowance of unlawful and unreasonable searches, seizures, and detentions for an
21          extended period of time of private Property, without a minimum of procedural safeguards
22          to allow a judicial determination as to the propriety of their actions, did not allow Plaintiff
23          a reasonable procedure or an opportunity to be heard at a meaningful time, and in a
24          meaningful manner, prior to the searches, seizures and detention of Plaintiff's private
25          Property containing his business affairs, and resulted in the disruption of Plaintiff's
26          business, legal, and financial transactions without prior notice.

27

28   231.   The actions of Defendants Letey, Bortner,  Sharma, and the State of Washington as
     COMPLAINT - 57                                                   HWU-ESQ., PLLC
                                                                      PO BOX 13085
                                                                      Mill Creek Washington
                                                                      Telephone:206-774-0845
                                                                      Facsimile: 206-350-0134

1    manifested by DFI-SD's policy, procedure, and custom for the authorization, condoning,
2    and allowance of unlawful and unreasonable searches, seizures, and detention for an
3    extended period of time of Private Property without a minimum of procedural safeguards
4    to allow a judicial determination as to the propriety of the action allowed for the arbitrary,
5    capricious, discriminatory, and clearly unreasonable search, seizure and detention of
6    Plaintiff's Private Property. Such search, seizure and detention had no substantial
7    relationship to the public health, safety, morals, or general welfare.

8

9   232.  The State of Washington, as manifested by DFI-SD, had as a policy, procedure, and
10         custom the authorization, condoning, and allowance of unlawful searches and seizures of
11         records and other tangible property belonging to individuals, pursuant to invalidly,
12         unlawfully, and unconstitutionally issued subpoena duces tecums. At no time was
13         Plaintiff afforded the ability to have a judicial determination regarding whether or not
14         SDT-14835  (1)  was issued for a lawfully authorized purpose, (2) sought information that
15         was relevant to its stated  purpose,  (3) adequately described the information sought, and
16         (4) had proper procedures employed in its issuance.

17

18  233.  In their conduct set forth in this Complaint, Defendants Letey, Bortner, Sharma, each acted
19         under color of law.

20

21  234.  Defendants Letey's, Bortner's, Sharma's and the State of Washington's, as manifested in
22         DFI-SD, actions, orders, approvals, and omissions in violation of the Fourth and Fifth
23         Amendments give rise to a Cause of Action for damages directly under the United States
24         Constitution pursuant to 42 U.S.C. § 1983.

25

26  235.  By virtue of these violations of the Fourth and Fifth Amendments Defendants Letey,
27         Bortner, Sharma and the State of Washington are jointly and severally liable to Plaintiff
28         for nominal, compensatory, special, and punitive damages.

COMPLAINT - 58

236.   By virtue of these violations of the Fourth and Fifth Amendments, Plaintiff has sustained and is likely to sustain irreparable harm.  Plaintiff requests Declaratory and Injunctive relief.

## NINTH CAUSE OF ACTION

### 28 U.S.C. § 1350

### Violation of Alien Tort Statute/Alien Tort Claim Act

(as to Defendants McLean, McLean and Armstrong, Rusko, Wood, Alder, KPMG Inc, KPMG LLP, and Government of Canada)

237.   Plaintiff restates as if fully set forth here each and every claim, assertion, and allegation set forth in the foregoing Paragraphs 1 through 167 of this Complaint.

238.   Defendants McLean, McLean and Armstrong, Rusko, Wood, Alder, KPMG Inc, KPMG LLP, and the Government of Canada did not seek, prepare, submit or otherwise receive proper authorization for assistance pursuant to the requirements and procedures of Articles II, IV, VI, VII, IX, XII, or XVI of MLAT-Canada, prior to their decision to unlawfully obtain Plaintiff's Property from Room 305 at the Inn, in the State of Washington, in the United States of America, and thereby violated the Mutual Legal Assistance Treaty between the United States and Canada.

239.   Defendants McLean, McLean and Armstrong, Rusko, Wood, Alder, KPMG Inc, KPMG LLP, and the Government of Canada did not seek, prepare, submit or otherwise receive proper authorization for assistance pursuant to the requirements and procedures of the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters, prior to their decision to unlawfully obtain Plaintiff's Property from Room 305 at the Inn, in the State of Washington, in the United States of America, and thereby violated the Hague Convention on the Service Abroad of Judicial

COMPLAINT - 59

1    and Extra-Judicial Documents in Civil and Commercial Matters .

2

3    240.    Defendants McLean, McLean and Armstrong, Rusko, Wood, Alder, KPMG Inc, KPMG

4            LLP, and Government of Canada did not seek, prepare, submit or otherwise receive proper

5            authorization for assistance pursuant to the requirements and procedures of 28 U.S.C. §§

6            1781, or 1782, Requests for Letter Rogatory, or Assistance to Foreign and International

7            Tribunals, prior to their decision to unlawfully obtain Plaintiff's Property from Room 305

8            at the Inn, in the State of Washington, in the United States of America, and thereby

9            violated the law.

10

11   241.    Because of these actions and omissions taken by Defendants McLean, McLean and

12           Armstrong, Rusko, Wood, Alder, KPMG Inc, KPMG LLP, and the Government of

13           Canada, Plaintiff was injured as a direct and proximate result of said overt acts.

14

15   242.    Because of the actions and omissions taken by Defendants McLean, McLean and

16           Armstrong, Rusko, Wood, Alder, KPMG Inc, KPMG LLP, and the Government of Canada

17           Plaintiff was deprived of his rights under treaties of the United States and customary

18           international law, by means of commercial and tortious acts, committed for the specific

19           purpose of expropriating Plaintiff's Property from the United States to Canada.  Plaintiff

20           was as a result of these actions and omissions deprived of his rights under United States

21           treaties and customary international law, specifically his right to private property, and

22           privacy, among other rights.

