The Honorable John C. Coughenour

1

**BUCKNELL STEHLIK SATO & STUBNER, LLP**

2003 Western Avenue, Suite 400
Seattle, Washington 98121

2

(206) 587-0144 • fax (206) 587-0277

3

4

5

6         UNITED STATES DISTRICT COURT
7   WESTERN DISTRICT OF WASHINGTON, AT SEATTLE

8   ERWIN SINGH BRAICH,           )    No.  CV7 0177C
                            )
9           Plaintiff,        )
                            )
10     vs.                 )    **BRIAN G. McLEAN'S AND**
                            )    **McLEAN & ARMSTRONG, LLP'S**
11   STEVE MITTELSTAEDT, et al,    )    **MOTION TO DISMISS**
                            )
12          Defendant.      )    **Note on Motion Calendar:**
13                            )    **May 25, 2007**
     ————————————————————— )
14

15         **I.**     **INTRODUCTION AND REQUEST FOR RELIEF**

16       This is a motion by a Canadian lawyer, Brian G.N. McLean, and his law firm, McLean &

17 Armstrong, LLP, to dismiss the complaint against them under Fed. R. Civ. Pro. 12(b).  The

18 complaint against these parties should be dismissed because this court lacks subject matter

19 jurisdiction.  Principles of comity compel dismissal and the claims against the McLean Parties are

20 barred by the Foreign Sovereign Immunities Act.

21

22       The plaintiff, a citizen of British Columbia, Canada, and a debtor in a Canadian bankruptcy

23 proceeding since 1999, has audaciously brought suit in this court against his Canadian bankruptcy

24 trustee and the trustee's lawyer for alleged acts taken by the trustee and the trustee's lawyer that

25 plaintiff himself acknowledges were undertaken pursuant to the authority granted to his bankruptcy

26

27

28   Brian G. McLean's and McLean
   & Armstrong's Motion to Dismiss - 1

1    trustee under Canadian law.  Rather than pursue readily available remedies in Canada, the plaintiff

2    has engaged in blatant forum shopping with the hopes of having his complaint heard by a more

3    sympathetic court, having no doubt soured the Canadian court by contemptuous conduct.  Plaintiff's

4    claims against his Canadian bankruptcy trustee and trustee's counsel do not belong in this court.

5    Plaintiff has not satisfied a jurisdictional prerequisite for bringing these types of claims.  For several

6    other cogent reasons, if these claims are to be brought at all, they belong in a Canadian court and for

7    that reason should be dismissed from this case.

8

9         Mr. McLean and his law firm (hereafter, "McLean" or McLean Parties") have been sued in

10   this case for alleged actions taken in the course of acting as the lawyer for KPMG, Inc. ("KPMG") in

11   its capacity as a bankruptcy trustee in plaintiff's Canadian bankruptcy proceeding.  In 1999 the

12   Supreme Court of British Columbia appointed KPMG as a trustee to administer the bankruptcy

13   estate of the plaintiff, Erwin Braich.  In turn, in accordance with accepted practice and procedure,

14   KPMG hired Mr. McLean to assist it in carrying out its duties as trustee.  The Braich bankruptcy

15   proceeding is still pending in the Supreme Court of British Columbia and that court still has

16   jurisdiction over Mr. Braich and his bankruptcy estate.

17

18        This court lacks subject matter jurisdiction because Canadian law, which governs in this

19   instance, mandates that no action may be brought against a bankruptcy trustee, and by extension a

20   trustee's lawyer, unless permission to bring such an action is granted by the court in which the

21   bankruptcy case is pending.  Braich has not even attempted to obtain such permission and therefore

22   his action against the McLean Parties is barred.  Accordingly, plaintiff's claims against the McLean

23   Parties should be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(1).

24

25

26

27   Brian G. McLean's and McLean
28   & Armstrong's Motion to Dismiss - 2

BUCKNELL STEHLIK SATO & STUBNER, LLP
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0144  •  fax (206) 587-0277

W:\CLIENTS\2713\103\dismiss motion.doc

1   Principles of comity require this action to be dismissed or at the very least stayed pending

2   further proceedings in the Supreme Court of British Columbia.  Further, the McLean Parties are, for

3   this purpose, agents of the Canadian Government and therefore are immune from suit under the

4   Foreign Sovereign Immunities Act (28 USC 1602-1611) (hereafter, "FSIA").

5   Finally, the claims against the McLean Parties should be dismissed under Fed. R. Civ. Pro.

6   12(b)(6) because the property of which plaintiff claims to have been deprived did not belong to him,

7   but rather belonged to his bankruptcy estate, and therefore he cannot, as a matter of law, maintain an

8   action based on the deprivation of property rights.

9

10  **II.    FACTUAL BACKGROUND**[1]

11  Erwin Braich (hereafter, "Braich") brings this action against an array of defendants, including

12  the Government of Canada, the City of Bellingham, Washington State, various Washington State

13  employees, an employee of the Department of Homeland Security, and even a member of the Royal

14  Canadian Mounted Police, among others.  Braich has asserted twenty three independent causes of

15  action against the defendants for violation of the United States Constitution, violation of federal and

16  state law, and various common law torts.  While Braich has invoked a myriad of legal theories, the

17  factual allegations upon which his claims are based are limited and discrete.  The gist of his

18  complaint is that the defendants have engaged in a conspiracy to deprive Braich of property and

19  property rights.  Braich seeks damages "in excess of $500,000,000 (five hundred million dollars)",

20  which on its face is a ridiculous demand.  Complaint ¶ 10.

21

22

23  _____

24  [1]  The McLean Parties will cite to the declarations of Douglas Knowles, Robert Rusko, Brian McLean and Jerry Stehlik
     in support of this motion.  The Knowles and Rusko declarations were filed by KPMG, Inc. in support of its motion to
25   dismiss on April 19, 2007.  The McLean and Stehlik declarations are filed herewith.

