THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| ERWIN SINGH BRAICH, | ) | NO.    CV7-0177C |
| Plaintiff, | ) | |
| | ) | PLAINTIFF'S RESPONSE TO |
| vs. | ) | DEFENDANTS' BRIAN McLEAN'S |
| | ) | AND McLEAN & ARMSTRONG'S |
| STEVE MITTELSTAEDT, ET AL., | ) | MOTION TO DISMISS |
| | ) | |
| Defendants. | ) | |
| | ) | *(EVIDENTIARY HEARING REQUESTED)* |

## I. PRELIMINARY STATEMENT

Comes now the Plaintiff, Erwin Singh Braich, and submits this Response to Defendants' Brian McLean's and McLean & Armstrong's (collectively "the McLean Defendants'") Motion to Dismiss. The McLean Defendants, for the most part, parrot the assertions made by the KPMG Defendants.  It is put forth, once again, that as a matter of law,  a Canadian Bankruptcy statute can divest a federal court of its original subject matter jurisdiction, regarding issues of United States constitutional law as well as federal statutes.  It is asserted that § 215 of the BIA and other sections of the BIA, disallow an individual to claim violations of his civil rights under the U.S. and Washington State Constitutions.  The McLean

Plaintiff's Response toBrian G. McLean's and
McLean & Armstrong, LLP's Motion to Dismiss

NO.    CV7-0177C - Page 1

HWB - ESQ., PLLC
PO BOX 13085
Mill Creek, WA 98082
(206) 774-0845
FAX (206) 350-0134

1  Defendants--as the KPMG Defendants did--misapply the legal principles of subject matter jurisdiction,

2  international comity, and the application of foreign law, in support of their untenable position.

3      The McLean Defendants' make an anemic attempt to insert extraneous issues (which directly

4  relate to their misconduct and conflicted interests in the Canadian bankruptcy proceedings) by way of the

5  Declaration of Defendant McLean, and references to the Declaration of Robert Rusko.  They do this

6  apparently in an effort to confuse the issue before this Court, and to have this Court prejudge the merits

7  of Plaintiff's lawsuit,  without having the dignity or honesty to fully and clearly refute the allegations by

8  way of a formal Answer. They hide behind a contorted analysis of inapplicable foreign statutes, without

9  having the courage to seek recognition by a U.S. bankruptcy court of the claimed legitimacy of their

10  actions, as required by applicable U.S. bankruptcy laws.

11      The civil rights violations alleged in Plaintiff's Complaint in no way necessitate the

12  contravention of any foreign proceeding; because no foreign jurisdiction has authority over the rights

13  protected under the US and Washington State Constitutions, or federal and Washington state laws. There

14  is no Canadian Court which would in any respect have competent jurisdiction over Plaintiff's civil rights

15  claims alleged in the Complaint.

16

17  **II.  ARGUMENT**

18  **A.  KPMG Response**

19      Plaintiff in this Response explicitly incorporates by reference, as if fully set forth herein, its

20  *Plaintiff's Response to KPMG Defendant's Motion to Dismiss* ( Document 22) and all supporting

21  Declarations, Exhibits, and other filed materials (Documents 22-2 through 22-36) in support of its

22  *Response to the McLean Defendants' Motion to Dismiss*.

23  **B.  International Comity.**

24      A district court's dismissal of an action based on considerations of international comity will be

25  reviewed for abuse of discretion on appeal. *JP Morgan Chase Bank v. Altos Hornos De Mexico, S.A.*,

26  412 F.3d 418, 422-23 (2d Cir. 2005).  This " abuse of discretion standard is stricter than the flexible

27

28

Plaintiff's Response toBrian G. McLean's and
McLean & Armstrong, LLP's Motion to Dismiss

NO.    CV7-0177C - Page 2

1   abuse of discretion standard used in other areas of law" *Intel Corp. v. Advanced Micro Devices, Inc.,* 12

2   F.3d 908, 912 (9th Cir. 1993).  This more rigorous standard is required because by definition the district

3   court has chosen to abstain from exercising jurisdiction which it rightfully would otherwise exercise and

4   "there is little practical distinction between review for abuse of discretion and review *de novo*."

