# APPENDIX A

Case 2:07-cv-00177-BHS   Document 29-2   Filed 05/21/07   Page 2 of 10

In *Reg. v. Shaw* (1964) 48 WWR 190, 43 CR 388, [1965] 1 CCC 130 (B.C. CA) my learned brother Davey had occasion to refer to that rule of practice and with approval in delivering the judgment of the court, where he stated in part as follows, at p. 191:

"The learned trial judge was right in excluding the evidence, both because it was not relevant, and because of the rule of practice laid down in *Rex v. Christie* [supra], and *Chapdelaine v. Reg.* [1935] SCR 53, 63 CCC 5."

Paraphrasing the remarks of Spence, J. in speaking for the majority of the Supreme Court of Canada in *Colpitts v. Reg.* [1965] SCR 739, at 756, [1966] 1 CCC 146, at 161, this court should not affirm the conviction under sec. 592 (1) (b) (iii) where there is a "possibility that twelve reasonable men, properly charged, would have a reasonable doubt as to the guilt of the accused." If the errors referred to had not been made.

See also *Rex v. Durfan, supra*, Bird, J.A. (now C.J.B.C.), at p. 461 (WWR), p. 281 (CCC).

For the foregoing reasons and upon the grounds herein first set forth, I am of opinion that there has been a miscarriage of justice within sec. 592 (1) (b) (iii) and that the conviction should be quashed and a new trial directed.

---

**ALBERTA**

SUPREME COURT                                    KIRBY, J.

Credit Foncier Franco-Canadian

v. Edmonton Airport Hotel Co., Ltd., Jake Superstein et al

*Receivers — Receiver Appointed to Operate Hotel — Borrowings to Cover Losses — Right of Receiver-Manager to Indemnity in Priority to Other Encumbrancers — Principles.*

In an order accepting plaintiff's application to purchase certain mortgaged land and chattels, for a declaration of the amount due and owing on the mortgage account, for determination of the receivership, including an order that moneys borrowed by the receiver may be paid from the purchase price or charged to the mortgage account, and for other incidental relief. Order accordingly.

The subject matter of the mortgages was a licensed hotel and an under an earlier order was put into possession of the hotel with furnishings, by order of December 6, 1964, the receiver appointed.

It was held that the claim for indemnity in priority to other liabilities must be allowed since, on the evidence, the receiver had complied with the principles established by the authorities and the plaintiff, as creditor of the receiver, was entitled to the benefit of such compliance. The principles established by the authorities are: (a) A receiver-manager appointed by the court is an officer of the court who acts in pursuance of his appointment on his own responsibility and not as an agent; (b) If he is right to be indemnified out of the assets against expenses and liabilities properly incurred in the execution of his duty; (c) Expenses and liabilities bona fide incurred by him in the ordinary course of the business would, where his general authority has not been limited by the order appointing him, prima facie be treated as having been properly incurred; (d) There should be no indemnity for money spent on a speculative basis; (e) A receiver-manager may not create a lien on the business for expenses and liabilities which are not incidental to or consequential upon those things which he was authorized to do; and (f) The receiver-manager is entitled to those expenses and liabilities properly incurred in priority to other person holding charges on the property. *Parsons v. Sovereign Bank of Can.* [1913] AC 160, 82 LJPC 60, reverting OLR 387, 21 Can AR 686; *Burt, Boulton & Haywood v. Bull* [1895] 1 QB 276, 64 LJQB 232, *Strapp v. Bull Sons & Co.; Shaw v. London School Board* [1890] 2 Ch 1, 64 LJ 639; the *British Power Traction & Lighting Co.*; *Hadkins Joint Stock Banking Co. v. British Power Traction & Lighting Co. (No. 1)* [1906] 1 Ch 497, 75 LJ Ch 368; (No. 2) [1907] 1 Ch 528, 76 LJ Ch 455; *Moss SS. Co. v. Whinney* [1912] AC 254, 81 LJKB 674; *Anderson v. Newton* [1894] 1 WWR 636, 42 Man R 107, at LRB were considered, applied.

[Note up with 3 CED (C2) Receivers, sec 4, 32.]

W. G. Morrow, Q.C., and W. H. Hurlburt, for plaintiff.

G. H. Steer, Q.C., for first two defendants.

March 31, 1966.

KIRBY, J. — This is an application for an order:

(1) Accepting the application of the plaintiff to purchase the mortgaged land and chattels at and for the following prices: Land, $250,000; Chattels, $25,000; Total, $275,000, payable wholly in cash, or partly by cash and partly by credit to the mortgage account.

