# APPENDIX B

pas dans le code français. En France, les tiers qui traitent avec un prête-nom, ou avec un mandataire qui parle en son propre nom, n'ont pas d'action directe contre le mandant (*Planiol*, 8e éd., t. 2, no. 2271; *Dalloz, Répertoire* pratique, vo. *Mandat*, no. 301). Il en est autrement sous notre code (art. 1716) qui s'inspire de la doctrine de *Pothier* (*Mandat*, no. 88). La situation apparente, en France, semble avoir une importance, en regard de la situation réelle, qu'elle n'a peut-être pas dans notre droit où nous n'avons pas la règle, si importante en matière mobilière, *possession vaut titre* (art. 2279 C.N. et art. 2268 *Code Civil*, Québec). Sur tout cela je crois devoir faire des réserves, car la question peut se présenter de nouveau d'une manière concrète, mais pour le moment je n'ai pas à trancher le débat.

Il y a du reste une raison additionnelle dans cette cause pour rejeter l'action de l'intimé. Les transactions en question sont intervenues dans les trois mois qui ont précédé la mise en faillite de Dubé et de Vaillancourt et Compagnie, Limitée. Ce serait contraire aux dispositions formelles de *La Loi da faillite* que de permettre à Dubé ou à son syndic de garder une partie importante de l'actif de Vaillancourt & Compagnie, Limitée, qui était insolvable à la connaissance de Dubé lors de la remise des $6,600, soit à titre de paiement d'une dette, ce qui serait un paiement préférentiel, soit à tout autre titre (art. 64 *Loi de faillite*, [9 C.B.R. 141]). Et les principes fondamentaux de cette loi s'opposent également à ce que le syndic à la faillite Dubé puisse réclamer de Vaillancourt et Compagnie, Limitée, également en faillite, une dette qu'elle a déjà payée. A tout égard l'action de l'intimé ne peut réussir.

Il y a eu une objection à la preuve du mandat intervenu entre Dubé et Vaillancourt et Compagnie, Limitée, dans le but d'obtenir le transport, pour cette dernière, de la créance Mercier. L'intimé n'a insisté sur cette objection devant nous et je crois que la preuve du mandat était admissible en vue des aveux de Dubé, la partie adverse (art. 1233 *Code Civil*).

Avec beaucoup de respect, ma conclusion est que l'appel doit être maintenu et que l'action doit être revoyée, avec les frais de toutes les cours.

(SYNOPSIS IN ENGLISH, OF FOREGOING CASE).

(Judgment of the Supreme Court of Canada).

*Hypothecary Action—Counter-Deed—Its Effect Towards the Trustee and Creditors—Simulation—Fraudulent Transfer—Trustee and Creditors have no more Rights than the Debtor Himself—Quebec Court of King's Bench Reversed—Bank-*

*ruptcy Act, Secs. 48, 64 and 174, Rule 72, 9 C.B.R. 112, 141, 322 and 367; C.C. (Que.) Articles 1212, 1716, 1727, 2268.*

*Held*, that a president, who pays an hypothecary creditor with the company's money and accepts the transfer in his own name within three months of the bankruptcy, acts fraudulently.

The trustee, who derives his title from the assignment made by a debtor, has no more rights than the debtor himself.

Although article 1212 of *The Civil Code* (Que.) declares that "the counter-deed has effect between contracting parties and does not affect third parties," the trustee and creditors in this estate are not the third parties referred to in the said article.

That the proceedings in the present case, which the trustee has taken, do not legally belong to the estate.

---

ONTARIO

SUPREME COURT. IN BANKRUPTCY.

Before Logie, J.

In re J. H. Smith & Son

J. H. Smith and W. E. Smith v. M. M. Tew

R. S. Hays v. M. M. Tew

*Interim Receiver—Personal Liability of—Right of Indemnity—Actions against Receiver and Trustee Personally and as Trustee—Right of Plaintiffs to Sue in the Ordinary Courts—Common Law Liability—Stay of Actions—Removal of Stay.*

Two actions were brought against the authorized trustee personally and as trustee in respect of a bill of costs for services alleged to have been rendered to the authorized trustee when acting as interim receiver and in respect of an engagement by the trustee of the plaintiffs to act as his sales agents. On the trustee's application the Registrar in Bankruptcy stayed both actions.

On appeal, the plaintiffs abandoned any claim against the trustee as authorized trustee but insisted on their right to sue the trustee personally and asked for the removal of the stay.

*Held*, that there is no distinction between an interim receiver appointed in bankruptcy and one appointed in other matters by the Court unless the Act so provides and each is personally liable to individuals dealing with them in respect of liabilities incurred or contracts entered into by them in carrying on the business unless the contracts exclude any personal liability (*Strapp v. Bull, Sons & Co.*, [1895] 2 Ch. 1, 64 L.J. Ch. 658, followed in *In re Glasdir Copper Mines, Ltd.* [1906] 1 Ch. 365, 75 L.J. Ch. 109, 22 T.L.R. 100, and approved in *Moss Steamship Co. v. Whinney*, [1912] A.C. 254, at pp. 259, 270 and 271, 81 L.J.K.B. 674, 27 T.L.R. 513), each has a co-relative right to be indemnified out of the assets in respect of payments made by them in discharge of liabilities properly incurred (*Burt, Boulton & Hayward v. Bull*, [1895] 1 Q.B. 276, 64 L.J.Q.B. 232; *In re Parsons* (1879) 4 O.A.R. 116; *Robinson v. Ellis* (1876) 19 N.B.R. 1).

