The Honorable John C. Coughenour

1    **BUCKNELL STEHLIK SATO & STUBNER, LLP**
2        2003 Western Avenue, Suite 400
         Seattle, Washington  98121
3        (206) 587-0144  •  fax (206) 587-0277

4

5

6              UNITED STATES DISTRICT COURT
       WESTERN DISTRICT OF WASHINGTON, AT SEATTLE
7

8    ERWIN SINGH BRAICH,                    )      No.  CV7 0177C
                                            )
9                    Plaintiff,             )
                                            )
10         vs.                              )
                                            )
11   STEVE MITTELSTAEDT, et al,             )      **REPLY IN SUPPORT OF THE**
                                            )      **MCLEAN PARTIES' MOTION**
12                   Defendant.             )      **TO DISMISS**
13   _____)

14

15                          **I.  INTRODUCTION**

16         Mr. Brian McLean and his law firm McLean & Armstrong, LLP ("McLean Parties") hereby

17   reply to the response of plaintiff Braich's response to McLean Parties' motion to dismiss.  Braich's

18   response contains a good deal of melodramatic rhetoric and voluminous case citations but the

19   rhetoric is hollow and the cases he cites in support of his central arguments are either irrelevant or

20   grossly misconstrued.  What remains clear, despite Braich's efforts to muddle the issues, is that

21   under well established authority, this court should defer to the laws of Canada with respect to

22   whether a Canadian trustee may be sued.  Section 215 of the Canadian Bankruptcy and Insolvency

23   Act ("BIA") requires Braich to first seek leave of court to sue a Canadian bankruptcy trustee (and by

24   extension trustee's counsel) which Braich has not done.  For this very fundamental reason, this

25   action should be dismissed against the McLean Parties.  Moreover, United States courts have

26

27   Reply in Support of the McLean
     Parties' Motion to Dismiss - 1
28

                                            **BUCKNELL STEHLIK SATO & STUBNER, LLP**
                                                2003 Western Avenue, Suite 400
                                                Seattle, Washington 98121
                                                (206) 587-0144  •  fax (206) 587-0277

1  recognized that trustees in foreign bankruptcy proceedings are within the protections of the Foreign

2  Sovereign Immunity Act and dismissal is compelled for that reason as well.[1]

3                          **II. DISCUSSION AND ARGUMENT**

4     **A.      Based on principles of comity and out of deference to the laws of Canada,
             the Supreme Court of British Columbia sitting in bankruptcy should**
5            **determine whether Braich may sue the McLean Parties.**

6          United States courts should, in cases such as this, defer to Canadian law and judicial pro-

7  ceedings, and more specifically should defer to Canadian bankruptcy proceedings.  The case of *In*

8  *re Davis*, 191 B.R. 577 (Bankr. S.D.N.Y. 1996) arises from a proceeding under 11 U.S.C. § 304

9  brought by a Canadian trustee.  A creditor sued in federal district court in New York, alleging that

10  the Canadian trustee in two Canadian bankruptcy cases was involved in a scheme to defraud.  The

11  plaintiff dismissed the action in an effort to render the ancillary proceeding under § 304 moot, but

12  stated that it intended to pursue litigation of the claims against the Canadian trustee.  The court

13  granted an injunction against future prosecution of such claims by the creditor, noting among other

14  things that "the scope of the protection afforded [the Trustee] under [Canadian Bankruptcy and

15  Insolvency Act] § 215 is likely to be an issue in any litigation brought by [plaintiff] against

16  [Trustee].  The Canadian court is best able to determine the extent to which [Trustee's] actions will

17  be immunized by BIA § 215 and to balance [plaintiff's] rights against the impact of their exercise on

18  the debtors' estates and other creditors."  191 B.R. at 585.  (Explanation added.)  The court con-

19  cluded that both under § 304(c) and under principles of comity, an injunction should be issued.  The

20  reasoning employed in the *Davis* case is correct and compels dismissal here.  The fact that in this

21  case the debtor (as opposed to a creditor) is suing does not change the force of the rationale.

