The Honorable John C. Coughenour

**BUCKNELL STEHLIK SATO & STUBNER, LLP**
2003 Western Avenue, Suite 400
Seattle, Washington  98121
(206) 587-0144  •  fax (206) 587-0277

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON, AT SEATTLE

| | | |
|---|---|---|
| ERWIN SINGH BRAICH, | ) | No.  CV7 0177C |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| STEVE MITTELSTAEDT, et al, | ) | **DECLARATION OF JERRY N.** |
| | ) | **STEHLIK IN SUPPORT OF** |
| Defendant. | ) | **McLEAN PARTIES' MOTION TO** |
| | ) | **DISMISS** |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

1.      My name is Jerry N. Stehlik.  I am over the age of 21.  I am personally familiar with all matters stated herein and would so testify if called before the court.

2.      My firm, Bucknell Stehlik Sato & Stubner, LLP, is counsel for Brian G.N. McLean and his law firm, McLean & Armstrong, LLP, who are named defendants in this action.  I provide this declaration in support of Mr. McLean and McLean & Armstrong's motion to dismiss and in particular in support of the reply memorandum submitted in support of the McLean Parties Motion to Dismiss.

3.      Attached are true and correct copies of §§ 16(3), 37 and 80 of the Canadian Bankruptcy and Insolvency Act.

Declaration of Jerry N. Stehlik - 1

**BUCKNELL STEHLIK SATO & STUBNER, LLP**
2003 Western Avenue, Suite 400
Seattle, Washington 98121
(206) 587-0144  •  fax (206) 587-0277

W:\CLIENTS\2713\103\stehlik reply declaration.doc

1    4.      Also attached hereto are true and correct copies of the following case: *MacCulloch v.*

2  *PriceWaterhouse, Ltd.* (1992), 14 C.B.R. (3d) 48; *Mancini v. Falconi*, (1989), 76 C.B.R. (N.S.) 90

3  (Ont. S.C.); *Society of Composers, Authors & Music Publishers of Canada v. Armitage* (2000), 20

4  C.B.R. (4th) 160; *Re Caswan Environmental Services Inc.* (2001) 24 C.B.R. (4th) 191; *Re Border*

5  *Drilling & Sanitation Ltd.*, (1983), 45 C.B.R. (N.S.) 255 (Ont. S.C.); *382232 Ontario, Ltd. v.*

6
7  *Wilanour Resources, Ltd.* (1982), 43 C.B.R. (N.S.) 153 (Ont. S.C.); and *Morris v. Lemontzis* (1983)

8  Q.J. No. 8.

9    I declare under penalty of perjury that the foregoing is true and correct.

10    DATED this 24th day of May, 2007.

11                              _____/s/ Jerry N. Stehlik_____
12                                     Jerry N. Stehlik

13

14

15

16

17

18

19

20

21

22

23

24

25

26                                    **BUCKNELL STEHLIK SATO & STUBNER, LLP**
27                                       2003 Western Avenue, Suite 400
                                         Seattle, Washington 98121
28  Declaration of Jerry N. Stehlik - 2          (206) 587-0144  •  fax (206) 587-0277

W:\CLIENTS\2713\103\stehlik reply declaration.doc

## Official Name

**15. Official name in bankruptcy and proposal proceedings** — The official name of a trustee acting in bankruptcy proceedings is "The Trustee of the Estate of (*insert name of the bankrupt*), a bankrupt", and the official name of a trustee acting with respect to a proposal by an insolvent person is "the Trustee acting *in re* the proposal of (*insert the name of the debtor*)".

### C§9 — Official Name of Trustee

The reason for giving the trustee such a name and not using the personal name of the trustee is to avoid the formality of registering the name of the new trustee upon the conveyance or transfer of property and the formality of reviving actions in cases where a new trustee is appointed or substituted under the provisions of s. 14: *Brenner (Trustee of) v. Brenner* (1922), 3 C.B.R. 84 (Ont. S.C.).

Section 15 is permissive and the fact that a trustee sues in its own name is of no consequence: *Fitzgerald v. McMorrow*, 3 C.B.R. 29, 52 O.L.R. 383, [1923] 4 D.L.R. 619 (S.C.).

### Status of Trustee

**15.1 Declaration** — A trustee is deemed to be a trustee for the purposes of the definition "trustee" in section 2 of the *Criminal Code*.

1997, c. 12, s. 16

### C§9A — Status of Trustee

Section 2 of the *Criminal Code* defines the word "trustee". By s. 15.1, a trustee in bankruptcy is deemed to be a trustee for the purposes of s. 2 of the *Code*. Section 336 of the *Criminal Code* makes it an offence for a trustee to convert trust property in whole or in part to an unauthorized use. For a conviction, the Crown must prove that the trustee had an intent to defraud.

### Duties and Powers of Trustees

➡ **16. (1) Security to be given by trustee** — Every trustee duly appointed shall, as soon as they are appointed, give security in cash or by bond or suretyship of a guaranty company satisfactory to the official receiver for the due accounting for, the payment and the transfer of all property received by the trustee as trustee and for the due and faithful performance of the trustee's duties.

**(2) Security to be given by trustee** — The security required to be given under subsection (1) shall be given to the official receiver in favour of the creditors generally and may be enforced by any succeeding trustee or by any one of the creditors on behalf of all by direction of the court, and may be increased or reduced by the official receiver.

**(3) Trustee to take possession and make inventory** — The trustee shall, as soon as possible, take possession of the deeds, books, records and documents and all property of the bankrupt and make an inventory, and for the purpose of making an inventory the trustee is entitled to enter, subject to subsection (3.1), on any premises on which the deeds, books, records, documents or property of the bankrupt may be, even

if they are in the possession of an executing officer, a secured creditor or other claimant to them.

**(3.1) Warrant required to enter** — Where the premises referred to in subsection (3) are occupied by a person other than the bankrupt, the trustee may not enter the premises without the consent of that other person except under the authority of a warrant issued under section 189.

**(4) Trustee to be receiver** — The trustee shall, in relation to and for the purpose of acquiring or retaining possession of the property of the bankrupt, be in the same position as if he were a receiver of the property appointed by the court, and the court may on his application enforce the acquisition or retention accordingly.

**(5) Right of trustee to books of account, etc.** — No person is, as against the trustee, entitled to withhold possession of the books of account belonging to the bankrupt or any papers or documents, including material in electronic form, relating to the accounts or to any trade dealings of the bankrupt or to set up any lien or right of retention thereon.

R.S.C. 1985, c. 31 (1st Supp.), s. 3; 1994, c. 26, s. 7; 1997, c. 12, s. 17; 2004, c. 25, s. 18

**17. (1) Property to be delivered to trustee** — Where a person has in his possession or power any property of the bankrupt that he is not by law entitled to retain as against the bankrupt or the trustee, that person shall deliver the property to the trustee.

**(2) Power to act anywhere** — For the purpose of obtaining possession of and realizing on the property of the bankrupt, a trustee has power to act as such anywhere.

**18. Conservatory measures** — The trustee may when necessary in the interests of the estate of the bankrupt

(a) take conservatory measures and summarily dispose of property that is perishable or likely to depreciate rapidly in value; and

(b) carry on the business of the bankrupt until the date fixed for the first meeting of creditors.

**19. (1) Legal advice or action before first meeting** — The trustee may prior to the first meeting of creditors obtain such legal advice and take such court proceedings as he may consider necessary for the recovery or protection of the property of the bankrupt.

**(2) In case of emergency** — In the case of an emergency where the necessary authority cannot be obtained from the inspectors in time to take appropriate action, the trustee may obtain such legal advice and institute such legal proceedings and take such action as he may deem necessary in the interests of the estate of the bankrupt.

**(3) Verifying bankrupt's statement** — The trustee shall verify the bankrupt's statement of affairs.

Proposed Repeal — 19(3)
(3) [Repealed 2005, c. 47, s. 13. Not in force at date of publication.]

Section 36 sets out the procedure to be followed by a substituted trustee and R. 56 sets out the persons who are to be notified of the passing of accounts of the former trustee and the notice that they are to receive.

The substituted trustee must file with the court a copy of the minutes of the meeting of creditors at which the special resolution was passed for the substitution of the trustee; the minutes must be signed by the chair of the meeting: s. 36(2)(b). The substituted trustee must notify the Superintendent of the appointment: s. 36(2)(c). If the assignment or receiving order has been registered against the title to real property, the substituted trustee shall, if required by the inspectors, register a notice of the appointment in the land registry of any land titles or registry office: s. 36(2)(d).

Where the assets are insufficient to pay both the former trustee and the new trustee's fees and disbursements and there has been an interim receivership, the fees and disbursements of the interim receiver are first to be paid: *Re Gump* (1921), 2 C.B.R. 56 (Ont. S.C.); *Re Jenny Lind Candy Shops Ltd.* (1942), 23 C.B.R. 339 (Ont. H.C.). The disbursements of the first trustee are paid next and then the disbursements of the second trustee. If there are moneys left after paying both disbursements, then the fees of the trustees are divided between them: *Re Jenny Lind Candy Shops Ltd.*, *supra*.

The former trustee must deliver to the substituted trustee all the property of the debtor. Under s. 2(1), "property" includes money. Section 36(1)(e) contemplates that the fees and disbursements of the former trustee will be paid when funds are available; it does not create a right of set-off for the former trustee for fees and disbursements against estate money in the former trustee's possession: *Re Banack* (1995), 40 C.B.R. (3d) 245, affirmed 43 C.B.R. (3d) 59 (Ont. C.A.).

The former trustee has no right to retain estate funds in order to guarantee payment of its fees, nor, after the date of substitution, should it continue to pay accounts of third parties, even though they are for expenses incurred by the trustee during its administration: *Re Systèmes d'informatique Pronix Inc.* (1992), 17 C.B.R. (3d) 122 (C.S. Qué.).

If an individual trustee has rolled over its trustee practice to a corporate trustee that is duly licensed under the *BIA*, the court can dispense with compliance with s. 36: *Re A.S. Trading Co. Ltd.* (1980), 36 C.B.R. (N.S.) 100 (Que. S.C.).

## C§43 — Discharge of Former Trustee

A trustee who has been replaced cannot be discharged until the trustee demonstrates that it has accounted to the satisfaction of the inspectors and of the court for all property that came into the trustee's hands and three months have elapsed after the date of substitution without any undisposed of claims or objections having been made by the bankrupt or any creditor (s. 41(3)).

For the procedure to be followed by the former trustee when a substitute trustee has been appointed, see *post* C§70 "Procedure to be Followed by Former Trustee in Obtaining Discharge Where a Substitute Trustee has been Appointed".

**37. Appeal to court against trustee — Where the bankrupt or any of the creditors or any other person is aggrieved by any act or decision of the trustee, he may apply to the court and the court may confirm, reverse or modify the act or decision complained of and make such order in the premises as it thinks just.**

Part IV — Property of the Bankrupt          S. 81(2)



**77. (1) Contributory shareholders** — Every shareholder or member of a bankrupt corporation is liable to contribute the amount unpaid on his shares of the capital or on his liability to the corporation, its members or creditors, as the case may be, under the Act, charter or instrument of incorporation of the company or otherwise.

**(2) Liability of contributory an asset** — The amount that the contributory is liable to contribute under subsection (1) shall be deemed an asset of the corporation and a debt payable to the trustee forthwith on the bankruptcy of the corporation.

**78. Bank must notify trustee** — Where a banker has ascertained that a person having an account with the banker is an undischarged bankrupt, it is his duty forthwith to inform the trustee of the existence of the account, and thereafter the banker shall not make any payments out of the account, except under an order of the court or in accordance with instructions from the trustee, unless on the expiration of one month from the date of giving the information no instructions have been received from the trustee.

**79. Inspection of property held in pledge** — Where property of a bankrupt is held as a pledge, hypothec, pawn or other security, the trustee may give notice in writing of the trustee's intention to inspect the property, and the person so notified is not thereafter entitled to realize the security until the person has given the trustee a reasonable opportunity of inspecting the property and of exercising the trustee's right of redemption.

1997, c. 12, s. 71

**80. Protection of trustee** — If the trustee has seized or disposed of property in the possession or on the premises of a bankrupt without notice of any claim in respect of the property and after the seizure or disposal it is made to appear that the property, at the date of the bankruptcy, was not the property of the bankrupt or was subject to an unregistered security or charge, the trustee is not personally liable for any loss or damage arising from the seizure or disposal sustained by any person claiming the property, interest in property or, in the Province of Quebec, a right in property, or for the costs of proceedings taken to establish a claim to that property, interest or right, unless the court is of opinion that the trustee has been negligent with respect to the trustee's duties in relation to the property.

1997, c. 12, s. 71; 2004, c. 25, s. 48

**81. (1) Persons claiming property in possession of bankrupt** — Where a person claims any property, or interest therein, in the possession of a bankrupt at the time of the bankruptcy, he shall file with the trustee a proof of claim verified by affidavit giving the grounds on which the claim is based and sufficient particulars to enable the property to be identified.

**(2) How claim disposed of** — The trustee with whom a proof of claim is filed under subsection (1) shall within fifteen days thereafter or within fifteen days after the first meeting of creditors, whichever is the later, either admit the claim and deliver possession of the property to the claimant or give notice in writing to the claimant that the claim is disputed with his reasons therefor, and, unless the claimant appeals therefrom to the court within fifteen days after the mailing of the notice of dispute, he shall be deemed to have abandoned or relinquished all his right to or interest in the property

1992 CarswellNS 48
14 C.B.R. (3d) 48, (sub nom. MacCulloch (Bankrupt), Re) 115 N.S.R. (2d) 131, 314 A.P.R. 131

MacCulloch v. Price Waterhouse Ltd.

PATRICIA MacCULLOCH v. PRICE WATERHOUSE LIMITED; PATRICIA MacCULLOCH v. BANK OF
NOVA SCOTIA and R. DOUGLAS and D. MacLEOD (Bank Employees)

Nova Scotia Supreme Court, Trial Division

Glube C.J.T.D. [in Chambers]

Heard: June 11, 1992
Judgment: July 6, 1992
Docket: Docs. S.H. 71344/90, 78184/91

Copyright © CARSWELL,
a Division of Thomson Canada Ltd. or its Licensors. All rights reserved.

Counsel: Winston B. Cole, for plaintiff.
Carl A. Holm, Q.C., for Price Waterhouse.
Daniel H. Campbell, Q.C., for Bank of Nova Scotia et al.

Subject: Corporate and Commercial; Insolvency; Estates and Trusts

Bankruptcy --- Administration of estate -- Trustees -- Legal proceedings against trustee -- General.

Proceedings -- Against trustee -- Action alleging negligent mismanagement of estate in bankruptcy
dismissed as showing no reasonable cause of action.

In October 1979, the plaintiff's husband died, leaving an estate worth over $10 million. The plaintiff
and a trust company were appointed executors. In June 1982, the estate was petitioned into
bankruptcy by the bank, and a trustee in bankruptcy was appointed. In subsequent litigation, the
plaintiff was found guilty of a breach of her fiduciary duty to the estate as a result of certain real
estate transactions that occurred six months prior to the bankruptcy. The plaintiff was found
accountable to the trustee for the proceeds of the transactions and the proceeds were ordered placed
in trust. In September 1986, following an accounting, the trustee entered judgment for approximately
$1.8 million. The plaintiff filed a notice of appeal and obtained a stay on the judgment pending
disposition of the appeal. The plaintiff was also ordered to disclose her assets and to refrain from
disposing of or encumbering them.

In January 1987, the plaintiff applied to have the trustee removed, but the application was dismissed.
In April 1987, the plaintiff's appeal from the accounting was dismissed and subsequently an execution
order was issued against her in an effort to preserve the assets. The plaintiff's application for a stay of
execution was dismissed.

In March 1988, the trustee obtained an order discharging the estate from bankruptcy. One year later,
the trustee applied to the registrar for approval of its final accounts and gave notice of its intention to
apply for discharge. The plaintiff and the trust company as executors and the plaintiff in her personal
capacity filed objections. The plaintiff's objections included allegations of negligence and misconduct
by the trustee. After a hearing on the objections, the trustee was found to have acted reasonably.
The plaintiff appealed and the discharge of the trustee was adjourned pending the disposition of the
appeal. The plaintiff commenced another action against the trustee. In June 1991, the appeal court
agreed with the judgment and found that the trustee had acted reasonably. In July, the plaintiff
commenced an action against the bank and two of its employees alleging conflict of interest, abuse
and misuse of power, incompetence and causing the needless depletion of the estate. Both the bank

and its employees and the trustee applied to have the statements of claim against them struck out.

Held:

The statements of claim were struck out.

The action against the trustee was brought by the plaintiff in her personal capacity. The trustee owed a duty to the creditors of the estate, to the court and to the estate itself, but not to the plaintiff in her personal capacity. As a beneficiary, the plaintiff could take action only against the executors; she had no cause of action against the trustee.

The plaintiff offered in an unsworn brief to provide affidavit evidence to support her claims. The offer alone was insufficient to show a cause of action. Further, the plaintiff's argument that, since there had been over $10 million in the estate and now there was nothing, some mismanagement had occurred was insufficient to found a cause of action.

The allegations in the statement of claim against the bank and its employees were unclear and showed no cause of action.

Both of the actions were found to be duplicitous. All of the plaintiff's allegations had been through the legal process, including appeal, and the issues had been decided. The plaintiff had had ample opportunity to bring new facts before the court but had not done so.

