HON. JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

ERWIN SINGH BRAICH,

Plaintiff,

v.

STEVE MITTELSTAEDT; KEITH M.
OLSON; THE CITY OF
BELLINGHAM; TYLER LETEY;
SHREE SHARMA; THE STATE OF
WASHINGTON; BRIAN G. McLEAN;
McLEAN & ARMSTRONG; ROBERT
RUSKO; DAVID WOOD; KPMG, INC.;
KPMG LLP; RCMP SARGEANT TIM
ALDER; THE GOVERNMENT OF
CANADA; and JOHN/JANE DOES 1-
10,

Defendants.

No. 2:07-cv-00177-JCC

THIRD STATUS REPORT
REGARDING RELATED
PROCEEDINGS IN THE SUPREME
COURT OF BRITISH COLUMBIA *AND*
RENEWED REQUEST FOR
DISMISSAL

As defendants KPMG Inc., KPMG LLP, Robert Rusko, and David Wood
(collectively, the "KPMG Defendants") previously advised this Court, the Honorable Chief
Justice Brenner of the Supreme Court of British Columbia held a hearing on October 1,
2007 regarding the applicability of Section 215 of the Canadian Bankruptcy and Insolvency
Act ("BIA") to plaintiff Erwin Braich's instant lawsuit against the KPMG Defendants and
defendants Brian McLean and McLean & Armstrong (collectively, the "McLean
Defendants").

THIRD STATUS REPORT REGARDING
RELATED PROCEEDINGS *AND* REQUEST
FOR DISMISSAL
NO. 2:07-cv-00177-JCC – Page 1

1    On November 7, 2007, Chief Justice Brenner issued the Court's Reasons for

2    Judgment arising from that hearing.  A true and correct copy of the Reasons for Judgment is

3    attached hereto as Attachment A.  In his Reasons for Judgment, Chief Justice Brenner

4    carefully analyzed the policy and purpose behind Section 215 of the BIA and determined

5    that "leave [under Section 215] must be obtained from the Canadian bankruptcy court

6    before any action, whether foreign or domestic, is commenced against the [bankruptcy]

7    trustee."  Reasons for Judgment at ¶ 34.   Consequently, with respect to Braich's claims in

8    this action against the KPMG Defendants and the McLean Defendants, Chief Justice

9    Brenner concluded that "Braich cannot advance any claims *including the Washington claim*

10   against any of the Applicants or any other party arising from his bankruptcy without first

11   obtaining leave from this Court as required by the provisions of s. 215 of the BIA."

12   Reasons for Judgment at ¶ 56 (emphasis supplied).

13   The KPMG Defendants submit that pursuant to the analysis contemplated in Note 7

14   of this Court's Order Regarding the KPMG Defendants' and the McLean Defendants'

15   Motions to Dismiss (Dkt. # 57), this Court should respect and give effect to Canadian law,

16   as determined by Chief Justice Brenner of the Supreme Court of British Columbia.

17   Accordingly, as invited by the final sentence of this Court's Order on the KPMG

18   Defendants' and McLean Defendants' motions to dismiss, the KPMG Defendants hereby

19   renew their request that Braich's claims against them be dismissed.[1]

20

21

22

23

24

25

26

---

[1] That final sentence states "Once the Canadian bankruptcy court has ruled on the motion brought by KPMG, Defendants can incorporate that ruling and renew their requests for relief should they choose to do so."  Dkt. # 57 at 13.

THIRD STATUS REPORT REGARDING
RELATED PROCEEDINGS *AND* REQUEST
FOR DISMISSAL
NO. 2:07-cv-00177-JCC – Page 2

YARMUTH WILSDON CALFO PLLC

FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

1

Respectfully submitted, this 8th day of November, 2007.