23

24   243.    Defendants McLean's, McLean and Armstrong's, Rusko's, Wood's, Alder's, KPMG

25           Inc.'s, KPMG LLP's, and the Government of Canada's actions, orders, approvals, and

26           omissions give rise to a Cause of Action for damages directly under 28 U.S.C. § 1350.

27

28   244.    By virtue of these violations of § 1350, Defendants McLean, McLean and Armstrong,

COMPLAINT - 60

1    Rusko, Wood, Alder, KPMG Inc., KPMG LLP, and the Government of Canada are jointly

2    and severally liable to Plaintiff for nominal, compensatory, special, and punitive damages.

3

4  245.  By virtue of these violations of § 1350, Plaintiff has sustained and is likely to sustain

5    irreparable harm.  Plaintiff requests Declaratory and Injunctive relief.

6

7  246.  By virtue of respondeat superior and estoppel Defendants McLean & Armstrong, KPMG

8    Inc., KPMG LLP, and the Government of Canada are additionally liable.

9

10                   **TENTH CAUSE OF ACTION**

11                     **Abuse of Process**

12          (as to Defendants Letey, Bortner, and Sharma)

13

14  247.  Plaintiff restates as if fully set forth here each and every claim, assertion, and allegation set

15    forth in the foregoing Paragraphs 1 through 167 of this Complaint.

16

17  248.  The actions of Defendants Letey, Bortner, and Sharma as described herein amounted to an

18    abuse of process in the issuance and service of SDT-14835, and search, seizure and

19    detention of Plaintiff's Property from Room 305 at the Inn.  The actions of Defendants

20    Letey, Bortner, and Sharma were malicious and a deliberate misuse and perversion of the

21    administrative process in regards to the issuance of administrative subpoenas under the

22    Washington Administrative Procedures Act, and/or other applicable state laws and

23    regulations, were not justified by any legitimate legal purpose, and were contemplated for

24    an ulterior motive.  Defendants Letey's, Bortner's, and Sharma's actions in the issuance

25    and service of SDT-14835 were done for the improper purpose of unlawfully entering,

26    searching, seizing, and detaining Plaintiff's Property in furtherance of the agreement

27    entered into with other Defendants, which purpose was collateral to the proper object of

28    the process of the lawful issuance and service of administrative subpoenas.

COMPLAINT - 61

249. In their conduct set forth in this Complaint, Defendants Letey, Bortner, and Sharma, each acted under color of law.

250. The actions, orders, approvals, and omissions of Defendants Letey, Bortner, and Sharma as described herein give rise to a Cause of Action for Abuse of Process under Washington State common law, and they are jointly and severally liable to Plaintiff for nominal, compensatory, special, and punitive damages.

251. By virtue of this Abuse of Process, Plaintiff has sustained and is likely to sustain irreparable harm.  Plaintiff requests Declaratory and Injunctive relief.

## ELEVENTH CAUSE OF ACTION
### Negligent Investigation
(as to Defendants Letey, Bortner, Sharma, and State of Washington)

252. Plaintiff restates as if fully set forth here each and every claim, assertion, and allegation set forth in the foregoing Paragraphs 1 through 167 of this Complaint.

253. The actions of Defendants Letey, Bortner,  Sharma, and State of Washington as described herein constitute a negligent investigation.  Defendants Letey, Bortner, and Sharma, are not "law enforcement" or "peace officers" as defined under RCW 10.93.020.  Defendants Letey, Bortner, and Sharma are public officials and are answerable to Plaintiff who sustained damages resulting from their negligent, reckless, and intentional acts done in performance of their imperative or ministerial duties as employees of the State of Washington, and such acts were not done in violation of a duty which was solely owed to the public.

254. In their conduct set forth in this Complaint, Defendants Letey, Bortner, and Sharma, each

COMPLAINT - 62

1    acted under color of law.

2

3    255.  The actions, orders, approvals, and omissions of Defendants Letey, Bortner, and Sharma

4          as described herein give rise to a Cause of Action for Negligent Investigation, under

5          Washington State common law, and they are jointly and severally liable to Plaintiff for

6          nominal, compensatory, special, and punitive damages.

7

8    256.  By virtue of this Negligent Investigation, Plaintiff has sustained and is likely to sustain

9          irreparable harm. Plaintiff requests Declaratory and Injunctive relief.

10

11                                **TWELFTH CAUSE OF ACTION**

12                                        **Trespass**

13                   (as to Defendants Letey, Sharma, and the State of Washington)

14

15   257.  Plaintiff restates as if fully set forth here each and every claim, assertion, and allegation set

16          forth in the foregoing Paragraphs 1 through 167 of this Complaint.

17

18   258.  The actions of Defendants Letey, Sharma and the State of Washington as described herein

19          constitute trespass, in the intentional and unreasonable entry by both Defendants into

20          Room 305 at the Inn. Defendants Letey and Sharma knew, or reasonably should have

21          known, that they did not have the express or implied permission of Plaintiff, or other

22          lawful authority to enter Room 305. Defendants Letey's and Sharma's search, seizure and

23          detention of Plaintiff's Property, after their unauthorized entry into Room 305 at the Inn,

24          resulted in injury to and loss of the Plaintiff's Property.

25

26   259.  In their conduct set forth in this Complaint, Defendants Letey and Sharma each acted

27          under color of law.

28

COMPLAINT - 63

260.  The actions, orders, approvals, and omissions of Defendants Letey, Sharma and the State of Washington as described herein constitute the tort of Trespass and give rise to a Cause of Action for damages under RCW §§ 4.24.630, 4.92.090, and Washington state common law, and they are jointly and severally liable to Plaintiff for nominal, compensatory, special, and punitive damages.

261.  By virtue of this Trespass, Plaintiff has sustained and is likely to sustain irreparable harm. Plaintiff requests Declaratory and Injunctive relief.