26

BUCKNELL STEHLIK SATO & STUBNER, LLP
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0144  •  fax (206) 587-0277

27  Brian G. McLean's and McLean
28  & Armstrong's Motion to Dismiss - 3

W:\CLIENTS\2713\103\dismiss motion.doc

1    Braich is in involuntary bankruptcy proceedings in Canada.  In 1999 the Honourable

2   Mr. Justice Lowry of the Supreme Court of British Columbia appointed KPMG Inc., a Canadian

3   corporation, as trustee of Braich's Canadian bankruptcy proceedings.  Declaration of Robert Rusko

4   ("Rusko Decl.") ¶ 3 & Ex. A.  Shortly thereafter, on November 22, 1999 KPMG hired McLean to

5   represent it in its role as bankruptcy trustee, which it was authorized to do pursuant to § 30(1)(e) of

6   the Canadian Bankruptcy and Insolvency Act (hereafter, "CBIA").  KPMG obtained the necessary

7   permission from appointed fiduciaries, called "Inspectors", to engage McLean for this purpose.

8

9   McLean Decl., ¶ 2.  Braich remains an undischarged bankrupt in the Canadian bankruptcy pro-

10  ceeding, which remains pending before the Supreme Court of British Columbia.  Rusko Decl., ¶ 9.

11  It is important to note that by operation of law *all of Braich's property and property rights held or*

12  *acquired since the initiation of his bankruptcy case in 1999 belong to the bankruptcy estate.*  Under

13  § 67(1) of the CBIA, property of the bankruptcy estate consists of, "all property wherever situated of

14  the bankrupt at the date of his bankruptcy or that may be acquired by or devolve on him before his

15  discharge".  Thus, all property or property rights he held in late 2003 and early 2004, the time period

16  in which he alleges he was wrongfully deprived of his property, actually belonged to the bankruptcy

17  estate.

18  estate.

19       Despite explicit orders of the Supreme Court of British Columbia, Braich has not meaning-

20  fully participated in his bankruptcy proceeding.  *Id.* ¶ 4-5, 8-9 & Exs. B and E.  His lack of coopera-

21  tion resulted in Supreme Court of British Columbia issuing a warrant for Braich's arrest and

22

23

24

25

26

27  Brian G. McLean's and McLean

28  & Armstrong's Motion to Dismiss - 4

**BUCKNELL STEHLIK SATO & STUBNER, LLP**
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0144  •  fax (206) 587-0277

W:\CLIENTS\2713\103\dismiss motion.doc

1   detention in October of 2001.[2]  *Id.*  Ex. C.  As the basis for this warrant, the court found that Braich

2   violated the Canadian Bankruptcy and Insolvency Act by failing to attend a creditors' meeting,

3   failing to deliver to the trustee in bankruptcy books and records, failing to provide the trustee in

4   bankruptcy with a statement of affairs, failing to attend an examination, failing to advise the trustee

5   in bankruptcy of his place of residence, and failing to perform other duties required of a bankrupt

6   under Canadian law.  *Id.*  Two and a half years after the court issued the arrest warrant, the warrant

7   was vacated, conditioned upon Braich's compliance with various provisions of the Bankruptcy Act.

8   *Id.* Ex. E.  Braich, however, has failed to comply with that court order.  *Id.* ¶¶ 8-9.

10      At all times since KPMG employed the McLean Parties, they have acted as counsel for

11   KPMG as trustee in the Braich bankruptcy case.  All of the McLean Parties' conduct alleged by

12   Braich to give rise to liability was in furtherance of employment as counsel for KPMG as trustee.

13   This is evidenced by Braich's own allegations.  Specifically Braich alleges that:

15      ● "Brian G. McLean,…at all times relevant herein was acting within the scope and course of

16   his employment as the attorney for KPMG, Inc. in its role as Trustee in the Bankruptcy proceeding

17   of Erwin Singh Braich…"  Complaint ¶ 23.

18      ● "…the statements, acts, and omissions of …the Government of Canada's

19   agents,…(including Defendants McLean….) who acted under the explicit and implicit instruction

20   and supervision, of Defendant Rusko [KPMG] …who in turn was acting under license as an agent of

21

22

23

---

24   [2]  Similarly, in 2002 the Provincial Court of British Columbia, at the request of Crown Counsel (the Canadian equivalent
     of the United States Attorney) issued a warrant for Braich's arrest.  *See* Rusko Decl. Ex. C.  The return for that warrant
25   indicates it was not served "because the accused is evading service."  *Id.*

26

27   Brian G. McLean's and McLean
28   & Armstrong's Motion to Dismiss - 5

**BUCKNELL STEHLIK SATO & STUBNER, LLP**
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0144  ●  fax (206) 587-0277

W:\CLIENTS\2713\103\dismiss motion.doc

1   the Office of the Superintendent of Bankruptcy, which was an agency of Industry Canada, which

2   was a Department within the Government of Canada…".  (Explanation added).  Complaint ¶ 144.

3       Mr. McLean also confirms this fact in his declaration.  McLean Dec., ¶ 4.

4       Thus, per Braich's allegations, KPMG's alleged acts were those of an agent on behalf of the

5   Government of Canada and McLean worked for KMPG in its capacity as an agent of the

6   Government of Canada.[3]

7       Braich asserts three claims against the McLean Parties, to wit: (1) conspiracy to deprive civil

8

9   rights in violation of 42 U.S.C. § 1985 (first claim), (2) violation of the Alien Tort Claims Act, 28

10  U.S.C. § 1350 (ninth claim), and (3) declaratory and injunctive relief (twenty third claim).

11  Complaint ¶¶ 168-76; 237-46; 313-14.  Notably, all of these claims stem from the underlying

12  allegation that other defendants wrongfully seized his property from a Bellingham, Washington hotel

13  room.[4]

14      Braich did not seek leave of the court presiding over his Canadian bankruptcy proceedings to

15  bring these claims against either the McLean Parties or KPMG.  Rusko Decl. ¶ 10; McLean Decl.

16  ¶ 6.