5   *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir. 1998).

6          International Comity is "the recognition which one nation allows within its territory to the

7   legislative, executive or judicial acts of another nation, having due regard both to international duty and

8   convenience." *Hilton v. Guyot*, 159 U.S. 113, 163-64 (1895).  International comity involves the

9   discretion of a federal court to decline to exercise jurisdiction over a case before it when that case is

10  pending in a foreign court with proper jurisdiction. See *Maxwell Communication Corp. v. Societe*

11  *Generale (In re Maxwell Communication Corp.)*, 93 F.3d 1036, 1047 (2d Cir. 1996). Application of this

12  principle has been found to be "amorphous" and "fuzzy."  *JP Morgan Chase Bank*, 412 F.3d at 423,

13  quoting  Harold G. Maier, Extraterritorial Jurisdiction at a Crossroads: An Intersection Between Public

14  and Private International Law, 76 Am. J. Int'l L. 280, 281 (1982).  Even where the doctrine of

15  international comity clearly applies ( unlike this case) it "is not an imperative obligation of courts but

16  rather is a discretionary rule of 'practice, convenience, and expediency.'" *Id.*, quoting *Pravin Banker*

17  *Assocs., Ltd. V. Banco Popular Del Peru*, 109 F.3d 850, 854 (2d Cir. 1997).

18         The McLean Defendants seek to apply the doctrine to "compel granting comity to the applicable

19  Canadian laws specifically, Section 215 of the Bankruptcy and Insolvency Act (R.S.C. 1985 , c. B-3)"

20  (*McLean Defendants' Motion,* page 10, lines 16-17).  In essence they ask this Court to dismiss this

21  action based solely on their statement as to what they believe the meaning and scope of Section 215 is in

22  relation to its applicability beyond the judicial and territorial jurisdiction of Canada.  They do this

23  without any formal judgment, ruling, or order indicating the validity of their proposition. Additionally, at

24  no time have they ever followed the requirements of U.S. bankruprtcy law in seeking recognition of the

25  purported lawful Canadian bankruptcy proceeding against the Plaintiff, and thereby invoke the ability to

26  have a valid ancillary proceeding commenced in the United States.

27

28

Plaintiff's Response toBrian G. McLean's and
McLean & Armstrong, LLP's Motion to Dismiss

NO.     CV7-0177C - Page 3

1    The doctrine of abstention is "an extraordinary and narrow exception to the duty of a district

2    court to adjudicate a controversy properly before it" and may be invoked only in certain exceptional

3    circumstances where it would "clearly serve an important countervailing interest." *Morton College Bd.*

4    *Of Trustees of illinois Community College Dist. No. 527 v. Town of Cicero*, 18 F. Supp. 2d 921. 924

5    (N.D. Ill. 1998) (quoting *International College of Surgeons v. City of Chicago*, 153 F.3d 356, 359 (7th

6    Cir. 1998)).

7    Normally, concurrent jurisdiction between United States courts and the courts of a foreign

8    sovereign does not result in a conflict requiring abstention. *China trade & Dev. Corp. V. M.V. Choong*

9    *Yong*, 837 F.2d 33, 36 (2d Cir. 1987).  The one recognized exception is when the two parallel actions, in

10   the foreign and US courts, both relate to foreign bankruptcy proceedings specifically in regards to

11   "equitable and orderly distribution of a debtor's property."  See *Victrix S.S. Co., S.A. v. Salen Dry Cargo*

12   *A.B.*, 825 F.2d 709, 713-714, 715 (2d Cir. 1987)(Plaintiff sought to collect damages and  filed a claim

13   against the bankrupt estate, and attached bankrupt's accounts in New York); accord  *JP Morgan Chase*