(2) Rejecting the tender of Don Oswald and directing that the certified cheques representing the deposit be returned to the tenderer.

General authority, without restrictions, to operate the business; in the course of operating the business losses were incurred, to cover which the plaintiff advanced money to the receiver; by order of November 22, 1965, the receiver was specially empowered to borrow money in order to continue operating the hotel and to charge such borrowings in priority to all other encumbrances against the mortgaged land and chattels. The hotel continued to lose money and on the present application it was argued that the receiver had been operating it on a speculative basis, was not entitled to any priority in respect of the indemnity claimed in respect of his borrowings, and that the plaintiff, as the receiver's creditor, could enjoy no greater benefit than the receiver himself.

(3) Accepting the tender of the plaintiff, dated February 14, 1966.

(4) Confirming sale of the land and chattels to the plaintiff in accordance with the said tender.

(5) Providing that any interest in the said land of the defendants or any of them be extinguished.

(6) Giving directions as to moneys to be paid into court by the plaintiff and as to credits to be allowed to the mortgagee account herein.

(7) Directing the registrar of land titles to cancel the existing certificate of title to the mortgaged lands and to issue a new certificate of title to the said lands in the name of the plaintiff free and clear of all mortgages, mechanics' liens and claims for mechanics' lien, certificates of lis pendens, and writs of execution and other documents registered in the execution register.

(8) Giving possession.

(9) Declaring the amount due and owing on the mortgage account secured by the land and chattel mortgages and guarantee sued on in these proceedings after disposition of the said lands in accordance with the said tender and sale.

(10) Assessing the amount of the judgment of the plaintiff against the defendant Jake Superstein and giving judgment for the amount so assessed, plus costs of all proceedings to date.

(11) Dealing with the existing receivership constituted by orders of this court including, if necessary, an order discharging the receiver, or for winding up of the said receivership and materials incidental to the carrying out of the said receivership and the termination thereof, and declaring and ordering that all sums borrowed by the receiver be paid from the purchase price or charged against the mortgage account.

(12) Providing for payment out of court of any moneys to be paid in by the plaintiff pursuant to directions of this court.

(13) Pursuant to sec. 11 (12) of The Mechanics' Lien Act, 1960, 1960, ch. 64: (1) Determining the value of improvements; (2) Determining the portion of the sale proceeds to be applied on the mechanics' liens or claims for mechanics' liens filed herein, if found to be valid; and (3) Determining the balance of the sale proceeds to be applied on the plaintiff's mortgage

herein. And making directions as to the disposition of any portion of the sale proceeds which is to be applied on liens, pending determination of the issue as to the validity of the said liens directed by order of this court.

(14) Providing for disposition of the moneys representing the purchase price of the chattels herein until the respective claims of the plaintiff, and of Delta Acceptance Corporation and Canada Trust Company or either of them, to the same, are determined.

(15) Granting to the plaintiff costs of this application and of all proceedings herein for which costs have not been taxed, and an order dealing with costs generally.

(16) Giving all necessary directions to complete the sale of the mortgaged lands and chattels, the granting of judgment over against the defendant Jake Superstein and the determination of the amounts thereof, the disposition of the second mortgage and all mechanics' liens and writs of execution hereof and the existing receivership, and to deal with all matters incidental to all of the foregoing.

With respect to items (1) to (8), other than item (6):

A tender has been submitted by the plaintiff in the sum of $275,000, of which $250,000 is for land and improvements and $25,000 for chattels. A further tender has been received in the sum of $123,247.45.

Counsel for the defendants applied for an adjournment of the motion for a period of six months, to give an opportunity to two real estate appraisers, McIntyre and Hughes, to endeavour to effect a sale of the mortgaged land and premises for at least the sum of $325,000. The said appraisers have filed an affidavit in which they give as their opinion that the replacement cost of the hotel building, less observed depreciation, is $398,000, and the present value of the land as $27,000, making a total of $425,000; that the present market value of the chattels is $44,000; that it should be possible to realize at least $25,000 from the land, building and chattels, if concentrated efforts were made to interest purchasers who might use the said premises for alternative suggested uses other than as a hotel.

The order directing the sale of these lands by tender, dated October 25, 1962, provided that tender should be submitted within three months from the date of entry of the order. The

order was entered on November 12 and the advertisement called for tenders to be submitted by February 15, 1966.

In view of the long history of this case, dating back to the commencement of proceedings on October 12, 1962, and the period of time allowed for advertising for tenders, I did not consider that an adjournment was warranted.