*Held*, further, that the contracts, if any, were entered into by the receiver carrying on the business of the bankrupt, and if the receiver is liable he is liable personally at common law in the ordinary Courts of the province and not under the statute. Stay removed.

*Quære*, whether the proper remedy of the defendant was to move in the actions for a stay under *Watson v. Imperial Steel Corpn.* (1925), 28 O.W.N. 450.

R. L. *Kellock*, for Hays, appellant.

G. W. *Adams*, for trustee, personally.

O. D. *Peat*, for trustee, *qua* trustee.

January 30, 1929.

LOGIE, J.—An appeal from two orders of the Registrar in Bankruptcy both dated January 16, 1929, whereby he stayed the action in the County Court of the County of Huron, and a plaint in the Second Division Court of the County of Huron.

The Hays plaint is in respect of a bill of costs for services alleged to have been rendered between December 21, 1927, when the interim receiving order was made in the authorized assignment of J. H. Smith & Son, and February 3, 1928, when the permanent receiver was appointed. Mark Tew was the interim receiver and was also appointed permanent receiver and trustee in bankruptcy on the later date.

Certain items of the bill were said to be not matters of solicitor and client costs, but were said to be for services as an agent. The Smith action is said to be founded upon an engagement by Tew of J. H. Smith and Wilfred E. Smith to act as his sales agents, and the Smiths sued for their alleged debt in the County Court of the County of Huron.

Upon the appeals counsel for the plaintiffs in the action and plaint abandoned any claim against Tew as authorized trustee, but insisted upon his client's right to sue Tew personally in both cases, and both actions being stayed he asks for the removal of the stay. As regards Tew in his capacity as trustee, therefore, the only question that remains is one of costs; and the plaintiffs should pay the costs of this appeal rendered necessary by his joining Tew in his capacity as authorized trustee. Having no jurisdiction, I make no direction as to the costs in the lower Courts in this respect.

As to the right of a third party to sue a receiver or a trustee in a matter of this kind, I have no doubt. There is no mystery about the duties and liabilities of an interim receiver or trustee in bankruptcy. There is no distinction in my mind, between an interim receiver appointed in bankruptcy and one appointed in other matters by the Court unless the Act so provides. Each is personally liable to individuals dealing with them in respect of



liabilities incurred or contracts entered into by them in carrying on the business unless the express terms of the contract exclude, as they may do, any personal liability. Herein the interim receiver must protect himself (*Strapp v. Bull, Sons & Co.*, [1895] 2 Ch. 1, 64 L.J. Ch. 658, followed in *In re Glasdir Copper Mines, Ltd.*, [1906] 1 Ch. 365, 75 L.J. Ch. 109, 22 T.L.R. 100, and approved in *Moss Steamship Co. v. Whinney*, [1912] A.C. 254 at pp. 259, 270 and 271, 81 L.J.K.B. 674, 27 T.L.R. 513). Each has of course a co-relative right to be indemnified out of the assets in respect of such payments as they have made in discharge of liabilities properly incurred (*Burt, Boulton & Hayward v. Bull*, [1895] 1 Q.B. 276, 64 L.J.Q.B. 232) and this, moreover, was the rule under the old *Insolvency Act* of 1875 (Can.), ch. 6 (*In re Parsons* (1879), 4 O.A.R. 179; *Robinson v. Ellis* (1879), 19 N.B.R. 6, at p. 11).

The alleged debt owing to these plaintiffs was not a debt provable in bankruptcy or within the purview of the Act. If there were any contracts at all between these parties, the contracts were entered into by the receiver carrying on the business of the bankrupt, and if the receiver is liable at all he is liable personally at common law in the ordinary courts of the province and not under the statute.

When the cases come on to be heard before the proper Courts the defendants may urge before those Courts any defence on the facts or in law which they may be advised to offer. This being my opinion it is not necessary to pass upon the contention that the proper remedy of the defendant in the County Court action and the Division Court plaint was to move in these actions for a stay under *Watson v. Imperial Steel Corpn.* (1925), 28 O.W.N. 450.

For these reasons both appeals are allowed with costs and the stay of the proceedings in the lower Courts is removed.

*Appeals allowed.*

---

## ONTARIO

SUPREME COURT.     APPELLATE DIVISION.

Before Latchford, C.J., Riddell, Middleton and Masten, JJ.A.

### Goldman v. Harrison.

*Chattel Mortgage—Made by Insolvent Debtor to Creditor—Intent to Give a Preference—Origin in Creditor through Pressure—Evidence.*

Security given by an insolvent debtor to a creditor with the intent to give him a preference over other creditors is void. From the