22          There is substantial additional authority beyond the *Davis* decision supporting deference to

23  Canadian law and legal proceedings.  *Elgin Sweeper Co. v. Melson Inc.*, 884 F. Supp. 641 (N.D.N.Y.

24  _____

25  [1] Braich does not argue that the McLean Parties, as legal counsel for the trustee, are not within the purview of § 215.
   The McLean Parties deemed that point as conceded by Braich and will not address that issue further here.

26

27  Reply in Support of the McLean
   Parties' Motion to Dismiss - 2

28

**BUCKNELL STEHLIK SATO & STUBNER, LLP**
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0144  •  fax (206) 587-0277

1    1995) involved a fraudulent conveyance action brought by a creditor of a subsidiary company,

2    alleging that the parent company had defrauded the creditor.  The creditor sued Royal Bank of

3    Canada, a lender to the parent company, in a New York federal district court based on the fact that

4    Royal Bank had received proceeds of a receiver's liquidation of the parent company's assets.  The

5    creditor contended that the security interest granted to the bank was a fraudulent transfer and the

6    distribution to the bank should be set aside.  The parent company had been adjudicated a bankrupt

7    under the BIA.  The bank argued that § 38(1) of the BIA requires a creditor to obtain leave of court

8    to pursue any proceeding for the benefit of the estate if the trustee refuses to bring the action.  The

9    court concluded that it should recognize § 38(1) of the BIA as a matter of comity.  884 F.Supp. at

10   651.  The court noted that no party had demonstrated how extending comity to § 38 of the BIA

11   would conflict with the policy of New York law.  The court indicated it would allow the plaintiff 90

12   days to obtain an order from the Ontario Court of Justice granting it leave to proceed against the

13   bank.  While *Elgin Sweeper* does not involve § 215, the case has strong parallels to the case before

14   the court.  Section 38(1) is a litigation threshold statute as is § 215 and a United States court deferred

15   to this Canadian law under principles of comity.  Also, as in *Elgin Sweeper,* extending comity to

16   § 215 of the BIA would not conflict with the policy of the United States or the state of Washington

17   because leave of court must also be obtained to sue a United States bankruptcy trustee in this

18   jurisdiction.  *In re Jacksen*, 105 B.R. 542, 544-45 (9th Cir. BAP 1989).[2]

19       In *Cornfeld v. Investors Overseas Services, Ltd.*, 471 F. Supp. 1255 (S.D.N.Y.), aff'd., 614

20   F.2d 1286 (2d Cir. 1979), the court dismissed an action brought in federal district court in New York

21   by a former director and officer against a Canadian company, based on the existence of a proceeding

22   involving the Canadian company under the Canadian Winding-Up Act.  The party moving for dis-

23   _____

24   [2] The 9th Circuit Bankruptcy Appellate Panel stated at page 545: "It is well settled that the trustee in bankruptcy is an officer of the appointing court.  Courts other than the appointing court have no jurisdiction to entertain suits against the

25   trustee, without leave from the appointing court for acts done in an official capacity and within his authority as an officer of the court (citations omitted)."

26

27                                                     **BUCKNELL STEHLIK SATO & STUBNER, LLP**

Reply in Support of the McLean                          2003 Western Avenue, Suite 400
Parties' Motion to Dismiss - 3                          Seattle, Washington 98121

28                                                       (206) 587-0144 • fax (206) 587-0277

1  missal was the court-appointed liquidator for the Canadian company.  The court noted that New

2  York courts have given deference to judgments of Canadian courts and recognized United States

3  actions by Canadian trustees.  It also noted that Canada is a sister common law jurisdiction with

4  procedures similar to our own, and recognizing the Canadian liquidation proceeding would not

5  violate policies of New York or the United States, but on the contrary, American public policy

6  would be furthered since it is the policy of American courts to stay actions against a corporation that

7  is involved in a bankruptcy in another jurisdiction.  471 F. Supp. at 1259.  While the case did not

8  involve a requirement to seek leave to sue, it demonstrates the appropriate application of comity

9  with respect to Canadian law and Canadian legal proceedings.