Cases considered:

Block v. Burlingham (1987), 70 C.B.R. (N.S.) 311, 64 Sask. R. 260, 46 D.L.R. (4th) 355 (Q.B.) -- referred to

Campbell v. Sinnott (1985), 48 Nfld. & P.E.I.R. 125, 142 A.P.R. 125 (P.E.I. S.C.) -- referred to

Canada v. Operation Dismantle Inc. (sub nom. Operation Dismande Inc. v. Re.), [1985] 1 S.C.R. 441, 12 Admin. L.R. 16, 13 C.R.R. 287, 18 D.L.R. (4th) 418, 59 N.R. 1 -- referred to

Feener v. Surette (sub nom. Feener v. Nova Scotia (Attorney General)) (1982), 56 N.S.R. (2d) 89, 117 A.P.R. 89 (C.A.) -- referred to

Haase v. Vladi Private Islands Ltd. (1990), 96 N.S.R. (2d) 323, 253 A.P.R. 323 (C.A.) -- referred to

Lang Michener Lash Johnson v. Fabian (1987), 16 C.P.C. (2d) 93, 59 O.R. (2d) 353, 37 D.L.R. (4th) 685 (H.C.) -- considered

MacCulloch Estate v. MacCulloch (sub nom. Price Waterhouse v. MacCulloch) (1985), 20 E.T.R. 189, 69 N.S.R. (2d) 167, 163 A.P.R. 167 (T.D.) [reversed (1986), 22 E.T.R. 34, 72 N.S.R. (2d) 1, 173 A.P.R. 1, 25 D.L.R. (4th) 126 (C.A.), leave to appeal to S.C.C. refused (1986), 22 E.T.R. xv (note), 73 N.S.R. (2d) 270 (note), 176 A.P.R. 270 (note), 70 N.R. 81 (note) (S.C.C.)] -- referred to

MacCulloch Estate v. MacCulloch (sub nom. Price Waterhouse v. MacCulloch) (1986), 22 E.T.R. 34, 72 N.S.R. (2d) 1, 173 A.P.R. 1, 25 D.L.R. (4th) 126 (C.A.), leave to appeal to S.C.C. refused (1986), 22 E.T.R. xv (note), 73 N.S.R. (2d) 270 (note), 176 A.P.R. 270 (note), 70 N.R. 81 (note) (S.C.C.) -- referred to

MacCulloch Estate, Re (1989), 93 N.S.R. (2d) 226, 242 A.P.R. 226 (T.D.) [additional reasons at (1990), 79 C.B.R. (N.S.) 111, 97 N.S.R. (2d) 300, 258 A.P.R. 300 (T.D.), varied (1991), 6 C.B.R. (3d) 56, 42 E.T.R. 72, 108 N.S.R. (2d) 130, 294 A.P.R. 130 (C.A.), leave to appeal to S.C.C. refused (1992), 137 N.R. 396 (note) (S.C.C.)] -- referred to

MacCulloch Estate, Re (1991), 6 C.B.R. (3d) 56, 42 E.T.R. 72, 108 N.S.R. (2d) 130, 294 A.P.R. 130 (C.A.), leave to appeal to S.C.C. refused (1992), 137 N.R. 396 (note) (S.C.C.) -- referred to

MacCulloch Estate, Re, 41 E.T.R. 65, 102 N.S.R. (2d) 147, 279 A.P.R. 147 (Prob. Ct.) -- referred to

MacCulloch Estate (Trustee of) v. MacCulloch (sub nom. Price Waterhouse v. MacCulloch) (1987), 78 N.S.R. (2D) 300, 193 A.P.R. 300 (C.A.) -- refereed to

Mancini (Trustee of) v. Falconi (1989), 76 C.B.R. (N.S.) 90 (Ont. S.C.) -- referred to

PR Engineering Ltd. v. Clarke, Henning & Hahn Ltd. (sub nom. PR Engineering Ltd. v. Golden Shield Resources Ltd. (Trustee of)) (1990), 79 C.B.R. (N.S.) 172, (sub nom. Re Golden Shield Resources Ltd.) 69 D.L.R. (4th) 316 (Ont. S.C.) -- referred to

Pelee Motor Inn Ltd. (No. 2), Re (1979), 30 C.B.R. (N.S.) 216 (Ont. S.C.) -- referred to

RoyNat Inc. v. Allan (1989), 77 C.B.R. (N.S.) 133, 99 A.R. 370, 70 Alta. L.R. (2d) 231, [1990] 1 W.W.R. 698 (Q.B.) -- referred to

Teale v. United Church of Canada at Woodlawn, Nova Scotia (Trustees of) (1979), 34 N.S.R. (2d) 313 (C.A.) -- referred to

Statutes considered:

Bankruptcy Act, R.S.C. 1970, c. B-3 [R.S.C. 1985, c. B-3] --

 s. 16(2) [R.S.C. 1985, c. B-3, s. 34(2)]

 s. 162(1)(g) [R.S.C. 1985, c. B-3, s. 192(1)(g)]

Bankruptcy Act, R.S.C. 1985, c. B-3 --

 s. 215

Collections Act, R.S.N.S. 1989, c. 76.

Limitation of Actions Act, R.S.N.S. 1989, c. 258.

Rules considered:

Nova Scotia, Civil Procedure Rules --

 r. 14.25

 r. 14.25(1)(a)

 r. 14.25(1)(b)

 r. 14.25(1)(d)

 r. 14.25(2)

 R. 25

Applications to strike out statements of claim.

**Glube C.J.T.D.:**

1    The hearing involved two applications which contain a number of similarities. They will be dealt with together or separately as the facts and argument dictate.

## 1. Application by Price Waterhouse Limited

2    The application by Price Waterhouse Limited ("Price Waterhouse" or the "trustee") is to strike the amended statement of claim of Patricia MacCulloch dated April 21, 1992, on the following alternative grounds:

> 1. (a) leave to commence the action was not obtained under s. 215 of the *Bankruptcy Act* [R.S.C. 1985, c. B-3]; and
>
> (b) leave should not be granted nunc pro tunc.
>
> 2. (a) the pleadings disclose no reasonable cause of action;
>
> (b) the allegations in the plaintiff's pleadings having been put in issue in previous proceedings, the plaintiff is barred by the principle of issue estoppel from relitigating the same issues and/or the issues raised are res judicata;
>
> (c) the proceeding is frivolous, vexatious and an abuse of process of the court.
>
> 3. The applicant seeks to have the plaintiff barred from further proceedings against the defendant concerning the estate of Charles E. MacCulloch in bankruptcy (the "estate"), in particular, concerning the defendant's administration of and dealings with the assets of the estate or the action brought by the defendant as trustee of the estate against the plaintiff, on the basis of 2.(b) and (c) set forth above.

## II. Application by the Bank of Nova Scotia and R. Douglas and D. Macleod

3    This is an application by the Bank of Nova Scotia (the "bank") and by two named employees, inspectors under the *Bankruptcy Act*, to strike out the amended statement of claim dated April 21, 1992 on the following grounds:

> 1. that the plaintiff has no standing to bring the action;
>
> 2. that the matters referred to in the amended statement of claim are barred by the *Limitation of Actions Act* [R.S.N.S. 1989, c. 258];
>
> 3. that the plaintiff is not entitled to commence an action against the trustee in bankruptcy without leave of the court and should not be permitted to bring action against the inspectors who were duly elected by the creditors to perform functions under the *Bankruptcy Act*, without such leave;
>
> 4. that the allegations of fact in the statement of claim have already been decided against the plaintiff adversely and she is estopped from raising them in this proceeding;
>
> 5. that the statement of claim discloses no reasonable cause of action;
>
> 6. that the various matters alleged in the statement of claim are false, frivolous and vexatious; and
>
> 7. that the statement of claim and these proceedings constitute an abuse of the process of the court.

## III. Background

4    Robert A. Cordy, a vice-president of Price Waterhouse, filed an extensive affidavit. There is also lengthy material in the files from Mrs. MacCulloch. I will attempt to state the background facts as succinctly as possible; however, they span a number of years.

5    In January 1990, an action was commenced by Patricia MacCulloch, the plaintiff and respondent in this application, against Price Waterhouse and Central Guaranty Trust Company ("Central"). The action against Central was discontinued in February 1992. The amended action against Price Waterhouse, after identifying the parties (paras. 1 and 2), sets out that Charles E. MacCulloch died in October 1979 leaving a will (para. 3) and the inventory of his estate showed assets of slightly over $10 million (para. 4). The plaintiff and Central were appointed executors and the plaintiff was also a beneficiary under the will (para. 5). On June 7, 1982, the estate was petitioned into bankruptcy (by the bank) and Price Waterhouse was appointed trustee under the *Bankruptcy Act* [R.S.C. 1970, c. B-3] for the estate and was also the receiver and manager for various companies in which the estate had an interest (paras. 6 and 7). Paragraph 8 of the statement of claim states the following:

> The Plaintiff's claim against the Defendant is for one of negligent mismanagement of the Estate of Charles E. MacCulloch, by virtue of which mismanagement, the Plaintiff, as a beneficiary, suffered loss and damages, in that what commenced as a 10 million dollar estate has been virtually depleted.

6    The final paragraph is a claim for special, general and punitive damages, along with prejudgment interest and costs (para. 9).

7    The originating notice and statement of claim alleging negligent mismanagement was served on Price Waterhouse on July 16, 1990. On July 26, 1990, Price Waterhouse made this application to strike the pleadings. This application has been adjourned on a number of occasions for a variety of reasons including awaiting decisions on other matters brought by Mrs. MacCulloch which were before the court.

8    Probate of Mr. MacCulloch's estate was granted to his executors, originally four; however, one died and one resigned, leaving Central and the plaintiff. In December 1981, the executors entered into an agreement which conveyed to Patricia MacCulloch for $500,000 a farm property owned by the estate and a Toronto condominium.

9    On June 29, 1982, the estate was petitioned into bankruptcy by the bank and Price Waterhouse was appointed as trustee of the estate in bankruptcy. As a result of a legal opinion that the sale of the farm and the condominium was a breach of Mrs. MacCulloch's fiduciary duty as an executor, the trustee commenced an action against her in June of 1984. The evidence at the trial held in April 1985 revealed that at the time Mrs. MacCulloch was negotiating to purchase the two properties in 1981, she had arranged the resale of the farm property for $1,350,000 and she later sold the condominium for $485,000. She did not advise the other executors nor the residuary legatees that she was negotiating the resale of the property. At the trial, Mrs. MacCulloch was found to be in breach of her fiduciary duty to the estate in probate, but she was not found liable to Price Waterhouse, who appealed that decision. (See *MacCulloch Estate v. MacCulloch* (sub nom. *Price Waterhouse v. MacCulloch*) (1985), 20 E.T.R. 189, 69 N.S.R. (2d) 167, 163 A.P.R. 167 (T.D.).)

10    Before the appeal was heard, the trustee notified Mrs. MacCulloch's solicitor out of courtesy that the trustee was filing a report under the *Bankruptcy Act* pursuant to s. 16(2) (now s. 34(2)). Following that hearing, Mrs. MacCulloch's solicitor appealed the decision of the registrar to extend the time for the administration of the estate in bankruptcy. In November 1985, the appeal was dismissed.

11    The appeal by Price Waterhouse of the 1985 case against Mrs. MacCulloch was heard on December 6, 1985. In the decision dated January 20, 1986, the appeal court held that she had breached her fiduciary duty, she was accountable to the trustee in bankruptcy for the proceeds of the sale of the properties, the proceeds were ordered to be held in trust for Price Waterhouse and she was to account for the profits on the purchase and resale of both properties. The decision also found that it was incumbent upon the trustee to bring the action. (See *MacCulloch Estate v. MacCulloch* (sub

nom. *Price Waterhouse v. MacCulloch*) (1986), 22 E.T.R. 34, 72 N.S.R. (2d) 1, 173 A.P.R. 1, 25
D.L.R. (4th) 126.) Leave to appeal to the Supreme Court of Canada was denied [(1986), 2 E.T.R. xv
(note), 73 N.S.R. (2d) 270 (note), 176 R.P.R. 270 (note), 70 N.R. 81 (note) (S.C.C.)]. The trustee
learned that upon the sale of the condominium in January 1983, a mortgage was given back to Mrs.
MacCulloch, which she assigned to her sister as a gift.

12      In September 1986, following an accounting hearing before the original trial judge, the trustee
entered judgment for approximately $1,800,000. On September 3, 1986, Mrs. MacCulloch filed a
notice of appeal and she obtained a stay on the judgments pending the disposition of the appeal. At
the same time the stay was granted, Mrs. MacCulloch was ordered to disclose her assets and not to
dispose of or encumber any assets owned by her.

13      Prior to the appeal on the accounting being heard, the trustee filed a further report with the
registrar of its dealings with the estate in bankruptcy and again out of courtesy notified Mrs.
MacCulloch through her solicitor. At the hearing before the registrar on January 16, 1987, Mrs.
MacCulloch and her solicitor appeared and made submissions. The registrar, among other things,
required a further report from the trustee on June 1.

14      On January 28, 1987, notice was given Price Waterhouse of an application by Mrs. MacCulloch
to have Price Waterhouse removed as trustee and of an appeal of the registrar's decision. Central, the
administrative executor of the estate, advised the trustee it was satisfied with the administration of
the estate in bankruptcy and that it did not believe that it would be in the interest of the estate if
Price Waterhouse was removed as trustee. Mrs. MacCulloch offered to release the trustee "from any
liability for commencing or prosecuting the action against her and to withdraw her application to have
the Trustee removed if the Trustee would consent to an Order which would have the effect of
discharging the judgment" (para. 86 of the Cordy affidavit). The trustee declined and the application
to remove the trustee was dismissed by the court. The appeal from the accounting was heard and
dismissed with reasons being given on April 15, 1987. (See *MacCulloch Estate (Trustee of) v.
MacCulloch* (sub nom. *Price Waterhouse v. MacCulloch*) (1987), 78 N.S.R. (2d) 300, 193 A.P.R. 300
(C.A.).)

15      In an effort to avoid the continuation of litigation, the trustee at various times offered to
withhold execution if Mrs. MacCulloch would disclose her assets and undertake not to dispose of
them. She declined. On April 22, an execution order was issued in an effort to preserve the assets. On
learning that Mrs. MacCulloch was residing in Lunenburg County, a search at the registry of deeds
revealed that a property at North West Cove was conveyed by Mrs. MacCulloch to her sister on
December 16, 1985. The trustee wanted to examine Mrs. MacCulloch under the *Collections Act*
[R.S.N.S. 1979, c. 76]. Mrs. MacCulloch's solicitor appeared and entered a conditional appearance on
her behalf and objected to the examination.

16      On May 27, the trustee again notified Mrs. MacCulloch, out of courtesy, of an appearance before
the registrar in bankruptcy. Again, her solicitor made representations and on June 2, 1987, the
registrar directed an examination of Mrs. MacCulloch pursuant to s. 162(1)($g$) (now s. 192(1)($g$)) of
the *Bankruptcy Act*. Because of her ill health, the examination never took place. On June 25, her
solicitor obtained an order, which was unopposed by the trustee, extending the time to seek leave to
appeal to the Supreme Court of Canada. In July, her solicitor wrote several letters complaining about
the seizure of her residence.

17      On August 13, Mrs. MacCulloch's solicitor obtained an ex parte order staying the sale of her
Rolls Royce, which had been seized under the execution order. On August 27, 1987, the court
dismissed an application by Mrs. MacCulloch for a stay of execution; the court found that the trustee
had a duty to "press on and obtain recovery of the amount due or at least a sufficient part of that
amount to satisfy its costs and the claims of creditors" (decision of Mr. Justice Burchell). The sale of
the motor vehicle was deferred from time to time as the trustee had agreed, subject to court
approval, to sell shares for an amount sufficient to pay the creditors. On October 23, the court
declined to approve the sale. Eventually, a sale was concluded in February 1988, which was approved
by the court. Although the trustee had started various proceedings to realize on the judgments
against Mrs. MacCulloch, these all ceased with the February 1988 order. On March 4, 1988, the

trustee obtained an order discharging the estate of Charles E. MacCulloch in probate from bankruptcy. The hearing was attended by Mrs. MacCulloch and her solicitor. On April 22, 1988, the solicitor for the estate in probate obtained an order renewing the execution order originally obtained by the trustee. Around June 30, 1988, the judgments were assigned to the estate in probate.

18    From early March 1988 until mid 1991, numerous letters were written on behalf of Mrs. MacCulloch addressed to the trustee, the inspectors and the estate's solicitor complaining about vandalism to her property and the seizure of her Rolls Royce. She was told that authority to deal with those matters was now with the estate in probate.

19    On March 10, 1989, the trustee applied to the registrar for approval of its final accounts and gave notice of its intention to apply for discharge. On April 17, 1989, objections were filed by Mrs. MacCulloch and Central as executors of the estate in probate and by Mrs. MacCulloch in her personal capacity. The objections of Mrs. MacCulloch included a claim that the remuneration of the trustee ought to be reduced because of negligence and misconduct by the trustee. A number of general and specific allegations were made including "committing waste by undertaking unnecessary, costly and futile legislation against Patricia MacCulloch when the Trustee knew or ought to have known that the Estate contained a surplus and without regard to Patricia MacCulloch as legatee in lieu of dower; failing to disclose to the Court in the course of litigation the probable surplus and thereby gaining unfair advantage in the action against Patricia MacCulloch" (Ex. 25 and 26 attached to the Cordy affidavit). In addition to the trustee giving the objectors full disclosure including solicitor's files and correspondence relating to the administration of the estate in bankruptcy and the actions against Mrs. MacCulloch, three days of discoveries were held of Mr. Cordy and the former administrator of the estate.

20    A six-day court hearing was held on the objections in September and October 1989. The decision is dated November 3, 1989. (See *Re MacCulloch Estate* (1989), 93 N.S.R. (2d) 226, 242 A.P.R. 226 (T.D.).) After reviewing the evidence of the expert who testified against the trustee's, Hallett J. states at p.233 [N.S.R.]:

> The issue is not whether the actions taken by the trustee to realize on the assets was the best way or the only way but whether it was reasonable and based on an exercise of sound judgment. In my opinion, the trustee's realization plan met the test for the reasons I have stated.