2

3

YARMUTH WILSDON CALFO PLLC

4

By: /s/ *Harold A. Malkin*
  Harold A. Malkin, WSBA No. 30986

5

  Jeremy E. Roller, WSBA No. 32021
Fourth & Madison

6

925 Fourth Avenue, Suite 2500
Seattle, WA  98104

7

Phone: (206) 516-3800
Fax:    (206) 516-3888

8

Email:  hmalkin@yarmuth.com
   jroller@yarmuth.com

9

Attorneys for KPMG Inc., KPMG LLP, Robert

10

Rusko, and David Wood

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

THIRD STATUS REPORT REGARDING
RELATED PROCEEDINGS *AND* REQUEST
FOR DISMISSAL
NO. 2:07-cv-00177-JCC – Page 3
474.01 hk071504 11/8/07

**YARMUTH WILSDON CALFO PLLC**

FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

# IN THE SUPREME COURT OF BRITISH COLUMBIA

Citation:     ***Braich (Re)***,
              2007 BCSC 1604

Date: 20071107
Docket: 193466VA99
Registry: Vancouver

## IN BANKRUPTCY AND INSOLVENCY

## IN THE MATTER

## OF

## ERWIN SINGH BRAICH

Before: The Honourable Chief Justice Brenner

**Reasons for Judgment**

| | |
|---|---|
| Counsel for Erwin Singh Braich: | G. Holeksa, S. Dhillon, (Assistant to Mr. Braich) |
| Counsel for KPMG, Rusco, Wood: | H. Mickelson,  J. Tweedale |
| Counsel for McLean: | R.G. Ward, S. Fraser |
| Other Appearances: | K. Wellburn |
| Date and Place of Hearing: | October 1, 2007 Vancouver, B.C. |

INTRODUCTION

[1]      Erwin Singh Braich was petitioned into bankruptcy by a creditor on June 28, 1999.  On October 1, 1999, Lowry J (as he then was) ordered that Braich was bankrupt and appointed KPMG Inc. as Trustee of the estate.  KPMG retained Brian McLean as its counsel on November 22, 1999.  Braich has not been discharged from bankruptcy.

[2]      On February 2, 2007, Braich filed suit in the United States District Court, Western District of Washington at Seattle (the "Washington Claim") against KPMG Inc., KPMG LLP, and two KPMG employees Robert Rusko and David Wood, as well as Brian McLean and his firm McLean and Armstrong (the "Applicants").

[3]      Relying on s. 215 of the ***Bankruptcy and Insolvency Act***, R.S.C. 1985, c. B-3 (the "***BIA***") the Applicants apply for a declaration that Braich is required to obtain leave from this Court before bringing any proceedings, including the Washington Claim, against the Applicants, whether in the State of Washington or elsewhere. The Applicants earlier obtained a stay of the Washington claim to allow them to bring this application.

[4]      The Applicants also seek an interlocutory and permanent injunction enjoining Braich from continuing the Washington Claim and enjoining him from commencing any other actions against the Applicants or the servants or agents of either KPMG Inc. or KPMG LLP, including McLean and his law firm in any jurisdiction, without leave from this Court.

SECTION 215

[5]        Section 215 of the **BIA** provides:

> Except by leave of the court, no action lies against the Superintendent, an official receiver, an interim receiver or a trustee with respect to any report made under, or any action taken pursuant to, this Act.

Braich has neither sought nor obtained leave from the bankruptcy court.

[6]        The following s. 215 issues arise:

> 1. Does s. 215 apply to a foreign proceeding such as the Washington Claim?
>
> 2. If so, does it apply to the directors, officers and employees and retained counsel of the Trustee?
>
> 3. If so, should Braich be enjoined from continuing the Washington Claim as well as filing any other actions without first obtaining s. 215 leave from the bankruptcy court?

[7]        The first question is whether the Washington Claim can be characterized as "any action taken pursuant to the Act" as those words are used in s. 215.