## THIRTEENTH CAUSE OF ACTION

### Conversion

(as to Defendants Letey, Sharma, and the State of Washington)

262.  Plaintiff restates as if fully set forth here each and every claim, assertion, and allegation set forth in the foregoing Paragraphs 1 through 167 of this Complaint.

263.  The actions of Defendants Letey and Sharma and the State of Washington as described herein constitute conversion. Defendants Letey and Sharma knowingly and intentionally interfered with Plaintiff's Property located in Room 305 at the Inn, without lawful justification and thereby deprived Plaintiff of the possession of his Property. At the time Plaintiff's Property was taken he had an immediate right to possession of his Property.

264.  In their conduct set forth in this Complaint, Defendants Letey and Sharma each acted under color of law.

265.  The actions, orders, approvals, and omissions of Defendants Letey, Sharma and the State of Washington as described herein constitute Conversion and give rise to a Cause of Action for damages under Washington state common law, and they are jointly and

COMPLAINT - 64

HWB-ESQ., PLLC
PO BOX 13085
Mill Creek Washington
Telephone:206-774-0845
Facsimile: 206-350-0134

1    severally liable to Plaintiff for nominal, compensatory, special, and punitive damages.

2

3    266.    By virtue of this Conversion Plaintiff has sustained and is likely to sustain irreparable

4    harm.  Plaintiff requests Declaratory and Injunctive relief.

5

6    ## FOURTEENTH CAUSE OF ACTION

7    ### Intentional Infliction of Emotional Distress/ Outrage

8    (as to Defendants Letey)

9

10   267.    Plaintiff restates as if fully set forth here each and every claim, assertion, and allegation set

11   forth in the foregoing Paragraphs 1 through 167 of this Complaint.

12

13   268.    The actions of Defendants Letey as described herein constitute Intentional Infliction of

14   Emotional Distress or Outrage.  Defendants Letey's  actions in the unlawful search,

15   seizure, and prolonged detention of Plaintiff's Property from Room 305 at the Inn, and

16   refusal to return Plaintiff's Property, except after Plaintiff was compelled to submit to an

17   interrogation by Defendant Letey, constituted extreme and outrageous conduct, which

18   intentionally or recklessly caused severe emotional distress to Plaintiff.

19

20   269.    In his conduct set forth in this Complaint, Defendant Letey acted under color of law.

21

22   270.    The actions, orders, approvals, and omissions of Defendant Letey as described herein

23   constitute the tort of Intentional Infliction of Emotional Distress or Outrage and give rise

24   to a Cause of Action for damages under Washington state common law, and he is liable to

25   Plaintiff for nominal, compensatory, special, and punitive damages.

26

27   271.    By virtue of this Intentional Infliction of Emotional Distress or Outrage Plaintiff has

28   sustained and is likely to sustain irreparable harm.  Plaintiff requests Declaratory and

COMPLAINT - 65

HWB-ESQ., PLLC
PO BOX 13085
Mill Creek Washington
Telephone:206-774-0845
Facsimile: 206-350-0134

1    Injunctive relief.

2

3                          **FIFTEENTH CAUSE OF ACTION**

4                                  **Stigma- Plus**

5                            (as to Defendants Letey)

6

7    272.   Plaintiff restates as if fully set forth here each and every claim, assertion, and allegation set

8           forth in the foregoing Paragraphs 1 through 167 of this Complaint.

9

10   273.   The actions of Defendant Letey as described herein constitute Stigma-Plus.  Defendant

11          Letey's actions in the unlawful search, seizure, and detention of Plaintiff's Property from

12          Room 305 at the Inn; and the subsequent dissemination of information relating to the

13          search, seizure, and detention, as well as the dissemination of copies of, and information

14          contained in, Plaintiff's Property to other Defendants and other persons in the United

15          States and Canada, where defamatory in nature, injured Plaintiff's reputation, and caused

16          the denial of the federally protected rights to Privacy, Property, Equal Protection,

17          Substantive and Procedural Due Process.

18

19   274.   The actions of Defendants Letey as described herein, also, constitute Stigma-Plus in that

20          Defendant Letey's actions in the unlawful search, seizure, and detention of Plaintiff's

21          Property from Room 305 at the Inn; and the subsequent dissemination of information

22          relating to the search seizure, and detention, as well as the dissemination of copies of, and

23          information contained in, Plaintiff's Property to other Defendants and other persons in the

24          United States and Canada, where defamatory in nature, injured Plaintiff's reputation, and

25          where done in connection with the denial of the federally protected rights to Privacy,

26          Property, Equal Protection, Substantive and Procedural Due Process.

27

28   275.   In his conduct set forth in this Complaint, Defendant Letey acted under color of law.

COMPLAINT - 66

HWB-ESQ., PLLC
PO BOX 13085
Mill Creek Washington
Telephone:206-774-0845
Facsimile: 206-350-0134

1  276.  The actions, orders, approvals, and omissions of Defendant Letey as described herein

2       constitute the tort of Stigma-Plus and give rise to a Cause of Action for damages, and he is

3       liable to Plaintiff for nominal, compensatory, special, and punitive damages.

4

5  277.  By virtue of this Stigma-Plus Plaintiff has sustained and is likely to sustain irreparable

6       harm.  Plaintiff requests Declaratory and Injunctive relief.

7

8              **SIXTEENTH CAUSE OF ACTION**

9          **Intentional Interference with Contractual Relations**

10                 **and Business Expectations**

11                 (as to Defendants Letey)

12

13  278.  Plaintiff restates as if fully set forth here each and every claim, assertion, and allegation set

14       forth in the foregoing Paragraphs 1 through 167 of this Complaint.