17

18

19

20

---

[3]  Under Canadian law, bankruptcy trustees must be licensed by the Superintendent of Bankruptcy who is a governmental official appointed by the Governor in Council.  *See,* §§ 5 and 13 of the Canadian Bankruptcy and Insolvency Act. The Superintendent of Bankruptcy oversees all aspects of bankruptcy cases in Canada and directly supervises the activities of trustees.  *See,* §5 of the Canadian Bankruptcy and Insolvency Act.

[4]  The McLean Parties categorically deny any involvement in planning or participating in the actions of the either the border agents or of the Washington State Department of Financial Institutions alleged by Braich to have taken property from Braich's Bellingham, Washington motel room in late 2003 and early 2004.  The McLean Parties also contests numerous other factual assertions made by Braich in his complaint and nothing stated herein should be construed as an admission of any allegation in the complaint.

Brian G. McLean's and McLean
& Armstrong's Motion to Dismiss - 6

**BUCKNELL STEHLIK SATO & STUBNER, LLP**
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0144 • fax (206) 587-0277

W:\CLIENTS\2713\103\dismiss motion.doc

### III.    ARGUMENT

**A.    Fed. R. Civ. Pro. 12(b)(1) Standard.**

Pursuant to Fed. R. Civ. Pro. 12(b)(1) a court must dismiss a lawsuit when it lacks juris-diction over the subject matter of the action.  Federal courts are courts of limited jurisdiction and possess only that power authorized by the Constitution and statute.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).  "It is to be presumed that a cause lies outside this limited jurisdiction."  *Id.*  The burden of establishing jurisdiction rests with the party seeking to invoke it. *Id.*

When considering a motion to dismiss under Fed. R. Civ. Pro. 12(b)(1) the court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction.  *McCarthy v. United States*, 850 F.2d 558, 561 (9th Cir. 1988).

The purpose of a motion under Fed. R. Civ. Pro. 12(b)(6) is to test the sufficiency of a complaint.  The court assumes the well pleaded allegations in the complaint to be true but will dismiss claims that do not state a cognizable cause of action.  In deciding a motion to dismiss under rule 12(b)(6), the court may consider matters outside of the complaint, including statutes, matters of public record and matters susceptible to judicial notice.  *Federal Practice and Procedure*, Wright and Miller, Vol. 5.B, § 1357, n. 1 and cases cited therein.

Brian G. McLean's and McLean
& Armstrong's Motion to Dismiss - 7

W:\CLIENTS\2713\103\dismiss motion.doc

**B.     Well Recognized Principles of Comity Warrant the Application of Canadian Law Here, Barring Plaintiff's Claims Against McLean Parties as Representatives of the Canadian Bankruptcy Trustee**

The extent to which United States courts will apply or recognize the laws of foreign countries depends upon comity because the legislation of foreign countries has no extra-territorial force as a matter of right. *United States v. Bank of New York & Trust Co.*, 10 F. Supp. 269, 271 (S.D.N.Y. 1934). Comity has been defined by the U.S. Supreme Court as "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience and to the rights of its own citizens or of other persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 164 (1895).

Generally speaking, comity will be granted where it is shown that the foreign court is a court of competent jurisdiction, and that the laws and public policy of the forum state and the rights of its residents will not be violated. *Allstate Life Ins. Co. v. Linter Group, Ltd*, 994 F.2d 996, 999 (2nd Cir. 1993). "[A]s long as the foreign court abides by 'fundamental standards of procedural fairness', granting comity is appropriate." *Id. citing Cunard S.S. Co. v. Salem Reefer Serv. AB*, 773 F.2d 452, 457 (2nd Cir. 1985). On the other hand, comity may not be afforded and the laws of a foreign country will not be enforced if they are contrary to our public policies of the United States. *Bank of New York & Trust Co.*, 10 F.Supp. at 271 (declining to grant comity for Russian laws that allowed the confiscation of funds without any apparent due process of law.)

Federal courts "have recognized that comity is particularly appropriate where . . . the court is confronted with foreign bankruptcy proceedings". *Allstate Life Ins. Co.*, 994 F.2d at 999)[5] *citing*

---

[5] In *Allstate Life Ins. Co. v. Linter Group Ltd*, the Second Circuit dismissed securities actions against an Australian corporation arising from a public offering in the United States on the ground of comity and in view of the pendency in

Brian G. McLean's and McLean
& Armstrong's Motion to Dismiss - 8

*Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2nd Cir. 1987) ("American courts have long recognized the particular need to extend comity to foreign bankruptcy proceedings."); *see also Cunard S.S. Co.*, 773 F.2d at 456 ("American courts have consistently recognized the interest of foreign courts in liquidating or winding up the affairs of their own domestic business entities.")  A court's decision to extend comity to the laws, decisions or acts of a foreign country are discretionary and are therefore reversed only for abuse of discretion.  *Allstate Life Ins. Co.*, 994 F.2d at 999.

   *Clarkson Co., Ltd. v. Shaheen*, 544 F.2d 624 (2nd Cir. 1976) is particularly instructive here. In that case a Canadian trustee in bankruptcy brought suit to obtain records located in the New York offices of bankrupt Canadian corporations.  The district court granted a preliminary injunction requiring that the records be turned over and restraining the disbursement or secretion of any corporate property.  The corporate officers appealed.  The 2nd Circuit affirmed the injunction and held that comity required the New York courts to allow a Canadian trustee in bankruptcy to obtain records pursuant to Section 12(2) of the Canadian Bankruptcy and Insolvency Act, which records were located in the New York offices of the bankrupt Canadian corporations.  Specifically, the 2nd Circuit recognized Canadian law "requir[ing] a trustee to take possession of the records of a bankrupt corporation" and empowering the Canadian trustee "to act as such anywhere." *Id.* at 626. The court further noted that any "exceptions" to granting comity (e.g., injustice to New York citizens, prejudice to creditors' New York statutory remedies or violation of the laws or public policy of New York) were to be "construed especially narrowly" because the alien jurisdiction—Canada—

---

Australia of liquidation proceedings.  The court noted that the Australian proceedings although not identical to United States bankruptcy proceedings were sufficiently similar that comity would not offend any laws or public policies of the United States. *Id.* at 999-1000.