14   *Bank*, 412 F.3d at 424 (Plaintiff sought a judgment declaring that certain funds held in a collection

15   account in its bank belonged to it); *Finanz AG Zurich v. Banco Economico S.A.,* 192 F.3d 240, 246 (2d

16   Cir. 1999)(Plaintiff  sought to recover on certain promissory notes allegedly guaranteed by the

17   defendant). However, a court should afford comity to foreign bankruptcies only if those proceedings do

18   not violate the laws or public policy of the United States, and if the foreign court abides by fundamental

19   standards of procedural fairness. *Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 458 (2d Cir.

20   1985).

21   Outside of this discrete set of circumstances specifically relating to parallel proceedings in regards

22   to the distribution of a debtors explicitly identified assets to creditors, there is no support for the McLean

23   Defendants' assertion that "well recognized principles of comity" require this Court's abstention in

24   deference to a foreign proceeding.   As stated by the U.S. Supreme Court in relation to the exercise of

25   abstention  "[o]nly the clearest of justifications will warrant dismissal." *Colorado River*, 424 U.S. at 819.

26   The task of a district court evaluating a request for dismissal based on a parallel foreign proceeding is not

27

28

Plaintiff's Response toBrian G. McLean's and
McLean & Armstrong, LLP's Motion to Dismiss

NO.    CV7-0177C - Page 4

HWB - ESQ., PLLC
PO BOX 13085
Mill Creek, WA 98082
(206) 774-0845
FAX (206) 350-0134

1    to articulate a justification for the exercise of jurisdiction, but rather to determine whether exceptional

2    circumstances exist that justify the surrender of that jurisdiction.   *Moses H. Cone Mem'l Hosp. V.*

3    *Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983).  The McLean Defendants should listen clearly to the

4    Supreme Courts edict that federal courts have a "virtually unflagging obligation" to exercise jurisdiction.

5    *Colorado River*, 424 U.S. at 817.

6    **C. Colorado River/Moses H. Cone Doctrine**

7    The Colorado River Doctrine is the U.S. Supreme Court doctrine regarding abstention of

8    jurisdiction relating to "parallel litigation." It provides an appropriate analytical framework to measure

9    the propriety of the use of abstention in order to stay or dismiss an action which otherwise is properly

10   before the court.  Although *Colorado River* concerned a concurrent state court proceeding, the general

11   principles that govern the application of the doctrine have been held to also apply with respect to

12   proceedings in a foreign court.  See *Finova Capital Corp. V. Ryan Helicopters U.S.A., Inc.*, 180 F.3d

13   896, 898 (7th Cir. 1999).

14   *Colorado River* listed four factors that a federal court may consider in determining whether to stay

15   or dismiss an action pending the outcome of a concurrent proceeding in another jurisdiction: (1) whether

16   the alternative court first assumed jurisdiction over the matter at issue; (2) the inconvenience of the

17   federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which jurisdiction

18   was obtained by the concurrent forums. *Colorado River*, at 818-19.

19   These suggested factors were expanded in the Supreme Court case of *Moses H. Cone Mem'l*

20   *Hosp. V. Mercury Const. Corp.*, 460 U.S. 1 (1983), to include (5) whether federal or the other

21   jurisdiction's law provides the rule of decision on the merits; and (6) whether the other jurisdiction's

22   proceedings are inadequate to protect the federal litigant's rights.  *Moses H. Cone,* at 23, 26.

23   What must be pointed out at this juncture is that even before one applies the doctrine there must--

24   as a matter of first determination-- be a factual showing  that the matter sought to be stayed or dismissed

25   is in fact "parallel" to some other contemporaneous foreign legal action.  A suit is "'parallel' when

26   substantially the same parties are contemporaneously litigating substantially the same issues in another

27

28

Plaintiff's Response toBrian G. McLean's and
McLean & Armstrong, LLP's Motion to Dismiss

NO.     CV7-0177C - Page 5

1  forum." *Interstate Material Corp. V. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988). " The

2  question is not whether the suits are formally symmetrical, but whether there is a substantial likelihood

3  that the foreign litigation will dispose of all claims presented in the federal case." *AAR Int'l, Inc. V.*

4  *Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001).