It was argued on behalf of the defendants that the sale cannot be confirmed at this time because the only evidence of value immediately before the sale is that of McIntyre and Hughes referred to above; that the valuation of $197,000 on the mortgaged lands declared in the order herein dated February 3, 1966, was based on the valuation of J. T. Caithness, made in July 1965; that the court has no jurisdiction to confirm the sale by virtue of the provisions of sec. 11 (4) and (6) of *The Mechanics Lien Act, 1960*, which provide:

"11. (4) Immediately before a sale by tender or public auction of mortgaged land that is subject to a lien, the court shall, upon proper evidence and on notice to all persons concerned, determine both the value, at that time, of the mortgaged land and the value of the mortgaged land immediately before the lien arose.

* * *

"(6) A lienholder and a mortgagee of land that is subject to a lien may tender or bid at a sale of the mortgaged land by tender or public auction but any such tender or bid shall be at least equal to the amount of the value of the mortgaged land immediately before the sale as determined pursuant to subsection (4)."

Counsel for the plaintiff argued that, the plaintiffs having effected a settlement of the mechanics' liens, the provisions of *The Mechanics Lien Act, 1960*, are no longer applicable.

On the application for the order determining the values referred to in sec. 11 (4) quoted above, the only valuation submitted was that of Caithness. Indeed, the defendants did not see fit either to appear at the hearing of that application to submit another valuation, to question the valuation submitted, or to object to the valuation being declared at that time.

The order speaks for itself. The value of the mortgaged land declared therein pursuant to subsec. (4) is the value which the tender of the mortgagee must at least equal, in accordance with the provisions of subsec. (6). The tender of the mortgagee

exceeds that value by $53,000. The requirements of this subsec. (6) accordingly have been met by this tender.

It is not necessary to consider whether the settlement by the plaintiff of the mechanics' liens renders *The Mechanics Lien Act, 1960*, inapplicable.

For these reasons, the relief sought in items (1) to (8) inclusive, other than item (6), and the discharge of the receiver, were granted by order dated March 10, 1966.

With respect to items (9) and (10): The plaintiff claims as being due as of February 22, 1966, under and by virtue of the mortgages referred to in the pleadings herein, and in the formal judgment (including order *nisi* and order for sale), and under and by virtue of the said formal judgment, and under orders made from time to time in these proceedings, the sum of $469,247.55, made up as follows:

| | *Amounts* | *Sub-Totals* | *Cumulative Totals* |
|---|---|---|---|
| (1) *Order Nisi as at December 16, 1963* | | | |
| 1.1 Principal | $300,000.00 | | |
| 1.2 Interest | 36,560.24 | | |
| 1.3 Costs | 4,595.01 | | |
| 1.4 Other charges | 1,496.61 | $342,651.86 | $342,651.86 |
| (2) *Interest* | | | |
| 2.1 December 16, 1963 to February 22, 1966 with interest compounded at 8 per cent in accordance with mortgage, on $342,651.86 | | $ 64,278.12 | $406,929.98 |
| (3) *Subsequent Costs Taxed* | | | |
| 3.1 Appeal to appellate division following trial | 947.00 | | |
| 3.2 Appeal to Supreme Court of Canada | 1,510.00 | 2,457.00 | $409,386.98 |
| (4) *Subsequent Advance on Mortgage Account* | | | |
| 4.1 Insurance premium, January 1966 | | 75.42 | $409,462.40 |
| (5) *Moneys Advanced Prior to November 12, 1965* | | | |
| 5.1 Re liquor licences | 1,300.00 | | |
| | $1,300.00 | | $409,462.40 |
| 5.2 Advances to sheriff through Messrs. McCuaig & Co. and inadvertently | | | |