10       In Fleeger v. Clarkson Co. Ltd., 86 F.R.D. 388 (N.D. Tex. 1980), a shareholder of a

11  corporation in a Canadian receivership sued the receiver in a Texas federal district court, alleging

12  breach of fiduciary duty and fraud.  The court-appointed receiver moved to dismiss.  The court

13  granted the motion on comity grounds, noting that American courts have consistently deferred to

14  Canadian courts and pending Canadian bankruptcy proceedings.  86 F.R.D. at 392-93.  It made this

15  sweeping statement:  "Certainly, if this Court cannot extend comity to Canada, the comity principle

16  has little vitality in our jurisprudence.  Indeed, the Court is aware of no case in which an American

17  court has refused to defer to Canada."  Id. at 393.  "The plaintiff failed to meet the test for denying

18  comity:  that the law of Canada is against good morals or natural justice... or that for some other

19  reason the enforcement of it would be prejudicial to the general interests of our own citizens."  Id. at

20  394.

21       Braich argues there must be a "conflict" between domestic (U.S.) and foreign (Canadian) law

22  to apply principles of comity.  This is not a prerequisite to apply principles of comity as demon-

23  strated by the Davis, Elgin Sweeper, Cornfeld and Fleeger cases cited above.[3]

24  _____

25  [3] In re Simon, 153 F.3d 991 (9th Cir. 1998) is not controlling.  There, the court rejected the novel argument by a Hong Kong bank that under principles of comity a bankruptcy discharge injunction obtained by a guarantor of a loan made by

26

27  Reply in Support of the McLean
   Parties' Motion to Dismiss - 4

28

BUCKNELL STEHLIK SATO & STUBNER, LLP
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0144  •  fax (206) 587-0277

W:\CLIENTS\2713\103\dismissal motion reply-1.doc

1    Braich also argues that the court must consider the adequacy of the alternative forum in its

2  international comity analysis.  As the court noted in *Mujica Occidental Petroleum,* 381 F.Supp. 2d

3  1134 (C.D.CA 2005), a case cited by Braich, adequacy of an alternative forum is normally estab-

4  lished if the defendant is amenable to personal service in the alternative forum.  381 F.Supp. 2d at

5  1141.  Obviously that is that case here as Mr. McLean was duly served in Canada.  Braich asserts

6  further that for international comity to apply, the court must find as a matter of law, that a Canadian

7  court has subject matter jurisdiction, that the Canadian court is presently seeking to adjudicate the

8  same or similar claims, and that the Canadian court can adequately address and render a

9  determination on the plaintiff's causes of action.  He cites no cases to support these statements and

10  for good reason.  This is not the correct standard.  Adequacy of forum requires only that a defendant

11  be amenable to service, and that the foreign forum must provide plaintiff with some remedy for his

12  wrong, and only in rare circumstances, where the remedy provided by the alternative forum is so

13  clearly inadequate that it is no remedy at all, will the court find this second requirement is not met.

14  *Gund v. Philbrook's Boatyard*, 374 F. Supp. 2d 909, 912 (W.D. Wash. 2005).  Braich certainly has

15  remedies under Canadian law and the courts of Canada are open to him.  He can seek redress in the

16  bankruptcy court under § 37 of the BIA or, if he can demonstrate the viability of his claims under

17  § 215, he can sue in another Canadian court.[4]  Accordingly, there is no bar to extending comity to