21    On the issue of whether the trustee had obtained the best prices for the properties, Hallett J. was "satisfied that every reasonable step was taken to obtain the best prices" (p. 234). He found that the operation of the company by the trustee "for the purpose of realizing funds to pay down the creditors of the Estate was not unreasonable" (p. 235). He also referred to the finding by the Court of Appeal that it was "incumbent" upon the trustee to have commenced the action against Mrs. MacCulloch. He reviewed why it was an overstatement to say that only Mrs. MacCulloch would inherit the judgment against her. He found that the trustee kept the executors informed. Finally he stated at p. 237:

> In summary, on the major point raised by the objectors that the trustee acted unreasonably or unnecessarily in the manner in which it realized on the assets of the estate, I respectfully [sic] disagree. While one can say the trustee could have proceeded in other ways, from the evidence I heard I am satisfied that it proceeded in the most reasonable manner so as to maximize the amounts obtained for assets under the trustee's control, both for the benefit of the creditors and for the estate in probate. As to the legal action against Mrs. MacCulloch, it was authorized by the inspectors on the basis of the opinion of Mr. John Honsberger, a leading expert in the field of bankruptcy, that Mrs. MacCulloch had breached her fiduciary duties as executor in purchasing and reselling at a profit the Monte Vista Farm and the Toronto condominium. The correctness of the trustee's judgment in proceeding against her was confirmed by the Appeal Division of this court when it stated that it was incumbent upon the trustee to have proceeded against Mrs. MacCulloch. A judgment of 1.8 million dollars was recovered. That is not an insignificant amount, notwithstanding that nothing was collected on the judgment by the trustee. It is now an asset of the estate in probate and it will be for the

executors to determine how they wish to treat that asset.

22    Because the action, S.H. No. 71344, which is the subject of this application commenced in January 1990, the order following the hearing before Mr. Justice Hallett adjourned the discharge of the trustee sine die pending disposition of that action but allowed the trustee to renew its application for discharge upon notice to the executors of the estate in probate. A notice of appeal of Mr. Justice Hallett's decision was filed on behalf of Mrs. MacCulloch listing numerous grounds, including "that the Trial Judge had erred in failing to find the Trustee had misconducted himself in various ways in the administration of the Estate including in taking proceedings against her" (affidavit of Robert Cordy, para. 69). The appeal decision, dated June 12, 1991, agreed with the basic findings of the trial judge that the trustee acted reasonably throughout the administration of the estate and found that the trial judge had made no palpable or overriding error. The appeal court reduced the trustee's fee. (See *Re MacCulloch Estate* (1991), 6 C.B.R. (3d) 56, 42 E.T.R. 72, 108 N.S.R. (2d) 130, 294 A.P.R. 130.) The trustee was denied leave to appeal to the Supreme Court of Canada [(1992), 137 N.R. 396 (note) (S.C.C.)].

23    On July 5, 1991, Patricia MacCulloch commenced an action against the bank and bank employees R. Douglas and D. MacLeod (the second application before the court). That action was commenced by Mrs. MacCulloch without the assistance of counsel. She lists 26 items under the heading complaints, including conflict of interest, abuse and misuse of power, incompetence, causing needless depletion of the estate, conspiracy and more, and then sets out in a document which is entitled FACTS a mixture of possible facts in some paragraphs, but mainly her conclusions or statements. For example:

1 The Defendant deliberately placed themselves in a CONFLICT OF INTEREST position in the administration of the Receivership, in spite of this being pointed out to them by Clarkson Gordon, doing away with any questioning of their authority.

1.a Knowingly condoning a CONFLICT OF INTEREST of Revenue Canada as the third Inspectors of the REceivership (sic) and denying knowledge of this situation to the Appellant.

24    She refers to such things as writing off the debts of a cabinet minister at 25 cents on the dollar while calling the MacCulloch loan in full. She alleges that all of the complaints which she listed caused her reputation to be destroyed, her financial future ruined, causing needless damage to her health, and causing her to need hospitalization at the Nova Scotian Mental Hospital and that "they" used her husband's money to try to hound and pursue her while she was undergoing medical treatment. The document does not say who did the various things she complains about. This document consists of 29 paragraphs and it is followed by an affidavit of over 84 paragraphs. In the affidavit, she claims that the receivership was not necessary and refers extensively to the case brought against her, accusing the defendants of deliberately withholding information from the court and saying that by going to court they showed a wanton disregard for the best interests of the testator, to whom they owed a duty. She claims the action against her yielded nothing for the estate, it only depleted it and that the defendants wrongfully obtained a judgment against her and wrongfully used that judgment to the detriment of the estate. The affidavit continues in this fashion. She claims "a shocking and vicious circle. A total abuse of power" (para. 19). She essentially claims that the defendants had no interest in selling assets and ending the receivership; their only interest was in litigating against her. She complains about them seizing her home and her car. The document appears to cross over into complaints about Price Waterhouse. She claims that as a result of the abuse of power, denial of equality, prejudice, etc., that the estate has needlessly been bled dry and that her husband left sufficient assets to fund his will had they been handled properly. She claims that a group of unscrupulous men got together, misled the justice system and used their power to destroy a widow in order to disinherit her. Finally, there is a further document, which lists the compensation she seeks.

25    An amended statement of claim in the action against the bank et al. was filed on April 21, 1992. It consists of the same document previously referred to as "FACTS" with a new last page signed by her current solicitor.

26    Completing the chronology as set out in the affidavit of Mr. Cordy, on February 28, 1991, a

judge in probate dismissed her application to remove Central as executor and suspended her as an executor [*Re MacCulloch Estate* (1991), 41 E.T.R. 65, 102 N.S.R. (2d) 147, 279 A.P.R. 147]. On October 2, 1991, she was reinstated by another judge in probate. On December 10, 1991 the registrar in bankruptcy, in the absence of the trustee, granted an order that the judgments against her had not been validly assigned to the estate in probate and she received an order that the judgments be discharged. That decision is under appeal.

27　　Mrs. MacCulloch filed 10 letters of complaint with the Nova Scotia Barristers' Society against the estate's solicitor. All the complaints were dismissed. She sent three letters of complaint to the Canadian Institute of Chartered Accountants concerning the conduct of Price Waterhouse and these were all dismissed. She has also complained to the superintendent of bankruptcy, the ombudsman, the attorney general for the province of Nova Scotia, the Minister of National Revenue and the chairman of the bank.

## IV. Legal Argument

28　　The plaintiff/respondent wished to give oral evidence on this application. After hearing argument from counsel, I gave an oral ruling that, although C.P.R. 14.25(2) provides that no evidence is admissible on an application under para.(1)(*a*) unless the court otherwise orders, that I was not prepared to hear oral evidence and the applicant did not wish to cross-examine Mrs. MacCulloch on her earlier documents, which I have already referred to.

## 1. Bankruptcy Act -- Leave to Commence an Action Against Trustee

29　　Section 215 of the *Bankruptcy Act* provides:

> 215 Except by leave of the court, no action lies against the Superintendent, an official receiver or a trustee with respect to any report made under, or any action taken pursuant to, this Act. R.S., c. B-3, s. 186.

30　　The policy behind that section is stated in the headnote of *Mancini (Trustee of) v. Falconi* (1989), 76 C.B.R. (N.S.) 90 (Ont. S.C.):

> On an application under s. 215, the court must consider whether there is evidence of a factual basis for the proposed claim. The policy of that section is to protect the trustee from claims which have no basis in fact. Ensuring a proper factual foundation for a proposed claim requires that the alleged facts must be disclosed by sufficient affidavit evidence. Facts are not allegations merely to be accepted at face value. Giving leave requires an exercise of discretion …

31　　There are two lines of cases in Canada dealing with obtaining leave after the action has already been commenced. One says that acts of the trustee which are entirely relating to acts under the bankruptcy legislation should not be dealt with in the regular courts (*PR Engineering Ltd. v. Clarke, Henning & Hahn Ltd.* (sub nom. *PR Engineering Ltd. v. Golden Shield Resources Ltd. (Trustee of)*) (1990), 79 C.B.R. (N.S.) 172, (sub nom. *Re Golden Shield Resources Ltd.*) 69 D.L.R. (4th) 316 (Ont. S.C.)), and the court has no jurisdiction to grant a nunc pro tunc order, as that would have the effect of reinstating a nullity (*Re Pelee Motor Inn Ltd. (No. 2) (1979), 30 C.B.R. (N.S.) 216* (Ont. S.C.)). The other line of cases says that a nunc pro tunc order may be given in appropriate circumstances, namely, those cases where leave would have been granted if sought in advance and if there is no prejudice caused or substantial injustice and there is a cause of action which is not frivolous or vexatious. (*RoyNat Inc. v. Allan* (1989), 77 C.B.R. (N.S.) 133, 99 A.R. 370, 70 Alta. L.R. (2d) 231, [1990] 1 W.W.R. 698 (Q.B.) and *Block v. Burlingham* (1987), 70 C.B.R. (N.S.) 311, 64 Sask. R. 260, 46 D.L.R. (4th) 355 (Q.B.)).

32　　The trustee argues that, because the trustee cannot be discharged while there is an outstanding action or proceeding, that a nunc pro tunc order should not be granted. If the plaintiff has standing in the present case, and if the action against Price Waterhouse withstands the attack under C.P.R. 14.25, then I would be prepared to grant a nunc pro tunc order.

**2. Civil Procedure Rule 14.25**

33

> 14.25. (1) The court may at any stage of a proceeding order any pleading, affidavit or statement of facts, or anything therein, to be struck out or amended on the ground that,
>
> > (*a*) it discloses no reasonable cause of action or defence;
> >
> > (*b*) it is false, scandalous, frivolous or vexatious;
> >
> > . . . . .
> >
> > (*d*) it is otherwise an abuse of the process of the court;
>
> and may order the proceeding to be stayed or dismissed or judgment to be entered accordingly.

**(a) No Reasonable Cause of Action -- Price Waterhouse**

34     Price Waterhouse submits that in order to have a cause of action against the trustee, there must be a duty owed by the trustee to the plaintiff. The action against the defendant is in its capacity as trustee in bankruptcy and as such it owes a duty to the creditors, to the court and to the estate in probate. The latter is represented by its executors, Central and Mrs. MacCulloch; however, Mrs. MacCulloch is not suing in her capacity as an executor, she is suing personally.

35     On behalf of Mrs. MacCulloch, it was claimed that she is a substantial beneficiary and because of negligent mismanagement, the trustee owes a duty to the estate, which owes a duty to Mrs. MacCulloch, and that she can bring the action herself. No authority was submitted for this proposition except counsel used the analogy of product liability cases, where the consumer can sue directly. I find that this analogy is not applicable to the present case.

36     Mrs. MacCulloch is a beneficiary under the estate in probate. She would have a cause of action against the executors to compel them to carry out their duties in a proper manner and could bring an action for breach of trust if the executors refuse to carry out an act which is their duty to discharge. If successful, this would oblige the executors personally to indemnify the estate for any loss (D.W.M. Waters, *Law of Trusts in Canada* (Toronto: Carswell, 1974)). In spite of my opinion that the argument by Price Waterhouse is correct on this point, I propose to proceed to determine whether the statement of claim discloses a reasonable cause of action.

37     Counsel for the respondent/plaintiff submitted in an unsworn brief that:

> After the issuance of the amended Statement of Claim in this matter by myself, I made contact with the solicitor for the Applicant to indicate that I was aware of additional causes of action and issues regarding the negligent mismanagement of the estate which had not previously been litigated and asked my friend whether he would be filing a Demand for Particulars in order that he might have specific knowledge of these fresh issues. My friend declined to follow this course of action, but chose to proceed with the application to strike now before the Courts.
>
> If this Court should be of the opinion that Affidavit evidence is required to establish a reasonable cause of action, Mrs. MacCulloch would be pleased to swear an Affidavit enumerating the as yet non litigated issues which my friend has chosen not to make himself aware of by virtue of the procedure offered in the Civil Procedure Rules by way of a Demand for Particulars.

38     I do not accept that this statement is an answer to pleadings which do not disclose a cause of

action.

39     In the case of *Teale v. United Church of Canada at Woodlawn, Nova Scotia (Trustees of)* (1979), 34 N.S.R. (2d) 313 (C.A.) at p. 315, MacKeigan C.J.N.S. stated:

> Whether a statement of claim discloses a cause of action is ordinarily to be determined solely by perusing its contents and any relevant statutes. Affidavit evidence may be admitted at the discretion of the chambers judge but should not relate to proof or disproof of the facts alleged in the claim. On an application to dismiss it is assumed that the facts alleged in the statement of claim can be proved. The question is whether a claim in law is shown, assuming the facts to be true.

40     Also in *Haase v. Vladi Private Islands Ltd.* (1990), 96 N.S.R. (2d) 323, 253 A.P.R. 323 (C.A.), MacDonald J.A. states the test to strike out a statement of claim at p. 325:

> The proper test to be applied when considering an application to strike out a statement of claim has been considered by this Court on numerous occasions. It is clear from the authorities that a judge must proceed on the assumption that the facts contained in the statement of claim are true and, assuming those facts to be true, consider whether a claim is made out. An order to strike out a statement of claim will not be granted unless on the facts as pleaded the action is 'obviously unsustainable'.

Note also *Canada v. Operation Dismantle Inc.* (sub nom. *Operation Dismantle Inc. v. R.*), [1985] 1 S.C.R. 441, 12 Admin. L.R. 16, 13 C.R.R. 287, 18 D.L.R. (4th) 481, 59 N.R. 1 at p. 486 [S.C.R.]:

> The law then would appear to be clear. The facts pleaded are to be taken as proved. When so taken, the question is do they disclose a reasonable cause of action, i.e., a cause of action 'with some chance of success' (*Drummond-Jackson v. British Medical Association*, [1970] 1 All E.R. 1094) or, as Le Dain J. put it in *Dowson v. Government of Canada* (1981), 37 N.R. 127 (F.C.A.), at p. 138, is it 'plain and obvious that the action cannot succeed?' Is it plain and obvious that the plaintiffs' claim for declaratory or consequential relief cannot succeed?

41     Counsel for Mrs. MacCulloch continues to rely on the position that, because the assets in the estate initially were worth around $10 million and now there are none, that there must be something wrong. Again, this does not satisfy the requirements for pleadings under the Rules.

42     Looking at the pleading in the action against Price Waterhouse, although certain statements are made, including that the defendant was the trustee and acted as receiver and manager for various com panies in which the estate had an interest, it alleges negligent mismanagement without pleading any material facts and thus there are no facts in the statement of claim which if proved would give rise to a cause of action. A party is entitled to know the case which has to be met and this document is totally deficient in that respect (I.H. Jacob, ed., *Bullen & Leake & Jacob's Precedents of Pleading*, 12th ed. (London: Sweet & Maxwell, 1975), at pp. 6-8). (See also *Campbell v. Sinnott* (1984), 48 Nfld. & P.E.I.R. 125, 142 A.P.R. 125 (S.C.) -- the court refused to allow the plaintiffs to tender evidence which could have been, but was not, included in the statement of claim.)

43     I find that the pleading discloses no reasonable cause of action in the case of *MacCulloch v. Price Waterhouse*. It is plain and obvious that the plaintiff cannot succeed.

### (b) No Reasonable Cause of Action -- Bank, et al.

44     The bank appointed Price Waterhouse receiver under debentures of two companies of the late Charles E. MacCulloch and petitioned the court for the receiving order in bankruptcy. The two individuals named as defendants are employees of the bank and are two of the three inspectors appointed with certain duties and a role to play under the *Bankruptcy Act*. The inspectors are in a fiduciary position to all creditors and exercise their duties in the interest of those creditors. They do not represent their employer when they are performing their duties as inspectors and continued to perform their duties even after the bank had been paid in full.

45    The allegations against the inspectors in the purported statement of claim are very unclear. Although there are claims of conflict of interest, discrimination, hounding her, etc., none of these are things which involved the bank or the inspectors specifically and none of these allegations disclose a cause of action against these defendants. The applicants/defendants in their submission went through each allegation trying to show that none of them give rise to a reasonable cause of action. On behalf of Mrs. MacCulloch, the submission is that if the inspectors have any role in the various things alleged such as the valuation process and the sale process and enforcing debts, then it does disclose a cause of action.

46    The applicants submit that Mrs. MacCulloch is a legatee under the will and is not a residual beneficiary and she is indebted to the estate in a substantial amount. They submit that she has no standing to assert a claim against the estate or any other beneficiaries under the will. If anything, they argue that there are only implied allegations against the two individuals and if there is a claim, it should be against the trustee and not the inspectors, which would require leave of the court, which was not obtained. Again, I do not propose to decide this question based on standing only, although I agree with the applicants' submission.

47    I do not propose to go through each allegation of the plaintiff but I find that there is no cause of action against the defendant bank or the individuals named in the documents which have been submitted to the court.

48    Mrs. MacCulloch spoke personally following the argument on this point and submitted that the matter should come to trial so that the whole picture could be placed before the court at once instead of bits and pieces as had happened in the past. She sought a ruling that would be completely unfettered of any legal technicalities to allow "the whole truth" to come out. I can only respond by saying that the court is bound by rules which are applicable to all and rulings are made in accordance with those rules to allow for consistency before the courts. In this way, any litigant can understand the procedures which they must follow. To deal with matters otherwise would be chaotic. No one would know when there was an appropriate claim before the court.

49    If I am wrong in these conclusions that both actions should be struck on the ground that they disclose no reasonable cause of action, I propose to deal briefly with the other grounds claimed.