[8]        Paragraph 25 of the Washington complaint states:

> Defendant Robert Rusko at all times relevant to this Complaint, was a Chartered Accountant and a Senior Vice-President of KPMG Inc., and at all times relevant herein was acting within the scope and course of his employment as an employee of KPMG Inc., in its role as Trustee of Bankruptcy of Erwin Singh Braich.  Defendant Rusko in his capacity as Senior Vice-President of KPMG Inc., is liable for the acts of KPMG Inc.'s employees, agents, and contractors under the doctrine of respondeat superior or by estoppel, including but not limited to the acts of Defendants McLean and Wood (emphasis added).

Rusko was the senior KPMG insolvency partner assigned to the Braich bankruptcy.

[9]      The complaint on its face is clear: it alleges that Rusko "at all times relevant herein was acting within the scope and course of his employment as an employee of KPMG Inc., in its role as Trustee of the bankruptcy of Erwin Singh Braich".  A parallel complaint is advanced against Wood at paragraph 26.

[10]      Paragraph 27 provides:

> KPMG Inc. is chartered by the Government of Canada through the Office of the Superintendent of Bankruptcy to act as a licensed Bankruptcy Trustee.  At all times relevant to this Complaint, KPMG Inc. had an agency relationship with the Government of Canada, for the purpose of performing its duties within the scope of its Bankruptcy Trustee activities.

[11]      The complaint contains no allegations against Rusko, KPMG or Wood for anything unrelated to KPMG's capacity as Trustee of Braich's estate under the ***BIA***. All of these allegations clearly fall within the ambit of the activities enumerated in s. 215. None of the allegations could be advanced in a domestic action in Canada without s. 215 leave from the bankruptcy court.

[12]      The next question is whether s. 215 is intended to apply to foreign proceedings.

[13]      The purpose of s. 215 of the ***BIA***  is to protect officers of the court including trustees who are charged with administering the ***BIA***  from baseless, frivolous or vexatious lawsuits which would otherwise interfere with the due administration of the bankrupt's estate by the Trustee so that the purposes of the ***BIA*** will not be frustrated.

[14]      The Trustee is an officer of the court.  Protection of the type seen in s. 215 is commonly afforded to such court officers in connection with the performance of their duties, as officers of the court.  In ***Beetown Honey Products Inc. (Re)*** (2004), 67 O.R. (3d) 511 (S. C.J.) at para. 22, aff'd (2004), 3 C.B.R. (5th) 204 (Ont. C.A.), the Court quoted from *Bankruptcy and Insolvency Law of Canada* (Houlden and Morowetz) as follows:

> A trustee in bankruptcy is an officer of the court.  This flows from s. 16(4) [of the ***BIA***] which provides that the trustee shall in relation to and for the purpose of acquiring possession of the property of the bankrupt be in the same position as if he or she were a receiver of the property of the debtor appointed by the court.  A court-appointed receiver is an officer of the court …

[15]      In ***Mancini (Trustee of) v. Falconi*** (1993), 61 O.A.C. 332 (C.A.), the Ontario Court of Appeal articulated the purpose of s. 215 at para. 4 as follows:

> Section [215] applies to actions taken against a trustee for a report made or an action taken pursuant to the ***Bankruptcy Act***.  The purpose of s. [215] is to protect a trustee against frivolous and vexatious actions…

[16]      Similarly, in ***382231 Ontario Ltd. v. Wilanour Resources Ltd.*** (1982), 43 C.B.R. (N.S.) 153 (H.C.J.), the Court noted the purpose of the leave requirement as follows, at p. 155:

> The relevant provisions of the Act must, of course, be read in context and having in mind the purposes of the Act.  Foremost among these is the orderly distribution of the assets of an insolvent debtor rateably among his creditors.  It is obvious that a multiplicity of claims by creditors, asserted all in separate proceedings according to the usual processes of the courts, would be wasteful and burdensome; hence the provision in s. 49 [the automatic stay provision] preventing actions without leave.  Instead, the creditor is ordinarily required to proceed according to the summary provisions of the ***Bankruptcy Act***.