15

16  279.  The actions of Defendant Letey as described herein constitute intentional interference with

17       Plaintiff's contractual relations and business expectations.  Defendant Letey's actions in

18       the unlawful search, seizure, and detention of Plaintiff's Property from Room 305 at the

19       Inn; and the subsequent dissemination of information relating to the search, seizure, and

20       detention, as well as the dissemination of copies of, and information contained in,

21       Plaintiff's Property to other Defendants and other persons in the United States or Canada,

22       where done while he knew or reasonably should have known of the existence of

23       contractual relationships and business expectations of the Plaintiff relating to business in

24       foreign countries, including but not limited to, Canada, Vietnam, Mexico, and Ghana

25       which information was contained in the Plaintiff's Property taken from Room 304 at the

26       Inn.  Defendant Letey's intentional interference by means of searching, seizing and six (6)

27       month detention of Plaintiff's Property induced or caused breaches or terminations of the

28       relationships and expectancies, and resulted in economic damage to Plaintiff.

COMPLAINT - 67

280.   In his conduct set forth in this Complaint, Defendant Letey acted under color of law.

281.   The actions, orders, approvals, and omissions of Defendant Letey as described herein constitute Intentional Interference with Contractual Relations and Business Expectations and give rise to a Cause of Action for damages, and he is liable to Plaintiff for nominal, compensatory, special, and punitive damages.

282.   By virtue of this Intentional Interference with Contractual Relations and Business Expectations Plaintiff has sustained and is likely to sustain irreparable harm.  Plaintiff requests Declaratory and Injunctive relief.

## SEVENTEENTH CAUSE OF ACTION

### 18 U.S.C. § 242

### Deprivation of Rights under Color of Law

(Defendant Letey)

283.   Plaintiff restates as if fully set forth here each and every claim, assertion, and allegation set forth in the foregoing Paragraphs 1 through 167 of this Complaint.

284.   The actions of Defendant Letey as described herein constitute a violation of 18 U.S.C. § 242, Deprivation of Rights Under Color of Law.  Defendant Letey's actions in the unlawful search, seizure, and detention of Plaintiff's Property from Room 305 at the Inn; and the subsequent dissemination of information relating to the search, seizure, and detention, as well as the dissemination of copies of, and information contained in, Plaintiff's Property, subjected Plaintiff, while he was in the State of Washington, to the deprivation of his  rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, specifically Plaintiff's right to Privacy, Property, Equal Protection, Substantive, and Procedural Due Process.

COMPLAINT - 68

HWB-ESQ., PLLC
PO BOX 13085
Mill Creek Washington
Telephone:206-774-0845
Facsimile: 206-350-0134

285. Defendant Letey's actions in the unlawful search, seizure, and detention of Plaintiff's Property from Room 305 at the Inn; and the subsequent dissemination of information relating to the search, seizure, and detention, as well as the dissemination of copies of, and information contained in, Plaintiff's Property, also, subjected Plaintiff to different punishments, pains, or penalties, on account of his being an alien, or by reason of his color, or race, other than would have occurred, and as was prescribed, for the punishment of other persons or citizens.

286. In his conduct set forth in this Complaint, Defendant Letey acted under color of law.

287. The actions, orders, approvals, and omissions of Defendant Letey as described herein constitute a violation of 18 U.S.C. § 242, Deprivation of Rights Under Color of Law, and give rise to a Cause of Action for damages, and he is liable to Plaintiff for nominal, compensatory, special, and punitive damages.

288. By virtue of this Deprivation of Rights Under Color of Law Plaintiff has sustained and is likely to sustain irreparable harm.  Plaintiff requests Declaratory and Injunctive relief.

## EIGHTEENTH CAUSE OF ACTION

## RCW 9.73.020

## Washington State Privacy Law

(as to Defendant Letey)

289. Plaintiff restates as if fully set forth here each and every claim, assertion, and allegation set forth in the foregoing Paragraphs 1 through 167 of this Complaint.

290. The actions of Defendant Letey as described herein constitute a violation of Washington State Privacy laws.  Defendant Letey's actions in the opening, reading, copying and dissemination of documents, and the information contained therein, from Plaintiff's

COMPLAINT - 69

HWB-ESQ., PLLC
PO BOX 13085
Mill Creek Washington
Telephone:206-774-0845
Facsimile: 206-350-0134

1    Property taken from Room 305 at the Inn was a violation of RCW 9.73.020. Defendant

2    Letey wilfully opened or read, or caused to be opened or read, sealed messages, letters or

3    telegrams intended for Plaintiff, or some other person. Defendant Letey willfully

4    published the whole or any portion of such messages, letters, or telegrams by copying and

5    otherwise disseminating the information contained therein, to the British Columbia

6    Securities Commission knowing that he had opened or read such messages, letters, or

7    telegrams without authority.

8

9    291.   In his conduct set forth in this Complaint, Defendant Letey acted under color of law.

10

11   292.   The actions, orders, approvals, and omissions of Defendant Letey as described herein

12           constitute a Cause of Action under RCW 9.73.020, and give rise to a Cause of Action for

13           damages, and he is liable to Plaintiff for nominal, compensatory, special, and punitive

14           damages.

15

16   293.   By virtue of this violation of Plaintiff's Privacy Right under state law Plaintiff has

17           sustained and is likely to sustain irreparable harm. Plaintiff requests Declaratory and

18           Injunctive relief.

19

20                          **NINETEENTH CAUSE OF ACTION**

21                          **Neglect to Prevent Civil Rights Violation**

22                                  (as to Defendant Bortner)

23   294.   Plaintiff restates as if fully set forth here each and every claim, assertion, and allegation set

24           forth in the foregoing Paragraphs 1 through 167 of this Complaint.