Brian G. McLean's and McLean & Armstrong's Motion to Dismiss - 9

**BUCKNELL STEHLIK SATO & STUBNER, LLP**
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0144  •  fax (206) 587-0277

W:\CLIENTS\2713\103\dismiss motion.doc

1   was a sister common law jurisdiction with procedures akin to those of the United States. *Id.* 554 at

2   630.  The *Clarkson* court cited case authorities recognizing the authority and power of Canadian

3   trustees, and providing injunctive or related relief to them in pursuit of their obligation to obtain

4   possession of property.  *Id.*  The 2nd Circuit affirmed the lower court's preliminary injunction,

5   holding that the trustee was more than likely to prevail on the merits considering the clear and strong

6   Canadian law transferring to the trustee all legal rights in the bankrupt's property, in Canada or

7   elsewhere, giving the trustee the power to act as such anywhere, and requiring the trustee to take

8
9   possession immediately of the deeds, books, record[s], documents and all property of the bankrupt.

10  *Id.* at 632.  *See also Daniels v. Powell*, 604 F. Supp.689 (N.D. Ill. 2985) (according comity to

11  "winding up" order of Supreme Court of Bermuda in liquidation proceeding under Bermuda law,

12  directing that all property of subsidiary that was in liquidation be vested in court-appointed

13  liquidator, because Bermuda is a sister common law jurisdiction and none of the exceptions to

14
15  comity, construed narrowly, applied.)

16          Here, the foregoing authorities compel granting comity to the applicable Canadian laws,

17  specifically, Section 215 of the Bankruptcy and Insolvency Act (R.S.C. 1985 , c. B-3) precluding

18  any suit against a bankruptcy trustee or its agents without leave of court,[6] and Section 16 of the

19  Bankruptcy and Insolvency Act (R.S.C. 1985, c. B-3) requiring the trustee to take immediate

20  possession of the bankrupt's deeds, books, records and documents and all property from any

21

22

23

24  [6]  Section 215 states, "Except by leave of the court, no action lies against the Superintendent, an official receiver, an
      interim receiver or a trustee with respect to any report made under, or any action taken pursuant to this Act."
25  *Declaration of Douglas Knowles in Support of KPMG Motion to Dismiss*, Ex. D.

26

27  Brian G. McLean's and McLean
28  & Armstrong's Motion to Dismiss - 10

**BUCKNELL STEHLIK SATO & STUBNER, LLP**
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0144  •  fax (206) 587-0277

W:\CLIENTS\2713\103\dismiss motion.doc

premises where they may be located, subject to an exception that has no application here.[7]  *See*

*Declaration of Douglas Knowles in Support of KPMG Motion* at Exhibits C and D.

Pursuant to the authorities cited above, comity is generally granted *unless* the foreign court is

<u>not</u> a court of competent jurisdiction or granting comity would be offensive to the laws and public

policy of the forum state or the rights of its residents.  Neither exception, which must be construed

narrowly considering Canada's sister common law status, applies.  First, there is no legitimate

question regarding the Canadian court's jurisdiction or its competency.  Braich is a Canadian citizen.

He is subject to the Canadian court's jurisdiction.  Further, Canadian courts have been recognized as

courts of competent jurisdiction by the cases cited above.  Importantly, plaintiff does not allege that

the Canadian court lacks jurisdiction over his bankruptcy case and he does not allege insufficient

procedural due process protections in the laws of Canada respecting bankruptcies or suits against

trustees or their agents.  To the contrary, Section 215 specifically affords one seeking to sue a

bankruptcy trustee the opportunity to be heard via a motion for leave to bring suit.  Moreover,

debtors aggrieved by actions of a trustee have direct recourse to the bankruptcy court under Section

37 of the Canadian Bankruptcy and Insolvency Act ("CBIA").  Plaintiff does not allege that

fundamental standards of procedural fairness have not been extended to him thus far or that they will

not be extended to him in seeking leave of the Canadian court to sue the McLean Parties as agents of

the bankruptcy trustee KPMG.

---

[7]  Section 16 specifically states that the trustee is required to "take possession of the deeds, books, records and documents and all property of the bankrupt and make an inventory, and for the purpose of making an inventory, the trustee is entitled to enter, subject to subsection 3.1, on any premises on which the deeds, books, records, documents or property of the bankrupt may be, notwithstanding that they may be in the possession of a sheriff, a secured creditor or other claimant thereto."  *Declaration of Douglas Knowles in Support of KPMG Motion to Dismiss*, Ex. C, Section 16 of the Canadian Bankruptcy and Insolvency Act, R.S.C. 1985 c. B-3.

Brian G. McLean's and McLean
& Armstrong's Motion to Dismiss - 11

W:\CLIENTS\2713\103\dismiss motion.doc

**BUCKNELL STEHLIK SATO & STUBNER, LLP**
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0144  •  fax (206) 587-0277

1   This court's deference to Sections 215 and 16 of the Canadian Bankruptcy and Insolvency

2   Act would not violate the laws and public policy of Washington or violate the rights of Braich or any

3   Washington citizen.

4   Section 215 of the CBIA does not violate any laws or public policies of Washington or the

5   United States and does not violate any of Braich's rights or the rights of any Washington citizen

6   because it, along with Section 37 of the CBIA, affords Braich ample opportunity to be heard

7   regarding his claims that the bankruptcy trustee's conduct was somehow inappropriate.  Deferring to

8   Canadian law and the Canadian bankruptcy court makes profound sense in that the Canadian court is

9   most familiar with the debtor, the pending bankruptcy case, and the authority of the Canadian trustee

10  under Canadian law.  Moreover, deference to the Canadian court on these issues serves the

11  objectives established for the handling of cross-border insolvencies articulated in 11 U.S.C. Section

12  1501, e.g., cooperation between United States courts and trustees and courts and trustees of other

13  competent authorities of foreign countries involved in cross-border cases, greater legal certainty, fair

14  and efficient administration of cross-border insolvencies that protect the rights of all creditors,

15  debtors and other interested parties, and the protection and maximization of the debtor's assets.