5       The McLean Defendants indicate the following in regards to the Canadian proceeding involving

6  the Plaintiff:

7                    **Braich is in involuntary bankruptcy proceedings**
                   **in Canada.... Braich remains an undischarged**
8                    **bankrupt in the Canadian bankruptcy**
                   **proceeding, which remains pending before the**
9                    **Supreme Court of British Columbia**. *Mclean*
                   *Defendants' Motion*, page 4, lines 1, 9-10.
10

11       Plaintiff's filed Complaint states, among other assertions, the following in regards to the nature of

    his suit against the McLean Defendants, as well as the other defendants:
12
                        **At issue in this case are the Plaintiff's:**
13
              **a.**    **Right to Property which was taken and held in violation**
14                     **of  the United States Constitution Amendments 4 and 14,**
                    **and Washington State Constitution Article I, Sections 3**
15                     **and 7;**
              **b.**    **Right to Privacy which was invaded in violation of the**
16                     **United States Constitution Amendments 1, 4, 5, 9, and**
                    **14, and Washington State Constitution Article I, Section**
17                     **7;**
              **c.**    **Right to Equal Protection which was denied in violation**
18                     **of the United States Constitution Amendment 14;**
              **d.**    **Right to Procedural Due Process of Law which was**
19                     **denied  in violation of the United States Constitution**
                    **Amendments 5 and 14, and Washington State**
20                     **Constitution Article I, Section 3;**
              **e.**    **Right to Substantive Due Process of Law which was**
21                     **denied in violation of the United States Constitution**
                    **Amendments 5 and 14, and the Washington State**
22                     **Constitution Article I, Section 3; and**
              **f.**    **Right to be free from various common law torts**
23                     **committed upon him, in violation of Washington state**
                    **law, as further enumerated below**. *Braich Complaint.*
24                     Page , lines 12-27.

25       The present matter is in no way legally parallel to the stated Canadian bankruptcy proceeding.

26       **D. Applicability of Foreign Sovereign Immunity**

27

28
    Plaintiff's Response toBrian G. McLean's and
    McLean & Armstrong, LLP's Motion to Dismiss

    NO.     CV7-0177C - Page 6

HWB - ESQ., PLLC
PO BOX 13085
Mill Creek, WA 98082
(206) 774-0845
FAX (206) 350-0134

1    Federal courts have construed foreign sovereign immunity to extend to an individual acting in his

2    official capacity on behalf of a foreign state. *See, e. g., Chuidian v. Philippine Nat'l Bank*, 912 F.2d 1095,

3    1101-03 (9th Cir. 1990) (interpreting section 1603(b) to include individuals sued  in their official

4    capacity); *In re Estate of Ferdinand E. Marcos Human Rights Litigation,* 978 F.2d 493, 496 (9th Cir.

5    1992), *cert. denied, Marcos-Manotoc v. Trajano*, 508 U.S. 972, 125 L. Ed. 2d 661, 113 S. Ct. 2960

6    (1993);*Byrd v. Corporacion Forestal y Industrial de Olancho S. A.*, 182 F.3d 380, 388 (5th Cir. 1999)

7    (FSIA protects individuals acting within their official capacity as officers of corporations considered

8    foreign sovereigns). Claims against the individual in his official capacity are the practical equivalent of

9    claims against the foreign state. *Chuidian,* 912 F.2d at 1101. The FSIA, however, does not immunize an

10   official who acts beyond the scope of his authority. Id. at 1106.