| | Amounts | Sub-Totals | Cumulative Totals |
|---|---|---|---|
| omitted from previous affidavit, not having been segregated from solicitor's costs | 400.00 | | |
| 5.3 Advance re audit | 474.00 | | |
| 5.4 Insurance premiums ($4,433.63 as shown on previous affidavit, less $1,496.61 which was inadvertently duplication of item 1.4 above) | 2,937.02 | | |
| 5.5 Moneys lent by plaintiff to receiver and advanced by receiver to carry on business as in previous affidavit | 9,500.00 | | |
| 5.6 Further moneys so lent and advanced after previous affidavit and before November 12, 1965 | 5,000.00 | $ 19,611.02 | $429,073.42 |
| (6) *Moneys Advanced after November 12, 1965* | | | |
| 6.1 Moneys lent to Receiver and advanced by him to carry on business from November 12, 1965 to date | 13,000.00 | $ 28,307.09 | $457,380.51 |
| 6.2 Moneys lent to receiver and advanced by him to pay taxes in arrears under authority of order of Kirby, J. | 15,307.09 | | |
| (7) *Interest on Items 6.1 and 6.2* | | | |
| 7.1 Interest on advances after November 12, 1965, at 5 per cent | | $ 284.69 | |
| (8) Amounts to be advanced by plaintiff in settlement of mechanics' liens | | $ 6,064.50 | |
| (9) Amount of taxes outstanding against the mortgaged lands to end of 1965 assumed by plaintiff | | $ 5,517.85 | |
| | | | $469,247.55 |

The defendants object to items 5.1, 5.2, 5.3, 5.5, 5.6 and 6.1, on the grounds that, these liabilities not having been properly incurred, the receiver is not entitled to be indemnified against them; that they cannot be a first charge on the assets; that

the receiver is not entitled to be reimbursed for moneys used for purposes which are speculative in nature.

In support of these objections, the following authorities are cited: *Burt, Boulton & Hayward v. Bull* [1895] 1 QB 276, 64 LJQB 232; *Re British Power Traction & Lighting Co.; Halifax Joint Stock Banking Co. v. British Power Traction & Lighting Co.* (No. 1) [1906] 1 Ch 497, 75 LJ Ch 248; (No. 2) [1907] 1 Ch 528, 76 LJ Ch 423; *Strapp v. Bull, Sons & Co.; Shaw v. London School Board* [1895] 2 Ch 1, 64 LJ Ch 658; *Moss SS. Co. v. Whinney* [1912] AC 254, 81 LJKB 674.

In *Parsons v. Sovereign Bank of Can.* [1913] AC 160, 82 LJPC 60, Viscount Haldane concisely stated the position of a receiver and manager appointed by the court, in these words, at pp. 166-7:

> "In order to answer this question it will be convenient in the first place to look at the position in point of law of the receivers and managers. A receiver and manager appointed, as were those in the present case, is the agent neither of the debenture-holders, whose credit he cannot pledge, nor of the company, which cannot control him. He is an officer of the Court put in to discharge certain duties prescribed by the order appointing him; duties which in the present case extended to the continuation and management of the business."

In *Burt, Boulton & Hayward v. Bull, supra*, the defendants, who were receivers and managers of the business of a company appointed by the court, gave an order to the plaintiffs for goods required for the purposes of the business. The order, in writing, signed by the defendants, was expressed to be given for the company, and the words "receivers and managers" were appended to the signatures of the defendants.

Lord Esher, M.R. said at p. 279:

> "The action was for goods sold and delivered upon the order of the defendants, who were receivers and managers appointed by the Court to manage the business of a company. What is the position of such a receiver and manager? He is not the agent of the company. They do not appoint him; he is not bound to obey their directions; and they cannot dismiss him, however much they may disapprove of the mode in which he is carrying on the business. Only the Court can dismiss him, or give him directions as to the mode of carrying on the business, or interfere with him, if he is not carrying on the business properly. The incidents

of his relation to the Court are such as would, if they existed as between him and an ordinary person, constitute him an agent for such person; but it is of course impossible to sup-pose that the relation of agent and principal exists between him and the Court. What is the inference that necessarily arises? It must be that the intention is that he shall act in pursuance of this appointment on his own responsibility and not as an agent, because otherwise nobody will be respons-ible for his acts. The company cannot be liable, for he is not their agent, and the Court clearly cannot be liable. Therefore any orders which he may give under such cir-cumstances as manager must prima facie be taken to be orders given on his own responsibility and credit."

And at p. 281:

"'The question whether credit was given to the defendants personally is really one of fact, depending on the circum-stances of each case, because there might be circumstances which would take the case out of the general rule which I have laid down. The judge in this case has found that the case falls within the ordinary rule, and that the defendants intended to pledge and the plaintiffs to trust to the defen-dants' personal credit."

And Rigby, L.J. at p. 283:

"'I do not say that there might not be very special cases in which the intention might be that receivers and man-agers should not pledge their personal credit, though I am not aware that any such have arisen."

The receivers and managers here were held personally liable for the goods purchased.

However, in *Strapp v. Bull, Sons & Co, supra,* it was held (reversing the decision of Vaughan Williams, J.), that the receivers and managers were entitled to be indemnified out of the assets of the company in priority to other persons who had made advances, as well as to the holders of debentures.