18  Canadian law and legal proceedings.[5]

19

20  the bank should not be applied beyond U.S. borders.  In *United International Holdings v. The Wharf Limited,* 210 F.3d
   1207 (10th Cir. 2000) the court rejected a Hong Kong company's argument that comity required the application of
21  substantive Hong Kong securities law not U.S. securities law because the company failed to identify, "…any
   inter**Error! Main Document Only.**national comity or choice of law issues that would reasonably compel a court
22  to decline to exercise its jurisdiction in these circumstances."  Id., at 1223.
   [4] Braich is already litigating in a Canadian court.  According to a "Statutory Declaration" by Mark Freeman submitted by
23  Braich in his response to KPMG's motion to dismiss, Mr. Freeman states that he has been "…retained by Peregrine
   Trust, its Trustee Erwin Braich….and act on their behalf with respect to two causes of action arising against various
24  Defendants…".  Peregrine Trust's complaint was filed in December of 2005 in Calgary, Alberta, Canada.
   [5] Sections of the BIA and Canadian cases not previously cited by Braich, KPMG or the McLean Parties are attached to
25  the Declaration of Jerry N. Stehlik submitted herewith.  For the court's convenience, § 37 provides: "Where the
   bank**Error! Main Document Only.**ruptcy …or any other person is aggrieved by any act or decision of the trustee,
26

BUCKNELL STEHLIK SATO & STUBNER, LLP
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0144  •  fax (206) 587-0277

27  Reply in Support of the McLean
28  Parties' Motion to Dismiss - 5

1

**B.**      **Section 215 of the Canadian Bankruptcy and Insolvency Act governs whether or not Braich may maintain this action against the McLean Parties and Canadian courts should apply this law.**

2

3      1.      Braich must seek permission to sue the McLean Parties under § 215.

4      For the court's convenience, § 215 of the BIA provides as follows:

5      **No action against Superintendent, etc. without leave of court** – Except by leave of court, no action lies against the Superintendent and official receiver, and interim receiver or trustee with respect to any report made under or *any action taken pursuant to, this Act*.

6

7

8      BIA § 215, R.S.C. 1985. (Emphasis added).

9              Although Braich does not come right out and say it, he argues through the declaration of

10    Gordon Douglas that § 215 does not apply here because the alleged conduct is more in the nature of

11    an omission rather than an affirmative act.  Mr. Douglas argues that, "…the essence of the complaint

12    is that KPMG did not take proper steps to put itself in a position of lawfully being able to obtain

13    possession of the Plaintiff's Property…".  Douglas Decl., para. 17.  Setting aside for the moment that

14    this assertion is patently untrue, it is circular logic at its worst.  Under Mr. Douglas' reasoning, § 215

15    *would virtually never* apply because any offending act by a trustee not previously authorized would,

16    by definition, constitute an omission rendering § 215 inapplicable.  This is, of course, an absurd re-

17    sult and such a reading is contrary to the basic principle of statutory construction that statutes should

18    not be read in a way the leads to absurd results.  Odgers' Construction of Deeds and Statues (5th Ed.)

19    Dworkin (1967) ("…if possible, the words of an act of Parliament must be construed as to give

20    sensible meaning to them.")[6]

21

22

23    _____

      he may apply to the court and the court may confirm, reverse or modify the act or decision complained of and make such order in the premises as it thinks just."

24    [6] In his response to KPMG's motion to dismiss which Braich incorporates into his response to the McLean Parties' motion, Braich tries to marginalize § 215 by labeling it "obscure", but he implicitly recognizes that § 215 is relevant by arguing at great length, albeit incorrectly, that *based on Canadian judicial opinions* the statute does not apply by its own terms.