**(c) Are the Actions Frivolous or Vexatious? Are They an Abuse of Process of the Court?**

50    Price Waterhouse submits that based on the case of *Lang Michener Lash Johnson v. Fabian* (1987), 16 C.P.C. (2d) 93, (sub nom. *Lang Michener v. Fabian*) 59 O.R. (2d) 353, 37 D.L.R. (4th) 685 (H.C.), this action should be struck. At pp. 358-359 [O.R.], Henry J. extracts a list of principles from other decisions which lead to the conclusion that an action is frivolous or vexatious or an abuse of process of the court:

> (a) the bringing of one or more actions to determine an issue which has already been determined by a court of competent jurisdiction constitutes a vexatious proceeding;

> (b) where it is obvious that an action cannot succeed, or if the action would lead to no possible good, or if no reasonable person can reasonably expect to obtain relief, the action is vexatious;

> (c) vexatious actions include those brought for an improper purpose, including the harassment and oppression of other parties by multifarious proceedings brought for purposes other than the assertion of legitimate rights;

> (d) it is a general characteristic of vexatious proceedings that grounds and issues raised tend to be rolled forward into subsequent actions and repeated and supplemented, often with actions brought against the lawyers who have acted for or against the litigant in earlier proceedings;

(e) in determining whether proceedings are vexatious, the court must look at the whole history of the matter and not just whether there was originally a good cause of action;

(f) the failure of the person instituting the proceedings to pay the costs of unsuccessful proceedings is one factor to be considered in determining whether proceedings are vexatious;

(g) the respondent's conduct in persistently taking unsuccessful appeals from judicial decisions can be considered vexatious conduct of legal proceedings.

51    Every one of these principles exist in the present case. In particular, I have previously outlined the decision of Hallett J. and other cases which have brought Mrs. MacCulloch before the court. She appears to continue to believe that some of those decisions are wrong; however, they have been taken through the legal process including appeal and the results do exist and the issues have been finally determined. It appears that Mrs. MacCulloch wishes to relitigate matters which have been previously decided against her; she cannot seem to accept that the decisions made by the court are final and that there is nothing more to litigate against the defendants in either of the two actions.

52    This leads into the area of issue estoppel which is discussed in the case of *Feener v. Surette* (sub nom. *Feener v. Nova Scotia (Attorney General)*) (1982), 56 N.S.R. (2d) 89, 117 A.P.R. 89 (C.A.), where the same subject matter was involved in an action as in an earlier action which had been decided in the court. The second action was barred under C.P.R. 25, but the appeal court also stated that it could have been dismissed on the basis of C.P.R. 14.25 as well.

53    Again, on behalf of Mrs. MacCulloch counsel submits that the actions should be allowed to continue because there are new issues of negligent mismanagement which are not barred by issue estoppel or res judicata. I must again state that neither Mrs. MacCulloch nor anyone else has provided this information in the proper form. There is no affidavit before the court and there was certainly enough time before these applications came on for hearing to obtain and file the necessary affidavit. Counsel states in his written submission at p. 3:

In my review of the numerous proceedings that have taken place to date, there are issues at hand which have not as yet been litigated which, in my opinion, give rise to a valid claim for negligent mismanagement of the estate.

In addition, fresh evidence and issues that I have discovered also bring some of the previously litigated issues into new perspective and allow a new and different interpretation of the issues to such an extent that if the evidence had been made available previously, it is my opinion that previous findings of the Courts might have been different.

54    In my opinion, this does not form a proper basis to allow these actions to continue. The "hope" appears to be to retry matters with a few more facts (which are completely unknown) and "maybe" there will be a different result. If there were new facts on which these actions are now based, the plaintiff was given full opportunity to plead those when time was given in March to file amended statements of claim. Also there was ample time to file affidavits before this application was heard. The amended documents were filed, but nothing new was included in them.

55    All matters have been thoroughly examined previously. If one looks at the earlier statements of claim and affidavits of Mrs. MacCulloch involving both sets of defendants, in my opinion, all the allegations made which are able to be litigated have been previously dealt with. Both of the actions are duplicitous and the multiplicity of actions which basically deal with the same matters leads to the inevitable conclusion that these two actions should be struck out under C.P.R. 14.25 (1)(*b*) or (*d*).

## V. Summary

56    The statements of claim in the action against Price Waterhouse and in the action against the bank and the two named defendants are struck out under the provisions of C.P.R. 14.25(1)(*a*) and (*b*) and (*d*). As there is no cause of action, permission to bring the action against the trustee under the *Bankruptcy Act* is denied.

57     This leaves one final matter. The trustee seeks to bar the plaintiff from bringing any further actions against the trustee concerning the estate of Charles E. MacCulloch in bankruptcy, in particular concerning the administration of the estate, and the way in which Price Waterhouse dealt with the assets of the estate. This would allow the trustee to apply for and obtain a discharge. Although this is a rather drastic remedy, in my opinion, it is appropriate given the extensive litigation background which currently exists. There has to be an end for the trustee so that the discharge can be obtained. If there are others to litigate against and Mrs. MacCulloch wishes to proceed against them, they do not include the trustee. I come to the same conclusion with respect to the inspectors in the second action, however, not in the case of the bank. I am, however, prepared to order that any new action against the bank can only be commenced with leave of the court.

58     The two applicants, Price Waterhouse and the Bank of Nova Scotia, are successful in their applications to have the two actions dismissed.

*Applications allowed.*

1989 CarswellOnt 182
76 C.B.R. (N.S.) 90

**Mancini** (Trustee of) v. Falconi

CLARKSON GORDON INC. (Trustee of **MANCINI**, PATRICK **MANCINI** LIMITED and PATSON
DEVELOPMENTS LIMITED) v. FALCONI et al.

Ontario Supreme Court

Gray J.

Heard: November 14 and 15, 1988
Judgment: August 29, 1989
Docket: No. 7846/87

Copyright © CARSWELL,
a Division of Thomson Canada Ltd. or its Licensors. All rights reserved.

Counsel: C. Beall and W. VanVeen, for plaintiff.
H. Turkstra, for defendants Dalgy Inc. and Terrace Creek Developments Ltd.

Subject: Corporate and Commercial; Insolvency; Estates and Trusts; Civil Practice and Procedure

Bankruptcy --- Administration of estate -- Trustees -- Legal proceedings against trustee -- Leave to
proceed.

Practice --- Pleadings -- Statement of defence -- Form and content -- General.

Proceedings -- Against trustee -- Defendants seeking leave of court to counterclaim against trustee
for damages and punitive damages for abuse of process and infringement of right to be secure
against unreasonable search and seizure guaranteed by s. 8 of Charter -- Motion for leave dismissed.

The defendants sought an order under s. 215 of the Bankruptcy Act granting leave to counterclaim
against the plaintiff trustee. The counterclaim sought $1,000,000 "for damages and punitive damages
for abuse of process of the court and for the flagrant and deliberate infringement of the defendants'
rights to be secure against unreasonable search and seizure guaranteed by s. 8 of the Canadian
Charter of Rights and Freedoms".

Held:

Motion for leave dismissed.

On an application under s. 215, the court must consider whether there is evidence of a factual basis
for the proposed claim. The policy of that section is to protect the trustee from claims which have no
basis in fact. Ensuring a proper factual foundation for a proposed claim requires that the alleged facts
must be disclosed by sufficient affidavit evidence. Facts are not allegations merely to be accepted at
face value. Giving leave requires an exercise of discretion and, in this case, the court's discretion
should not be exercised in favour of the moving parties. The evidence did not disclose a cause of
action by way of a counterclaim for abuse of process: the trustee plaintiff did not commence
proceedings for the sole purpose of gaining some improper advantage. Neither did the evidence
disclose a cause of action for a breach of s. 8 of the Charter which would support a claim for damages
under s. 24(1) of the Charter. The Charter does not apply to private litigation but only to legislation
and actions of the legislative, executive or administrative branches of government. It is doubtful
whether trustees in bankruptcy fall within that governmental class. Further, punitive damages could
not be the subject of a counterclaim in this matter.

Cases considered:

Beneficial Can. Inc. v. Touche Ross Ltd. (1986), 60 C.B.R. (N.S.) 314, 49 Sask. R. 113 (Q.B.)
[affirmed 63 C.B.R. (N.S.) 14, 55 Sask. R. 17 (C.A.)] -- referred to

Greenwood v. Magee (1977), 15 O.R. (2d) 685, 4 C.P.C. 67 (H.C.) -- distinguished

Guar. Trust Co. v. Pub. Trustee (1978), 20 O.R. (2d) 247, 87 D.L.R. (3d) 417 (H.C.) --
referred to

Peat Marwick Ltd. v. Thorne Riddell (1984), 53 C.B.R. (N.S.) 210 (Ont. H.C.) -- referred to

R.W.D.S.U. v. Dolphin Delivery Ltd., [1986] 2 S.C.R. 573, [1987] 1 W.W.R. 577, 9 B.C.L.R.
(2d) 273, 38 C.C.L.T. 184, 87 C.L.L.C. 14,002, 33 D.L.R. (4th) 174, 25 C.R.R. 321, 71 N.R. 83
-- applied

Seaway Trust Co. v. Kilderkin Invt. Ltd. (1986), 55 O.R. (2d) 545, 11 C.P.C. (2d) 140, 29
D.L.R. (4th) 456 (H.C.) -- applied

Verlysdonk v. Premier Petrenas Const. Co. (1987), 60 O.R. (2d) 65, 25 C.C.L.I. 205, 45 R.P.R.
212, [1987] I.L.R. 1-2199, 39 D.L.R. (4th) 715, 24 O.A.C. 34 (Div. Ct.) -- distinguished

Virden Credit Union Ltd. v. Dunwoody Ltd. (1982), 45 C.B.R. (N.S.) 84, 20 Man. R. (2d) 88
(Q.B.) -- referred to

Statutes considered:

Bankruptcy Act, R.S.C. 1985, c. B-3

s. 5(2)

s. 10

s. 11

s. 26(3)

s. 27(1)

s. 215

Canadian Charter of Rights and Freedoms

s. 8

s. 24(1)

Authorities considered:

Fleming, The Law of Torts, 5th ed. (1977), pp. 610-11.

Klar, Linden, Cherniak and Kryworuk, Remedies in Tort (1987), vol. 1, pp. 1-9, 1-11.
Motion for leave to proceed against trustee under s. 215 of Bankruptcy Act.

**Gray J.**:

1    This motion is for an order pursuant to the provisions of s. 186 [now s. 215] of the Bankruptcy
Act, R.S.C. 1970, c. B-3 [now R.S.C. 1985, c. B-3], as amended, granting leave to the defendants to

commence an action by way of counterclaim against the plaintiff and for the costs of the motion. The draft counterclaim appears at tab 3 of the motion record.

2      Section 186 of the Bankruptcy Act reads thus:

> 186. Except by leave of the court no action lies against the Superintendent, an official receiver or a trustee with respect to any report made under, or any action taken pursuant to, this Act.

3      The counterclaim seeks damages of $1,000,000 "for damages and punitive damages for abuse of process of the court and for the flagrant and deliberate infringement of the defendants' rights to be secure against unreasonable search and seizure guaranteed by s. 8 of the *Canadian Charter of Rights and Freedoms*".

4      It is alleged by counsel on behalf of the moving parties that leave of the court was not required for them to defend the action and that identical material facts which provide the defences also give rise to the two causes of action to which I have referred. It is said that the action is a long and complicated matter, with or without the counterclaim, and that by reason of the substantial common element in the defence and the counterclaim, the only additional issue raised by the counterclaim is the issue of damages.

5      In the draft counterclaim, the defendants rely on the allegations set forth in the statement of defence against which the plaintiff has moved and particularly paras. 14, 15, 16, 18, 19, 20, 22, 23, 26, 30, 31, 32, 33, 36, 41 and 42.

6      There are some factual matters to which I must refer. The moving parties who are defendants assert that Daniel Gasbarrini, or companies owned, controlled or managed by him, held 50 per cent of the shares of Northgate Square Limited. It is further asserted that he was subjected to an examination under s. 6 [now s. 10] of the Bankruptcy Act and was compelled to produce documents therein.

7      On 28th April 1988 he was arraigned in Provincial Court (Criminal Division) in North Bay before the Honourable Judge Richards upon charges under s. 338(1)(*a*) [now s. 380(1)(*a*)] of the Criminal Code concerning transactions which are the subject matter of this civil action. He pleaded not guilty. The Crown offered no evidence and the charges were dismissed. The Crown did not withdraw the charges against him.

8      So far as facts are concerned, it is also to be noted that the plaintiff was appointed trustee in bankruptcy of Patson Developments Limited, Patrick Mancini and Patrick Mancini Limited by a receiving order dated 23rd March 1984. By order dated 15th March 1984, the trustee was appointed interim receiver by Montgomery J. with powers to enter premises and seize documents. By order of VanCamp J., dated 21st June 1984, search and seizure by Corporal M.A. Couture of the R.C.M.P. was authorized with respect to the premises of a solicitor, Frank M. Falconi, and Klein, Falconi and Associates in North Bay. The registrar in bankruptcy, on 11th May 1987, made an order for the issue of search warrants. These orders were made at the request of the present solicitors for the plaintiff. The only other court order to which I now refer is the motion for a stay which came before Catzman J. on 24th May 1988 and which was withdrawn.

9      I mention these various motions and orders only for the sake of clarity because argument, from time to time, refers to them. There was a further reference to an allegation by counsel for the plaintiff that arrangements were made by the R.C.M.P. with consent of counsel for Daniel Gasbarrini concerning the turning over of documents. There is also an allegation that no search or seizure has ever been conducted in this matter against Dalgy Inc. or Terrace Creek Developments Limited or Daniel Gasbarrini. All examinations pursuant to s. 6(3) [now s. 10(3)] of the Bankruptcy Act were conducted by the Superintendent of Bankruptcy.

10      The first matter to be decided involves a consideration of the test for leave under s. 186. The submission of counsel for the moving parties is that in deciding whether leave should be granted to proceed with an action against the trustee by way of counterclaim, leave should only be refused

where it is perfectly clear that there is no foundation for the claim and that the trustee ought not to be subjected to lawsuits which are frivolous or vexatious or which do not disclose a cause of action.

11    The authorities for this general proposition are said to be *Beneficial Can. Inc. v. Touche Ross Ltd.* (1986), 60 C.B.R. (N.S.) 314, 49 Sask. R. 113 (Q.B.), and *Virden Credit Union Ltd. v. Dunwoody Ltd.* (1982), 45 C.B.R. (N.S.) 84, 20 Man. R. (2d) 88 (Q.B.).

12    The plaintiff's position is that the test involves something more than the general proposition. It is that s. 186 contemplates an inquiry by the court before exercising its discretion to grant leave. I quote from para. 10 of the plaintiff's factum:

> Because the decision requires an exercise of discretion, the Court must make a more thorough enquiry than when considering whether or not a claim, *as a matter of law*, discloses a cause of action. In considering whether a claim discloses *a cause of action*, the Court presumes the allegations in the claim to be true to determine whether those allegations can provide the basis for a remedy. On a section 186 application, the Court must consider whether there is *evidence* of a factual basis for the proposed claim. The policy of section 186 is to protect the Trustee from claims which have no basis in fact. Ensuring a proper factual foundation for a proposed claim requires that the alleged facts must be disclosed by sufficient affidavit evidence. Facts are not allegations merely to be accepted at face value.

13    The authorities given for this proposition are s. 186 together with the last two mentioned decisions and the decision of White J. in *Peat Marwick Ltd. v. Thorne Riddell* (1984), 53 C.B.R. (N.S.) 210 (Ont. H.C.). This decision sets forth the requirement of sufficient affidavit evidence as contrasted with a consideration of a set of facts simply alleged in a pleading.

14    I will deal with the test I accept and its application to this motion when I deal with the conclusions in these reasons.

15    The second matter to be decided is whether the proposed counterclaim discloses a cause of action against the trustee if the test is met. This second matter involves a consideration of three issues:

16    (1) Does the evidence disclose a cause of action against the trustee plaintiff for abuse of process?

17    (2) Does the evidence disclose a cause of action against the plaintiff trustee for breach of a Charter right under s. 8 of the Canadian Charter of Rights and Freedoms which will support a claim for damages under s. 24(1) of the said Charter? and

18    (3) Can punitive damages be claimed in law when no actual damages are suffered?

19    (1) The tort of abuse of process is discussed in Fleming, The Law of Torts, 5th ed. (1977), at pp. 610-11. From other authorities, it would appear that if the trustee plaintiff resorted to this action against the two moving parties who are defendants *solely* for a purpose other than that which the legal process was designed to serve, then they may have a remedy under the tort of abuse of process. It is not sufficient that the trustee initiated this action with an improper motive or sought some collateral advantage. The improper advantage must have been the *sole* purpose of the action.

20    Counsel for the trustee submits that the law is that if the primary purpose of this action was legitimate, then secondary advantages or purposes will not sustain a counterclaim sounding in the tort of abuse of process.

21    The authority for this submission is Klar, Linden, Cherniak and Kryworuk, Remedies in Tort (1987), vol. 1, pp. 1-9 and 1-11, and the decisions cited therein. I was asked to consider *Verlysdonk v. Premier Petrenas Const. Co.*, 60 O.R. (2d) 65, 25 C.C.L.I. 205, 45 R.P.R. 212, [1987] I.L.R. 1-2199, 39 D.L.R. (4th) 715, 24 O.A.C. 34 (Div. Ct.), and *Greenwood v. Magee* (1977), 15 O.R. (2d) 685, 4 C.P.C. 67 (H.C.). I have done so, but I find that to me they are not of great assistance in this

issue because I consider them to be decisions turning on the issue of estoppel. The answer to Q. (1) will also emerge in the conclusion to these reasons.

22     (2) The proposed counterclaim relies upon the allegations set forth in para. 41 of the statement of defence as supporting a breach of s. 8 of the Charter. The trustee's submission is threefold: that the Charter does not apply to the circumstances of this action; that Charter relief is available only to those who have suffered a breach of rights themselves; and that no allegations are made which would amount to a breach of s. 8 of the Charter, which is the only provision alleged to have been breached. These matters will also be dealt with in the conclusion.