[17]      In **Mancini** the Court quoted with approval from **Virden Credit Union Ltd. v. Dunwoody Ltd.** (1982), 45 CBR (NS) 84 (Man. Q.B.) as follows, at para. 5:

> [In] the cases of bankruptcy, not all creditors will always be in accord with the actions of the trustee.  He is often in the unenviable position of attempting to act carefully and prudently so that the majority of creditors will be protected in the maximum realization of their claims, although not always are his attempts viewed as appropriate by such creditors.  Because of this, the trustee ought not to be subjected to lawsuits which are frivolous or vexatious or which do not disclose a cause of action.

[18]      In **GMAC Commercial Credit Corporation – Canada v. T.C.T. Logistics Inc.,** 2006 SCC 35 the Supreme Court of Canada noted that the gatekeeping purpose of the leave referred to in s. 215 is required in the public interest to ensure that trustees will be able to properly administer the bankrupt's estate. The Court said at para. 58:

> The gatekeeping purpose of the leave requirement, therefore, in light of this duty [of the trustee to protect both the creditors and the public interest in the proper administration of the bankrupt estate] is to prevent the trustee or receiver "from having to respond to actions which are frivolous or vexatious or from claims which do not disclose a cause of action" … so that the bankruptcy process is not made unworkable. On the other hand, it ensures that legitimate claims can be advanced [emphasis added].

[19]      At para. 62 the court in **GMAC** said that s. 215 protection is intended to ensure the "integrity and efficiency of the bankruptcy process". The court also observed at para. 70 that s. 215 gives trustees protection "that Parliament has deemed necessary to preserve the ability of trustees and receivers to discharge their duties flexibly and efficiently".

[20]     The protection the **BIA**  is intended to afford to officers of the court is underscored by the threshold for leave under s. 215.  To obtain leave, a petitioner must demonstrate that the proposed action is not frivolous or vexatious and that the evidence discloses a cause of action: ***Down v. Arthur Andersen Inc***., 2003 BCSC 1286 at para. 6.

[21]     Though this court has described the threshold as "relatively low" (***Down*** at para. 7), it is not sufficient for leave that the pleadings of the proposed action simply disclose a cause of action.   An evidentiary threshold must be satisfied before leave will be granted.  In ***Mancini*** the court said at page 6:

> … on a continuum of evidence ranging from no evidence to evidence
> which is conclusive, the evidence required to support an order under s.
> [215] must be sufficient to establish that there is a factual basis for the
> proposed claim and that the proposed claim discloses a cause of
> action.

[22]     This principle was affirmed by the Supreme Court of Canada in **GMAC** at para. 7 of its judgment.

[23]     But is s. 215 intended to apply outside Canada?

[24]     I earlier referred to the principle at para. 6 in ***Wilanour Resources Ltd***. that  "[t]he relevant provisions of the Act must, of course, be read in context and having in mind the purposes of the Act."

[25]     The other cases to which I have referred show that s. 215 is intended to achieve the following:

a)  to protect a trustee against frivolous and vexatious actions (***Mancini***);

b)  to protect both the creditors and the public interest in the proper administration of a bankrupt estate (***GMAC***);

c)  to ensure that the bankruptcy process is not made unworkable (***GMAC***); and

d)   to preserve the ability of trustees and receivers to discharge their duties flexibly and efficiently (***GMAC***).

[26]      These objectives would be severely constrained if the protection in s. 215 were limited to domestic actions in Canada.

[27]      The ***BIA*** imposes on the trustee a geographic obligation and duty that extends worldwide. Section 17(2) of the ***BIA*** provides:

> For the purpose of obtaining possession of and realizing on the property of the bankrupt, <u>a trustee has power to act as such anywhere</u>. (emphasis added)

[28]      Section 16(3) of the ***BIA*** provides:

> The trustee shall, as soon as possible, take possession of the deeds, books, records and documents and all property of the bankrupt and make an inventory, and for the purpose of making an inventory the trustee is entitled to enter, subject to subsection (3.1), <u>on any premises on which the deeds, books, records, documents or property of the bankrupt may be,</u> even if they are in the possession of an executing officer, a secured creditor or other claimant to them [emphasis added].