25

26   295.   Upon information and belief, Defendants Mittelstaedt, Olson, Jane/John Doe Bellingham

27           Police Officer, Letey, Sharma, Bortner, McLean, Rusko, Wood, Alder, and John/Jane

28           Does 1-10, reached an agreement to discredit, punish, and seek revenge against the

COMPLAINT - 70

HWB-ESQ., PLLC
PO BOX 13085
Mill Creek Washington
Telephone:206-774-0845
Facsimile: 206-350-0134

1    Plaintiff and that included, among other things, the unlawful search, seizure, and detention

2    of Plaintiff's Property from Room 305 at the Inn.  In so doing, the Defendants conspired

3    for the purpose of depriving the Plaintiff of his Privacy, Property, Equal Protection,

4    Procedural and Substantive Due Process rights, and other protected rights as set forth

5    above.

6

7  296.   Upon information and belief, Defendant Bortner had knowledge that the common scheme

8    involved the unlawful search, seizure, and detention of Plaintiff's Property from Room

9    305 at the Inn.

10

11  297.   Pursuant to, and in furtherance of the common scheme, Defendants Letey, Sharma, and

12    Bortner prepared, issued, and served SDT-14835 in order to unlawfully gain access to

13    possession of Plaintiff's Property.

14

15  298.   Plaintiff was injured as a direct and proximate result of said overt acts.

16

17  299.   Defendant Bortner in her capacity as Securities Administrator had power to prevent or aid

18    in the prevention of the commission of said overt acts, and neglected or refused to do so.

19

20  300.   By exercising reasonable diligence, Defendant Bortner could have prevented the

21    commission of said overt acts.

22

23  301.   The actions, orders, approvals, and omissions of Defendant Bortner as described herein

24    constitute Neglect to Prevent Civil Rights Violations and give rise to a Cause of Action for

25    damages under 42 U.S.C. § 1986, and she is liable to Plaintiff for nominal, compensatory,

26    special, and punitive damages.

27

28  302.   By virtue of this Neglect to Prevent Civil Rights Violations Plaintiff has sustained and is

COMPLAINT - 71

1    likely to sustain irreparable harm.  Plaintiff requests Declaratory and Injunctive relief.

2

3                        **TWENTIETH CAUSE OF ACTION**

4           **Official Policy Resulting in Violation of Civil Rights**

5               (as to Defendant State of Washington)

6

7 303.  Plaintiff restates as if fully set forth here each and every claim, assertion, and allegation set

8       forth in the foregoing Paragraphs 1 through 167 of this Complaint.

9

10 304.  Defendant State of Washington as manifested by the implementation of DFI-SD's policies,

11       procedures, and practices regarding the issuance of subpoena duces tecums represents

12       actionable official government policy or practice that as implemented resulted in a

13       violation of Plaintiff's right to Property which was taken and held in violation of the

14       United States Constitution Amendments 4 and 14, and Washington State Constitution

15       Article I, Sections 3 and 7; right to Privacy which was invaded in violation of the United

16       States Constitution Amendments 1, 4, 5, 9, and 14, and Washington State Constitution

17       Article I, Section 7; right to Equal Protection which was denied in violation of the United

18       States Constitution Amendment 14; right to Procedural Due Process of Law which was

19       denied  in violation of the United States Constitution Amendments 5 and 14, and

20       Washington State Constitution Article I, Section 3; right to Substantive Due Process of

21       Law which was denied in violation of the United States Constitution Amendments 5 and

22       14, and the Washington State Constitution Article I, Section 3.

23

24 305.  Plaintiff was injured as a direct and proximate result of said acts by the State of

25       Washington.

26

27 306.  The actions, orders, approvals, and omissions of Defendant State of Washington as

28       described herein constitute an Official Policy resulting in the violation of Plaintiff's civil

COMPLAINT - 72

1    rights and give rise to a Cause of Action for Declaratory and Injunctive relief.

2

3                          **TWENTY-FIRST CAUSE OF ACTION**

4                  **Failure to Train Resulting in Violation of Civil Rights**

5                              (as to Defendant State of Washington)

6

7    307.    Plaintiff restates as if fully set forth here each and every claim, assertion, and allegation set

8            forth in the foregoing Paragraphs 1 through 167 of this Complaint.

9

10   308.    Defendant State of Washington as manifested by DFI-SD, failed to adequately train and

11           supervise Defendants Letey, Sharma, Bortner, and other employees of DFI-SD regarding

12           requirements of the United States and Washington State constitutions, and federal and

13           state laws and the limitations on their power regarding search and seizure of property,

14           property rights and privacy rights, and subpoena authority. The failure of the State of

15           Washington to properly train its employees amounted to the deliberate indifference to

16           Plaintiff's rights and was the "moving force" and direct and proximate cause of the

17           constitutional deprivations of Plaintiff's right to Property which was taken and held in

18           violation of the United States Constitution Amendments 4 and 14, and Washington State

19           Constitution Article I, Sections 3 and 7; right to Privacy which was invaded in violation of

20           the United States Constitution Amendments 1, 4, 5, 9, and 14, and Washington State

21           Constitution Article I, Section 7; right to Equal Protection which was denied in violation

22           of the United States Constitution Amendment 14; right to Procedural Due Process of Law

23           which was denied in violation of the United States Constitution Amendments 5 and 14,

24           and Washington State Constitution Article I, Section 3; right to Substantive Due Process

25           of Law which was denied in violation the United States Constitution Amendments 5 and

26           14, and the Washington State Constitution Article I, Section 3.

27

28   309.    Plaintiff was injured as a direct and proximate result of said omissions to act by the State

     COMPLAINT - 73

1    of Washington.