16  Section 16's requirement that the Canadian trustee collect the debtor's property for inventory

17  and management is similar to federal bankruptcy provisions vesting control of the debtor's property

18  in the trustee, and removing the property from the control of the debtor. 11 U.S.C. Section 521(a)(4)

19  (requiring debtor to "surrender to the trustee all property of the estate and any recorded information,

20  including books, documents, records, and papers, relating to the property of the estate . . .").  Indeed,

21  this case is on all fours with *Clarkson*, which held that principals of comity warranted recognition of

Brian G. McLean's and McLean
& Armstrong's Motion to Dismiss - 12

W:\CLIENTS\2713\103\dismiss motion.doc

1 a predecessor to Section 16 (Canadian Bankruptcy Act Section 12) and entry of an injunction

2 requiring officers of a Canadian bankrupt corporation with offices in New York to turn over all

3 books, records and documents of the bankrupt corporation to the Canadian trustee.  As in that case,

4 the Canadian trustee here was not only empowered to but required to take possession of Braich's

5 property, books, records and documents, regardless of their location, and without need for any

6 warrant.

7

8 As an undischarged bankrupt, Braich is not entitled to possession of the assets of the

9 bankruptcy estate under either Washington law or federal bankruptcy laws.  It should be said, with

10 emphasis, that had Braich cooperated with the bankruptcy trustee and turned over his business

11 records as ordered by the court, none of the alleged acts he complained of would have had to have

12 been undertaken by any party.[8]

13

14 Overall, it must not be forgotten that Braich is a citizen of British Columbia, Canada.

15 *Complaint* at para. 15.  As a citizen of British Columbia, he has the protection of Canadian laws and

16 must expect to also bear the burden of the application of Canadian bankruptcy law to his activities.

17 He is properly subject to Canadian court jurisdiction.  He should not be heard to argue that he should

18 not be subjected to the laws and authority of the law of Canada.  *See Daniels*, 604 F. Supp. at 693-94

19

20 (rejecting arguments of controlling shareholder and director of Bermudan company that comity

21 should not be extended to Bermudan liquidation proceedings when shareholder and director

22 participated in decision to incorporate the business under the laws of Bermuda.)

23

24 ─────────────────

25 [8] Again, the McLean Parties deny any involvement whatsoever in the gaining access to or removing property or records from Braich's Bellingham, Washington motel room.

26

27 Brian G. McLean's and McLean
28 & Armstrong's Motion to Dismiss - 13

BUCKNELL STEHLIK SATO & STUBNER, LLP
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0144  •  fax (206) 587-0277

W:\CLIENTS\2713\103\dismiss motion.doc

Braich has adequate due process and substantive rights under the laws of Canada.  Indeed, the Canadian Bill of Rights sets forth fundamental rights guaranteed to all Canadian citizens and includes the right to due process of law.  Stehlik Decl.  Because of the integrity of the Canadian legal system comity has long been accorded to the Canadian judiciary.  It was specifically held in *YMCA v. Allstate Ins. Co.*, 275 3rd 1145, 1155 (C.A. D.C. 2002) that the Canadian legal system was similar enough to the United State's system to justify extending  comity to an order issued by the provincial court of Quebec.  The United States and Canada have long shared fundamental values and the legal systems in both countries have roots in English common law.  Extending comity to the Canadian bankruptcy proceedings is the right approach to take in this case.

For the reasons stated above, this Court should conclude that the Canadian bankruptcy laws discussed above are entitled to comity and that, more generally, the Canadian bankruptcy proceedings in toto should likewise be afforded comity.  Deference to the Canadian laws and the Canadian proceeding requires dismissal of this case as explained further below.

**C.      Determination of Canadian Law.**

Fed. R. Civ. Pro. 44.1 provides this Court broad discretion to determine foreign law.  *See* 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2444 (2007 update).  This rule specifically states:

> A party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice.  The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.  The court's determination shall be treated as a ruling on a question of law.

Brian G. McLean's and McLean
& Armstrong's Motion to Dismiss - 14

BUCKNELL STEHLIK SATO & STUBNER, LLP
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0144  •  fax (206) 587-0277

W:\CLIENTS\2713\103\dismiss motion.doc

1   "Matters of foreign law may be determined by the court, which may consider any relevant

2   material or source, including testimony."  *Reebok Int'l Limited v. McLaughlin*, 49 F.3d 1387, 1392

3   n.4 (9th Cir. 1995).

4   In support of its motion to dismiss, KPMG submitted the declaration of Douglas I. Knowles

5   who has extensive experience in Canadian bankruptcy and insolvency law.  *See* Declaration of

6   Douglas I. Knowles dated April 19, 2007 ("Knowles Decl.").  Mr. Knowles is the Chair of the

7   National Insolvency and Workout Group of Fraser Milner Casgrain LLP, one of Canada's

8   preeminent law firms.  Knowles Decl. ¶ 2.  Mr. Knowles has practiced in the insolvency and

9

10   workout field for in excess of 30 years, and is extremely familiar with applicable Canadian

11   bankruptcy and insolvency law, including the procedures a Canadian bankrupt must follow to bring

12   a claim against the trustee administering the bankrupt's estate.  *Id.*  The law discussed by

13   Mr. Knowles, including statutes and judicial opinions, are attached as exhibits to Mr. Knowles'

14   Declaration.  *See* Knowles Decl. Exs. B-G.

15

16   **D.      This Court Lacks Subject Matter Jurisdiction Because Braich Failed
         to Obtain Permission from the Supreme Court of British Columbia to
17       Bring this Action.**

18   When a plaintiff fails to meet a prerequisite to filing a lawsuit, the court lacks subject matter

19   jurisdiction and the plaintiff's complaint must be dismissed.  *See, e.g.*, *McNeil v. United States*, 508