11   Neither the McLean Defendants nor the KPMG Defendants are "agents" of the Government of

12   Canada for purposes of the Foreign Sovereign Immunities Act.  The Supreme Court of Alberta, after

13   citing numerous prior Canadian legal precedent held that  "[a] receiver-manager appointed by the court is

14   an officer of the court who acts in pursuance of his appointment on his own responsibility, and not as an

15   agent." *Credit Foncier Franco-Canadien v. Edmonton Airport Hotel Co. Ltd., Jake Superstein et al,* 55

16   W.W.R. 734, 745 (Alta., 1966) (Attached hereto as Appendix A).  The Supreme Court in Bankruptcy, for

17   Ontario,  also addressed this issue and held that:

18   [a]s to the right of a [ ] party to sue a receiver or a trustee... There is no mystery about the duties and

19   liabilities of an interim receiver or trustee in bankruptcy.  There is no distinction... between an nterim

20   receiver appointed in bankruptcy and one appointed I other matters by the court unless the Act so

21   provides.  Each is personally liable to individuals dealing with them on the business unless the express

22   terms of the contract exclude, as they may do, any personal liability. *J.H. Smith and W. E. Smith c. M.M.*

23   *Tew R.S. Hays v. M.M. Tew (In re j.H. Smith & Son),*10 C.B.R. 393, 394 (1929)(attached hereto as

24   Appendix B).

25   The Plaintiff's Complaint explicitly alleges that both the McLean and the KPMG Defendants

26   acted in their respective individual capacities in the violation of his civil rights.  To the extent any

27

28
Plaintiff's Response toBrian G. McLean's and
McLean & Armstrong, LLP's Motion to Dismiss

NO.     CV7-0177C - Page 7

1   pleadings in the Complaint mistakes the law regarding foreign governmental agency immunity theory,

2   such pleadings do not and can not create a right of immunity where no such immunity exists under the

3   law.

4   **E.  Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)**

5   A motion under Rule 12(b)(6) should be granted only if "it appears beyond doubt that the plaintiff

6   can prove no set of facts in support of his claim which  would entitle him to relief." *Conley v. Gibson*,

7   355 U.S. 41, 45-46 (1957); *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1061 (9th Cir. 2004).  In testing

8   the sufficiency of a claim against a Rule 12(b)(6) challenge, a court must "accept all material allegations

9   in the complaint as true and construe them in the light most favorable to the plaintiff." *North Star Int'l v.*

10  *Arizona Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983).   However, the court need not "accept legal

11  conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from

12  the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752 (9th Cir. 1994).  A claim may be

13  dismissed as a matter of law if there is a lack of a cognizable legal theory or if there are insufficient facts

14  alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

15  1990).  The court must determine whether or not it appears to a certainty under existing law that no relief

16  can be granted under any set of facts that might be proved in support of plaintiffs claims. *De La Cruz v.*

17  *Tormey*, 582 F.2d 45, 48 (9th Cir. 1978).

18  The McLean Defendants argue that the Plaintiff, has no property rights which the Trustee, or others

19  acting on its behalf, are legally (and apparently ethically) bound to respect.   They state without hesitation,

20  that Section 67 (1) c of the BIA (attached hereto as Appendix C) mandates that all of  the Plaintiff's

21  "property and property rights belong to the bankruptcy estate" and is therefore rightfully under the control

22

23  of the trustee. *McLean Defendants' Motion* , Page 22, line 16.  While the McLean Defendants assert that

24  they did not take place in any conspiracy to deprive Mr. Braich of his civil rights in violation of U.S.