In this case, a joint stock company for building operations, which had some uncompleted contracts, got into difficulties. An action against the company was brought by a debenture-holder, and a petition for winding-up was presented by an un-secured creditor. By a consent order in the matter of the winding-up petition it was ordered that £3,000 should be raised by the plaintiff in the action and the unsecured creditors in order to complete the contract, which sum was to be a first

charge on the assets of the company in priority to all the debentures, that all the unsecured creditors should have second debentures given them, that two receivers and managers should be appointed, one of whom was nominated by the unsecured creditors, to carry on the business, but the company was to incur no fresh debts or liabilities, £4,250 was accordingly raised, but the receivers and managers, in completing the con-tracts, incurred considerable further expenses, for which they claimed to be indemnified.

Smith, L.J. said at p. 9:

"Now, it seems to me that so far as the general law is applicable to the position of the receivers and managers, it is not in dispute. It is laid down in *Botten v. Weagwood Coal and Iron Co,* (1884) 28 Ch D 317, 54 LJ Ch 686, and in *Re Bushell, Ex parte Izard* (1883) 23 Ch D 75, 52 LJ Ch 678, by Sir George Jessel; and nobody on the one side or the other quarrels with the law which was there enunciated, that the receivers and managers are entitled to their just charges and expenses incurred in the management of the estate in which they may have been appointed receivers and managers, and they are entitled to those charges in priority to the debenture-holders and other persons holding charges on the property. * * *"

In the *British Power Traction and Lighting Co* case (No. 1), *supra,* orders were made in a debenture-holders' action appoint-ing a receiver and manager, and authorizing him to borrow £3,000 for the general purposes of the business, the sum to be a first charge on the assets. The company was authorized to be wound up. The manager carried on the business and incurred debts beyond the £3,000, but made no further application for leave to raise money. He retired from his office, and the plain-tiffs in the action applied for a declaration that he was not entitled to any indemnity in respect of liabilities incurred beyond the £3,000, or that, if he was so entitled, he had by his conduct forfeited his rights.

It was held that the order authorizing him to borrow for the general purposes of the business had not deprived the man-ager of his right to be indemnified out of the assets, that if, without any application to the court he had incurred further liabilities he would only be entitled to be indemnified in respect of them so far as he could show that, having regard to all the circumstances, he was justified in incurring them without leave; that this must be separately determined in each particular case; and that it would not be enough for him to show that the

further liabilities had been incurred bona fide in the ordinary course of business.

Warrington, J. said at p. 505:

"The law as to the position of a manager appointed by the Court, where no special provision is made for meeting expenses and liabilities incurred by him, is not disputed, and is, indeed, beyond dispute. It is, on the one hand, his duty to carry on the business, and for that purpose to enter into proper contracts on his own responsibility, and if it is, on the other hand, his right to be indemnified out of the assets against expenses and liabilities properly incurred in the execution of his duty; *Burt, Boulton & Hayward v. Bull, Strapp v. Bull, Sons & Co.* [*supra*]. Moreover, though I do not find this anywhere expressly laid down, I think that expenses and liabilities bona fide incurred in the ordinary course of the business would prima facie be treated as having been properly incurred. But is the position of the manager the same in cases where, as here, he is authorized to borrow a sum not exceeding a certain limit for the general purposes of the business he is carrying on"

And at p. 506:

"It seems to me the true position in these cases is that the order is intended to limit his general authority, and if he finds that the fund provided by the Court is not sufficient, it is his duty to cause the matter to be brought before the Court, so that, if it sees fit, it may increase it, or give him leave to incur further expenses or liabilities, which comes to the same thing. If, without such an application being made, he incurs expenses and liabilities exceeding the limit, he is, in my opinion, not entitled to be indemnified against them unless he can shew that, having regard to all the circumstances under which they were incurred, he was justified in incurring them without first obtaining leave. If he succeeds in shewing this, than I think the expenses and liabilities would be properly incurred, but not otherwise. What circumstances would justify the conduct of the manager in so increasing such expenses and liabilities without leave cannot, I think, be defined in general terms; but must be determined in each particular case. I will only say that, in my opinion, it would not be enough to shew that the expense of liabilities were incurred bona fide and in the ordinary course of business."

In the *British Power Traction & Lighting* case (No. 2), *supra*, it was held that there should be no indemnity to a receiver-manager for money spent for speculative purposes.