25

26

27    Reply in Support of the McLean
28    Parties' Motion to Dismiss - 6

1   In any event, Braich's assertion that "the essence" of his complaint against the trustee is a

2 claim based on omissions rather than affirmative acts is patently untrue.  Mr. Braich, took great

3 pains to set out in great detail in his complaint the alleged wrongful acts attributable to the McLean

4 Parties.  In fact, the essence of every claim against them is that they, along with other defendants

5 wrongfully *gained access to a hotel room* and *removed his personal property*.  These are clearly

6 affirmative acts.  Braich does not allege that the McLean Parties harmed him by inaction, rather, he

7 alleges they harmed him *by taking specific actions*.  The complaint is replete with allegations of

8 affirmative actions attributable to the McLean Parties.  For example, in paragraph 169 of his com-

9 plaint, Braich alleges that numerous defendants, "…reached an agreement to discredit, punish and

10 seek revenge against Plaintiff that included, among other things the unlawful search, seizure and

11 detention of Plaintiff's Property…"; and in paragraph 170 of the complaint he alleges that, "…in

12 furtherance of, this common scheme, Defendants acted under the color of law."  These are phrases

13 describing actions: "search and seizure" and "reached an agreement" and "acted under the color of

14 law."  Further, in paragraph 1 of his prayer for relief Braich asks the court to declare the "actions" of

15 the defendants in violation of law.  Braich has clearly made alleged actions the basis for his com-

16 plaint and it is disingenuous and outright manipulative to now assert that his complaint essentially

17 alleges "omissions" so that he can avoid compliance with § 215.  His argument that his complaint

18 essentially alleges omissions rather than acts should be summarily rejected.

19   Braich also argues that the McLean Parties may not invoke § 215 because they have not

20 sought a stay of this proceeding in a Canadian court.  Notwithstanding that § 215 does not require

21 the McLean Parties to seek a stay, they have, in fact applied to the Supreme Court of British

22 Columbia for such relief.  <u>See</u>, Declaration of Susan Fraser, submitted herewith.

23

24

25

26

27 Reply in Support of the McLean

28 Parties' Motion to Dismiss - 7

**BUCKNELL STEHLIK SATO & STUBNER, LLP**
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0144  •  fax (206) 587-0277

W:\CLIENTS\2713\103\dismissal motion reply-1.doc

1        2.      <u>Canadian courts should apply § 215.</u>

2       Section 215 sets forth a threshold requirement of obtaining leave of court before jurisdiction

3 can be obtained by any court over an action against the trustee and, by extension, the trustee's

4 lawyer.  The obvious purpose of this legislation is to protect those charged with administration of the

5 BIA from actions or other proceedings save those which are approved by the court.  *382232 Ontario,*

6 *Ltd., v. Wilanour Resources, Ltd.*, (1982) 43 C.B.R. 153 (Ont. S.C.).  Section 215 of the BIA is a

7 threshold that must be crossed before bringing an action against the trustee and by extension, the

8 trustee's lawyer.

9       It is clear in this case that the Canadian court system and the Canadian government have a

10 paramount interest in deciding whether this case may proceed.  The plaintiff, Braich, and the trustee

11 and trustee's counsel are all citizens of Canada.  The trustee is a court supervised official and is

12 acting pursuant to Canadian law and Canadian government authority.  <u>See</u>, BIA § 5.1 submitted in

13 support of the motion to dismiss (Superintendent of Bankruptcy is appointed by Federal government

14 and licenses trustees).  The trustee's counsel was engaged to assist the trustee in carrying out his

15 responsibilities as trustee.  The actions complained of were taken by the trustee and trustee's counsel

16 in furtherance of their duties to the bankruptcy court and creditors, specifically, to obtain Braich's

17 business records as is their statutory duty under Canadian law.  (<u>See</u>, § 16(3) of the BIA which pro-

18 vides that…"The trustee shall, as soon as possible, take possession of the deeds, books, records and

19 documents and all property of the bankrupt…".)[7]

20       As between Canada and the United States, Canada most certainly has the paramount interest

21 in determining whether a Canadian bankruptcy trustee and trustee's counsel may be sued by a

22

---

23 [7] Braich parses the provisions of 16(3) to apparently argue that the trustee did not act under statutory authority because
some of the seized records may have been held in trust by Braich for a third party.  Setting aside the fact that Braich's

24 complaint does not even suggest this is the case, if the seized documents included documents belonging to a third party
then any claim for wrongful seizure belongs to the third party, not Braich.  Braich's argument goes nowhere.  Moreover,

25 under Canadian law, Canadian bankruptcy trustees are immune from liability for seizing property belonging to a non-
bankrupt as long as the trustee was not negligent in the seizure process.  See, BIA § 80.