23     (3) On the issue of punitive damages being claimed as an aggravation of actual loss, or as a claim when no actual damages are suffered, I have reviewed the decision of Craig J. in *Guar. Trust Co. v. Pub. Trustee* (1978), 20 O.R. (2d) 247 at 251, 87 D.L.R. (3d) 417 (H.C.), and conclude that in the circumstances above, punitive damages are not a proper subject of claim.

**Conclusion**

24     The motion for leave pursuant to the provisions of s. 186 of the Bankruptcy Act is dismissed. Insofar as the test of the granting of leave is concerned, I accept the general proposition set forth in para. 10 of the plaintiff's factum. The affidavit found to be faulty by White J. in *Peat Marwick Ltd. v. Thorne Riddell*, supra, is, to some extent, stronger than the affidavits of Peter Clark tendered in this motion. I am not prepared to strike out Mr. Clark's affidavits but I give them no weight. I am not exercising my discretion under s. 186 in favour of the moving parties.

25     The evidence does not disclose a cause of action by way of counterclaim for abuse of process. The trustee plaintiff did not commence this action for the sole purpose of gaining some improper advantage. The draft counterclaim does not allege that the proceedings are such that the trustee would not have commenced the action and in any event we now find ourselves in 1989 with the trustee still actively pursuing the defendants for return of property and other relief. The actions of the trustee and the superintendent, in light of the provisions of ss. 5(2), 6(1) [now s. 10(1)], 7 [now s. 11] and 13(8) and (9) [now ss. 26(3) and 27(1)] are not, in my opinion, involved with abuse of process. The decision in *Seaway Trust Co. v. Kilderkin Invt. Ltd.* (1986), 55 O.R. (2d) 545, 11 C.P.C. (2d) 140, 29 D.L.R. (4th) 456 (H.C.), support my opinion.

26     The evidence does not disclose a cause of action for a breach of s. 8 of the Charter which would support a claim for damages under s. 24(1) of the Charter.

27     The Charter does not apply to private litigation as was said in *R.W.D.S.U. v. Dolphin Delivery Ltd.*, [1986] 2 S.C.R. 573 at 597, 9 B.C.L.R. (2d) 273, [1987] 1 W.W.R. 577, 38 C.C.L.T. 184, 87 C.L.L.C. 14,002, 33 D.L.R. (4th) 174, 25 C.R.R. 321, 71 N.R. 83. The Charter applies only to legislation and actions of the legislative, executive or administrative branches of government. Counsel for the moving parties was correct when he stated that there would appear to be no decided cases on whether trustees in bankruptcy fall within governmental class but my view would be that they do not.

28     The moving parties do not allege an actual search or seizure against them or Daniel Gasbarrini and there would appear to have been none. There cannot be any collateral attack on the orders which I mentioned earlier. No good purpose would be served by a lengthy review of the Charter learning or what constitutes search or seizure or on the subject of the use of seized documents, so I will not embark on that exercise. I do note, however, that no counterclaim for s. 8 relief can be made against the trustee for any of the actions of the Superintendent in Bankruptcy.

29     Charter relief is not applicable by way of counterclaim to these moving parties and there is no evidence to support any claim for breach of s. 8 of the Charter.

30     Punitive damages cannot be the subject of a counterclaim in this matter. As I stated previously, the motion for leave under s. 186 is dismissed. Submissions have not been made on the question of the disposition of costs. I may be spoken to in that regard after the necessary arrangements are made with the court.

*Motion dismissed.*

2000 CarswellOnt 4120
50 O.R. (3d) 688, 20 C.B.R. (4th) 160, 137 O.A.C. 74

Society of Composers, Authors & Music Publishers of Canada v. Armitage

Society of Composers, Authors and Music Publishers of Canada (Applicant /
Appellant) and Norman E. Armitage (Respondent)

Ontario Court of Appeal

Charron, MacPherson, Sharpe JJ.A.

Heard: September 27, 2000
Judgment: October 27, 2000
Docket: CA C33597

Copyright © CARSWELL,
a Division of Thomson Canada Ltd. or its Licensors. All rights reserved.

Proceedings: additional reasons at *Society of Composers, Authors & Music Publishers of Canada v. Armitage* (2001), 2001 CarswellOnt 854, 22 C.B.R. (4th) 248 (Ont. C.A.)

Counsel: *Albert G. Formosa*, *Krista R. Chaytor*, for Appellant
*Steven L. Graff*, for Respondent

Subject: Insolvency; Estates and Trusts; Civil Practice and Procedure

Bankruptcy --- Administration of estate -- Trustees -- Legal proceedings against trustee -- Leave to proceed

Proposal provided that moneys payable under it be paid to trustee to make distribution -- Proposal gave priority to post-proposal creditors over ordinary creditors -- Post-proposal creditor alleged trustee failed to receive and remit payments -- Motions judge dismissed creditor's application for leave to bring action against trustee -- Creditor appealed -- Appeal allowed -- Judge exceeded jurisdiction by making final determination on merits of claim -- Creditor met threshold test of showing factual basis for proposed claim -- Claim disclosed cause of action -- Proposal on its face established duty on part of trustee -- Creditor was not bound to proceed against trustee in bankruptcy court -- Proceedings were not mutually exclusive -- Action was appropriate because claim was for damages -- Bankruptcy and Insolvency Act, R.S.C. 1985, c. B-3, ss. 37, 215.

**Cases considered by *Charron J.A.*:**

> *Bruncor Leasing Inc. v. Zutphen Brothers Construction Ltd. (Trustee of)* (1994), 26 C.B.R. (3d) 258, (sub nom. *Zutphen Bros. Construction Ltd. (Insolvent), Re)* 376 A.P.R. 337, 116 D.L.R. (4th) 692, (sub nom. *Zutphen Bros. Construction Ltd. (Insolvent), Re)* 132 N.S.R. (2d) 337, 31 C.B.R. (3d) 112 (N.S. C.A.) -- considered

> *Holley v. Gifford Smith Ltd.* (1986), 14 O.A.C. 65, (sub nom. *Holley, Re)* 54 O.R. (2d) 225, (sub nom. *Holley, Re)* 26 D.L.R. (4th) 230, (sub nom. *Holley, Re)* 59 C.B.R. (N.S.) 17, 12 C.C.E.L. 161 (Ont. C.A.) -- considered

> *Mancini (Trustee of) v. Falconi* (1993), (sub nom. *Mancini (Bankrupt) v. Falconi)* 61 O.A.C. 332 (Ont. C.A.) -- applied

**Statutes considered:**

*Bankruptcy and Insolvency Act*, R.S.C. 1985, c. B-3

s. 37 -- considered

s. 60(2) -- considered

s. 193(e) -- pursuant to

s. 215 -- considered

*Income Tax Act*, R.S.C. 1985, c. 1 (5th Supp.)

Generally -- referred to

APPEAL by creditor from decision of motions judge dismissing application for leave to commence action against trustee in bankruptcy.

**The judgment of the court was delivered by *Charron J.A.*:**

1    This is an appeal with leave under s. 193(e) of the *Bankruptcy and Insolvency Act,* R.S.C. 1985, *c.* B-3 (*"BIA"*). The Society of Composers, Authors and Music Publishers of Canada ("SOCAN") appeals from the dismissal of its application under s. 215 of the *BIA* to commence an action against Norman E. Armitage ("the trustee"), a trustee responsible for administering a court-approved bankruptcy proposal made by Coultis Broadcasting Limited ("Coultis") under the *BIA*. This appeal turns on whether the motions court judge properly applied the threshold test for granting leave under s. 215. A subsidiary issue is raised on the appropriateness of bringing a s. 215 application for leave to commence an action rather than a s. 37 appeal to the bankruptcy court against an act or decision made by the trustee.

**A. The s. 215 leave application**

***1. The threshold test under s.215***

2    Section 215 of the *BIA* provides that no action lies against a trustee with respect to any action taken pursuant to the *BIA* except with leave of the court. It is common ground between the parties that the evidence required to support an order under s. 215 must be sufficient to establish that there is a factual basis for the proposed claim and that the proposed claim discloses a cause of action. However, the evidence does not have to be sufficient to enable the motions judge to make a final assessment of the merits of the proposed claim. The sufficiency of the evidence must be measured in the context of the purpose of s. 215 which is to prevent the trustee from having to respond to actions which are frivolous or vexatious or which do not disclose a cause of action: see *Mancini (Trustee of) v. Falconi* (1993), 61 O.A.C. 332 (Ont. C.A.) at 337.

*2. The evidence relied upon by SOCAN*

3    SOCAN is both an ordinary and a post-proposal creditor of Coultis under the terms of the proposal. Its proposed action against the trustee is for negligence and for breach of fiduciary and other duties arising from the performance of the trustee's obligations under the terms of the proposal and the provisions of the *BIA*. SOCAN's proposed action is essentially based on an allegation that the trustee failed to receive payments for post-proposal creditors and to remit them to these creditors in breach of his duty to do so. SOCAN alleges in the affidavit evidence that certain payments were made to ordinary creditors by the debtor and by the trustee contrary to the obligation to make priority payment to post-proposal creditors.

4    The crux of SOCAN's contention is that the trustee had an obligation *under the terms of the proposal* to receive those monies from the debtor and to make those payments to the post-proposal creditors in priority to the claims of ordinary creditors. In support of this contention, SOCAN relies mainly on the interplay of paragraphs 6 and 9 of the proposal:

> 6. THAT claims arising in respect of goods supplied, services rendered or other consideration given after the date of filing of the Notice of Intention to Make a Proposal shall be paid in full in priority to the claims of ordinary creditors.
>
> 9. THAT Norman Armitage, of the City of Niagara Falls, in the Province of Ontario, shall be the Trustee under this Proposal and *the moneys payable under this Proposal shall be paid to the Trustee who shall make distribution referred to in paragraphs 2 to 6* of this Proposal. [Emphasis added.]

5     The terms referred to in paragraph 9 provided as follows. Paragraphs 2 to 5 provided for priority payment of preferred claims, the fees and expenses of the trustee, amounts payable under the *Income Tax Act* and certain amounts payable to employees. Paragraph 6 deals with post-proposal creditors which include SOCAN. Paragraph 7 then provides for a scheme of periodic payments to the ordinary creditors, "being those persons with claims not referred to in paragraphs 2 to 6 of this Proposal". SOCAN therefore contends that it is clear from these terms that the priority payments to post-proposal creditors under paragraph 6 were included in the trustee's obligation to distribute monies pursuant to paragraph 9.

6     SOCAN further relies on s. 60(2) of the *BIA* which provides that "[a]ll monies payable under the proposal shall be paid to the trustee and, after payment of all proper fees and expenses mentioned in subsection (1), shall be distributed by him to the creditors."

### 3. The trustee's position

7     The trustee's position is that SOCAN's real quarrel is with the debtor and that the trustee had no obligation to receive monies from the debtor for payment to the post-proposal creditors or to monitor the debtor's business to ensure that post-proposal creditors were being paid in accordance with the terms of the proposal. He states that his obligations under paragraph 6 ended at the time the proposal was approved by the court and that his sole ongoing duty related to the payments made to the ordinary creditors under paragraph 7.

### 4. The motions court judge's decision

8     The motions judge agreed with the trustee's position. In her reasons for decision, she stated that, if the trustee had an ongoing duty as contended by SOCAN, "then the facts as set out by SOCAN might well support a claim for negligence or other breach of that duty". She held, however, that the terms of the proposal and the provisions of s. 60(2) of the *BIA* both supported the trustee's position that his ongoing obligations extended only to the payment of monies under paragraph 7 to the ordinary creditors. She therefore concluded that "in the absence of clear duties on his part to perform the functions SOCAN suggests he should have", the facts did not disclose a reasonable cause of action and, consequently, she dismissed the application.

### 5. The argument on appeal

9     SOCAN submits that the motions court judge should have granted the application based on her finding that the affidavit evidence filed in support of the application could "well support" an action in negligence and breach of fiduciary duty. It is argued that her subsequent finding, that the trustee did not owe a duty to SOCAN as contended, was a question which could not be finally determined on this threshold application. The decision was based firstly on an interpretation of the proposal, the terms of which could reasonably support SOCAN's position, and secondly, on an interpretation of relevant provisions of the *BIA* on the scope of a trustee's personal liability, a matter that is not fully settled at law. In these circumstances, SOCAN submits that the motions court judge, in making what was in essence a final determination of the merits of the proposed action, exceeded her jurisdiction on this s. 215 application.

10     Counsel for the trustee did not make any serious attack on the motions court judge's observation that, *if* the trustee had duties as contended by SOCAN, "then the facts as set out by SOCAN might well support a claim for negligence or other breach of that duty". His submissions on

the sufficiency of the evidentiary foundation were essentially directed at the scope of a trustee's duties rather than on the specific factual allegations related to the breach. Counsel for the trustee made additional submissions on the quantum of damages resulting from the alleged breach in an effort to show that they would be minimal, but I did not understand his position to be that the s. 215 application should be dismissed for lack of an evidentiary foundation with respect to damages. Hence the question raised by this appeal, whether the test under s. 215 was met, really turns on the appropriateness of the motions court judge's finding on a threshold application that the trustee did not have the obligations contended by SOCAN.

### 6. Conclusion

11    I agree with SOCAN's position that the motions court judge, in disposing of this leave application, made final determinations on the merits of the proposed claim and, in doing so, she exceeded her jurisdiction.On its face, the proposal supported SOCAN's position that the payments to the post-proposal creditors under paragraph 6 would form part of the monies received by the trustee and distributed by him pursuant to the direction contained in paragraph 9. There is no question that a binding contract results from the acceptance of a debtor's proposal by the creditors and its approval by the court. Counsel for the trustee submits however that the trustee is not a party to this contract. While counsel for the trustee is correct in this assertion, it does not follow that the trustee is at liberty to disregard the terms of the proposal. The trustee is bound, rather, to act so as to give effect to its terms. See, for example, *Bruncor Leasing Inc. v. Zutphen Brothers Construction Ltd. (Trustee of)* (1994), 26 C.B.R. (3d) 258, 116 D.L.R. (4th) 692 (N.S. C.A.). Further, it is not clear that s. 60(2) provides support solely for the trustee's position that his ongoing obligations extended only to the payment of monies under paragraph 7 to the ordinary creditors as found by the motions court judge.

12    I therefore find that, on the motions court judge's own assessment of the sufficiency of the factual record, leave should have been granted under s.  215.

### B. The failure to bring a s. 37 application

13    Section 37 of the *BIA* provides as follows:

> 37.  Appeal to court against trustee - Where the bankrupt or any of the creditors or any other person is aggrieved by any act or decision of the trustee, he may apply to the court and the court may confirm, reverse or modify the act or decision complained of and make such order in the premises as it thinks just.

14    The trustee submits that, regardless of the sufficiency of the record, leave under s. 215 should not have been granted in this case because of SOCAN's failure to proceed under s. 37. He submits that where the allegations relate entirely to the acts of a trustee within the *BIA*, it is generally inappropriate to grant leave under s. 215 to commence an action in the regular courts. Rather, the appropriate route is to proceed under s. 37 of the *BIA* and apply for a trial in the Bankruptcy Court. He submits that leave should only be granted under s. 215 where the applicant demonstrates that the issue can be dealt with more advantageously in the ordinary courts without disadvantage to the administration of the estate. In support of his argument, counsel for the trustee relies generally on some of the case law annotated under the relevant provisions of the *BIA* in Houlden & Morawetz, *The 2000 Annotated Bankruptcy & Insolvency Act*, (Toronto: Carswell, 1999).

15    In order to give effect to the trustee's submission on this point, this court would essentially have to find that s. 215 and s. 37 are mutually exclusive. It is not at all clear that the case law referred to by counsel would support such a finding. Furthermore, it is not clear that SOCAN's proposed claim falls entirely within the scope of a s. 37 proceeding. In particular, I note that SOCAN claims damages. Although the trustee's position appears to be otherwise on appeal, it is apparent from the record that counsel for the parties before the motions judge were in agreement that s. 215 was the appropriate procedure where the claim was one for damages. I note further that some of the allegations do not necessarily relate to "an act or a decision of the trustee" but rather to inaction on his part. It has been held that s. 37 has no application in such circumstances: see e.g. *Holley v. Gifford Smith Ltd.* (1986), 54 O.R. (2d) 225 (Ont. C.A.). In any event, and more importantly, it would

be unfair to dispose of this appeal on this subsidiary issue when it is apparent from the record that counsel before the motions court judge were in agreement that the application turned on the sufficiency of the evidentiary foundation for the claim. For these reasons, I would not give effect to the trustee's submission on this point.

## C. Disposition

16    I would therefore allow the appeal, set aside the judgment below and substitute an order under s. 215 of the *BIA* granting SOCAN leave to commence its action against the trustee.

*Appeal allowed.*

2001 CarswellAlta 363
2001 ABQB 240, 24 C.B.R. (4th) 191, 287 A.R. 11

Caswan Environmental Services Inc., Re

In the Matter of the Bankruptcy of Caswan Environmental Services Inc.

Alberta Court of Queen's Bench

Registrar Walker

Heard: January 10, 2001
Judgment: March 28, 2001
Docket: Calgary 25-053106

Copyright © CARSWELL,
a Division of Thomson Canada Ltd. or its Licensors. All rights reserved.

Counsel: Blair Carbert, for Sprung Instant Structures Ltd.
Doug Nishimura, for Receiver/Manger & Trustee

Subject: Insolvency; Civil Practice and Procedure

Bankruptcy --- Administration of estate -- Trustees -- Legal proceedings against trustee -- Leave to proceed

Interim receiver took possession and control of debtor's property and assets, including two structures debtor had leased from creditor -- Trustee in bankruptcy had no interest in structures -- Creditor's registered security had priority as bank's security agreement did not include structures -- Creditor brought application for leave to continue action previously commenced against interim receiver and trustee -- Application granted -- Interim receiver and trustee did not suffer prejudice as had received statement of claim and filed statement of defence -- Creditor was correct to advance application for declaratory relief before commencing action for resultant damages -- Creditor was required to wait for determination of entitlement to structures before applying for leave -- Damages claim could not have proceeded contemporaneously with application for declaratory relief -- Creditor provided sufficient evidence that action was not frivolous or vexatious -- Determination whether trustee and interim receiver were liable for conversion was remitted to trial judge who could assess credibility of parties -- Nunc pro tunc order was granted.