[29]      In ***Douglas MacDonald Development Corp. v. Price Waterhouse Coopers,*** [2001] O.J. No. 4846 (S.C.J.) (QL) the Court stated at para. 19 that the ***BIA***:

…imposes on the bankrupt the duty to deliver all his property and all books, records and documents in any way relating thereto … imposes on all other persons the obligation to deliver all property of the bankrupt to the trustee except where that person has a right to the property and forbids anyone from withholding any papers or documents related to the trade dealings of a bankrupt.

[30]     Trustees in Canadian bankruptcy proceedings routinely carry out their duties as officers of the court in foreign jurisdictions. The statute not only empowers such a wide geographic sweep, it imposes such a duty on an appointed Trustee.

[31]     Given that the purpose of s. 215 is to protect a trustee from frivolous and vexatious lawsuits pertaining to actions taken pursuant to the *BIA*, and given that the *BIA* requires the Trustee to perform its duties outside Canada where required, it would be anomalous indeed if a trustee's s. 215 protection were to be confined to actions commenced within Canada.

[32]     The integrity and efficiency of the bankruptcy process requires that a trustee be able to perform its statutory duties as trustee with the protection afforded by s. 215 regardless of where it performs such duties.  If a trustee is required to act in another jurisdiction in order to satisfy its duties under the *BIA*, then rendering the trustee vulnerable to a suit without leave would undermine the integrity and efficiency of the bankruptcy process.  Such a restrictive interpretation would undermine the ability of trustees and receivers to discharge their duties flexibly and efficiently, which s. 215 has been designed to protect (*GMAC*, at para. 70).

[33]     The property of a bankrupt – including the books and records – vest in a trustee wherever they are situate.  Irrespective of the steps that may be necessary to

enlist the aid of foreign courts to in-gather the bankrupt's books and records, the Trustee, in performing its duty in any complex commercial bankruptcy or one involving an individual of apparently significant net worth, will frequently be committed to cross-border conduct.  This is not only the Trustee's duty under the **BIA**, but is necessary for the protection of the estate.  A statute that imposes almost an unlimited obligation to take extra-jurisdictional steps, on the one hand, would not on the other then limit the protection afforded the Trustee in connection with performing such obligations.

[34]     I conclude that in the same manner that the **BIA** casts a duty on a bankruptcy trustee to carry out its duties beyond Canada's borders where necessary, so too does s. 215 confer on a trustee so engaged the statutory protection that leave must be obtained from the Canadian bankruptcy court before any action, whether foreign or domestic, is commenced against the trustee.

DOES S. 215 PROTECTION EXTEND TO OFFICERS, DIRECTORS, EMPLOYEES AND COUNSEL RETAINED BY THE TRUSTEE?

[35]     The object of s. 215 is to ensure that the bankruptcy process is not rendered unworkable by the Trustee being hindered by actual or threatened vexatious lawsuits in connection with the administration of the bankruptcy.

[36]     In Canada many trustees in bankruptcy are corporations.  The **BIA** imposes on bankruptcy trustees many duties, some of which have been described above.  A corporate entity can only discharge its duties through its directors, officers

and employees.  If the scope of s. 215 were limited to protecting only the corporate

trustee in bankruptcy itself, then the trustee's directors, officers and employees who

execute the trustee's obligations under the ***BIA*** could be subjected to vexatious

lawsuits without leave of the bankruptcy court.  Such a result cannot have been the

intention of Parliament when it passed the statute. Such a restriction would

undermine the entire purpose of s. 215 as consistently articulated by the courts.