2

3    310.    The actions, orders, approvals, and omissions of Defendant State of Washington as

4            described herein constitute a Failure to Train DFI-SD employees resulting in the violation

5            of Plaintiff's Civil Rights, and give rise to a Cause of Action for Declaratory and

6            Injunctive relief.

7

8                        **TWENTY- SECOND CAUSE OF ACTION**

9                             **Declaratory and Injunctive Relief**

10                  **Pursuant to United States Code Title 28 §§ 2201, and 2202**

11             ( Defendants Mittelstaedt, Olson, Jane/John Doe Bellingham Police Officer,

12                  City of Bellingham Letey, Sharma, Bortner, State of Washington)

13

14   311.    This Claim for Relief is made pursuant to U.S.C., Title 28 §§ 2201, and 2202, which

15           authorizes this court to "declare the rights and other legal relations of any interested party

16           seeking such declaration" and any "further necessary or proper relief based on a

17           declaratory judgment or decree." "Any such declaration shall have the force and effect of

18           a final judgment or decree." As set Forth in the First Cause of Action through, and

19           including the Twenty-First Cause of Action above, Defendants Mittelstaedt, Olson,

20           Jane/John Doe Bellingham Police Officer, City of Bellingham, Letey, Sharma, Bortner,

21           and State of Washington have violated Plaintiff's right to Property which was taken and

22           held in violation of the United States Constitution Amendments 4 and 14, and Washington

23           State Constitution Article I, Sections 3 and 7; right to Privacy which was invaded in

24           violation of the United States Constitution Amendments 1, 4, 5, 9, and 14, and

25           Washington State Constitution Article I, Section 7; right to Equal Protection which was

26           denied in violation of the United States Constitution Amendment 14; right to Procedural

27           Due Process of Law which was denied  in violation of the United States Constitution

28           Amendments 5 and 14, and Washington State Constitution Article I, Section 3; right to

COMPLAINT - 74

1       Substantive Due Process of Law which was denied in violation the United States

2       Constitution Amendments 5 and 14, and the Washington State Constitution Article I,

3       Section 3, and may continue to do so in the future.

4

5 312.   Wherefore it is requested that Defendants Mittelstaedt, Olson, Jane/John Doe Bellingham

6       Police Officer, City of Bellingham Letey, Sharma, Bortner, State of Washington, and any

7       other individual or federal, state, county, or municipal department, agency, or other entity,

8       that has been provided, is in the possession of, has knowledge regarding, or is seeking

9       defendant's Property be enjoined and barred from copying, writing down, recording by any

10      means, inputting, transcribing, memorizing, and/or disseminating in any manner

11      whatsoever any information unlawfully obtained by means of the warrantless seizure of

12      Plaintiff's Property. This relief is appropriate as the Plaintiff has no adequate remedy at

13      law, and will, as set forth above, suffer irreparable harm in the absence of the Court's

14      declaratory and injunctive relief.

15

16

17                       **TWENTY- THIRD CAUSE OF ACTION**

18                       **Declaratory and Injunctive Relief**

19      **Pursuant to United States Code Title 28 §§ 1330, 1602, 1605, 2201, and 2202**

20                  (Defendants McLean, McLean & Armstrong, Rusko, Wood,

21              KPMG Inc., KPMG LLP, Alder, and the Government of Canada)

22

23 313.   This Claim for Relief is made pursuant to U.S.C., Title 28 §§ 1330, 1602, 1605, 2201, and

24      2202, which authorizes this court to "declare the rights and other legal relations of any

25      interested party seeking such declaration" and any "further necessary or proper relief based

26      on a declaratory judgment or decree." "Any such declaration shall have the force and

27      effect of a final judgment or decree." As set Forth in the First Cause of Action through,

28      and including the Twenty-First Cause of Action above, Defendants McLean, McLean &

COMPLAINT - 75

1  Armstrong, Rusko, Wood, KPMG Inc., KPMG LLP, Alder, and the Government of

2  Canada have violated Plaintiff's right to Property which was taken and held in violation of

3  the United States Constitution Amendments 4 and 14, and Washington State Constitution

4  Article I, Sections 3 and 7; right to Privacy which was invaded in violation of the United

5  States Constitution Amendments 1, 4, 5, 9, and 14, and Washington State Constitution

6  Article I, Section 7; right to Equal Protection which was denied in violation of the United

7  States Constitution Amendment 14; right to Procedural Due Process of Law which was

8  denied in violation of the United States Constitution Amendments 5 and 14, and

9  Washington State Constitution Article I, Section 3; right to Substantive Due Process of

10  Law which was denied in violation the United States Constitution Amendments 5 and 14,

11  and the Washington State Constitution Article I, Section 3, and may continue to do so in

12  the future.

14  314.  Wherefore it is requested that Defendants McLean, McLean & Armstrong, Rusko, Wood,

15  KPMG Inc., KPMG LLP, Alder, and the Government of Canada, and any other foreign

16  individual or foreign federal, state, county, or municipal department, agency, or other

17  foreign entity, that has been provided, is in the possession of, has knowledge regarding, or

18  is seeking Plaintiff's Property be enjoined and barred from copying, writing down,

19  recording by any means, inputting, transcribing, memorizing, and/or disseminating in any

20  manner whatsoever any information unlawfully obtained by means of the warrantless

21  seizure of Plaintiff's Property. This relief is appropriate as the Plaintiff has no adequate

22  remedy at law, and will, as set forth above, suffer irreparable harm in the absence of the

23  Court's declaratory and injunctive relief.

25  **PRAYER FOR RELIEF**

27  WHEREFORE, Plaintiff respectfully requests that this Court:

COMPLAINT - 76

HWB-ESQ., PLLC
PO BOX 13085
Mill Creek Washington
Telephone:206-774-0845
Facsimile: 206-350-0134

1.      Declare the actions of Defendants, in violation of the US Constitution, Washington State Constitution, federal and state laws;

2.      Enjoin Defendants from the use, dissemination, and transfer of all unlawfully seized Property;

3.      On all Causes of Action applicable, award nominal, compensatory, special, and punitive damages to Plaintiff;

4.      On all Causes of Action, award interest on all amounts awarded including, without limitation, pre-judgment interest as applicable;

5.      Award the costs, disbursements and reasonable attorneys' fees incurred in the prosecution of this action; and

6.      Grant such other and further relief as the Court shall deem just, equitable and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## LIST OF EXHIBITS