20   U.S. 106, 113 (1993); *Southwest Center for Biological Diversity v. U.S. Bureau of Reclamation*, 143

21   F.3d 515, 520 (9th Cir. 1998) (plaintiff's failure to comply with notice prerequisite is "absolute bar"

22   to lawsuit); *Washington Trout v. McCain Foods, Inc.*, 45 F.3d 1351, 1355 (9th Cir. 1995) (plaintiff's

23   failure to comply with notice prerequisite deprives court of subject matter jurisdiction); *Caton v.*

24

25   *United States*, 495 F.2d 635, 638-39 (9th Cir. 1974) (plaintiff's failure to meet statute's pre-lawsuit

26

27   Brian G. McLean's and McLean
28   & Armstrong's Motion to Dismiss - 15

W:\CLIENTS\2713\103\dismiss motion.doc

1   requirements deprives court of subject matter jurisdiction).  Canadian law quite clearly requires that

2   a Canadian court must first grant permission to sue a bankruptcy trustee before such an action may

3   be brought.  Section 215 of the Bankruptcy and Insolvency Act provides as follows:

4          **No action against Superintendent, etc., without leave of court** – Except by leave
5          of the court, no action lies against the Superintendent, an official receiver, and
           interim receiver or a <u>trustee</u> with respect to any report made under, or <u>any action</u>
6          <u>taken pursuant to, this Act</u>.

7       Bankruptcy and Insolvency Act § 215, R.S.C. 1985, c. B-3 (emphases added, hereafter

8   "Section 215").  Further, leave to bring such an action should be sought from the court presiding

9   over the related bankruptcy action:

10         [T]he cases lean more toward the granting of leave by the court of original
11         jurisdiction in the bankruptcy.  In addition, as a practical matter, <u>I find that the court</u>
           <u>of the originating jurisdiction should be the court to grant leave, as it has an overall</u>
12         <u>knowledge of the affairs of the bankrupt.</u>  It is that court that should determine if
           leave should be granted to commence an action against the trustee in bankruptcy as
13         proposed by the plaintiff, and whether such action should be brought as part of the
           existing action . . . or in a new action . . . .
14

15  *Totalline Transport Inc. v. Caron Belanger Ernst & Young Inc.*, [1999] O.J. No. 660 at ¶ 8 (Gen.

16  Div.) (emphasis added) (attached as Exhibit F to Knowles Decl.).

17       Although Section 215 specifically references only trustees and receivers, the protection

18  afforded by that statute extends to lawyers and other professionals employed by a trustee to assist the

19  trustee in performing its duties.  Although there is apparently no direct authority on this issue, there

20  is persuasive analogous authority under Canadian law.  The case of *London Drugs v. Kuehne &*

21  *Nagle Int'l, Ltd.*, (1992) S.C.J. #84, the Supreme Court of Canada dealt with the issue of whether an

22

23  employee of a warehousing company was protected by his employer's contractual limitation on

24  liability.  The employee had damaged a piece of machinery stored at his employer's warehouse and

25

26

27  Brian G. McLean's and McLean
28  & Armstrong's Motion to Dismiss - 16

**BUCKNELL STEHLIK SATO & STUBNER, LLP**
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0144 • fax (206) 587-0277

W:\CLIENTS\2713\103\dismiss motion.doc

1   the owner sued the individual employee for damages.  The court set forth a two part test to determine

2   whether or not the employee was protected by the scope of a contractual limitation of liability

3   provision that by its terms benefited only the employer.  The Supreme Court of Canada ruled that

4   two conditions must be met for an employee to be so protected.  They are: (1) the limitation of

5   liability clause must either expressly or impliedly extend to benefit the employees seeking to rely

6

7   upon it, and (2) the employee seeking the benefit of the limitation clause must have been acting in

8   the course of his employment and must have been performing the services provided for in contract

9   between the employer and the plaintiff when the loss occurred.  The *London Drugs v. Keuhne &*

10  *Nagle Int'l, Ltd.* decision continues to enjoy vitality in the Canadian courts, having been cited by the

11  British Columbia Court of Appeals as recently as 2006.  *See*, *Kitimat v. Alkan, Inc.* [2006] B.C.J.

12  #3676.  The *London Drugs* rule was further refined by the British Columbia Court of Appeals in the

13  case of *Orange Julius Canada, Ltd. v. Surrey* [2000] B.C.J. #1655.  In that case, the British

14

15  Columbia Court of Appeals set forth two factors to assist in the determination of whether an

16  intention to benefit a third party should be implied from a limitation of liability clause.  These

17  factors are: (1) whether there is an identity of interest between the employee and the employer as to

18  the performance of the employer's contractual obligations, and (2) whether in the circumstances of

19

20  the contracts performance, a contracting party could be taken to know that the services to be

21  provided under the contract would be performed by the employees of the other contracting party.

22          Of course here, we are dealing with a statute not a contractual provision.  However, the

23  statute should be construed consistent with the rules of construction concerning contract language.

24  Canadian courts have recognized that the rules for the construction of statutes are very like those

25

26

27  Brian G. McLean's and McLean

28  & Armstrong's Motion to Dismiss - 17

BUCKNELL STEHLIK SATO & STUBNER, LLP
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0144  •  fax (206) 587-0277

W:\CLIENTS\2713\103\dismiss motion.doc

1  which apply to the construction of other documents, especially with regard to one crucial rule, viz.

2  "that, if possible, the words of an act of Parliament must be construed as to give sensible meaning to

3  them".  Odgers' Construction of Deeds and Statutes (5th Ed.) by Gerald Dworkin (1967).

4          By analogy to the facts and circumstance here, Section 215 should be interpreted to apply to

5  the McLean Parties.  As legal counsel to the KPMG, the McLean Parties certainly have an identity in

6  interest with KPMG.  Further, it is reasonable to expect that a professional hired by the trustee to

7  assist the trustee in performing its duties would share the same protections and immunities as the

8  trustee himself.  Lastly, based on the plaintiff's own allegations, it is clear that the McLean Parties

9  were acting in the course of their engagement by KMPG and were performing services pursuant to

10 the engagement.  As such, all of the elements necessary to give rise to justify extending the

11 protections of Section 215 to the McLean Parties by implication.