25  laws, it is clear that they believe they could have "rightly, wrongly or otherwise" done so pursuant to

26

27  Section 67. *McLean Defendant's Motion* , Page 22, line 18.

28

HWB - ESQ., PLLC
PO BOX 13085
Mill Creek, WA 98082
(206) 774-0845
FAX (206) 350-0134

However, Section 67 (1) c of the BIA does not confer upon the Trustee or the Trustees Attorneys anything close to the unfettered authority the McLean Defendants claim to possess.  Section 67 (1) provides in pertinent part:

> **(1) The property of a bankrupt divisible among his creditors shall not comprise**
>
> **(a) property held by the bankrupt in trust for any other person,**
>
> **(b) any property that as against the bankrupt is exempt from execution or seizure under any laws applicable in the province within which the property is situated and within which the bankrupt resides, or**
>
> **(b.1) such goods and services tax credit payments and prescribed payments relating to the essential needs of an individual as are made in prescribed circumstances and are not property referred to in paragraph (a) or (b),**
>
> **but it shall comprise**
>
> **(c) all property wherever situated of the bankrupt at the date of his bankruptcy or that may be acquired by or devolve on him before his discharge, and**
>
> **d) such powers in or over or in respect of the property as might have been exercised by the bankrupt for his own benefit.**

The McLean Defendants neglect to point out that Section 67 provides for certain exceptions to what "comprises" the property, including property held in trust (Section 67 (1) (a) ); and payments essential to the needs of an individual (Section 67 (1) (b)).

The Bankruptcy and Insolvency Act does not define the term "comprise" as used in Section 67.  It is a maxim of American statutory interpretation that terms which are not specifically defined are given a common law meaning. *Rupp v. United Sec. Bank (In re Kunz)*, 2005 Bankr. LEXIS 2455 (Bankr. Fed. App., December 14, 2005, Filed); *United States v. 144,774 Pounds of Blue King Crab,*

HWB - ESQ., PLLC
PO BOX 13085
Mill Creek, WA 98082
(206) 774-0845
FAX (206) 350-0134

*410 F.3d 1131 (9th Cir. 2005).* It should further be noted that the BIA defines "property" as primarily real estate and personal property.  It is unclear whether the statutes use of the term "personal property" would encompass items related to assets that were either exempt or documents used to conduct business affairs from which a bankrupt may ultimately restitute his debtors.  Either way, the term "comprise" clearly is a term intended to describe what encompasses the defendant's property as opposed to a term defining ownership over said property.

Importantly, Section 67 recognizes that not all the property of the bankrupt is at the disposal of the Trustee in Bankruptcy even if it is divisible for the creditors. Section 67 specifically excludes property exempted by the provincial authority from "execution or seizure." *Section 67( 1) (b).* Section 67 of the BIA by its own terms limits the ability of the Trustee in Bankruptcy from seizing or executing on exempt property as defined by each Province.  It is inconceivable that the McLean Defendants can make an argument that not even the KPMG Defendants, as the purported trustees, would dare make: that they have authority under Canadian bankruptcy law to seize, apparently throughout the world, all worldly possessions of Mr. Braich, without review by anyone or legal entity.

Assuming*, arguendo* that Section 67 applies to property situated in another country, Defendant's argument still fail because they do not cite any legal authority for the proposition that Section 67, or any other provision in the BIA, allows unfettered violations of civil rights in the United States.  The Plaintiff has asserted numerous violations of the civil rights laws of both the United States and Washington State. Defendants cite no statutory or case authority for their quite shocking legal determination that Mr. Braich is not protected by those laws because of his status as a

Plaintiff's Response toBrian G. McLean's and
McLean & Armstrong, LLP's Motion to Dismiss

NO.    CV7-0177C - Page 10

HWB - ESQ., PLLC
PO BOX 13085
Mill Creek, WA 98082
(206) 774-0845
FAX (206) 350-0134

1   bankrupt.  Mr. Braich were specifically pleaded these allegations of civil rights violations not only

2   regarding his right to property, but also other rights, including but not limited to (1) right to privacy,

3   (2) right to equal protection, (3) right to procedural due process, (4) right to substantive due process,

4   and (5)  right to be free from tortuous acts/omissions. Plaintiff has explicitly and specifically alleged

5   violations of the above rights. *See Generally, Complaint,* pages 3 through 5.