In *Moss SS. Co. v. Whinney*, *supra*, it was held (Shaw and Mersey, L.JJ. dissenting); that a lien given by a receiver-manager on a cargo of beer for unpaid freight charges incurred before his appointment, was invalid, because in truth, the receiver-manager and not the company was both shipper and consignee and by the form of shipping instructions, and by Lord Atkinson on the further ground that the plaintiff had no power without leave of the court to create such a lien. Lord Atkinson said in this connection at p. 267:

"It is contended on behalf of the appellants that the inability of the receiver to create the lien contended for is merely a matter between him and the debenture-holders; that they may very well no doubt dispute, before the Court which appointed him, his claim to be reimbursed out of the assets of this company for the sum paid to obtain delivery of the goods, but that with this the appellants have no concern. If that reasoning be sound, the receiver could pledge the goods for a personal debt of his own. I do not think that it is sound. The creation of a lien such as that purported to have been given was not shewn to be incidental to or consequential upon those things which the respondent was authorised to do." [The italics are mine.]

These decisions establish that:

(1) A receiver-manager appointed by the court is an officer of the court who acts in pursuance of his appointment on his own responsibility, and not as an agent.

(2) It is his right to be indemnified out of the assets against expenses and liabilities properly incurred in the execution of his duty.

(3) Expenses and liabilities bona fide incurred by a receiver-manager in the ordinary course of the business would, where his general authority has not been limited by the order appointing him, prima facie be treated as having been property incurred.

(4) There should be no indemnity for money spent on a speculative basis.

(5)  A receiver-manager is not entitled to create a lien on the business he is operating for expenses and liabilities incurred by him which are not incidental to or consequential upon those things which he was authorized to do.

(6)  The receiver-manager is entitled to those expenses and liabilities properly incurred in priority to other persons holding charges on the property.

Other than in *Anderson v. Newton* [1934] 1 WWR 636, 42 Man R 107, a decision of the Manitoba court of appeal in which *Parsons v. Sovereign Bank of Can.*, *supra*, was distinguished, I have been unable to find a Canadian decision in which these propositions have been considered.

Dealing first with item 6.1: This item refers to moneys borrowed by the receiver to enable him to carry on the hotel business. They were borrowed by virtue of the authority conferred upon him by the order herein dated November 12, 1965.

It is contended that the plaintiff could not do by virtue of the order dated November 12, 1965, what he was refused under the order of October 25, 1965. The order of October 25 states:

"The application of the Plaintiff for an Order confirming that the amounts advanced and to be advanced from time to time by the Plaintiff to the said Receiver constitute a prior charge on the proceeds of any sale of the mortgaged property in these proceedings be and the same is hereby dismissed."

The order of November 12 grants leave, not to the plaintiff to make advances, but to the receiver "to borrow such sums as may be required by the Applicant as such Receiver from time to time in order to continue operating the said hotel" and "charge all such sums upon the mortgaged lands and premises and the mortgaged chattels in priority to all existing encumbrances." There is a distinction between: (a) The plaintiff making advances to the receiver with such advances being given priority; and (2) The receiver being empowered to borrow money for the continued operation of the hotel. With respect to (a), the order of October 22 does not forbid upon advances by the plaintiff to the receiver. It simply provides that such advances do not constitute a prior charge on the proceeds of any sale of the mortgaged property. In the reasons for judgment it is pointed out that no authority could be found for the court to declare such a priority. With respect to (b), the order of November 12 grants leave to the receiver

to borrow such sums as may be required from time to time in order to continue operating the hotel and to charge all such sums upon the mortgaged lands and premises and the mortgaged chattels in priority to all existing encumbrances.

In borrowing from the plaintiff subsequent to November 12, the receiver was acting within the powers specifically conferred upon him by that order.

Turning now to items 5.1, 5.2, 5.5 and 5.6: These items reflect moneys borrowed by the receiver from the plaintiff to enable him to meet the cost of liquor licences and to cover losses due to the operation of the hotel. They are evidenced by promissory notes.

Robert W. Roberts, sheriff of the judicial district of Wetaskiwin, was appointed receiver by order dated October 22, 1964, which provides:

"2.  And it is Further Ordered that Robert W. Roberts, Sheriff of the Judicial District of Wetaskiwin be and he is hereby appointed receiver without security subject to paragraph 2 (b) hereof:

"(a)  To collect, get in and receive the profits from or in respect of the operation of the hotel of the defendant Edmonton Airport Hotel Co. Ltd. situate on the premises the subject matter of this action, with the right of access at all reasonable times to the records of the said defendant; and

"(b)  To set aside the Sum of Two Thousand ($2,000.00) Dollars in a separate operating account in a chartered bank in the joint names of himself and Edmonton Airport Hotel Co. Ltd.;

"(c)  To pay over such profits monthly to the County of Leduc No. 25 until the arrears and current years taxes on the hotel property have been paid, thereafter to the Plaintiff to be applied on its mortgage indebtedness."