26

27 Reply in Support of the McLean
Parties' Motion to Dismiss - 8

28

BUCKNELL STEHLIK SATO & STUBNER, LLP
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0144  •  fax (206) 587-0277

W:\CLIENTS\2713\103\dismissal motion reply-1.doc

1    Canadian bankruptcy debtor.  Granted, the acts of which Braich complain occurred in Washington

2    State and this court has an interest in protecting the rights of residents of this state, but this interest is

3    substantially outweighed by the fact that (1) Braich is a Canadian citizen and resident of British

4    Columbia, Canada and is not a citizen of the United States; (2) the McLean Parties were engaged by

5    a trustee who is licensed and supervised by an appointee of the Canadian national government and

6    was acting  pursuant to this engagement; (3) the alleged acts complained of were pursuant to

7    Canadian bankruptcy law authorizing and compelling the trustee, and by extension his attorney, to

8    obtain all assets, property, books and records of the bankrupt party.  If the proverbial shoe was on

9    the other foot, there is no doubt that a United States court would feel a strong need to police or

10   protect, as the case may be, its own appointed officials and would expect a Canadian court to defer

11   to United States courts on issues concerning the acts of a United States bankruptcy trustee taken in

12   Canada.

13          Furthermore, Canadian courts are in a better position to determine whether § 215 applies and

14   if so, then to apply the appropriate legal standards.  The law stated in § 215 has been part of

15   Canadian jurisprudence since at least 1932.  *Morris v. Lemontzis,* (1983), Q.J. No. 8.  Naturally,

16   having been on the books for such a long time, Canadian courts have developed several lines of

17   cases dealing with numerous facets of § 215, including: the interplay between § 215 and § 37 (which

18   allows direct redress in the bankruptcy court for trustee misconduct); the standard of pleading and

19   proof required to obtain permission to sue under §215, *MacCulloch v. PriceWaterhouse Ltd.,* (1992),

20   14 C.B.R. (3d) 48, and *Mancini v. Falconi,* (1989), 76 C.B.R. (N.S.) 90; the minimum findings

21   required to approve an action under § 215, *Society of Composers, Authors & Music Publishers of*

22   *Canada v. Armitage* (2000), 20 C.B.R. (4th) 160; the type and degree of conduct that is actionable,

23   *Re Caswan Environmental Services, Inc.* (2001) 24 C.B.R. (4th) 191 (Court should protect interim

24   receivers against liability for errors in judgment or errors in interpretation of law), and, of course, as

25

26

27   Reply in Support of the McLean
28   Parties' Motion to Dismiss - 9

**BUCKNELL STEHLIK SATO & STUBNER, LLP**
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0144  •  fax (206) 587-0277

W:\CLIENTS\2713\103\dismissal motion reply-1.doc

1  previously discussed, the scope of its application,  *Re Border Drilling & Sanitation Ltd.*, (1983), 45

2  C.B.R. (N.S.) 255 (Ont. S.C.) (If trustee is sued for something that has nothing to do with the

3  administration of the bankrupt estate, leave under § 215 is not required.)  Given the presumed

4  familiarity with these issues and with the policy behind the statute these determinations are naturally

5  best left to Canadian courts.[8]

6      **C.**    **Dismissal is also compelled by the Foreign Sovereign Immunity Act.**

7      To the extent a trustee is appointed by a court, subject to court regulation, and charged with

8  liquidation of assets under a bankruptcy or similar legal scheme in a foreign country, the trustee is an

9  agency or instrumentality of a foreign state and enjoys the protection of the Foreign Sovereign