Bankruptcy --- Interim receiver -- Powers, duties and liabilities

Interim receiver took possession and control of debtor's property and assets, including two structures debtor had leased from creditor -- Trustee in bankruptcy had no interest in structures -- Creditor's registered security had priority as bank's security agreement did not include structures -- Creditor brought application for leave to continue action previously commenced against interim receiver and trustee -- Application granted -- Interim receiver and trustee did not suffer prejudice as had received statement of claim and filed statement of defence -- Creditor was correct to advance application for declaratory relief before commencing action for resultant damages -- Creditor was required to wait for determination of entitlement to structures before applying for leave -- Damages claim could not have proceeded contemporaneously with application for declaratory relief -- Creditor provided sufficient evidence that action was not frivolous or vexatious -- Determination whether trustee and interim receiver were liable for conversion was remitted to trial judge who could assess credibility of parties -- Nunc pro tunc order was granted.

Cases considered by Registrar Walker:

Bridgeland Riverside Community Assn. v. Calgary (City) (1982), 19 Alta. L.R. (2d) 361, 135

D.L.R. (3d) 724, 37 A.R. 26, 18 M.P.L.R. 180 (Alta. C.A.) -- considered

Canada (Attorney General) v. Doucette (1992), 11 C.P.C. (3d) 81, 133 A.R. 68 (Alta. Q.B.) -- referred to

Columbia Trust Co. v. American Home Assurance Co. (1990), 44 C.P.C. (2d) 226, 50 B.C.L.R. (2d) 379, 48 C.C.L.I. 95, 4 C.B.R. (3d) 198 (B.C. S.C.) -- considered

First Choice Capital Fund Ltd. v. First Canadian Capital Corp., (sub nom. Aquino v. First Choice Capital Fund Ltd.) 164 Sask. R. 230, [1998] 6 W.W.R. 362, 1998 CarswellSask 63, 32 C.P.C. (4th) 382 (Sask. Q.B.) -- referred to

Giffen, Re, 45 B.C.L.R. (3d) 1, 155 D.L.R. (4th) 332, 222 N.R. 29, [1998] 1 S.C.R. 91, (sub nom. Giffen (Bankrupt), Re) 101 B.C.A.C. 161, (sub nom. Giffen (Bankrupt), Re) 164 W.A.C. 161, 1 C.B.R. (4th) 115, [1998] 7 W.W.R. 1, 13 P.P.S.A.C. (2d) 255, 1998 CarswellBC 147 (S.C.C.) -- considered

Holst v. Grenier (1987), 65 Sask. R. 257, [1987] S.J. No. 766 (Sask. Q.B.) -- distinguished

Patrie v. Royal Bank (1997), 28 O.T.C. 199, [1997] O.J. No. 537 (Ont. Gen. Div.) -- distinguished

Sprung Instant Structures Ltd. v. Caswan Environmental Services Inc., [1997] 5 W.W.R. 280, 47 Alta. L.R. (3d) 356, 45 C.B.R. (3d) 47, 198 A.R. 41, 12 P.P.S.A.C. (2d) 148, 1997 CarswellAlta 151 (Alta. Q.B.) -- considered

Stainton v. Fraser (1999), (sub nom. Stainton v. Milner Fraser) 249 A.R. 104, 42 C.P.C. (4th) 374, 1999 CarswellAlta 704 (Alta. Master) -- referred to

Tokohopie v. Littlechief (1992), 101 Sask. R. 127 (Sask. Q.B.) -- distinguished

Warshawski v. Argentina Beach (Summer Village) (1990), (sub nom. Argentia Beach (Summer Village) v. Warshawski) 105 A.R. 35 (Alta. C.A.) -- considered

Wenzel v. Cougar Tool Inc. (1996), (sub nom. Cougar Tool Inc. v. Coopers & Lybrand Ltd.) 193 A.R. 73, 135 W.A.C. 73, 45 Alta. L.R. (3d) 364, [1996] A.J. No. 974 (Alta. C.A.) -- applied

Wild Bill's Work & Western Wear (Fort St. John) Ltd. v. Central Trust Co. (November 10, 1987), Doc. CA005850 (B.C. C.A.) -- distinguished

Statutes considered:

Bankruptcy and Insolvency Act, R.S.C. 1985, c. B-3

    s. 2(1) "property" [renumbered 1997, c. 12, s. 1(1)] -- considered

    s. 215 -- considered

APPLICATION by creditor for leave to continue action previously commenced against interim receiver and trustee in bankruptcy.

***Registrar Walker***:

1    These parties hae a lengthy history of litigation between themselves. That history is necessary to understand the context of the present application.

2    On May 29th, 1996 Ernst & Young Inc. was appointed interim receiver to "take immediate possession and control of property assets, undertaking of Caswan and immediate control of all

records, receipts an disbursements of Caswan" and further that "the interim receiver is not authorized
to dispose or sell all or substantially all of the assets of Caswan until further order of the court".

3      Caswan had leased a tent-like structure from Sprung Instant Structures Ltd. (the processing
structure) which was subsequently seized and dismantled by the interim receiver. In October of 1996
Ernst & Young Inc., was appointed receiver/manager of Caswan and maintained possession of the
structure pending determination by the courts as to a priority issue.

4      In June of 1996 and November of 1996 Sprung filed motions seeking the return of the processing
structure and a declaration that the Royal Bank's security did not attach the structure or alternatively
if it did, Sprungs registered security had priority.

5      On January 14th, 1997, Justice Forsyth found that although the trustee-in-bankruptcy had no
interest in the structure, the Royal Bank's security enjoyed priority to Sprung's security. Forsyth in
this judgment *Sprung Instant Structures Ltd. v. Caswan Environmental Services Inc., 1997
CarswellAlta 151* (Alta. Q.B.), deals with the conflicting evidence of the parties that may in part
provide an explanation for the nature of the litigation and explain why Sprung has a burr under its
saddle:

> 10. Caswan's business floundered. On May 3, 1996 the Royal Bank delivered written notice to
> Caswan that it was in breach of the financing agreement and was given one week to rectify
> and remedy its breach. On May 16, 1996 The Royal Bank demanded payment of the
> outstanding indebtedness of Caswan and delivered a Notice of Intention to Enforce Security
> pursuant to s. 244 of the *Bankruptcy and Insolvency Act* R.S.C. 1985, c. B-3 (BLA).

> 11. On May 24, 1996 Vern Olson, Senior Vice President and Secretary-Treasurer of *Sprung*
> became aware that Caswan was in arrears in its indebtedness with the Royal Bank. On that
> same day *Sprung* registered its interest under the lease in accordance with the applicable
> terms of the PPSA (Registration Number 96052431086) and instructed Shortridge Civil
> Enforcement ("Shortridge") to attend at Caswan's site in Taber and repossess the structure on
> behalf of *Sprung* and turn over possession to *Sprung* by conducting a seizure.

> 12. On May 25, 1996 Shortridge affected seizure of the structure and turned possession of the
> structure over to *Sprung*. One day later *Sprung* began to dismantle the structure. On May 27,
> 1996 Norm Sharp, account manager with the Royal Bank, contacted Vern Olson and requested
> *Sprung* to delay dismantling the structure. Olson agreed to delay dismantling the structure
> until noon on May 28th.

> 13. The events of May 28, 1996 are in dispute. Vern Olson, in an affidavit sworn June 7, 1996,
> states that on the morning of May 28th Norm Sharp contacted Olson about the possibility of
> either a trustee in bankruptcy or the Royal Bank leasing the structure from *Sprung*. During
> that conversation Sharp acknowledged that he knew *Sprung* was in the process of dismantling
> the structure. At 2:00 p.m. Sharp contacted Olson again and requested a one hour delay in
> dismantling the structure until a decision could be reached by the Royal Bank regarding a
> lease. Olson withdrew *Sprung's* workmen until 3:30 p.m. Olson deposes that shortly after
> 3:30 p.m. he was contacted by Sharp and that in the course of the conversation it was agreed
> that: *Sprung's* workmen would discontinue dismantling the structure; and the Royal Bank
> would forward a cheque for $25,000.00 to *Sprung* that same afternoon, in payment for a one
> month lease of the structure. Olson deposed that it was his understanding that the Royal
> Bank's lawyer would be contacting *Sprung's* lawyer for the purpose of drafting a lease
> agreement.

> 14. The Royal Bank did not send a cheque and the Royal Bank's lawyer did not contact
> *Sprung's* lawyer. As a result *Sprung's* workmen resumed dismantling the structure on the
> morning of May 29, 1996. Late on May 29th *Sprung's* lawyer was advised that the Court of
> Queen's Bench granted a consent order appointing Ernst & Young Inc. as interim receiver of
> Caswan, pursuant to the BLA. As a result Olson advised the *Sprung* workmen to take no

further action to dismantle the structure. In a letter dated May 31, 1996 solicitors for the Royal Bank advised *Sprung's* solicitors that:

> …the leased structure is not to be removed from the Renaissance lands near Tabor [sic] without consent of the Interim Receiver and any action [*Sprung*] to remove the structure will be considered a breach of section 69 of the *Bankruptcy and Insolvency Act* and a breach of the terms of the Interim Receivership Order.

> 15. Norman Sharp, in an affidavit dated November 8, 1996, states that his telephone call to Olson was not to make inquiries about leasing the structure but rather was directed solely to retaining the structure at the Taber site in order to prevent exposing the plant and equipment to the elements and further vandalism. Sharp, while acknowledging that he attempted to determine if *Sprung* would leave the structure temporarily on site for a monthly fee, deposes that the Royal Bank rejected *Sprung's* counter-offer to lease the structure for $25,000.00.

6      Sprung successfully appealed Justice Forsyth's decision to the Court of Appeal [*Sprung Instant Structures Ltd. v. Caswall Environmental Services Inc.* (1997), 1 C.B.R. (4th) 190, 1997 CarswellAlta 1060 (Alta. C.A.)]. That court found the banks security agreement did not encompass the leased structure. A further appeal to the Court of Appeal based on recent law emerging from the Supreme Court of Canada was also unsuccessful and leave to appeal the issue to the Supreme Court of Canada was denied [*Sprung Instant Structures Ltd. v. Caswan Environmental Services Inc.* (1998), 234 N.R. 195 (note) (S.C.C.)].

7      Another tent-like structure (the soil's structure) taken into conservatory was also subject to an application by the Royal Bank and Justice Prowse followed the disposition made by the Court of Appeal based on issue estoppel [*Royal Bank v. Sprung Instant Structures Ltd.* (August 13, 1998), Doc. Calgary 9701-04517 (Alta. Q.B.), 1998 CarswellAlta 764].

8      In the present action Sprung seeks leave to continue its action commenced on May 26, 1998 by obtaining leave nunc pro tunc. In November of 2000 I held that such leave was required by Sprung and that determination gives rise to this application. It is interesting to note that at the time the action was commenced Sprung filed a motion seeking leave but later withdrew that application.

9      The amended statement of claim alleges a number of heads of damages all arising from what is alleged to have been the wrongful conversation by the interim receiver of the two tent-like structures. Those causes of action include:

> (a) trespass on chattels;

> (b) conversion of chattels;

> (c) intimidation;

> (d) unlawful interference with economic interest;

> (e) negligent loss of or damage to chattels; and

> (f) liability of bailee for loss of or damage to chattels.

10     There are four issues to be determined on this leave application.

**AVAILABILITY OF NUNC PRO TUNC ORDER**

11     The respondent argues that limitation periods have now intervened for most of the plaintiff's causes of action and that constitutes an absolute bar to the plaintiffs proposed action proceedings. In support of that position the plaintiff relies on two Saskatchewan Queen's Bench decisions in *Holst v. Grenier*, [1987] S.J. No. 766 (Sask. Q.B.) and *Tokohopie v. Littlechief* (1992), 101 Sask. R. 127 (Sask. Q.B.). In each case the Saskatchewan chambers judges found that the statements of claim

issued without leave were not procedural irregularities that could be cured by a nunc pro tunc order.

12    A later decision of the same court questions whether a judge's discretion should be fettered by a strict intervening limitation rule:

> I am of the view that it is time to reconsider this 'intervening limitation' fetter that has been place on the discretion of the court. But I too feel obligated to follow the previous decisions. Until the intervening limitation principle has been further considered by the Court of Appeal, it should be narrowly construed and confined to the facts of the cases that established it. Case like *Holst* and *Tokohopie* involved personal injury torts incurred in automobile accidents. In each of those cases it was clear and undisputed that the one-year limitation period had expired before the application for leave before the application for leave was brought. Neither case involved multiple torts, multiple defendants, nor a prior defective application for leave. Nor was any case cited to me which involved such factors. *Johnson Estate v. Pischke* (1988), 68 Sask. R. 76 (Sask. C.A.) (Upheld on appeal to the C.A., (1988) 70 Sask. R. 224 (Sask. C.A.)) is of no assistance to Deloitte and Blewett as even though the case involved leave, the primary issue was whether the court properly found on a Rule 188 application that there had been no estoppel.
>
> The circumstances of the case before me however are quite different from those involved in *Holst* and *Tokohopie*. It involves multiple torts and defendants (and in particular multiple torts against Deloitte and Blewett as well as other cases of action such as breaches of contract). The alleged torts include professional negligence, breaches of duties, misrepresentation, and the like. The cases of action are alleged to hae taken place between various dates in the years 1988 and 1994. It accordingly will not be established until trail when any particular limitation period expires. As well, even though a limitation period may have expired respecting one alleged tort, those respecting other alleged torts may not have expired. At this point, an intervening limitation period is nothing more than a possibility.
>
> In these circumstances, it is hard to envisage how Deloitte and Blewett will be prejudiced if leave is granted. Even if leave is refused respecting the cause of action whose limitation period may have expired before the application was brought. Deloitte and Blewett will still have to defend the other torts and cause of action alleged against them. If on the other hand leave is granted, Deloitte and Blewett have not lost a defense in the true sense of the word. They can still raise a limitation defense respecting any tort alleged in the statement of claim. All they lose is 'defense' that leave should not be granted retroactively, a procedural not a substantial matter. In reality, they do not even lose this 'defense' but are simply required to deal with it now rather than at trial.
>
> As it is not clear that a limitation period has intervened, there is no fetter on the exercise of my discretion to consider the application on its merits. As well, the other significant factor that distinguishes the case before me from *Holst* and *Tokohopie* is that a prior application for leave was brought even though it was neither granted nor refused respecting Deloitte and Blewett specifically. The applicants did not attempt to mislead the court or to obtain an advantage over the defendants by formulating their previous application for leave in the manner they did. They were then faced with various leave issues, not just the s. 54 leave issue. They assumed that the order they obtained met the requirements of s. 54.
>
> *First Choice Capital Fund Ltd. v. First Canadian Capital Ltd.*, 1998 CarswellSask 63 (Sask. Q.B.) at paras 25-8, (sub nom. *Aquino v. First Choice Capital Fund Ltd.*) 164 Sask. R. 230, [1998] 6 W.W.R. 362, 32 C.P.C. (4th) 382 (Sask Q.B).

13    Case law in Alberta is replete with instances where the courts have treated the failure to obtain leave as a procedural irregularity rather than a nullity.

14    In *Bridgeland Riverside Community Assn. v. Calgary (City)* (1982), 37 A.R. 26 (Alta. C.A.) Kerans J.A. comments on the judicial reluctance to treat procedural defects as nullities that vitiate proceedings:

Absent an express statutory statement of effect, no defect should vitiate a proceeding unless, as a result of it, some real possibility of prejudice to the attacking party is shown, or unless the procedure was so dramatically devoid of the appearance of fairness that the administration of justice is brought into disrepute.

15      The cases considering nunc pro tunc orders all focus on the issue of prejudice. How can it be said that the proposed defendants in this action are prejudiced. They were served with the statement of claim in this matter on May 16, 1998 and a defence (including a defence that leave was not obtained) was filed in September of 1998.

16      The abandonment of the plaintiff's earlier motion for leave was predicated on the plaintiff's position that the receiver was acting outside his appointment as interim receiver. On November 15th, 2000, I ruled that the plaintiff did require leave and held that a nunc pro tunc order was available in law if the circumstances. Obviously I was satisfied that the interim receiver was acting within his capacity as interim receiver in taking possession of the structures.

17      I do find that given the lack of prejudice to the proposed defendant a nunc pro tunc order should issue. That decision is consistent with *Canada (Attorney General) v. Doucette* (1992), 133 A.R. 68 (Alta. Q.B.) and my own decision in *Stainton v. Fraser,* 1999 CarswellAlta 704 (Alta. Master).

18      There are a number of causes of action in the plaintiffs intended statement of claim. It is far from clear to me that any limitation periods bar the plaintiff's claim and it is at least certain that the pleading of unlawful interference with economic relations and conspiracy are subject to a six year limitation. Those limitation issues are best determined by a trial judge.

**RES JUDICATA**

19      The defendant asserts that the plaintiff should have advanced it's damage claims at the time it sought declaratory relief that it owned the structures and it's seizure was valid. It is well settled law in this Province that the principal of res judicata applies to issues that ought to have been advanced at the time. *Warshawski v. Argentina Beach (Summer Village)* (1990), 105 A.R. 35 (Alta. C.A.).

20      The plaintiff urges me not to consider the argument as res judicata or issue estoppel was not plead in the defendant's statement of defence. The plaintiff seeks to amend it's claim and obtain a nunc pro tunc order. The court must be practical and deal with all issues extant between parties.