[37]      This conclusion is also consistent with the Canadian law on the

interpretation of the scope of exclusion or limitation clauses in contracts.  In ***London***

***Drugs Ltd. v. Kuehne & Nagel International Ltd***., [1992] 3 S.C.R. 299, the

Supreme Court of Canada considered the conditions under which a contractual

clause limiting the liability of a company extends its scope to protect a company's

employees (who are neither parties to the contract nor expressly protected by the

language of the limitation clause).  In holding that the limitation clause in question

did provide protection to the defendant company's employees, it was necessary for

the Supreme Court to relax the doctrine of privity.  The Court's reasoning is

instructive when considering the reach of s. 215.

[38]      At para. 245, the Court noted the identity of interest between an employer

and its employees in respect of the performance of an employer's contractual

obligations.  Where a person contracts with an employer, in most cases employees

will have the prime responsibilities relating to the performance of the employer's

contractual obligations.

[39]      In light of such identity of interest, the Court stated at that paragraph that:

> [W]hen an employer and a customer enter into a contract for services and include a clause limiting the liability of the employer for damages arising from what will normally be conduct contemplated by the contracting parties to be performed by the employer's employees, and in fact so performed, there is simply no valid reason for denying the benefit of the clause to employees who perform the contractual obligations. The nature and scope of the limitation of liability clause in such a case coincides essentially with the nature and scope of the contractual obligations performed by the third party beneficiaries (employees).

[40]    In my view that reasoning is apposite here.  It would simply make no sense to limit the benefits of s. 215 to only the corporate trustee.

[41]    Under B.C. law, even where an action lies against a corporate defendant, no action will lie against its officers or directors except insofar as an officer or director has acted to further an interest separate from that of the company itself.

[42]    In *Rafiki Properties Ltd. V. Integrated Housing Development Ltd.* (1999), 45 B.L.R. (2d) 316 (S.C.), the court dismissed a plaintiff's application to add certain principals of the defendant company as defendants in the action.  The court held at para. 17 that a corporate director cannot attract personal liability if he is merely acting within the scope of his authority, as a director:

> I conclude that the basis on which a corporate director may be held personally liable for his actions should not be extended to incorporate the concept of liability resulting from the directors controlling the activities of the corporation.  <u>There is no separate identity or interest of a director who acts on behalf of a corporation</u>… To fix the principals with personal liability there must be an independent cause of action alleged [emphasis added].

[43]     The identity of interest between the KPMG Defendants and the Trustee in respect of the acts complained of in the Washington Claim can be seen from the extracts from the Complaint earlier referred to.

[44]     In respect of Rusko, paragraph 25 alleges that "at all times relevant herein [he] was acting within the scope and course of his employment as an employee of KPMG Inc., in its role as Trustee of the Bankruptcy of Erwin Singh Braich."  In para. 26 a similar allegation is advanced with respect to Wood.

[45]     Of KPMG LLP, it is said in para. 28 to be liable for "the acts of its subsidiaries and its subsidiaries' partners, employees, agents, and contractors (including but not limited to defendants KPMG Inc, McLean, Rusko, and Wood)".

[46]     Since the plaintiff has not alleged any separate identity of interest as between the Trustee, on the one hand, and any of the KPMG Defendants on the other, I conclude that s. 215 applies to the KPMG Defendants, just as it applies to the Trustee itself.

[47]     At para. 23 of the complaint Braich says that Brian McLean: "at all times relevant herein was acting within the scope and course of his employment as the attorney for KPMG Inc., in its role as Trustee in the bankruptcy proceeding of Erwin Singh Braich, and as an attorney and owner of the law firm, McLean and Armstrong." The claim against McLean and Armstrong ("M & A") is contained in para. 24: At all times relevant to this complaint Defendant McLean acted within the scope of his ownership/employment relationship with Defendant M & A.  "At all times

relevant to this complaint Defendant McLean used Defendant M & A as an instrumentality by which to carry out the allegations set forth above and herein as they relate to Plaintiff."  There are no other claims against McLean or his law firm.