Plaintiff now formally incorporates his documentary materials by reference to all of the following Exhibits, as if set forth fully here, to wit:

Exhibit "A" with Cover Sheet

Exhibit "B" with Cover Sheet

Exhibit "C" with Cover Sheet

COMPLAINT - 77

HWB-ESQ., PLLC
PO BOX 13085
Mill Creek Washington
Telephone:206-774-0845
Facsimile: 206-350-0134

1        Exhibit "D" with Cover Sheet

2        Exhibit "E" with Cover Sheet

3

4

5        DATED this 2nd day of February, 2007.

6                                                     Respectfully submitted,

7                                                     **HWB-ESQ., PLLC**

8

9

10                                                    By: _____
                                                      Hugh W. Berry
11                                                    (WSBA Bar No. 23509)
                                                      PO BOX 13085
12                                                    Mill Creek Washington 98082
                                                      Telephone:206-774-0845
13                                                    Facsimile: 206-350-0134

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT - 78

# EXHIBIT A

**STATE OF WASHINGTON**
**DEPARTMENT OF FINANCIAL INSTITUTIONS**
**SECURITIES DIVISION**

| | |
|---|---|
| IN THE MATTER OF DETERMINING<br>Whether there has been a violation<br>of the Securities Act of the State<br>of Washington:<br><br>Braich Capital Group | 14835-04-SB01<br><br>SUBPOENA DUCES TECUM<br><br>Case No. 14835 |

THE STATE OF WASHINGTON TO:     Travel House
                                                        3750 Meridian
                                                        Bellingham, WA 98225

    You are hereby commanded to produce and furnish the Securities Division, State of Washington, to the

attention of Tyler Letey, on February 5, 2004, records pertaining to investment and financial documents of:

1.  Irwin Singh Braich,

2.  Erwin Braich,

3.  Braich Capital Group, and

4.  Signet Group,

    Including, but not limited to, contracts, agreements, receipts, notes or similar documents, subscription

agreements, promissory notes, loan agreements, memoranda, other evidence of investment or indebtedness,

bank or brokerage accounts that contain or contained investor funds, promotional and advertising materials

were used to solicit such investments including prospectus, brochures, flyers and the like, books, records,

ledgers, journals or similar documents kept relating to such investments, and storage and media devices that

could contain investment and financial documents.

SUBPOENA DUCES TECUM                              1                    DEPARTMENT OF FINANCIAL INSTITUTIONS
                                                                                                              Securities Division
                                                                                                              PO Box 9033
                                                                                                              Olympia, WA 98507-9033
                                                                                                              360-902-8760

This subpoena is issued as part of a non-public investigative matter. Therefore, it is hereby requested that you do not notify the subject of this subpoena as it may be detrimental to the investigation being conducted by the Securities Division.

This subpoena is issued by authority granted by RCW 21.20.380. In the case of willful disobedience by any person or failure of any person to comply with any subpoena lawfully issued by the Securities Administrator, application to the superior court of the appropriate county, pursuant to RCW 21.20.380, will be made by the Securities Administrator to compel obedience by a contempt of court proceeding issued by said court.

Dated this 4th day of February 2004.


DEBORAH BORTNER
Securities Administrator

Presented by:


Tyler Letey
Staff Attorney

SUBPOENA DUCES TECUM                    2                    DEPARTMENT OF FINANCIAL INSTITUTIONS
                                                             Securities Division
                                                             PO Box 9033
                                                             Olympia, WA 98507-9033
                                                             360-902-8760

# EXHIBIT B



# EXHIBIT C

# McLean & Armstrong
**BARRISTERS & SOLICITORS**

Brian McLean
Chris Armstrong, P.Eng.

Affiliated Consultant:
Norman Zapf, MEIC (Hon.)

April 7, 2004

**BY FAX: 360-704-7023**

The Washington State Securities Division
P.O. Box 9033
Olympia, Washington
98507

Attention: Tyler Letey

Dear Sirs:

**Re: Erwin Braich in Bankruptcy**

Further to our conversation Tuesday, April 6, 2004, I confirm I am counsel to KPMG Inc., the Trustee of Erwin Singh Braich in Bankruptcy.

I enclose for your information a copy of the Receiving Order made by the Supreme Court of British Columbia in Bankruptcy.

I also enclose a copy of the Order of Madame Justice Morrison made October 10, 2001 together with the Arrest Warrant issued pursuant thereto as well as the March 31, 2004 Order of Madame Justice Morrison vacating the Arrest Warrant subject to compliance with the *Bankruptcy & Insolvency Act* by June 30, 2004.

I have been instructed by KPMG Inc. (Robert Rusko/David Wood of KPMG's Vancouver office) to request an opportunity to review the documents which you have in your possession seized by Subpoena from the hotel room in Bellingham where Erwin Braich had been living.

Would you be so kind as to let me know if you are in a position to permit me to have access to the documents in question and, if so, what further information, if any, you require from me. I enclose for your information a summary of the Duties and Powers of Trustees in Bankruptcy which powers can be extended by corresponding courts in other jurisdictions.

I would also like to know whether you are in a position to deliver these documents to KPMG Inc. in Vancouver and, if so, what terms, if any, you would want to impose.

- 2 -

I look forward to hearing from you at your earliest convenience.

Yours truly,

McLean & Armstrong
Per:

BRIAN G. McLEAN

BGM/mbc
Encl.
[g:\flica\kpmg.4\letter.1]

# EXHIBIT D

# _McLean & Armstrong_
BARRISTERS & SOLICITORS

Brian McLean
Chris Armstrong, P.Eng.

Affiliated Consultant:
Norman Zapf, MEIC (Hon.)