12         Moreover, it stands to reason that Section 215 of the Canadian Bankruptcy and Insolvency

13 Act should apply to the trustee's counsel.  There is no reason to distinguish between the trustee and

14 those acting on the trustee's behalf pursuant to court authorization.  Section 215 serves as a

15 prophylactic against vexatious lawsuits against bankruptcy officials by disgruntled parties in interest.

16 This purpose would be drastically undermined if the protections afforded to the trustee were not

17 extended to the trustee's professionals who act on instruction from the trustee.

18         Consistent with the policy goals of Section 215, leave to sue will not be granted where the

19 acts complained of constitute normal conduct of a trustee or when the evidence shows that the

20 trustee was carrying out its duties and responsibilities under the Bankruptcy and Insolvency Act

21 when the conduct complained of occurred.  *Nicholas v. Anderson*, [1996] O.J. No. 1068 at ¶ 33

22

23

24

25

26

27 Brian G. McLean's and McLean
28 & Armstrong's Motion to Dismiss - 18

**BUCKNELL STEHLIK SATO & STUBNER, LLP**
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0144 • fax (206) 587-0277

W:\CLIENTS\2713\103\dismiss motion.doc

1    (Gen. Div.) (attached as Exhibit F to Knowles Decl.); *Perez v. Deloitte & Touche Inc.*, [1997] O.J.

2    No. 3623 at ¶ 21 (Gen. Div.) (attached as Exhibit F to Knowles Decl.).  It is clear from Braich's own

3    allegations that his claims against the McLean Parties arise from actions undertaken by the McLean

4    Parties in the course of representing KPMG in its role as a bankruptcy trustee.  *See* Complaint ¶ 23;

5    *see also* ¶¶ 113-16, 143 (alleging KPMG's actions were taken in connection with KPMG's duties as

6    administrator of Braich's bankruptcy estate and that the McLean Parties' actions were taken, "within

7    the scope of and course of his employment as the attorney for KPMG, Inc…".).  More specifically,

8

9    the actions complained of by Braich were authorized by an order of the Supreme Court of British

10   Columbia.[9]  *See* Rusko Decl. ¶¶ 3-9 & Exs. A, B, E.  If Braich believed those orders were granted

11   improvidently or carried out improperly, his redress lay with appeal in Canada or a challenge to the

12   trustee's actions under § 37 of the CBIA.  But Braich did not appeal or challenge the orders in a

13   traditional fashion in a Canadian court.  *Id*. ¶ 9.  Instead, he is trying to avoid any accountability to

14   the Canadian court system by suing here for actions related directly to his Canadian bankruptcy

15

16   proceeding.  This Court should not countenance Braich's abuse of the judicial process, and his

17   claims against the McLean Parties should be dismissed for lack of subject matter jurisdiction.

18            **E.      The Complaint Against the McLean Parties is also Barred Under the**
19                      **Doctrine of Comity.**

20            Comity principles also favor this Court's abstention from this matter, at least pending

21   The Canadian court's resolution of whether Braich may bring this claim.  Indeed, Canadian

22   Courts presented with cases for which the plaintiff has not yet obtained leave to sue a trustee

23

---

24   [9]   Braich's primary complaint regarding the KPMG Defendants appears to arise from their efforts to obtain Braich's
          records from the Washington Department of Financial Institutions.  *See* Complaint ¶¶ 113, 129.  But these actions
25        were undertaken with the express authority of Canadian law.  *See* Knowles Decl., Ex. C.

26

27   Brian G. McLean's and McLean
     & Armstrong's Motion to Dismiss - 19

28

**BUCKNELL STEHLIK SATO & STUBNER, LLP**
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0144  •  fax (206) 587-0277

W:\CLIENTS\2713\103\dismiss motion.doc

1    have stayed those proceedings until a sister court  presiding over the bankruptcy decides

2    whether or not to grant leave to sue.  *See Totalline Transport* at ¶ 17.

3          The government of Canada has a paramount interest in policing its bankruptcy

4

5    system and its bankruptcy officials.  Canadian courts are much better suited to adjudicate

6    alleged wrong doing by Canadian bankruptcy officials than is this court.  Canadian law

7    affords ample remedies for alleged wrongdoings by bankruptcy officials.  Last but not least,

8    Braich is a Canadian citizen.  All of these factors weigh heavily in favor of extending

9
     deference to Canadian bankruptcy law and procedure by abstaining from hearing Braich's
10
     claims against his bankruptcy trustee and its legal counsel.
11

12          Abstention is also called for by a related doctrine called the act of state doctrine.  Every

13   sovereign state is bound to respect the independence of every other sovereign state, and therefore

14   "the courts of one country will not sit in judgment on the acts of the government of another, done

15   within its own territory."  *Underhill v. Hernandez*, 168 U.S. 250, 252 (1897).  The act of state

16
     doctrine therefore "precludes the courts of this country from inquiring into the validity of the public
17
     acts a recognized foreign sovereign power committed within its own territory."  *Banco Nacional de*
18
19   *Cuba v. Sabbatino*, 376 U.S. 398, 401 (1964).  Instead, redress of such grievances must be obtained

20   through diplomatic channels.  *Republic of Austria v. Altmann*, 541 U.S. 677, 700 n.20 (2004).  The

21   act of state doctrine is based both on international comity and the separation of powers in the United

22   States government, *i.e.*, a court's judgment of the validity of a foreign government's act within its

23
     own borders could hinder the executive branch's conduct of foreign affairs.  *W.S. Kirkpatrick & Co.,*
24
     *Inc. v. Environmental Tectonics Corp., Int'l*, 493 U.S. 400, 404 (1990).
25

26

27   Brian G. McLean's and McLean
     & Armstrong's Motion to Dismiss - 20
28

W:\CLIENTS\2713\103\dismiss motion.doc

1    The act of state doctrine applies here because all of the McLean Parties conduct alleged by

2    Braich was undertaken in furtherance of their duties as a representative of the Supreme Court of

3    British Columbia as trustee's counsel.  Because both the declaratory and injunctive relief Braich

4    seeks for his claims relating to the McLean Parties' activities would require this Court to invalidate

5    acts taken on behalf of the Canadian government, the act of state doctrine requires that this Court

6    dismiss Braich's claims against the McLean Parties.[10]  *W.S. Kirkpatrick*, 493 U.S. at 405.