6

7        Mr. Braich's status as an "involuntary bankrupt" individual does not confer upon the KPMG

8   or the McLean Defendants the right to violate long-standing United States civil rights protections.

9   This is particularly true in Washington State, which has a specific privacy clause written into the

10  state constitution which has been interpreted as providing greater rights than contained in the federal

11  constitution.  *See, State v. Jackson*, 102 Wn.2d 432, 439, 688 P.2d 136 (1984); *State v. Myrick*, 102

12  Wn.2d 506, 510, 688 P.2d 151 (1984); *State v. Chrisman*, 100 Wn.2d 814, 817, 676 P.2d 419

13  (1984); *State v. Ringer*, 100 Wn.2d 686, 690, 674 P.2d 1240 (1983); *State v. Rinaldo*, 36 Wn. App.

14  86, 89, 673 P.2d 614 (1983), aff'd, 102 Wn.2d 749, 689 P.2d 392 (1984); *State v. White*, 97 Wn.2d

15  92, 108, 640 P.2d 1061 (1982); *Alderwood Assocs. v. Washington Envtl. Coun*., 96 Wn.2d 230, 238,

16  635 P.2d 108 (1981); *State v. Simpson*, 95 Wn.2d 170, 177, 622 P.2d 1199 (1980); *State v. Fain*, 94

17  Wn.2d 387, 392, 617 P.2d 720 (1980); *State v. Hehman*, 90 Wn.2d 45, 49, 578 P.2d 527 (1978).

18

19       In this context it is all the more troubling when one reviews the breathtaking assertions the

20  McLean Defendants make regarding their right to seize Plaintiff's property "rightly, wrongly or

21  otherwise" (although they deny any complicity in doing so).  This legal view harkens back to the

22  legal arguments made by the slave owning defendant John A. Sanford, in the pre-Civil War Supreme

23  Court case of *Scott v. Sanford*, 60 U.S. 293 (1854).  Similar to the McLean Defendants' present

Plaintiff's Response toBrian G. McLean's and
McLean & Armstrong, LLP's Motion to Dismiss

HWB - ESQ., PLLC
PO BOX 13085
Mill Creek, WA 98082
(206) 774-0845
FAX (206) 350-0134

1  argument, Sanford argued that the court lacked jurisdiction over the issues raised by Mr. Scott,

2  because even though he was in a slavery-free state, he still held the status of a slave.  The U.S.

3  Supreme Court, adopted the Sanford position dismissing the matter for lack of jurisdiction.  That

4  position is strikingly similar in reasoning to the McLean Defendants' "rightly, wrongly or otherwise"

5  position.

6

7       The audacious claim that violations of the Plaintiff's rights to property, privacy, equal

8  protection, procedural and substantive due process can not be addressed because of his status as an

9  involuntary bankrupt should hold no more sway than the outdated and bigoted principles enunciated

10 by Sanford.  The 14th Amendment to the U.S. Constitution and subsequent cases that followed its

11 passage, irrefutably cast out onto the scrap heap any validity such legal principles had and thereby

12 guaranteed to all persons who find themselves within the jurisdiction of the United States of America

13 the civil rights protections guaranteed under the Constitution.

14

15                              **III. CONCLUSION**

16       For the foregoing reasons, the McLean Defendants' Motion to Dismiss should be denied.

17 DATED: this 21st day of May, 2007.

18

19                                    Respectfully submitted,

20                                    HWB-ESQ., PLLC

21

22                                    By: /s/ Hugh W. Berry

23                                         Hugh W. Berry
                                      HWB-ESQ., PLLC
24                                    PO BOX 13085
                                      Mill Creek, WA 98082
25                                    (206) 774-0845
                                      FAX (206) 350-0134
26                                    Attorney for Erwin Singh Braich

27

28
   Plaintiff's Response toBrian G. McLean's and
   McLean & Armstrong, LLP's Motion to Dismiss

   NO.    CV7-0177C - Page 12