On December 3, 1964, in an application to commit the defendant Supperstein, for contempt, by reason of his failure as principal officer of the defendant, Edmonton Airport Hotel Co. Ltd., to comply with the orders of February 13 and October 22, 1964, it was ordered "as an alternative to the application for committal, that the Receiver appointed by Order dated the 22nd day of October, 1964 be and he is hereby empowered to take possession of and operate the hotel property of the Defendant Edmonton Airport Hotel Co. Ltd.

er rights than the receiver.

It is submitted that since the operation from the time the receiver took over showed consistent losses, it was his duty to come back to the court for directions as to whether he should carry on; that his continuing to operate the business in the face of its recurring losses was speculative; that the plaintiff as a creditor of the receiver is not entitled to any high-

During the period December 14, 1964, to January 31, 1966, the hotel operated at a loss every month except November, the losses ranging from $33.27 for the first two weeks of opera-tion to $5,081.16 during the month of December, 1965. The operation loss for the month of January, 1966, was $1,750. The loss for the total period was $24,321.27.

The moneys borrowed by the receiver from the plaintiff were used to meet these losses. These losses were incurred in the ordinary course of operating the hotel business. The gen-eral authority conferred by the order of December 3 on the receiver to operate the business is not subject to any restric-tions. While the continued operation of the hotel in the face of recurring losses may have shown questionable business judg-ment on the part of the receiver, I do not consider that his doing so was speculative nor do I feel that his failure to come back to the court for directions as to whether he should carry on should disentitle him to being reimbursed for the moneys he borrowed to carry on the business. For these reasons, I find that he is entitled to be indemnified for the moneys bor-rowed as shown in items 5.4, 5.5 and 5.6. Expenses for audit purposes (item 5.3) are, in my view, a proper expense.

Beer license fees (item 5.1) are clearly incidental to, and consequential upon, the operation of the hotel business and are therefore proper expenses incurred by the receiver.

If it is further argued that the plaintiff had no power to make these advances by virtue of its charter, and therefore the var-ious loans to the sheriff are ultra vires; that since, therefore, the plaintiff cannot recover from the sheriff it cannot recover from the defendant; that these transactions have no relation-ship to the mortgage but constitute a personal obligation be-tween the plaintiff and the receiver. With the latter proposi-tion I agree, but precisely because this is so, it is not a matter of any concern to the defendants, but one that solely concerns the plaintiff and the receiver as lender and borrower. Nor, in my view, are the indicators of settlement between the plaintiff and receiver of any concern to the defendants. I therefore do

not consider it pertinent as to whether or not the plaintiff had power under this charter to make these loans to the receiver.

For the foregoing reasons, I find the moneys borrowed by the receiver from the plaintiff are a proper charge upon the mortgaged land and mortgaged charities.

In the result, the amount due and owing on the mortgaged land and mortgaged charities is the sum of $469,247.35, made up as follows:

Balance directly owing on mortgage account as at February 22, 1966, as set forth in affidavit of Ralph E. Farvolden, including insurance premium $407,005.40

| | |
|---|---|
| Taxed costs | 2,457.00 |
| Moneys borrowed by the receiver from the plain-tiff prior to November 12, 1966 | 18,611.02 |
| Moneys borrowed by the receiver from the plain-tiff after November 12, 1966 | 28,307.09 |
| Interest on advances after November 12, 1966, at five per cent per annum | 284.69 |
| Amounts to be advanced by plaintiff in settlement of mechanics' liens | 6,084.50 |
| Amount of taxes outstanding against the mortgag-ed lands to end of 1965 assumed by plaintiff | 5,517.85 |
| | $463,247.35 |

Interest on the sum of $407,005.40 will be allowed from Feb-ruary 22, 1966, to March 10, 1966, the effective date of this judgment.

The plaintiff will have judgment against the defendant Super-stein for the amount of the difference between the purchase price of the mortgaged land and charities, that is $275,000, and the total of the following: $469,247.35, interest on $407,005.40 for the period designated above, costs of all proceedings to date; sheriff's fee as hereinafter provided.