10  Immunity Act ("FSIA").

11      *Granville Gold Trust-Switzerland v. Commissione del Fullimento / Inter Change Bank*, 924

12  F. Supp. 397 (E.D.N.Y. 1996), aff'd., 111 F.3d 123 (2d Cir. 1997), plaintiffs alleged that defendants

13  had converted assets held by a bankrupt Swiss bank.  The defendants included several commis-

14  sioners appointed by a Swiss court to supervise the bank's liquidation.  The court noted that "agency

15  or instrumentality" of a foreign state, for purposes of FSIA, is interpreted broadly and concluded that

16  the three individuals constituting the commission appointed to supervise the bank's liquidation were

17  entitled to FSIA immunity.

18      *Fabe v. Aneco Reinsurance Underwriting Ltd.*, 784 F. Supp. 448 (S.D. Ohio 1991) involved

19  an action by the Ohio superintendent of insurance against certain insurance companies.  The

20  Bermuda Supreme Court appointed liquidators over one of the defendant insurance companies.  The

21  liquidators sought to remove the state court action to federal district court based on statutory

22

---

23  [8] The McLean Parties do not mean by this to imply that this court is any less capable of correctly analyzing the various issues relating to the application of § 215, however, the plain fact of the matter is that Canadian courts are much more

24  familiar with this statute and issues related to its application than are United States courts.  Moreover, because § 215 is a Canadian law which directly impacts Canadian citizens who are also court supervised officials, Canadian courts have a

25  much greater stake in any policy consideration that may enter into the interpretation or application of § 215 as well as in any precedent setting decision interpreting or applying that law.

26

27  Reply in Support of the McLean

28  Parties' Motion to Dismiss - 10

**BUCKNELL STEHLIK SATO & STUBNER, LLP**
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0144  •  fax (206) 587-0277

W:\CLIENTS\2713\103\dismissal motion reply-1.doc

1   authority to remove actions against foreign states as defined in FSIA.  The court noted that the

2   Bermuda liquidators were an agency or instrumentality of Bermuda for purposes of FSIA.

3   The same rationale applies here.  For the purpose of applying the FSIA, Canadian bankruptcy

4   trustees are no different than the "court appointed liquidators" in the *Fabe* case and no different than

5   the "commissioners" in the *Granville Gold Trust* case.  The FSIA bars this action against the trustee

6   and trustee's counsel.

7   Braich's authority is plainly inapplicable.  The *Credit Foncier Franco-Canadian v.*

8   *Edmonton Airport Hotel Co. Ltd,* (1966) 55 W.W.R. 743 (Alta. Q.B.) involved the issue of whether

9   a receiver appointed pursuant to a creditor's petition was entitled to be indemnified for costs which

10   in turn depended upon whether or not the receiver was an agent, *not of the government or of the*

11   *appointing court*, but of the company the receiver took control of.  This case is totally irrelevant to

12   the issue here.

13   The 1929 case of *Smith v. Heys*, (1929) 10 C.B. R. 393 is equally if not more irrelevant than

14   *Credit Foncier*.  The case dealt with the question of when a bankruptcy trustee could be held per-

15   sonally liable on a contract entered into on behalf of a bankrupt entity and has absolutely no bearing

16   on the application of the FSIA.

## III.  CONCLUSION

18   Based on the foregoing submissions and the authority and argument contained in the McLean

19   Parties' motion to dismiss, Braich's claims against the McLean Parties should be dismissed.

20   DATED this 24th day of May, 2007.

22   BUCKNELL STEHLIK SATO & STUBNER, LLP

24   _____/s/ Jerry N. Stehlik_____
     Jerry N. Stehlik, WSBA #13050
25   of Attorneys for McLean Parties

26   **BUCKNELL STEHLIK SATO & STUBNER, LLP**
     2003 Western Avenue, Suite 400
27   Seattle, Washington 98121
     (206) 587-0144  •  fax (206) 587-0277

Reply in Support of the McLean
Parties' Motion to Dismiss - 11

28