21      The principle of avoiding litigation by installment must be tempered by practical considerations. The plaintiffs original application for declaratory relief would have bogged down the judicial process if it were coupled with an action for resultant damages. Common sense dictates that a determination as to the validity of the competing security interests should have been made before a damage claim was advanced. I have read the decisions of *Wild Bill's Work & Western Wear (Fort St. John) Ltd. v. Central Trust Co.* (November 10, 1987), Doc. CA005850 (B.C. C.A.) and *Patrie v. Royal Bank,* [1997] O.J. No. 537 (Ont. Gen. Div.) cited by the defendant. What distinguishes this case is that leave could only be granted after a determination as to the entitlement to the tent-like structures had been made. It is unlikely that any court would have granted leave to sue an interim receiver for damages until a declaration as to the entitlement of the goods was made. In practical terms there was no way in which a damage claim could have proceeded contemporaneously with the declaratory relief sought.

**HAS THE TEST FOR LEAVE UNDER SECTION 215 OF THE BANKRUPTCY AND INSOLVENCY ACT BEEN MET?**

22      The defendant asserts that there is not a sufficient evidentiary basis on which the plaintiff's claims can be founded. The test to be met is not rigorous. The authors **Holden and Morawetz** in their text 2001 **Annotated Bankruptcy and Insolvency Act** write:

The Court will not refuse leave unless there is no foundation for the claim is frivolous and vexatious.

23     Our Court of Appeal enunciates the test for leave to proceed with an action against a court appointed receiver/manager in *Wenzel v. Cougar Tool Inc.* , [1996] A.J. No. 974 (Alta. C.A.) at paragraphs 4-6:

> While we are all agreed that the public function performed by Court appointed Receiver/Managers is deserving of protection, it is equally important to safeguard the rights of third parties who wish to pursue legitimate claims. We think that the balance is best achieved by first requiring Chambers Judges to conduct a careful and thorough investigation of the legal and factual foundation underlying such claims. Viet, J. did precisely that. Her's was not a perfunctory analysis of the claims in question.

> But we are all agreed that the burden imposed upon the Appellant to establish a *prima facie* case was, with respect, in error. We prefer the test enunciated by Conrad J., now J.A. in *Roynat Inc. v. Allan* (1998), 61 Alta. L.R. (2d) 165 at page 173.

>> Leave should be granted if the evidence presented discloses that there is some foundation for the claim and that the claim is not merely frivolous or vexations.

> Relying, as we do, upon the rigorous and thorough examination of the claims by the Learned Chambers Judge in applying the proper test, we are of the view that the appeal must be allowed and leave granted to the Appellant to pursue its claims as sought.

24     I have reviewed the affidavit evidence of Ron Cleveland and the pleadings carefully. I am satisfied that there is evidence upon which a claim may be properly founded and that the claim is not frivolous or vexatious.

**CAN THE INTERIM RECEIVER AND TRUSTEE BE LIABLE FOR CONVERSION?**

25     Counsel for the trustee and interim receiver argues that it was acting at all times pursuant to the order of Justice McBain which required it to take immediate possession and control of all property of the bankrupt Caswan. Section 2(1) of the Bankruptcy and Insolvency Act defines property as:

> Property includes money, goods, things and actions, land and every discretion of property, whether real or personal, legal or equitable, and whether situated in Canada or elsewhere and includes obligations, easement and every description of the state, interest and profit, present or future, vested or contingent, in, rising out of, or incident to property.

26     In *Re Giffen*, 1998 CarswellBC 147 (S.C.C.) the Supreme Court of Canada held that the definition of property included leased goods. Justice Iacobucci held that paragraph 34:

> In my opinion, the bankrupt's right to use and possession of the car constitutes 'property' for the purposes of the BIA and the Trustee, by virtue of section 71(2) of the BIA succeeds to this proprietary right.

27     Nothing said by the Court of Appeal in the priority contest between the Royal Bank and Sprung derogates from that principle. The Court of Appeal's decision is based solely on the interpretation of what property was caught by the Royal Bank's general security agreement. It is the position of the defendant that the interim receiver acted lawfully in accordance with the direction of the court to take possession of the goods and to hold the goods until a court ruled on entitlement to the goods.

28     There are clear public policy considerations giving rise to the protection of a receiver who is placed in the difficult position of making decision based on limited facts and with little time for consideration. In *Columbia Trust Co. v. American Home Assurance Co.* (1990), 50 B.C.L.R. (2d) 379 (B.C. S.C.) at page 387 Esson C.J.S.C. enunciates this principle:

> The Receiver and its agents should not have to worry that every act or omission which had adverse consequences for someone could lead to an action in negligence against them. The

foundation which justifies the grant of leave must in my view, be one clearly beyond a mere error of judgment because, where judgments must be made on a daily and hourly basis, some error is inevitable. Those considerations apply equally to allegations of legal error. Receivers are continuously called upon to make decisions which have a component of legal judgment. A receiver who would make no such judgments without being assured of complete absence of error would almost certainly be an ineffectual manner. Receivers do not of course, always function under pressure but this Receiver clearly did in the first month of this receivership. So, again, the foundation for an action against the receiver should be found to have been established only if the error was relatively obvious and serious.

29    Just as our Court of Appeal stated in *Wenzel v. Cougar Tool Inc. (supra)*, it is the duty of the court to strive to establish a fair balance between the protection of court appointed receivers and the rights of third parties who wish to pursue legitimate claims.

30    The principle of protecting receiver/managers can and should not be extended to situations where the alleged delicts go beyond errors in judgment or errors in interpretation of law. Here there are specific claims that the receiver/manager stopped the dismantling of one of the structures by artifice and guile. There are also allegations made that the goods were taken into the receivers possession carelessly and improperly and that parts of the structure were lost while in storage. The interim receiver and the trustee vigorously dispute these allegations but if they are proven the court mandated protection should not be extended. It may well be that a trial judge would disallow the claims for conversion but I have concluded that a trial judge should make that determination after being afforded an opportunity to assess the credibility of the parties. It is equally possible that the public policy argument may protect the receiver manager against most of the damage claim but perhaps not all of it.

31    Accordingly I grant a nunc pro tunc order permitting the plaintiff to continue with its claim and to file its amended statement of claim in this matter. The parties may address the costs of this application before me within 30 days.

*Application granted.*

1983 CarswellOnt 169
45 C.B.R. (N.S.) 252

Border Drilling & Sanitation Ltd., Re

Re BORDER DRILLING AND SANITATION LIMITED; Re ULCH

Ontario Supreme Court, In Bankruptcy

Ferron, Q.C., Registrar

Judgment: April 19, 1983
Copyright © CARSWELL,
a Division of Thomson Canada Ltd. or its Licensors. All rights reserved.

Counsel: N. Roy, for applicant.
H. Perlis, for respondent.

Subject: Corporate and Commercial; Insolvency; Estates and Trusts

Bankruptcy --- Administration of estate -- Trustees -- Legal proceedings against trustee -- Leave to proceed.

Procedure -- Against trustee -- Application for leave to commence personal action on indemnity -- Application dismissed.

This was an application for leave to proceed against the trustee on a counterclaim in an action brought by the trustee. There were no assets in the estate and, in order to recover its disbursements and remuneration, the trustee took from the applicant an agreement to indemnity. The indemnity was not honoured and the trustee issued a writ against the applicant in the County Court. At the same time, the applicant alleged a claim against the trustee based upon negligent advice which he alleged was given him in connection with an action brought personally against him, and which he alleged resulted in a judgment against him by reason of certain omissions by the trustee.

Held:

Application dismissed.

The action by the trustee against the applicant was a personal action taken on an indemnity and the counterclaim was likewise one against the trustee personally. Thus, there was no need for an order under s. 186 of the Bankruptcy Act and the matter was not one for the bankruptcy court, which under the circumstances lacked jurisdiction.

Statutes considered:

Bankruptcy Act, R.S.C. 1970, c. B-3, s. 186.
Application for leave to proceed against trustee on counterclaim.

*Ferron, Q.C., Registrar:*

1    This is an application brought by Erle Ulch for leave to proceed against Fox & Partners Limited on a counterclaim in an action brought in the District Court of the district of Algoma.

2    In dismissing the application I must discuss the background. Fox & Partners Limited are the trustees in the estate of Border Drilling and Sanitation Limited. There were no assets in that estate and in order to recover its disbursements and remuneration, Fox & Partners Limited took from the applicant, Erle Ulch, an agreement to indemnity which for some reason has been referred to

erroneously throughout as a guarantee.

3   The indemnity was not honoured and Fox & Partners Limited issued a writ against Ulch in the County Court.

4   Ulch, at the same time, alleged a claim against Fox & Partners Limited based upon negligent advice which he alleges was given to him in connection with an action brought personally upon him and which he alleges resulted in a judgment against him by reason of certain omissions by Fox & Partners Limited.

5   Counsel for Ulch moved in weekly court for an order to permit him to proceed by way of counterclaim against Fox & Partners Limited in the action brought against him by that company to which I have referred. The matter was adjourned from time to time and apparently abandoned because counsel for Ulch simply served the counterclaim notwithstanding.

6   Fox & Partners Limited then moved before the County Court Judge who set aside the counterclaim apparently on the grounds that the plaintiff by counterclaim, Ulch, had not obtained leave of the bankruptcy court to proceed against Fox & Partners Limited. There apparently was an assumption that the action brought by Fox & Partners Limited was brought in that company's capacity as trustee and that the counterclaim was likewise a proceeding against a trustee in bankruptcy.

7   But is it perfectly clear that the action by Fox & Partners Limited against Ulch is a personal action taken on an indemnity and that the counterclaim is likewise one against a company personally, otherwise it could not be the subject of a counterclaim, and that the counterclaim and indeed the action by Fox & Partners Limited has nothing whatsoever to do with the bankrupt estate, Border Drilling and Sanitation Limited.

8   Counsel for the applicant urged me, all other considerations aside, to make an order, if not under s. 186 of the Bankruptcy Act, R.S.C. 1970, c. B-3, then simply in negative terms to enable him to ask the County Court Judge to set aside the order striking out the counterclaim. Clearly, there is no need for an order under s. 186 and that being the case, the matter is not one for the bankruptcy court which under those circumstances lacks jurisdiction.

9   The application is accordingly dismissed with costs.

*Application dismissed.*

END OF DOCUMENT

1982 CarswellOnt 196
43 C.B.R. (N.S.) 153

382231 Ontario Ltd. v. **Wilanour** Resources Ltd.

Re **WILANOUR** RESOURCES LIMITED; 382231 ONTARIO LIMITED v. **WILANOUR** RESOURCES
LIMITED, CANADIAN IMPERIAL BANK OF COMMERCE and THE CLARKSON COMPANY LIMITED

Ontario Supreme Court, In Bankruptcy

Anderson J.

Heard: October 19, 1982
Judgment: October 29, 1982
Copyright © CARSWELL,
a Division of Thomson Canada Ltd. or its Licensors. All rights reserved.

Counsel: J. Rook, for applicants.
J. Harris, for respondent.
J. Richler, for Canadian Imperial Bank of Commerce.

Subject: Corporate and Commercial; Insolvency; Civil Practice and Procedure

Bankruptcy --- Effect of bankruptcy on other proceedings -- Proceedings against bankrupt -- Before
discharge of trustee -- Effect of failure to obtain bankrupt -- Leave nunc pro tunc.

Proceedings after bankruptcy -- Stay of proceedings -- Actions against trustee -- Necessity for leave -
- Possible to grant leave nunc pro tunc.

One of the purposes of the Bankruptcy Act is to bring about the orderly distribution of a bankrupt's
assets rateably among his creditors. A multiplicity of claims by creditors, asserted all in separate
proceedings, would be wasteful and burdensome; therefore s. 49 prevents actions without leave. The
creditor is ordinarily required to proceed according to the summary provisions of the Bankruptcy Act.
Similarly s. 186 prevents actions against the trustee other than by leave. That provision is intended to
protect those charged with the administration of the Act from actions or other proceedings save those
which have the sanction of the court.

Insofar as leave is required under s. 49 of the Act, it can be granted nunc pro tunc. Although there is
a difference in language between s. 49 and s. 186, the effect is not materially different and leave can
also be granted under s. 186 nunc pro tunc.

Cases considered:

  Trusts & Guar. Co. v. Brenner, [1933] S.C.R. 656, 15 C.B.R. 112, [1933] 4 D.L.R. 273 --
  applied

Statutes considered:

Bankruptcy Act, R.S.C. 1970, c. B-3, ss. 49, 186.
Applications for order that action be stayed against one defendant and be dismissed against co-
defendant or, alternatively, for order extending time for appearance and defence.

**_Anderson J._:**

1      There are before me for disposition two motions, both for the same relief: an order that the
proceedings in the above action be permanently stayed against the defendant Wilanour Resources
Limited pursuant to s. 49 of the Bankruptcy Act ("the Act"), and be dismissed as against the

defendant The Clarkson Company Limited, pursuant to s. 186 of the Act or in the alternative, for an order extending the time for appearance and delivery of defence. The fact that two motions are brought, one in the action and one in the bankruptcy proceedings, is attributable to uncertainty on the part of the solicitors for the applicant concerning the appropriate forum for such a motion, that is, whether it should be before a judge of this court sitting in his ordinary capacity, or as a judge in bankruptcy.

2     The applications involve the related questions of whether the claims in the action are claims provable in bankruptcy, and claims against the trustee, which cannot be brought other than with leave and, if so, whether leave should be granted. There is no formal motion for leave but the issue was argued before me as though there had been.

3     For convenience of reference, the statement of claim is attached as App. A to these reasons and the relevant provisions of the Bankruptcy Act, as Sched. B. Clarkson is trustee under a proposal made by Wilanour.

4     Counsel for Canadian Imperial Bank of Commerce took no position in the argument save to associate himself with the submissions made by counsel for Wilanour.

5     In my respectful view, solicitors and counsel for all parties have allowed themselves to be preoccupied with technicalities to the point where practical realities have been overlooked.

6     The relevant provisions of the Act must, of course, be read in context and having in mind the purposes of the Act. Foremost among these is the orderly distribution of the assets of an insolvent debtor rateably among his creditors. It is obvious that a multiplicity of claims by creditors, asserted all in separate proceedings according to the usual processes of the courts, would be wasteful and burdensome; hence the provision in s. 49 preventing actions without leave. Instead, the creditor is ordinarily required to proceed according to the summary provisions of the Bankruptcy Act.

7     Likewise, s. 186 prevents actions against the trustee other than by leave. The section is intended to protect those charged with the administration of the Act from actions or other proceedings save such as have the sanction of the court.

8     It was argued with much force by counsel on behalf of the respondent that the claims in the action fell entirely outside the ambit of the Act. It was submitted that the claims asserted against the applicant Wilanour were not claims provable in bankruptcy within the meaning of the Act and were not affected by s. 49. It was also contended that the claims against the trustee were not with respect to its activities qua trustee and that, therefore, the action was unaffected by s. 186.

9     I think there is considerable health in the arguments advanced on behalf of the respondent. An examination of the statement of claim shows how far removed in character are the claims against Wilanour from those which are usually asserted in a bankruptcy, and that the claim against Clarkson is extraordinary in its nature. If I felt it obligatory to make a determination on the issue, I would accept those submissions and dispose of the matter accordingly. Having regard to practical considerations, I do not consider it obligatory to do so. For that reason I do not propose to consider in detail, for example, the sections of the Act which delineate what claims are provable.

10     Whether the claims asserted in the action are or are not such as to fall within the scope of the Act, they are plainly claims of a nature which cannot be disposed of in any summary fashion. Some proceeding analogous to an action, involving pleadings, production, discovery and trial, appears inevitable. Nor does it seem in any way reasonable to anticipate that if a stay were granted, or this action dismissed as against Clarkson, that the claims would disappear. That being the case, it would seem unreasonable to stay or dismiss the action and require that it be reconstituted in a slightly different form which, in all probability, would in any event result in a trial before a High Court judge. All that would result would be a tactical victory for one party, a tactical reverse for another, and a substantial increment of costs. It seems obvious to me that the proper course is to grant leave for the action to proceed.

11      Counsel for the respondent appeared reluctant to accept the possibility that leave was the appropriate solution to the dilemma. It was not entirely clear to me why this was so as I cannot see that anything material is affected by it except possibly some disposition of costs.

12      There is authority that insofar as leave is required under s. 49 of the Act, it can be granted nunc pro tunc, see *Trusts & Guar. Co. v. Brenner*, [1933] S.C.R. 656 at 663, 15 C.B.R. 112, [1933] 4 D.L.R. 273. As to the action if by s. 186, it was contended that the absence of leave rendered the action a nullity and, therefore, that leave nunc pro tunc could not be granted. No authority was cited for that proposition and I do not find it tenable. I recognize the difference in language between s. 49 and s. 186, but I am not persuaded that the effect is so materially different.

13      I would make an order granting leave, nunc pro tunc. Time for appearance and defence is extended to 8th November 1982. If I should have been under a misapprehension concerning the position of counsel for the applicant as to a formal motion for leave, or should a longer period for defence be requisite, I may be spoken to.

14      As to the appropriate forum for motions such as these, it seems to me that they ought to be brought in the bankruptcy court and that the motion would be appropriately styled both in the action and in the bankruptcy proceedings. In that way, any possible outcome of the motion can be effectually dealt with at one time.

15      There will be no order as to costs.

> *Leave to proceed granted nunc pro tunc; time for appearance and defence extended.*

## Appendix A -- Statement of Claim

(Writ issued the 26th day of August, 1982)

1. The Plaintiff is a limited company incorporated pursuant to the laws of the Province of Ontario and was at all material times the owner of certain real property and appurtenant mineral claims near Red Lake, Ontario, all of which will be referred to hereinafter as "the Buffalo site".