[48]      S. 30(1)(e) of the **BIA** empowers a trustee to act through a lawyer-agent by providing that the trustee can employ a lawyer to "take any proceedings or do any business that may be sanctioned by the inspectors." I accept the submission that "the object and purpose of the **BIA** to provide for orderly and fair distribution is furthered when a lawyer acting legitimately in his or her role as agent for a trustee, is given the protection of s. 215. To deprive such a lawyer-agent of the benefit of s. 215 is illogical and will almost certainly lead to instances where the purposes of the Act are thwarted."

[49]      In **R. v. Eldorado Nuclear Ltd.**, [1983] 2 S.C.R. 551 the Supreme Court of Canada, in the context of a grant of statutory immunity to the Crown, described this identity of interest between the Crown and its agents at p. 565-566:

> [A] reference to the Crown in a statute extends to Crown agent.  If this were not the interpretation given to s. 16, the section would have no meaning, since the Crown only acts through servants and agents … When a Crown agent acts within the scope of public purposes it is statutorily empowered to pursue, it is entitled to Crown immunity from the operation of statutes, because it is acting on behalf of the Crown.

[50]      In my view the benefits conferred on a trustee by s. 215 should also be conferred on its lawyer-agent acting within the scope of his duties in representing the trustee. When a lawyer is so acting under the **BIA**, there is an identity of interest between the trustee and its lawyer of the same nature that existed between Kuehne

& Nagel and its employees in **London Drugs** and between the Crown and its agents in **Eldorado**.

[51]     McLean and his law firm are entitled to the protection of s. 215.

INJUNCTIVE RELIEF

[52]     The Applicants seek an injunction to restrain Braich from filing any further actions against them without first obtaining s. 215 leave. They also ask this Court to specifically restrain Braich from pursuing the Washington claim.

[53]     In his affidavit of June 12, 2007 Braich threatens to file suit against numerous individuals. The affidavit contains a lengthy series of allegations against McLean.  Para. 49 contains the threat of a future lawsuit against former KPMG employees Bidulka, Boales as well as Steve Postman who was the former counsel for the petitioning creditor.  At para. 60 Braich refers to future litigation "yet to be launched" against yet two other lawyers, Allan Brown and Shelley Fitzpatrick. At para. 85 he refers again to Fitzpatrick and "another action yet to be filed".  Para. 111 contains reference to acts of libel and slander by KPMG employees, officers and agents and a reference to "lawsuits yet to be filed".

[54]     Braich faced criminal charges related to alleged bankuptcy offences.  He issued numerous witness subpoenas.  On October 2, 2007 I set aside a subpoena issued to Mr. Mickelson on the basis that Braich failed to show that Mickelson had relevant evidence to give and that continuing the subpoena would be an abuse of process.  Additional set aside applications were pending for Mr. McLean and others

when the criminal case was stayed.  These subpoenas would also likely have been set aside had the action not been stayed.

[55]     In his affidavit evidence as well as in his submissions to the Court Braich makes many very serious allegations against many insolvency professionals, members of the bar and others. In the absence of litigation privilege, many of these would no doubt ground defamation claims were the targets of these allegations to be so inclined.

[56]     The question is whether an injunction order should issue at this stage. The Court has been asked to interpret the meaning and reach of s. 215 of the **BIA**. It has done so. It is this Court's opinion that Braich cannot advance any claims including the Washington claim against any of the Applicants or any other party arising from his bankruptcy without first obtaining leave from this Court as required by the provisions of s. 215 of the **BIA**.

[57]     I would defer a decision on granting an injunction order to permit Braich to comply with this Court's ruling or until there is some evidence that he has chosen to ignore it. The Washington Claim has been stayed. In the event Braich attempts to proceed in Washington, these reasons will no doubt be brought to the attention of Judge Coughenour.

[58]     The applications for injunctive relief will be adjourned. I will remain seized with this case. The Applicants are at liberty reset their application before me if they consider it necessary to prevent Braich from commencing any other actions without

s. 215 authority from this Court or in the event that the Washington action stay is

lifted and the Washington Claim proceeds.


            ”D. Brenner, CJSC”

The Honourable Chief Justice Brenner