April 6, 2004

BY FACSIMILE

Harper Grey Easton
Barristers & Solicitors
3200 - 650 W. Georgia Street
Vancouver, B.C.
V6B 4P7

Attention: Katherine M. Wellburn

Dear Sirs:

**Re:    In the Matter of the Bankruptcy of Erwin Singh Braich
SCBC Action No. 193466VA99, Vancouver Registry**

I confirm my undertaking that I will not conduct, nor will any other lawyer in my firm, the examination of Erwin Singh Braich on behalf of his Trustee, KPMG Inc. pursuant to section 163 of the *Bankruptcy & Insolvency Act*.

Yours truly,

McLean & Armstrong
Per:

BRIAN G. McLEAN
BGM/mbc
cc:  Robert Rusko - KPMG Inc.
[g:\files\kpmg.4\wellburn.8]

# EXHIBIT E

# McLean & Armstrong
### BARRISTERS & SOLICITORS

Brian McLean
Chris Armstrong, P.Eng.

*Affiliated Consultant:*
Norman Zapf, MEIC (Hon.)

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED BELOW, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF YOU ARE NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND RETURN THE ORIGINAL TO US BY POSTAL SERVICE AT THE ADDRESS NOTED BELOW. ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION BY ANYONE OTHER THAN THE INTENDED RECIPIENT IS STRICTLY PROHIBITED. THANK YOU.

DATE:       May 14, 2004

FILE:       2049-004

FROM:       Brian McLean

RE:         Erwin Singh Braich - In Bankruptcy

PLEASE DELIVER THE FOLLOWING TELECOPIER MESSAGE:

TO:         Tyler Letey

COMPANY:  The Washington State Securities Division

PHONE:

FAX:        360-704-7023

AT THE END OF THIS TRANSMISSION YOU WILL HAVE  3  PAGES INCLUDING THIS COVER MEMO.

IF YOU ARE HAVING DIFFICULTIES RECEIVING THIS TRANSMISSION, PLEASE CALL (604) 925-0672 AND ASK FOR MIRIAM CIKES

MESSAGE:   Further to our discussion, I enclose the Demand for Production and Delivery.

Estate No. 193466/99
Vancouver Registry

IN THE SUPREME COURT OF BRITISH COLUMBIA
IN BANKRUPTCY

IN THE MATTER OF THE BANKRUPTCY OF
ERWIN SINGH BRAICH

DEMAND FOR PRODUCTION AND DELIVERY

TO: Washington State Securities Division
P.O. Box 9033
Olympia, WA
USA
98507

Attention: Tyler Letey

TAKE NOTICE that, pursuant to Section 164(1) of the *Bankruptcy and Insolvency Act*, R.S.C. 1985, c. B-3, you are hereby required by KPMG Inc. Trustee of the estate of ERWIN SINGH BRAICH, in bankruptcy, to produce and deliver up to the Trustee any property of the Bankrupt, or any book, document or paper of any kind, in your possession or control, relating in whole or in part to the Bankrupt, his dealings and property, including any books, records or documents that you may have in your possession.

AND TAKE NOTICE of the provisions of Sections 16(5), 17 and 164 of the *Bankruptcy and Insolvency Act*, copies of which are appended hereto.

DATED at Vancouver, British Columbia, this 14th day of May, 2004.

KPMG INC.
Trustee of the Estate of
Erwin Singh Braich

Per: David S. Wood, CIRP

## Duties and Powers of Trustees

**16.** (1) Every trustee duly appointed shall forthwith give security in cash or by bond of a guaranty company satisfactory to the official receiver for the due accounting for, the payment and the transfer of all property received by the trustee as trustee and for the due and faithful performance of the trustee's duties.

(2) The security required to be given under subsection (1) shall be deposited with the official receiver, shall be given in favour of the creditors generally and may be enforced by any succeeding trustee or by any one of the creditors on behalf of all by direction of the court, and may be increased or reduced by the official receiver.

(3) The trustee shall, as soon as possible, take possession of the deeds, books, records and documents and all property of the bankrupt and make an inventory, and for the purpose of making an inventory the trustee is entitled to enter, subject to subsection (3.1), on any premises on which the deeds, books, records, documents or property of the bankrupt may be, notwithstanding that they may be in the possession of a sheriff, a secured creditor or other claimant thereto.

(3.1) Where the premises referred to in subsection (3) are occupied by a person other than the bankrupt, the trustee may not enter the premises without the consent of that other person except under the authority of a warrant issued under section 189.

(4) The trustee shall, in relation to and for the purpose of acquiring or retaining possession of the property of the bankrupt, be in the same position as if he were a receiver of the property appointed by the court, and the court may on his application enforce the acquisition or retention accordingly.

(5) No person is, as against the trustee, entitled to withhold possession of the books of account belonging to the bankrupt or any papers or documents, including material in electronic form, relating to the accounts or to any trade dealings of the bankrupt or to set up any lien or right of retention thereon.

**17.** (1) Where a person has in his possession or power any property of the bankrupt that he is not by law entitled to retain as against the bankrupt or the trustee, that person shall deliver the property to the trustee.

2) For the purpose of obtaining possession of and realizing on the property of the bankrupt, a trustee has power to act as such anywhere.

**164.** (1) Where a person has, or is believed or suspected to have, in his possession or power any of the property of the bankrupt, or any book, document or paper of any kind relating in whole or in part to the bankrupt, his examination books or property, or showing that he is indebted to the bankrupt, he may be required by the trustee to produce the book, document or paper for the information of the trustee, or to deliver to him any property of the bankrupt in his possession.

(2) Where a person fails to produce a book, document or paper or to deliver property as required by this section within five days after being required to do so, the trustee may, without an order, examine the person before the registrar of the court or other authorized person concerning the property, book, document or paper that the person is supposed to possess.

(3) Any person referred to in subsection (1) may be compelled to attend and testify, and to produce on his examination any book, document or paper that under this section he is liable to produce, in the same manner and subject to the same rules of examination, and the same consequences of neglecting to attend or refusing to disclose the matters in respect of which he may be examined, as would apply to a bankrupt.