7

8    F.    **Alternatively, this Action Should be Dismissed Because the McLean Parties, as Agents of the Government of Canada, are Immune from Suit Under 28 U.S.C. §1602 et seq.**

9

10    Generally, the Foreign Sovereign Immunities Act ("FSIA") renders foreign governments and

11    their agents or instrumentalities immune from suit in United States Courts for public acts taken by

12    those governments.  There are exceptions to this immunity but they do not apply here.[11]  The

13    pertinent portion of the FSIA, 28 U.S.C. § 1604, provides:

14

15        Subject to existing international agreements to which the United States is a party at
         the time of enactment of this Act a foreign state shall be immune from the jurisdiction

16        of the courts of the United States and of the States except as provided in sections
         1605 and 1607 of this chapter.

17

18    Individuals that commit acts within their official capacity with a foreign government are

19    considered agencies or instrumentalities of the foreign government and they enjoy the protection of

20    immunity under the FSIA.  In *Velasco v. Government of Indonesia,* 370 F.3rd 392 (4th Cir. 2004), the

21

22    _____

    [10]  That the McLean Parties, as opposed to the Government of Canada, is raising the act of state doctrine does not affect

23    its applicability.  A private party may invoke the doctrine.  Indeed, the doctrine may apply even where no foreign
    sovereign is a named defendant, if the validity of the acts of the foreign sovereign will be passed on by the court.  *Hunt*

24    *v. Mobile Oil Corp.*, 550 F.2d 68, 75-78 (2d Cir. 1977).

    [11]  For example, foreign governments are not immune from suits in the United States for certain commercial activities

25    conducted United States.  E.g., *Gould, Inc. v. Mitsui Mining & Smelting Co.*, 947 F.2d 218 (6th Cir. 1991).

26

27    Brian G. McLean's and McLean
      & Armstrong's Motion to Dismiss - 21

28

**BUCKNELL STEHLIK SATO & STUBNER, LLP**
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0144 • fax (206) 587-0277

W:\CLIENTS\2713\103\dismiss motion.doc

1   Fourth Circuit Court of Appeals acknowledged what is perhaps the obvious, that claims against

2   individuals acting for a foreign state are equivalent to claims against the foreign state itself.

3        Based upon the allegations in the Complaint, it is clear that the McLean Parties were acting

4   in their official capacities in representing KPMG in its official capacity, both as appointed officers of

5   the Canadian bankruptcy court.  Canadian bankruptcy proceedings are supervised by a

6   Superintendent of Bankruptcy who is appointed by the Provincial Governor.  The Superintendent of

7   Bankruptcy licenses and supervises all actions of bankruptcy trustees and has the authority to

8   conduct investigations into the debtor's affairs.  And, of course, as here, the legal issues arising in

9   bankruptcy cases are dealt with by provincial courts.  Legal counsel for the trustee is an extension of

10  the trustee and therefore should be regarded similarly.  As such, under the principles espoused in the

11  *Velasco* case, bankruptcy trustees and their lawyers are representatives of a foreign state for the

12  purposes of the FSIA and therefore are immune from suit in courts of the United States.

13     **G.**    **Braich's Complaint Fails to State a Cause of Action Against McLean**.

14       It is beyond dispute that in July of 2004 Braich did not have either ownership or possessory

15  rights in the property of which he claims to have been deprived.  As a matter of law, specifically §

16  67(1)(c) of the BIA, all of Braich's property or property rights belonged to the bankruptcy estate

17  which the trustee administers, in the first instance, for the benefit of creditors.  By definition, Braich

18  had no property rights that could have been taken from him, rightly, wrongly or otherwise.  Each of

19  Braich's causes of action share a common element, which is that through various improper acts by

20  various actors he was wrongfully deprived of his property or property rights.  Because he had no

21  rights to either own or possess the property that was supposedly taken from him in July of 2004 he

22  could not have been wrongfully deprived of such rights and for that reason his claims are fatally

23  flawed.  These rights all belonged to his bankruptcy estate.  Braich has failed to state a cause of

24

25

26

27  Brian G. McLean's and McLean

28  & Armstrong's Motion to Dismiss - 22

**BUCKNELL STEHLIK SATO & STUBNER, LLP**
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0144  •  fax (206) 587-0277

W:\CLIENTS\2713\103\dismiss motion.doc

1   action based on wrongful deprivation of property rights and all of his claims based on that claim

2   must be dismissed pursuant to F. R. Civ. P. 12(b)(6).

3                                    **IV.    CONCLUSION**

4            For the foregoing reasons, Braich's claims against the McLean Parties should be dismissed.

5   At a minimum, the action must be stayed as to the McLean Parties pending the Supreme Court of

6

7   British Columbia's determination of whether Braich may bring claims against the counsel for the

8   trustee of his bankruptcy estate.

9            A proposed order is submitted herewith.

10           DATED this 1st day of May, 2007.

11                                                  BUCKNELL STEHLIK SATO & STUBNER, LLP

12

13                                                  _____/s/ Jerry N. Stehlik_____
                                                    Jerry N. Stehlik, WSBA #13050
14                                                  Andrea Orth, WSBA#24355
15                                                  of Attorneys for Brian G.N. McLean and McLean &
                                                    Armstrong, LLP
16

17

18

19

20

21

22

23

24

25

26

27   Brian G. McLean's and McLean
28   & Armstrong's Motion to Dismiss - 23

W:\CLIENTS\2713\103\dismiss motion.doc