With respect to item 11, the receiver shall forthwith account to the clerk of the court for all property and moneys received and expended by him, and upon the clerk certifying such ac-counting as correct, a certificate to this effect will be filed herein and copies furnished to the plaintiff and the defendants Edmonton Airport Hotel Co. Ltd. and Jake Superstein. Upon the filing of such certificate the receiver will be paid a special fee in the sum of $600.

With respect to item 13, the liens having been settled by the plaintiff, this item need not be dealt with.

With respect to item 14, the sum of $25,000, representing the purchase price of the chattels herein, shall be retained by the clerk of this court until the issues with respect to these moneys have been determined. Any moneys actually received by the plaintiff from the said sum shall be credited to the judgment against the defendant Jake Superstein heretofore granted, after deduction therefrom of the plaintiff's proper costs.

In the event that upon the accounting of the receiver to the clerk as hereinbefore provided, it shall appear that there are further moneys due and payable to the receiver, the same shall be paid by the plaintiff and the plaintiff shall have further judgment against the defendant Jake Superstein for the amount thereof; provided that if upon such accounting it shall be determined that moneys are repayable by the receiver, then such moneys shall be paid to the plaintiff and the amount thereof shall be credited against the judgment of the plaintiff against the defendant Jake Superstein herein granted.

The remaining sum of $2,500 paid into court by the plaintiff with the tender will be paid out forthwith to the plaintiff and will be credited on the purchase price of the mortgaged land.

The plaintiff will have costs in all proceedings subsequent to the decision of the Supreme Court of Canada, to be taxed under double col. 5.

## SUPREME COURT OF CANADA

Before Taschereau, C.J., Cartwright, Martland, Hall and Spence, JJ.

### Ghitzaroil v. Minister of Highways for British Columbia

Arbitration — Setting Aside Award for Bias — Prejudice.

Appeal from the judgment of the court of appeal for British Columbia (1965) 50 WWR 296, setting aside an order of Collins, J., whereby the award of an umpire made in arbitration proceedings was set aside on the ground of bias. Appeal allowed and the order of Collins, J., restored.

Per Cartwright, J., Taschereau, C.J., Martland, Hall and Spence, JJ., concurring: The weight of authority is to the effect that if there is found to exist, by reason of business or personal relationships, past or present, any basis for a reasonable apprehension that an arbitrator might not bring to his judicial task a free, independent and impartial mind, apart from any suggestion of actual bias, his award, or any award in which he played a part, ought to be set aside on the grounds that such arbitrator was, in law, disqualified.

[Bisaillon v. Keable (1931) SCR 3, at 4, 7; Pretoria (1951) OWN 901, 1 Mur Qm (2nd) 264; Eckort v. Highland Ry, [1918] SC 838, at 853, affirmed [1919] SC (HL) 19, at 26; Dimes v. Grand Junction Canal (Proprietors) [1852] 3 HL Cas 759, 10 ER 301, applied.

[Note up with 2 CED (2nd ed.) Arbitration, secs. 18, 25.]

Appellant, in person.

W. G. Burke-Robertson, Q.C., and D. R. Wetmore, for respondent.

March 11, 1966.

The judgment of the court was delivered by

CARTWRIGHT, J. — This is an appeal from a unanimous judgment of the court of appeal for British Columbia (1965) 50 WWR 296, setting aside an order of Collins, J., and affirming an award made in an arbitration between the parties.

The appellant was the owner of 7.228 acres of land in the city of Trail, B.C., expropriated by the department of highways. No agreement was reached as to compensation. In the arbitration proceedings which followed pursuant to the Department of Highways Act, RSBC 1960, ch. 103, C. D. McQuarrie, Q.C., was appointed arbitrator by the minister of highways, and W. M. Moren by the appellant. The arbitrators, together with D. B. Hinds, the umpire appointed by them, convened at the city of Trail in November, 1962, and heard evidence and argument. The arbitrators were unable to reach an agreement. Accordingly, pursuant to sec. 26 of the Department of Highways Act, requested that the amount of compensation be determined by the umpire who, on December 23, 1963, made an award fixing the compensation at $25,000.

By originating notice dated February 11, 1964, the appellant moved to set aside the award on the following grounds:

(1) The arbitrator, Colin D. McQuarrie, Q.C., appointed by the minister of highways of the province of British Columbia, was and is disqualified by interest in that he has been and was at the time of the arbitration referred to herein acting as solicitor or counsel or agent for the said minister of highways or the department of highways of the province of British Columbia or both.

(2) The umpire, D. B. Hinds, was and is disqualified by interest in that he has been and was at the time of the arbitra-