2. The Defendant Wilanour Resources Limited ("Wilanour") is a limited company incorporated under the laws of the province of Ontario and carried on business in mining exploration and development. At all material times, Wilanour had certain rights to explore and develop the Buffalo site upon certain conditions as set out in a written agreement between the Plaintiff and Wilanour dated the 27th day of October, 1980 ("the Agreement"). The Plaintiff will be introducing the agreement at the trial of this action for its full terms and the effect thereof.

3. The Defendant Canadian Imperial Bank of Commerce ("the C.I.B.C.") is a chartered bank doing business throughout Canada and, in particular, at its Main Branch at the Commerce Court, in the City of Toronto. The C.I.B.C. is the principal banker for Wilanour and claims to be a secured creditor for an amount in excess of $8,000,000.00.

4. The Defendant the Clarkson Company Limited ("Clarkson") is a corporation federally licenced [sic] as a Trustee in Bankruptcy and has been acting in concert with the C.I.B.C. and under its directions to liquidate the assets of Wilanour in which the Plaintiff has a beneficial interest. The circumstances surrounding these activities as well as the consequences following from them will be set out more fully below.

5. During the currency of the agreement and pursuant to its terms, the Plaintiff elected to continue its participation in the Buffalo site on the basis of a 10% undivided non-assessable interest in the Buffalo site including assets on it or assets used in connection with it.

6. The election was made by the Plaintiff on or about November 13, 1981. Wilanour failed to disclose to the Plaintiff that, by a debenture registered on September 3, 1981 with the Ministry of Consumer and Commercial Relations ("the Debenture") it had purported to give the C.I.B.C. security over all of its assets including those on the Buffalo site.

7. The Plaintiff claims that the Debenture contravenes the Agreement, and, in particular, clause 23(9) thereof and is null and void and of no effect against the Plaintiff.

8. The Plaintiff further claims that the Debenture contravenes the *Assignments and Preferences Act*, R.S.O. 1980, Chapter 33, and was moreover given to secure past indebtedness only and is null and void and of no effect.

9. Despite its obligation under the Agreement to make full disclosure to the Plaintiff of its financial affairs, Wilanour has failed to do so and has in fact deliberately misled the Plaintiff into a belief that the Buffalo site was completely unencumbered, and that the financial records would be forthcoming.

10. The Plaintiff has since discovered that, commencing early in 1982, Wilanour has ceased all operations at the Buffalo site, has surreptitiously removed from the Buffalo site all moveable assets in which the Plaintiff claims its 10% undivided interest under the Agreement, has flooded the mine and filled in the pit at the Buffalo site, has acquiesced in and cooperated with the C.I.B.C. and Clarkson in a sale of all assets of Wilanour.

11. The C.I.B.C. claims title to all assets under the Debenture, although the Debenture is invalid for the reasons set out in paragraphs 7 and 8 above and although it purports not to have caused its supposed floating charge security to crystallize.

12. Clarkson has sold and is selling all assets on behalf of the C.I.B.C. and is providing the C.I.B.C. with 50% of the proceeds of sale.

13. Wilanour made an interim proposal to its creditors in June, 1982, and attempted to keep this from the Plaintiff. The interim proposal and supporting materials disclosed a deficit of approximately $15,000,000.00 and further confirmed that operations at the Buffalo site had been terminated.

14. The Plaintiff claims that acts of Wilanour, Clarkson and the C.I.B.C. constitute breaches of trust and conversion of property in which the Plaintiff has a beneficial interest.

15. The Plaintiff claims that the acts of Wilanour constitute an abandonment of its rights under the Agreement and the Plaintiff claims that by reason of the abandonment the Buffalo site and those moveable assets remaining on it have reverted to the Plaintiff. The Plaintiff claims that Wilanour is obliged to reconvey its interest in the Buffalo site and the assets to it forthwith at Wilanour's expense pursuant to the Agreement and, in particular, Clause 11 thereof.

16. The Plaintiff therefore claims *against Wilanour*:

(a) a declaration that it has abandoned its rights under the Agreement;

(b) a mandatory injunction requiring it to execute a reconveyance to the Plaintiff of its rights to the Buffalo site;

(c) a mandatory injunction requiring it to deliver up to the Plaintiff full reports on any mining operations it may have conducted and full financial statements as required under the Agreement;

(d) delivery up of title documents to the Buffalo site;

(e) a certificate of lis pendens with respect to the Buffalo site more particularly described as follows: "Mining rights to those Parcels registered in the Land Titles Division for the Land Registry Office at Kenora, in the Register for the District of Patricia, as follows: 256, 353, 354 to 364, inclusive, 1351 to 1363 inclusive."

*Against Wilanour and the C.I.B.C.*:

(f) a declaration that the Debenture is null, void and of no effect;

(g) a declaration that the C.I.B.C. has no title to any of the assets supposedly the subject matter of the Debenture;

*Against C.I.B.C. and Clarkson*:

(h) damages and punitive damages in the amount of $100,000,000.00 for breach of trust;

(i) damages and punitive damages in the amount of $100,000,000.00 for conversion;

(j) an injunction and an interim and interlocutory injunction restraining them from any further breaches of trust and/or conversion;

(k) a tracing of all assets taken by them in breach of trust and/or conversion;

(l) repayment of any monies received from sales of assets sold in breach of trust and/or conversion;

*Against Clarkson*:

(m) damages and punitive damages in the amount of $100,000,000.00 for trespass;

Against all Defendants:

(n) its costs of this action on a solicitor and client basis;

(o) such further and other relief as this Honourable Court deems just.

17. The Plaintiff proposes that the trial of this action take place in the City of Toronto in the Judicial District of York.

DELIVERED at Toronto this 26th day of August, 1982 by Messrs. Laskin, Jack & Harris, 70 Bond Street, Suite 300, Toronto, Ontario, M5B 1X3, Solicitors for the Plaintiff.

**Schedule B**

**Bankruptcy Act**

49. (1) Upon the filing of a proposal made by an insolvent person or upon the bankruptcy of any debtor, no creditor with a claim provable in bankruptcy shall have any remedy against the debtor or his property or shall commence or continue any action, execution or other proceedings for the recovery of a claim provable in bankruptcy until the trustee has been discharged or until the proposal has been refused, unless with the leave of the court and on such terms as the court may impose…

186. Except by leave of the court no action lies against the Superintendent, an official receiver or a trustee with respect to any report made under, or any action taken pursuant to, this Act.

END OF DOCUMENT

*Indexed as:*

**Morris v. Lemontzis (trustee of)**

**IN THE MATTER OF the bankruptcy of: George Lemontzis,
Dimitrios Lemontzis and Nick Lemontzis, debtors, and
Ben Morris, Abraham Morris, Moses Morris, Sam Morris, Stanley
Morris and Harry Morris, petitioners, and
Pfeiffer and Pfeiffer Inc., respondent**

[1983] Q.J. No. 8

No. 500-11-002683-825

Quebec Superior Court (Bankruptcy Division)
District of Montreal

**Jacques Dugas J.**

April 21, 1983

(10 pp.)

**Counsel:**

No counsel mentioned.

---

REASONS FOR JUDGMENT

**1     JACQUES DUGAS J.:--** An application is brought pursuant to sections 49(1) and 186 of the
Bankruptcy Act to commence legal proceedings against the trustee personally and ès-qualité, in a
separate action. Petitioner wishes to sue, jointly and severally, the trustee and the original leessees of a
restaurant for rent and damages.

**2     The Petitioner would claim in his action rent and damages. The rent is claimed for the period the
trustee occupied the premises after the first meeting of the creditors to the date the premises were turned
back to the owner. The damages are the cost of restoring the premises to their original state of repair.

**3     The action would be taken jointly and severally against the original lessee, a sub-lessee and the
trustee ès-qualité as well as personally.

**4**    The cause of a joint and several responsibility of the successive tenants seems to come from the original lease, the sub-lease to the second tenant and the transfer of lease from the second tenant to the debtor, each subsequent tenant having contracted to make his own the obligations of the original tenant. This lien de droit is contractual.

**5**    It is also alleged that the trustee is personally liable for the rent and the damages. It is generally accepted that the trustee is personally responsible for the rent if he retains possession unnecessarily after the first creditors' meeting: re Auto Experts Limited; ex. p. Tanner (1921) 1 C.B.R. 418, affirmed 3 C.B.R. 591; re Duplessis; Chatel v. Savage, 15 C.B.R. (N.S.) 270; re Pierre de Paris (infra). The lien de droit here is not the same as before. The trustee cannot be personally sued on the original contract, as he is not a party to that contract. He can only be liable if he unnecessarily retained possession after the first creditors' meeting and so caused prejudice to the owner.

**6**    As to the damage claim, one could hardly imagine that the trustee could be sued personally for damages not caused by himself or his agent. The obligation to keep the premises in good repair is not his own but an obligation of the debtor. The trustee can only be sued in his official capacity for that contractual obligation. However, it is alleged that some damages to the walls, floors and ceilings were caused by the agent hired by the trustee to liquidate the physical assets. Here the cause of action against the trustee would be delictual.

**7**    2. As to the claims based on the lease and subleases, they are claims provable in bankruptcy. Section 95(1) applies here: debts and liabilities to which the bankrupt becomes subject by reason of an obligation incurred before the date of bankruptcy are deemed to be claims provable in proceedings under the Act. The Bankruptcy Act provides for a comprehensive and expeditious examination and adjudication of these claims: Sections 95 and 96.

**8**    Imbedded in section 49(1) is the principle that claims provable in bankruptcy should be dealt with according to the special procedure outlined in section 95 of the Bankruptcy Act. Therefore, no action should be taken in the ordinary courts and, if an action has been taken prior to bankruptcy, it shall be stayed.

**9**    The Court may, however, grant leave to proceed with an action in the ordinary courts. But this power to grant leave is a discretionary power: see Duncan & Honsberger, Bankruptcy in Canada (1961), p. 365; Houlden & Morawetz, Bankruptcy Law of Canada (1960), p. 117. I am comfortable with De la Durantaye's opinion that leave should be given only if the creditor demonstrates that the issue could be dealt with more advantageously elsewhere and without disadvantage to the administration of the estate: Traité de la faillite (1934), p. 130, no. 197.

**10**    No such demonstration was made here. I cannot see any benefit to the estate if the issue is dealt with elsewhere. On the contrary, I can see disadvantages in leaving the matter to the ordinary courts. A case in the civil division would take years to come up for adjudication. A few months would be sufficient to adjudicate the issue before the Bankruptcy division. It is alleged that the tenants-parties to the contract have waived any rights to have their obligations divided or discussed. It can be expected that the first tenants could, at the end of the civil trial, commence a recursory action against the trustee and the administration of the estate. The final distribution of the assets would unnecessarily be delayed.

**11**    As to the claim against the trustee for damages caused by the agent and the claim based on his occupancy of the premises after the creditors' meeting, it has not to be decided whether it can be a claim provable in bankruptcy or not: if it is, the court should refuse to grant leave under section 49(1) for the reason above; if it is not, the court has no jurisdiction to grant leave under section 49(1).

order". (Wills J., p. 42)

**28**     Section 195(3) of 1932 and the present section 186 have been enacted to provide that protection that the common law denied. Duncan and Reilley, Bankruptcy Law of Canada (1933) seem to have shared that view when they referred to Mittens to explain the then-new section 195(3).

**29**     So much as to the reports and actions of the trustee under his duty to report and take action when an offence is discovered, but section 186 covers a wider area than the original section 195(3): Winnipeg Caravan Sales v. Canadian Credit Men Trust Ass'n., 2 C.B.R. (N.S.) 27. I do not think that section 186 has lost its immunity-granting original effect because its scope is wider than the former section 195(3). I consider that the true meaning of section 186 is to confer to the trustee protection against frivolous and vexatious actions. That protection should not be removed by the courts lightly.

**30**     The courts would indeed remove that protection if the trustee has acted maliciously and with gross negligence. They should also remove the protection if a claimant with a valid claim would be left without remedy. The petitioner here can exercise his rights without leave if he invokes section 19.

**31**     Therefore, the application for leave is dismissed with costs.

JACQUES DUGAS J.

qp/s/nnb

**12**    3. Petitioner has also asked in the petition for leave to be given under section 186. That leave would apply to the claim for damages caused by the agent and the claim for the value of the rent during occupancy of the premises after the creditors' meeting, where it will fall to be decided whether the trustee is personally responsible or responsible as trustee to the estate.

**13**    Here again, I fail to see that there would be any advantage in having the issue taken away from the court specially designated to deal with bankruptcy matters and bankruptcy proceedings. A claim for rent during the occupancy period was conveniently disposed of in the bankruptcy division in re Pierre de Paris Fashions: Leamus Holdings v. Druker, 38 C.B.R. (N.S.) 188, Lévesque J.C.S., where the respective liabilities of the trustee personally and of the trustee ès-qualité was determined.

**14**    If section 186 operated as a bar to any claim against the trustee personally or ès-qualité for claims arising out of facts that took place in the administration of the estate, the court should undoubtedly grant leave to proceed against the estate for damage claimed and the rent claimed. However, it seems that section 19 of the Act provides for the adjudication of these claims without any leave being sought or obtained (a). It also seems to me that section 186 applies only in very limited circumstances (b).

**15**    (a) Section 19 of the Act reads, with my underlining:

> "Where the bankrupt or any of the creditors or any other person is aggrieved by any act or decision of the trustee, he may apply to the court and the court may confirm, reverse or modifiy the act or decision complained of and make such order in the premises as it thinks just. R.S., c. 14, s. 15".

**16**    The claim for damages caused by the agent clearly comes from an "act" of the trustee. The claim for rent also comes from an "act" of the trustee, his retention of the premises. Judgments rendered re Pachal's Beverage Ltd. (1969) 13 C.B.R. (N.S.) 160, re Krezeks Motors Ltd. (1977), 23 C.B.R. (N.S.) 96, are examples where section 19 was invoked for a claim against a debtor aggrieved by an act or decision of the trustee. Where section 19 applies, it has often been decided that no leave is required to act against the trustee under the section: re Lumberking Home & Gdn. Centre Ltd. (1975), 20 C.B.R. (N.S.) 181, affirmed 8 O.R. (2d) 563n (C.A.); re Pelee Motor Inn Ltd. (No. 2) (1979), 30 C.B.R. (N.S.) 216; Bond Sales Ltd. v. McMillan and Dunwoody Ltd. (1980), 36 C.B.R. (N.S.) 187; re Wescan Plastics Ltd.; Lutz Elec. Ltd. v. Hudson Trustee (1981), 40 C.B.R. (N.S.) 170.

**17**    b) Section 186 should be examined in its historical context to understand its scope. It was enacted in 1932, together with the preceding 195(1) and (2) by 22-23, Geo. V, c. 11, a.52. The previous s. 195 had nothing similar to the new section 195(3).

**18**    Section 195(1), as re-enacted in 1932, provided that: "Whenever the court is satisfied upon the representation of the Superintendent..., or of the trustee, or of any creditor... that there is ground to believe that any person has been guilty of an offence under this Act... the court may order that such person be prosecuted for such offence." Section 195(2) cast a duty upon the superintendent and upon the trustee to report such matter to the court. Section 195(3) read:

> "Except by leave of the Court no action shall lie against the Superintendent or any other person with respect to any representation or report made under, or any action taken pursuant to the provisions of this Act."

**19**    The sections were indeed part of Part IX of the Act, titled "Bankruptcy Offences".

**20**    In the present Act, one can find the successor to the above-mentioned 195(1) and 195(2) in

sections 176(1) and (2) respectively. The trustee is presently bound by the subsequent 176(4) "where authorized or directed by the creditors, the inspectors or the court to initate proceedings against any person believed to have committed (such) an offence".

21    In 1932, the original section followed immediately sections containing the words representation and report. It was natural to assume that the permission was only requested for action against the trustee arising out of the representations mentioned in section 195(1) or the report mentioned in section 195(2).

22    De la Durantaye op. cit., seems to have been correct when he wrote, p. 324, no. 533:

> "Rapport au tribunal -- S'il y a lieu de croire qu'un individu est coupable d'une infraction quant aux biens ou aux actes du failli (que cette infraction soit définie par une loi fédérale ou provinciale ou par la loi de faillite), tout intéressé (le superintendant des failites ou son représentant, le syndic, un inspecteur ou un créancier) est admis à rapporter la chose au tribunal, 195(1). Cet intéressé a, pour cette fin, une certaine immunite, c'est-à-dire qu'il ne peut être actionné en responsabilité civile sans la permission du tribunal, à raison des allégations ainsi faites".

23    Is it different today now that section 186 has been placed ten articles away from 176(2) and (3)? I do not think so.

24    The present section 186 is slightly different from its predecessor 195(3). It reads, with my underlining:

> "Except by leave of the court, no action lies against the Superintendent, an official receiver or a trustee with respect to any report made under, or any action taken pursuant to, this Act."

25    I believe that the section applies to the report that the trustee is bound to make by section 176(1) when he has knowledge that an offence has been committed under the Act and to the action he is bound to take under section 176(4) when directed by the creditors or the court to initiate proceedings against the person guilty of having committed an offence.

26    I have no doubt that in the case of a report made by the trustee in execution of the duty cast upon him by section 176(1) or of an action taken following an order of the creditors pursuant to his duty under section 176(4), the present section 186 would operate as the former section 195(3) did operate: it would confer immunity against these reports and actions of the trustee. unless that protection is removed by the court.

27    Prior to 1932, the state of the law appears to have been, as evidenced by the dicta of Field and Wills, JJ. in Mittens v. Foreman (1889) 58 L.J. (Q.B.) 40, pp. 41:

> "There is no authority for the proposition that a trustee in bankruptcy, who prosecuted under an order of the Bankruptcy Court, cannot have an action for malicious prosecution brought against him". (Field J., p. 41)

> "Section 166 of the Bankruptcy Act of 1883 makes the Public Prosecutor prosecute in every case. That does not involve the proposition that persons setting him in motion are not liable in an action of malicious prosecution; otherwise a man would have no remedy. Unless that state of things has been brought about, I have come to the conclusion that there is no foundation for this