HON. JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

ERWIN SINGH BRAICH,

Plaintiff,

v.

STEVE MITTELSTAEDT; KEITH M.
OLSON; THE CITY OF
BELLINGHAM; TYLER LETEY;
SHREE SHARMA; THE STATE OF
WASHINGTON; BRIAN G. McLEAN;
McLEAN & ARMSTRONG; ROBERT
RUSKO; DAVID WOOD; KPMG, INC.;
KPMG LLP; RCMP SARGEANT TIM
ALDER; THE GOVERNMENT OF
CANADA; and JOHN/JANE DOES 1-
10,

Defendants.

No. 2:07-cv-00177-JCC

THE KPMG DEFENDANTS'
RENEWED MOTION TO DISMISS

NOTE ON MOTION CALENDAR:
**December 21, 2007**

## I.      INTRODUCTION

On August 7, 2007, this Court issued an order regarding the KPMG Defendants'
Motion to Dismiss.  That order identified two questions to be answered before the Court
could resolve the KPMG Defendants' motion: (1) Whether Section 215 of the Bankruptcy
and Insolvency Act of Canada has "extraterritorial reach" as a matter of Canadian

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

1  substantive law, and (2) Whether, as a matter of comity, this Court should give effect to that

2  Canadian law.

3          The Supreme Court of British Columbia has since definitively answered the first

4  question.  As a matter of Canadian substantive law, the Canadian Bankruptcy and

5  Insolvency Act's prohibition against a bankrupt suing the bankruptcy trustee without leave

6  of court applies extraterritorially; consequently, Plaintiff Erwin Braich's lawsuit against the

7  KPMG Defendants violates Canadian law.

8          This Court must now answer the second question.  As recognized by numerous

9  federal courts, courts in the United States regularly grant comity to Canadian law,

10  particularly in the bankruptcy context.  No interest of the United States favors permitting

11  this lawsuit – by a Canadian citizen against Canadian defendants arising from the

12  defendants' administration of the plaintiff's Canadian bankruptcy estate – to proceed

13  without receiving approval from a Canadian court as required by Canadian law.

14          Because Canadian law requires that a bankrupt receive court approval before suing

15  the trustee of his bankrupt estate (approval the bankrupt plaintiff here has neither obtained

16  nor sought) and because this Court should give effect to that law, Braich's claims against

17  the KPMG Defendants should be dismissed.

## II.      BACKGROUND

19          The facts and procedural history of this case have been set forth in detail in prior

20  briefs and court orders.  *See* August 7, 2007 Order (the "Motion to Dismiss Order") (Dkt.

21  # 57); KPMG Defendants' Motion to Dismiss (Dkt. # 13); Reply in Support of the KPMG

22  Defendants' Motion to Dismiss (Dkt. # 23).  Defendants KPMG Inc., KPMG LLP, Robert

23  Rusko, and David Wood (collectively, the "KPMG Defendants") will not burden the Court

24  with a complete recitation of those facts, but rather will set forth here the essential facts and

25  procedural history necessary for resolution of this motion.

26

THE KPMG DEFENDANTS' RENEWED
MOTION TO DISMISS
NO. 2:07-cv-00177-JCC – Page 2

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

**A.    Braich's Lawsuit.**

Plaintiff Erwin Braich ("Braich") is suing an array of defendants for alleged violation of the United States Constitution, violation of federal and state law, and various common law torts.  The gist of Braich's Complaint is that the defendants have engaged in a vast, cross-border conspiracy to deprive him of rights and property.  The primary manifestation of that vast conspiracy was an allegedly unconstitutional search and seizure of Braich's property in a hotel room in Bellingham, Washington, which Braich inhabited sporadically.

**B.    Braich's Canadian Bankruptcy Proceedings.**

Since 1999, Braich has been in involuntary bankruptcy proceedings in Canada. Declaration of Robert Rusko ("Rusko Decl.") (Dkt. # 13-5) ¶ 3.  That same year KPMG Inc., a Canadian corporation, was appointed trustee of Braich's bankruptcy estate.  *Id.* ¶ 3 & Ex. A.  Defendant KPMG LLP is a limited liability partnership that owns KPMG Inc.  *Id.* ¶ 2.  Defendant Robert Rusko was an officer of KPMG Inc. during the time relevant to Braich's allegations, and remains an officer of KPMG Inc. today.  *Id.* ¶ 3.  Defendant David Wood was an employee of KPMG during the time relevant to Braich's allegations.  *Id.* Braich alleges that all of the KPMG Defendants' alleged wrongdoing occurred in furtherance of KPMG Inc.'s role as trustee for Braich's bankrupt estate.  *See* Complaint (Dkt. # 1) ¶¶ 25-28.

**C.    Braich's Failure to Comply with Section 215 of the Canadian Bankruptcy and Insolvency Act.**

On April 19, 2007, the KPMG Defendants moved to dismiss Braich's claims against them.  That motion was based on Braich's failure to seek leave of the court presiding over his Canadian bankruptcy proceedings to bring these claims against the trustee in bankruptcy, KPMG Inc., and its officers, employees (current and former), and owner, KPMG LLP, as required by Canadian law.  *See* KPMG Defendants' Motion to Dismiss; *see*

THE KPMG DEFENDANTS' RENEWED
MOTION TO DISMISS
NO. 2:07-cv-00177-JCC – Page 3

YARMUTH WILSDON CALFO PLLC

FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

*also* Rusko Decl. ¶ 10.  That Canadian law, Section 215 of the Canadian Bankruptcy and

Insolvency Act ("BIA"), provides as follows:

> **No action against Superintendent, etc., without leave of court** – Except by
> leave of the court, no action lies against the Superintendent, an official
> receiver, an interim receiver or a <u>trustee</u> with respect to any report made
> under, or <u>any action taken pursuant to</u>, this Act.

BIA § 215, R.S.C. 1985, c. B-3 (emphases added) (attached as Exhibit D to the Declaration

of Douglas Knowles ("Knowles Decl.") (Dkt. # 13-2)).

**D.      The Court's Original Motion to Dismiss Order.**

Although this Court declined to find that Braich's failure to abide by Section 215 of

the Canadian BIA deprived the Court of subject matter jurisdiction, the Court did not

resolve whether it would apply Section 215 and "dismiss the suit as a discretionary matter."

Motion to Dismiss Order at 7.  The Court explained:

> Whether the Court will employ section 215 as a matter of discretion depends
> on the presence of two preconditions that are commonly analyzed as
> "jurisdictional."  First, section 215 must be determined to have
> extraterritorial reach, as a matter of Canadian substantive law.  *Hartford Fire
> Ins. Co.*, 509 U.S. at 813 (Scalia, J., dissenting).  This is a jurisdictional
> question insofar as it implicates "legislative jurisdiction," otherwise known
> as "jurisdiction to prescribe."  *Id.*  The parties do not parse out this question,
> but the Court finds that its resolution is a necessary precursor to determining
> whether this provision of Canadian law can, and should, bar this action
> brought pursuant to the protections of American law.  The second
> precondition to dismissal is that this tribunal must decide to defer to the
> Canadian court's desire to apply section 215 extraterritorially, on the basis of
> international comity.

*Id.*

As recognized by this Court, prior to issuance of the Court's Motion to Dismiss

Order, the KPMG Defendants had "already set in motion a proceeding by which this Court

may benefit from the superior expertise of the Canadian bankruptcy court" in resolving the

first question – namely, whether Section 215 of the BIA has extraterritorial reach.  *Id.* at 9.

On May 11, 2007, the KPMG Defendants filed a motion in the Matter of the Bankruptcy of

Erwin Singh Braich, No. 193466VA99, pending before the Supreme Court of British

Columbia in Bankruptcy.  *See* Reply Declaration of Jeremy Roller in Support of the KPMG

THE KPMG DEFENDANTS' RENEWED
MOTION TO DISMISS
NO. 2:07-cv-00177-JCC – Page 4

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

Defendants' Motion to Dismiss ("Roller Decl.") (Dkt. # 25) ¶ 2.  By that motion the KPMG Defendants sought, *inter alia*, a declaration that Braich is required to obtain leave of the Supreme Court of British Columbia in Bankruptcy before suing them.  As this Court observed, "[i]n deciding whether KPMG is entitled to a declaration that section 215 requires Plaintiff to obtain leave of the Supreme Court of British Columbia before suing KPMG in the United States, the Canadian court will have to determine whether section 215 is intended to apply beyond Canadian borders, and if so, whether the present case is an appropriate case in which to apply it."  Motion to Dismiss Order at 9.

The Supreme Court of British Columbia conclusively resolved those issues on November 7, 2007.

**E.     Supreme Court of British Columbia Determines that BIA Section 215 Applies Extraterritorially.**

On October 1, 2007, the Honorable Chief Justice Brenner of the Supreme Court of British Columbia held a hearing regarding the applicability of Section 215 of the BIA to Braich's instant lawsuit against the KPMG Defendants and defendants Brian McLean and McLean & Armstrong, LLP (collectively, the "McLean Defendants").  Chief Justice Brenner issued the Court's Reasons for Judgment on November 7, 2007.  A true and correct copy of the Reasons for Judgment is attached hereto as Appendix A.

In his reasons for Judgment, Chief Justice Brenner carefully analyzed the policy and purpose behind Section 215 of the BIA.  The Canadian Court first considered whether the allegations set forth in Braich's complaint relate to "any action taken pursuant to the Act" for purposes of Section 215.  *See* Reasons for Judgment ¶ 7.  Concluding that the allegations in Braich's complaint "clearly fall within the ambit of the activities enumerated in s. 215," *id.* ¶ 11, the Canadian Court then turned to the central question posed by this Court – "whether s. 215 is intended to apply to foreign proceedings."  *Id.* ¶ 12.  The Canadian Court engaged in a lengthy analysis of applicable Canadian law and concluded that Section 215 is intended to apply extraterritorially:

THE KPMG DEFENDANTS' RENEWED
MOTION TO DISMISS
NO. 2:07-cv-00177-JCC – Page 5

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

1

2          Trustees in Canadian bankruptcy proceedings routinely carry out their duties
           as officers of the court in foreign jurisdictions.  The statute not only
3          empowers such a wide geographic sweep, it imposes such a duty on an
           appointed Trustee.

4          Given that the purpose of s. 215 is to protect a trustee from frivolous and
           vexatious lawsuits pertaining to actions taken pursuant to the BIA, and given
5          that the BIA requires the Trustee to perform its duties outside Canada where
           required, it would be anomalous indeed if a trustee's s. 215 protection were
6          to be confined to actions commenced within Canada.

7          The integrity and efficiency of the bankruptcy process requires that a trustee
           be able to perform its statutory duties as trustee with the protection afforded
8          by s. 215 regardless of where it performs such duties.  If a trustee is required
           to act in another jurisdiction in order to satisfy its duties under the BIA, then
9          rendering the trustee vulnerable to a suit without leave would undermine the
           integrity and efficiency of the bankruptcy process.  Such a restrictive
10         interpretation would undermine the ability of trustees and receivers to
           discharge their duties flexibly and efficiently, which s. 215 has been designed
11         to protect . . . .

12         The property of a bankrupt – including the books and records – vest in a
           trustee wherever they are situate.  Irrespective of the steps that may be
13         necessary to enlist the aid of foreign courts to in-gather the bankrupt's books
           and records, the Trustee, in performing its duty in any complex commercial
14         bankruptcy or one involving an individual of apparently significant net
           worth, will frequently be committed to cross-border conduct.  This is not
15         only the Trustee's duty under the BIA, but is necessary for the protection of
           the estate.  A statute that imposes almost an unlimited obligation to take
16         extra-jurisdictional steps, on one hand, would not on the other then limit the
           protection afforded the Trustee in connection with performing such
17         obligations.

18         I conclude that in the same manner that the BIA casts a duty on the
           bankruptcy trustee to carry out its duties beyond Canada's borders where
19         necessary, so too does s. 215 confer on a trustee so engaged the statutory
           protection that **leave must be obtained from the Canadian bankruptcy**
20         **court before any action, whether foreign or domestic, is commenced**
           **against the trustee.**
21
     Reasons for Judgment ¶¶ 30-34 (internal citation omitted) (emphases added).
22
           The Court then considered which defendants were protected by Section 215, and
23
     determined that in addition to protecting the trustee, KPMG Inc., Canadian law requires that
24
     Braich obtain leave of Court to bring this action against KPMG's owner, employees, and
25
     agents, including KPMG LLP, Robert Rusko, David Wood, and the McLean Defendants.
26
     *Id.* ¶¶ 46, 51.

THE KPMG DEFENDANTS' RENEWED
MOTION TO DISMISS
NO. 2:07-cv-00177-JCC – Page 6

1   Chief Justice Brenner concluded with an unequivocal statement of Canadian law as

2   to this matter – "Braich cannot advance any claims including the Washington claim against

3   any of the Applicants or any other party arising from his bankruptcy without first obtaining

4   leave from this Court as required by the provisions of s. 215 of the BIA." *Id.* ¶ 56

5   (emphasis added).

6                               **III.    ARGUMENT**

7          The Supreme Court of British Columbia having definitively resolved that Section

8   215 of the Canadian Bankruptcy and Insolvency Act applies extraterritorially and that

9   "Braich cannot advance any claims including the Washington claim" against the KPMG

10  Defendants and McLean Defendants without obtaining leave of court as required by that

11  law, the sole question for this Court to determine is whether it should give effect to this

12  Canadian law.

13         The KPMG Defendants respectfully submit that this Court's analysis in footnote

14  seven of the Motion to Dismiss Order is correct and should be followed in resolving this

15  motion.  There the Court stated that "[s]hould the Canadian court determine that section 215

16  is intended to apply to this action [which it now has], it will be difficult for Plaintiff to

17  persuade the Court that it should not defer to the Canadian law."  Motion to Dismiss Order

18  at 12 n.7.  Although comity is a discretionary principle, there is simply no reason that this

19  Court should not give effect to Canadian law here.  Indeed, every factor this Court should

20  consider favors recognition of BIA Section 215.

21         "Comity is the 'recognition which one nation allows within its territory to the

22  legislative, executive, or judicial acts of another nation, having due regard both to

23  international duty and convenience, and to the rights of its own citizens or of other persons

24  who are under the protection of its laws.'"  *Petition of Davis*, 191 B.R. 577, 586 (Bankr.

25  S.D.N.Y. 1996) (quoting *Hilton v. Guyot*, 159 U.S. 113 (1895)).

26         [U]nder general principles of comity as well as the specific provisions of [the
           United States Bankruptcy Code] federal courts will recognize foreign

THE KPMG DEFENDANTS' RENEWED
MOTION TO DISMISS
NO. 2:07-cv-00177-JCC – Page 7

bankruptcy proceedings provided the foreign laws comport with due process
and fairly treat the claims of local creditors.

*Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 714 (2d Cir. 1987). "[A]s

long as the foreign court abides by 'fundamental standards of procedural fairness', granting

comity is appropriate." *Allstate Life Ins. Co. v. Linter Group Ltd.*, 994 F.2d 996, 999 (2d

Cir. 1993) (quoting *Cunard S.S. Co., Ltd. v. Salen Reefer Servs. A.B.*, 773 F.2d 452, 457-58

(2d Cir. 1985)). Courts have long recognized that Canadian bankruptcy law meets this

standard. *Petition of Davis*, 191 B.R. at 587. United States courts "uniformly grant comity

to Canadian proceedings." *Id.* (citing *Canada Southern R. Co. v. Gebhard*, 109 U.S. 527,

539-40 (1893); *Cornfield v. Investors Overseas Servs., Ltd.*, 471 F. Supp. 1255, 1260-62

(S.D.N.Y.), *aff'd*, 614 F.2d 1286 (2d Cir. 1979); *Caddel v. Clariton Corp.*, 105 B.R. 366

(N.D. Tex. 1989)). It is particularly important to "accord comity to a foreign insolvency

proceeding . . . to enable 'the assets of a debtor to be disbursed in an equitable, orderly, and

systematic manner, rather than in a haphazard, erratic or piecemeal fashion.'" *Id.* at 586

(quoting *Cunard S.S. Co., Ltd. v. Salen Reefer Servs. A.B.*, 773 F.2d 452, 457-58 (2d Cir.

1985)); *see also Allstate Life Ins. Co.*, 994 F.2d at 999 ("comity is particularly appropriate

where . . . the court is confronted with foreign bankruptcy proceedings").

The *Petition of Davis* case is particularly instructive.[1] In that case, a creditor of two

Canadian bankrupts sued in United States District Court both the bankrupts and the

bankrupts' trustee. *Id.* at 581. The creditor alleged that, in the context of the bankrupts'

Canadian bankruptcy proceedings, the trustee and the bankrupts "participated in an

intricate, continuing scheme to defraud" the creditor. *Id.* Invoking Section 215 of the BIA,

---

[1] Numerous other courts have recognized the need to give effect to foreign bankruptcy law and proceedings in contexts similar to this. *See, e.g., Clarkson Co., Ltd. v. Shaheen*, 544 F.2d 624 (2d Cir. 1976); *Daniels v. Powell*, 604 F. Supp. 689 (N.D. Ill. 1985); *Elgin Sweeper Co. v. Melson Inc.*, 884 F. Supp. 641 (N.D.N.Y. 1995); *Cornfield v. Investors Overseas Servs., Ltd.*, 471 F. Supp. 1255 (S.D.N.Y.), *aff'd*, 614 F.2d 1286 (2d Cir. 1979); *Fleeger v. Clarkson Co. Ltd.*, 86 F.R.D. 388 (N.D. Tex. 1980). These and other authorities are discussed in briefs filed by the McLean Defendants, and the KPMG Defendants will not repeat that persuasive analysis here. *See* McLean Defendants' Motion to Dismiss (Dkt. # 16) at 8-10; McLean Defendants' Reply in Support of Motion to Dismiss (Dkt. # 30) at 2-4.

THE KPMG DEFENDANTS' RENEWED
MOTION TO DISMISS
NO. 2:07-cv-00177-JCC – Page 8

1    the trustee moved to dismiss the creditor's action.  *Id.*  Likely recognizing the futility of

2    asserting a claim in plain violation of BIA Section 215, the creditor voluntarily dismissed

3    his action.  *Id.*  The creditor did, however, articulate an intention to sue the trustee for

4    claims arising prior to his appointment as trustee in the Canadian bankruptcy proceedings.

5    *Id*.  The trustee then sued in United States Bankruptcy Court for an injunction enjoining the

6    creditor from pursuing in the United States any suits against him or the bankrupts and

7    requiring that the creditor pursue any claims in Canadian courts.  *Id.* at 582.

8         The *Petition of Davis* Court granted the trustee's petition and enjoined the creditor

9    from suing the trustee in the United States.  The court observed:

10        [T]he scope of the protection afforded petitioner under BIA § 215 is likely to
          be an issue in any litigation brought by Glorioso [the creditor] against
11        Petitioner.  The Canadian Court is best able to determine the extent to which
          Petitioner's actions will be immunized by BIA § 215 and to balance
12        Glorioso's rights against the impact of their exercise on the debtors' estates
          and other creditors.  That is another reason to enjoin litigation in the United
13        States against Petitioner.

14   *Id.* at 585.  The court also recognized the "disruptive effect that litigation is likely to have

15   on the administration of [the bankrupts'] estates."  *Id.*

16        The *Petition of Davis* Court <u>permanently</u> enjoined a creditor's <u>prospective</u> suit

17   against the trustee, even when the creditor's prospective lawsuit would have been limited to

18   claims arising from actions <u>pre-dating</u> the trustee's appointment in the Canadian bankruptcy

19   proceedings.  *Id.* at 587.  The relief sought by the KPMG Defendants here is far less severe,

20   yet arises from Braich's more egregiously improper conduct.  Dismissal is particularly

21   appropriate here given Braich's duplicitous, improper litigation tactics.  Braich's claims

22   against the KPMG Defendants arise, by his own admission, from alleged actions

23   undertaken in furtherance of KPMG Inc.'s duties to administer Braich's bankruptcy estate.

24   *See* Complaint ¶¶ 25-27; *see also* ¶¶ 113-16, 143 (alleging the KPMG Defendants' actions

25   in connection with KPMG Inc.'s duties as administrator of Braich's bankruptcy estate).

26   Indeed, Chief Justice Brenner of the Supreme Court of British Columbia has confirmed this

THE KPMG DEFENDANTS' RENEWED
MOTION TO DISMISS
NO. 2:07-cv-00177-JCC – Page 9

**YARMUTH WILSDON CALFO PLLC**
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

1    characterization of Braich's claims under Canadian law.  *See* Reasons for Judgment ¶ 11

2    ("All of [Braich's] allegations clearly fall within the ambit of the activities enumerated in s.

3    215.").

4         In all of its (and its agents') actions with respect to Braich's bankruptcy proceeding,

5    KPMG Inc. acted as an officer of the Supreme Court of British Columbia.  *Beetown Honey*

6    *Prods. Inc. (Re)*, [2003] O.J. No. 3852 (S.C.J.), *aff'd* [2004] O.J. No. 4329 (C.A.) (attached

7    as Exhibit B to Knowles Decl.).  Those actions were specifically authorized by the Supreme

8    Court of British Columbia.  *See* Rusko Decl. ¶¶ 3-9 & Exs. A-B, E; *cf.* Reasons for

9    Judgment ¶ 30 ("Trustees in Canadian bankruptcy proceedings routinely carry out their

10   duties as officers of the court in foreign jurisdictions.  The statute not only empowers such a

11   wide geographic sweep, it imposes such a duty on an appointed Trustee.").  If Braich

12   believed those orders were granted improvidently or carried out improperly, his redress lay

13   with appeal in Canada.  But Braich did not appeal.  Rusko Decl. ¶ 9.  Instead, he simply

14   refused to participate meaningfully in the bankruptcy proceedings.  *Id.* ¶¶ 4-5, 7-8.  Neither

15   did Braich seek leave under Section 215.  No United States interest favors permitting

16   Braich to disregard Canadian law or procedure.

17        As this Court noted, Section 215 does not operate as a complete bar to Braich's

18   claims against the KPMG Defendants.  Rather, Braich "would simply have to seek leave to

19   proceed with the action."  Motion to Dismiss Order at 12 n.7.  The purpose of Section 215

20   is "to protect a trustee against frivolous and vexatious actions."  Reasons for Judgment ¶ 15

21   (citing *Mancini (Trustee of) v. Falconi* (1993), 61 O.A.C. 332 (C.A.)).  The gatekeeping

22   function of the Canadian court to which a Section 215 application is made "is intended to

23   ensure 'the integrity and efficiency of the bankruptcy process.'"  *Id.* ¶ 18 (quoting *GMAC*

24   *Commercial Credit Corp. – Canada v. T.C.T. Logistics Inc.*, 2006 SCC 35).  As this Court

25   observed "[i]t is difficult to imagine an American interest that might be advanced in favor

26   of a frivolous lawsuit."  Motion to Dismiss Order at 12 n.7.  Similarly, there is no American

THE KPMG DEFENDANTS' RENEWED
MOTION TO DISMISS
NO. 2:07-cv-00177-JCC – Page 10

YARMUTH WILSON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

1    interest that might be advanced in short-circuiting a requirement "intended to ensure 'the

2    integrity and efficiency of the [Canadian] bankruptcy process,'" particularly when the

3    plaintiff is Canadian citizen who is suing the Canadian trustee of his bankrupt estate.

4    "Because of its familiarity with the course of the bankruptcy proceedings, the Canadian

5    court is better equipped . . . to make the determination set out in section 215."[2]  Motion to

6    Dismiss Order at 12 n.7.

7          Granting comity to BIA Section 215 is particularly appropriate because Canada is a

8    sister common law jurisdiction whose legal system bears striking similarities to that of the

9    United States.  *See YWCA v. Allstate Ins. Co.*, 275 F.3d 1145, 1155 (D.C. Cir. 2002); *see*

10   *also Fleeger v. Clarkson Co. Ltd.*, 86 F.R.D. 388, 393 (N.D. Tex. 1980) ("Certainly, if this

11   Court cannot extend comity to Canada, the comity principle has little vitality in our

12   jurisprudence.  Indeed, the Court is aware of no case in which an American court has

13   refused to defer to Canada.").

14         That the comity principle strongly favors this Court giving effect to Canadian law is

15   made crystal clear by the fact that United States law has the same requirements as the

16   Canadian law the KPMG Defendants ask this Court to recognize.  For over a century

17   United States courts have held that leave of the court presiding over a bankruptcy must be

18   obtained before suing the bankruptcy trustee for actions arising from the trustee's

19   bankruptcy duties.  *See Barton v. Barbour*, 104 U.S. (Otto) 126, 136-37 (1881); *Leonard v.*

20   *Vrooman*, 383 F.2d 556, 560 (9th Cir. 1967); *In re Jacksen*, 105 B.R. 542, 544-45 (B.A.P.

21   9th Cir. 1989).  Because the KPMG Defendants are asking this Court to enforce a Canadian

22

23   [2] The KPMG Defendants contend that even if Braich seeks leave to sue from the Canadian court as required by Section 215, his request should be denied.  The KPMG Defendants vigorously deny Braich's allegations. Indeed, evidence submitted by other defendants/alleged co-conspirators demonstrates that there is no truth whatsoever to Braich's Complaint.  *See, e.g.*, Affidavit of Tyler Letey (Dkt. # 78) ¶ 9 (Washington State Department of Financial Institutions never provided the KPMG Defendants copies of documents from the Bellingham hotel room prior to this lawsuit nor did Letey ever speak to the KPMG Defendants or their attorney, defendant McLean, until *after* the Department of Financial Institutions had entered Braich's hotel room and reviewed and removed various of Braich's documents pursuant to a subpoena).  This issue, however, is not before this Court.

24

25

26

THE KPMG DEFENDANTS' RENEWED
MOTION TO DISMISS
NO. 2:07-cv-00177-JCC – Page 11

**YARMUTH WILSDON CALFO PLLC**
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

1  law that is not only consistent with, but substantively identical to, United States law, the

2  comity principle strongly favors recognition of Chief Justice Brenner's interpretation of

3  Section 215 of the BIA and, accordingly, dismissal of this action vis-à-vis the KPMG

4  Defendants.

5                    **IV.    CONCLUSION**

6         The Chief Justice of the Supreme Court of British Columbia has determined that

7  Braich's maintenance of this lawsuit against the KPMG Defendants, without first having

8  sought and obtained leave of court as required by Section 215 of the BIA, violates Canadian

9  law that is meant to apply extraterritorially.  For all of the foregoing reasons, this Court

10  should give effect to that Canadian law and grant the KPMG Defendants' motion to

11  dismiss.

12

13         Respectfully submitted, this 29th day of November, 2007.

14

15                              YARMUTH WILSDON CALFO PLLC

16                              By: /s/ *Jeremy E. Roller*
                                   Harold A. Malkin, WSBA No. 30986
17                                 Jeremy E. Roller, WSBA No. 32021
                                Fourth & Madison
18                              925 Fourth Avenue, Suite 2500
                                Seattle, WA  98104
19                              Phone: (206) 516-3800
                                Fax:    (206) 516-3888
20                              Email:  hmalkin@yarmuth.com
                                        jroller@yarmuth.com
21
                                Attorneys for KPMG Inc., KPMG LLP, Robert
22                              Rusko, and David Wood

23

24

25

26

THE KPMG DEFENDANTS' RENEWED
MOTION TO DISMISS
NO. 2:07-cv-00177-JCC – Page 12

HAM hk282201
474.01 hk282201 11/29/07

# Appendix A

# IN THE SUPREME COURT OF BRITISH COLUMBIA

Citation:     **_Braich (Re)_**,
              2007 BCSC 1604

Date: 20071107
Docket: 193466VA99
Registry: Vancouver

## IN BANKRUPTCY AND INSOLVENCY

## IN THE MATTER

## OF

## ERWIN SINGH BRAICH

Before: The Honourable Chief Justice Brenner

**Reasons for Judgment**

| | |
|---|---|
| Counsel for Erwin Singh Braich: | G. Holeksa, |
| | S. Dhillon, (Assistant to Mr. Braich) |
| Counsel for KPMG, Rusco, Wood: | H. Mickelson,  J. Tweedale |
| Counsel for McLean: | R.G. Ward, S. Fraser |
| Other Appearances: | K. Wellburn |
| Date and Place of Hearing: | October 1, 2007 |
| | Vancouver, B.C. |

INTRODUCTION

[1]        Erwin Singh Braich was petitioned into bankruptcy by a creditor on June 28, 1999.  On October 1, 1999, Lowry J (as he then was) ordered that Braich was bankrupt and appointed KPMG Inc. as Trustee of the estate.  KPMG retained Brian McLean as its counsel on November 22, 1999.  Braich has not been discharged from bankruptcy.

[2]        On February 2, 2007, Braich filed suit in the United States District Court, Western District of Washington at Seattle (the "Washington Claim") against KPMG Inc., KPMG LLP, and two KPMG employees Robert Rusko and David Wood, as well as Brian McLean and his firm McLean and Armstrong (the "Applicants").

[3]        Relying on s. 215 of the ***Bankruptcy and Insolvency Act***, R.S.C. 1985, c. B-3 (the "***BIA***") the Applicants apply for a declaration that Braich is required to obtain leave from this Court before bringing any proceedings, including the Washington Claim, against the Applicants, whether in the State of Washington or elsewhere. The Applicants earlier obtained a stay of the Washington claim to allow them to bring this application.

[4]        The Applicants also seek an interlocutory and permanent injunction enjoining Braich from continuing the Washington Claim and enjoining him from commencing any other actions against the Applicants or the servants or agents of either KPMG Inc. or KPMG LLP, including McLean and his law firm in any jurisdiction, without leave from this Court.

SECTION 215

[5]        Section 215 of the **BIA** provides:

> Except by leave of the court, no action lies against the Superintendent,
> an official receiver, an interim receiver or a trustee with respect to any
> report made under, or any action taken pursuant to, this Act.

Braich has neither sought nor obtained leave from the bankruptcy court.

[6]        The following s. 215 issues arise:

> 1. Does s. 215 apply to a foreign proceeding such as the Washington
> Claim?
>
> 2. If so, does it apply to the directors, officers and employees and
> retained counsel of the Trustee?
>
> 3. If so, should Braich be enjoined from continuing the Washington
> Claim as well as filing any other actions without first obtaining s. 215
> leave from the bankruptcy court?

[7]        The first question is whether the Washington Claim can be characterized

as "any action taken pursuant to the Act" as those words are used in s. 215.

[8]        Paragraph 25 of the Washington complaint states:

> Defendant Robert Rusko at all times relevant to this Complaint, was a
> Chartered Accountant and a Senior Vice-President of KPMG Inc., <u>and
> at all times relevant herein was acting within the scope and course of
> his employment as an employee of KPMG Inc., in its role as Trustee of
> Bankruptcy of Erwin Singh Braich</u>.  Defendant Rusko in his capacity as
> Senior Vice-President of KPMG Inc., is liable for the acts of KPMG
> Inc.'s employees, agents, and contractors under the doctrine of
> respondeat superior or by estoppel, including but not limited to the acts
> of Defendants McLean and Wood (emphasis added).

Rusko was the senior KPMG insolvency partner assigned to the Braich bankruptcy.

[9]      The complaint on its face is clear: it alleges that Rusko "at all times relevant herein was acting within the scope and course of his employment as an employee of KPMG Inc., in its role as Trustee of the bankruptcy of Erwin Singh Braich".  A parallel complaint is advanced against Wood at paragraph 26.

[10]      Paragraph 27 provides:

> KPMG Inc. is chartered by the Government of Canada through the Office of the Superintendent of Bankruptcy to act as a licensed Bankruptcy Trustee.  At all times relevant to this Complaint, KPMG Inc. had an agency relationship with the Government of Canada, for the purpose of performing its duties within the scope of its Bankruptcy Trustee activities.

[11]      The complaint contains no allegations against Rusko, KPMG or Wood for anything unrelated to KPMG's capacity as Trustee of Braich's estate under the ***BIA***. All of these allegations clearly fall within the ambit of the activities enumerated in s. 215. None of the allegations could be advanced in a domestic action in Canada without s. 215 leave from the bankruptcy court.

[12]      The next question is whether s. 215 is intended to apply to foreign proceedings.

[13]      The purpose of s. 215 of the ***BIA***  is to protect officers of the court including trustees who are charged with administering the ***BIA***  from baseless, frivolous or vexatious lawsuits which would otherwise interfere with the due administration of the bankrupt's estate by the Trustee so that the purposes of the ***BIA*** will not be frustrated.

[14]     The Trustee is an officer of the court.  Protection of the type seen in s. 215 is commonly afforded to such court officers in connection with the performance of their duties, as officers of the court.  In ***Beetown Honey Products Inc. (Re)*** (2004), 67 O.R. (3d) 511 (S. C.J.) at para. 22, aff'd (2004), 3 C.B.R. (5th) 204 (Ont. C.A.), the Court quoted from *Bankruptcy and Insolvency Law of Canada* (Houlden and Morowetz) as follows:

> A trustee in bankruptcy is an officer of the court.  This flows from s. 16(4) [of the ***BIA***] which provides that the trustee shall in relation to and for the purpose of acquiring possession of the property of the bankrupt be in the same position as if he or she were a receiver of the property of the debtor appointed by the court.  A court-appointed receiver is an officer of the court …

[15]     In ***Mancini (Trustee of) v. Falconi*** (1993), 61 O.A.C. 332 (C.A.), the Ontario Court of Appeal articulated the purpose of s. 215 at para. 4 as follows:

> Section [215] applies to actions taken against a trustee for a report made or an action taken pursuant to the ***Bankruptcy Act***.  The purpose of s. [215] is to protect a trustee against frivolous and vexatious actions…

[16]     Similarly, in ***382231 Ontario Ltd. v. Wilanour Resources Ltd.*** (1982), 43 C.B.R. (N.S.) 153 (H.C.J.), the Court noted the purpose of the leave requirement as follows, at p. 155:

> The relevant provisions of the Act must, of course, be read in context and having in mind the purposes of the Act.  Foremost among these is the orderly distribution of the assets of an insolvent debtor rateably among his creditors.  It is obvious that a multiplicity of claims by creditors, asserted all in separate proceedings according to the usual processes of the courts, would be wasteful and burdensome; hence the provision in s. 49 [the automatic stay provision] preventing actions without leave.  Instead, the creditor is ordinarily required to proceed according to the summary provisions of the ***Bankruptcy Act***.

[17]        In ***Mancini*** the Court quoted with approval from ***Virden Credit Union Ltd.***

***v. Dunwoody Ltd.*** (1982), 45 CBR (NS) 84 (Man. Q.B.) as follows, at para. 5:

> [In] the cases of bankruptcy, not all creditors will always be in accord
> with the actions of the trustee.  He is often in the unenviable position of
> attempting to act carefully and prudently so that the majority of
> creditors will be protected in the maximum realization of their claims,
> although not always are his attempts viewed as appropriate by such
> creditors.  Because of this, the trustee ought not to be subjected to
> lawsuits which are frivolous or vexatious or which do not disclose a
> cause of action.

[18]        In ***GMAC Commercial Credit Corporation – Canada v. T.C.T. Logistics***

***Inc.***, 2006 SCC 35 the Supreme Court of Canada noted that the gatekeeping

purpose of the leave referred to in s. 215 is required in the public interest to ensure

that trustees will be able to properly administer the bankrupt's estate. The Court said

at para. 58:

> The gatekeeping purpose of the leave requirement, therefore, in light
> of this duty [of the trustee to protect both the creditors and the public
> interest in the proper administration of the bankrupt estate] is to
> prevent the trustee or receiver "from having to respond to actions
> which are frivolous or vexatious or from claims which do not disclose a
> cause of action" … so that the bankruptcy process is not made
> unworkable. On the other hand, it ensures that legitimate claims can
> be advanced [emphasis added].

[19]        At para. 62 the court in **GMAC** said that s. 215 protection is intended to

ensure the "integrity and efficiency of the bankruptcy process". The court also

observed at para. 70 that s. 215 gives trustees protection "that Parliament has

deemed necessary to preserve the ability of trustees and receivers to discharge

their duties flexibly and efficiently".

[20]      The protection the ***BIA***  is intended to afford to officers of the court is

underscored by the threshold for leave under s. 215.  To obtain leave, a petitioner

must demonstrate that the proposed action is not frivolous or vexatious and that the

evidence discloses a cause of action: ***Down v. Arthur Andersen Inc***., 2003 BCSC

1286 at para. 6.

[21]      Though this court has described the threshold as "relatively low" (***Down*** at

para. 7), it is not sufficient for leave that the pleadings of the proposed action simply

disclose a cause of action.   An evidentiary threshold must be satisfied before leave

will be granted.  In ***Mancini*** the court said at page 6:

> … on a continuum of evidence ranging from no evidence to evidence
> which is conclusive, the evidence required to support an order under s.
> [215] must be sufficient to establish that there is a factual basis for the
> proposed claim and that the proposed claim discloses a cause of
> action.

[22]      This principle was affirmed by the Supreme Court of Canada in ***GMAC*** at

para. 7 of its judgment.

[23]      But is s. 215 intended to apply outside Canada?

[24]      I earlier referred to the principle at para. 6 in ***Wilanour Resources Ltd***.

that  "[t]he relevant provisions of the Act must, of course, be read in context and

having in mind the purposes of the Act."

[25]      The other cases to which I have referred show that s. 215 is intended to

achieve the following:

a) to protect a trustee against frivolous and vexatious actions (***Mancini***);

b) to protect both the creditors and the public interest in the proper administration of a bankrupt estate (***GMAC***);

c) to ensure that the bankruptcy process is not made unworkable (***GMAC***); and

d) to preserve the ability of trustees and receivers to discharge their duties flexibly and efficiently (***GMAC***).

[26]     These objectives would be severely constrained if the protection in s. 215 were limited to domestic actions in Canada.

[27]     The ***BIA*** imposes on the trustee a geographic obligation and duty that extends worldwide. Section 17(2) of the ***BIA*** provides:

> For the purpose of obtaining possession of and realizing on the property of the bankrupt, a trustee has power to act as such anywhere. (emphasis added)

[28]     Section 16(3) of the ***BIA*** provides:

> The trustee shall, as soon as possible, take possession of the deeds, books, records and documents and all property of the bankrupt and make an inventory, and for the purpose of making an inventory the trustee is entitled to enter, subject to subsection (3.1), on any premises on which the deeds, books, records, documents or property of the bankrupt may be, even if they are in the possession of an executing officer, a secured creditor or other claimant to them [emphasis added].

[29]     In ***Douglas MacDonald Development Corp. v. Price Waterhouse Coopers,*** [2001] O.J. No. 4846 (S.C.J.) (QL) the Court stated at para. 19 that the ***BIA***:

> …imposes on the bankrupt the duty to deliver all his property and all
> books, records and documents in any way relating thereto … imposes
> on all other persons the obligation to deliver all property of the
> bankrupt to the trustee except where that person has a right to the
> property and forbids anyone from withholding any papers or
> documents related to the trade dealings of a bankrupt.

[30]     Trustees in Canadian bankruptcy proceedings routinely carry out their

duties as officers of the court in foreign jurisdictions. The statute not only empowers

such a wide geographic sweep, it imposes such a duty on an appointed Trustee.

[31]     Given that the purpose of s. 215 is to protect a trustee from frivolous and

vexatious lawsuits pertaining to actions taken pursuant to the *BIA*, and given that the

*BIA* requires the Trustee to perform its duties outside Canada where required, it

would be anomalous indeed if a trustee's s. 215 protection were to be confined to

actions commenced within Canada.

[32]     The integrity and efficiency of the bankruptcy process requires that a

trustee be able to perform its statutory duties as trustee with the protection afforded

by s. 215 regardless of where it performs such duties.  If a trustee is required to act

in another jurisdiction in order to satisfy its duties under the *BIA*, then rendering the

trustee vulnerable to a suit without leave would undermine the integrity and

efficiency of the bankruptcy process.  Such a restrictive interpretation would

undermine the ability of trustees and receivers to discharge their duties flexibly and

efficiently, which s. 215 has been designed to protect (*GMAC*, at para. 70).

[33]     The property of a bankrupt – including the books and records – vest in a

trustee wherever they are situate.  Irrespective of the steps that may be necessary to

enlist the aid of foreign courts to in-gather the bankrupt's books and records, the Trustee, in performing its duty in any complex commercial bankruptcy or one involving an individual of apparently significant net worth, will frequently be committed to cross-border conduct.  This is not only the Trustee's duty under the **BIA**, but is necessary for the protection of the estate.  A statute that imposes almost an unlimited obligation to take extra-jurisdictional steps, on the one hand, would not on the other then limit the protection afforded the Trustee in connection with performing such obligations.

[34]      I conclude that in the same manner that the **BIA** casts a duty on a bankruptcy trustee to carry out its duties beyond Canada's borders where necessary, so too does s. 215 confer on a trustee so engaged the statutory protection that leave must be obtained from the Canadian bankruptcy court before any action, whether foreign or domestic, is commenced against the trustee.

DOES S. 215 PROTECTION EXTEND TO OFFICERS, DIRECTORS, EMPLOYEES AND COUNSEL RETAINED BY THE TRUSTEE?

[35]      The object of s. 215 is to ensure that the bankruptcy process is not rendered unworkable by the Trustee being hindered by actual or threatened vexatious lawsuits in connection with the administration of the bankruptcy.

[36]      In Canada many trustees in bankruptcy are corporations.  The **BIA** imposes on bankruptcy trustees many duties, some of which have been described above.  A corporate entity can only discharge its duties through its directors, officers

and employees.  If the scope of s. 215 were limited to protecting only the corporate trustee in bankruptcy itself, then the trustee's directors, officers and employees who execute the trustee's obligations under the ***BIA*** could be subjected to vexatious lawsuits without leave of the bankruptcy court.  Such a result cannot have been the intention of Parliament when it passed the statute. Such a restriction would undermine the entire purpose of s. 215 as consistently articulated by the courts.

[37]     This conclusion is also consistent with the Canadian law on the interpretation of the scope of exclusion or limitation clauses in contracts.  In ***London Drugs Ltd. v. Kuehne & Nagel International Ltd***., [1992] 3 S.C.R. 299, the Supreme Court of Canada considered the conditions under which a contractual clause limiting the liability of a company extends its scope to protect a company's employees (who are neither parties to the contract nor expressly protected by the language of the limitation clause).  In holding that the limitation clause in question did provide protection to the defendant company's employees, it was necessary for the Supreme Court to relax the doctrine of privity.  The Court's reasoning is instructive when considering the reach of s. 215.

[38]     At para. 245, the Court noted the identity of interest between an employer and its employees in respect of the performance of an employer's contractual obligations.  Where a person contracts with an employer, in most cases employees will have the prime responsibilities relating to the performance of the employer's contractual obligations.

[39]     In light of such identity of interest, the Court stated at that paragraph that:

> [W]hen an employer and a customer enter into a contract for services
> and include a clause limiting the liability of the employer for damages
> arising from what will normally be conduct contemplated by the
> contracting parties to be performed by the employer's employees, and
> in fact so performed, there is simply no valid reason for denying the
> benefit of the clause to employees who perform the contractual
> obligations. The nature and scope of the limitation of liability clause in
> such a case coincides essentially with the nature and scope of the
> contractual obligations performed by the third party beneficiaries
> (employees).

[40]      In my view that reasoning is apposite here.  It would simply make no sense

to limit the benefits of s. 215 to only the corporate trustee.

[41]      Under B.C. law, even where an action lies against a corporate defendant,

no action will lie against its officers or directors except insofar as an officer or

director has acted to further an interest separate from that of the company itself.

[42]      In ***Rafiki Properties Ltd. V. Integrated Housing Development Ltd.***

(1999), 45 B.L.R. (2d) 316 (S.C.), the court dismissed a plaintiff's application to add

certain principals of the defendant company as defendants in the action.  The court

held at para. 17 that a corporate director cannot attract personal liability if he is

merely acting within the scope of his authority, as a director:

> I conclude that the basis on which a corporate director may be held
> personally liable for his actions should not be extended to incorporate
> the concept of liability resulting from the directors controlling the
> activities of the corporation.  <u>There is no separate identity or interest of
> a director who acts on behalf of a corporation</u>…  To fix the principals
> with personal liability there must be an independent cause of action
> alleged [emphasis added].

[43]      The identity of interest between the KPMG Defendants and the Trustee in respect of the acts complained of in the Washington Claim can be seen from the extracts from the Complaint earlier referred to.

[44]      In respect of Rusko, paragraph 25 alleges that "at all times relevant herein [he] was acting within the scope and course of his employment as an employee of KPMG Inc., in its role as Trustee of the Bankruptcy of Erwin Singh Braich."  In para. 26 a similar allegation is advanced with respect to Wood.

[45]      Of KPMG LLP, it is said in para. 28 to be liable for "the acts of its subsidiaries and its subsidiaries' partners, employees, agents, and contractors (including but not limited to defendants KPMG Inc, McLean, Rusko, and Wood)".

[46]      Since the plaintiff has not alleged any separate identity of interest as between the Trustee, on the one hand, and any of the KPMG Defendants on the other, I conclude that s. 215 applies to the KPMG Defendants, just as it applies to the Trustee itself.

[47]      At para. 23 of the complaint Braich says that Brian McLean: "at all times relevant herein was acting within the scope and course of his employment as the attorney for KPMG Inc., in its role as Trustee in the bankruptcy proceeding of Erwin Singh Braich, and as an attorney and owner of the law firm, McLean and Armstrong." The claim against McLean and Armstrong ("M & A") is contained in para. 24: At all times relevant to this complaint Defendant McLean acted within the scope of his ownership/employment relationship with Defendant M & A.  "At all times

relevant to this complaint Defendant McLean used Defendant M & A as an instrumentality by which to carry out the allegations set forth above and herein as they relate to Plaintiff."  There are no other claims against McLean or his law firm.

[48]     S. 30(1)(e) of the ***BIA*** empowers a trustee to act through a lawyer-agent by providing that the trustee can employ a lawyer to "take any proceedings or do any business that may be sanctioned by the inspectors." I accept the submission that "the object and purpose of the ***BIA*** to provide for orderly and fair distribution is furthered when a lawyer acting legitimately in his or her role as agent for a trustee, is given the protection of s. 215. To deprive such a lawyer-agent of the benefit of s. 215 is illogical and will almost certainly lead to instances where the purposes of the Act are thwarted."

[49]     In ***R. v. Eldorado Nuclear Ltd.***, [1983] 2 S.C.R. 551 the Supreme Court of Canada, in the context of a grant of statutory immunity to the Crown, described this identity of interest between the Crown and its agents at p. 565-566:

> [A] reference to the Crown in a statute extends to Crown agent.  If this were not the interpretation given to s. 16, the section would have no meaning, since the Crown only acts through servants and agents … When a Crown agent acts within the scope of public purposes it is statutorily empowered to pursue, it is entitled to Crown immunity from the operation of statutes, because it is acting on behalf of the Crown.

[50]     In my view the benefits conferred on a trustee by s. 215 should also be conferred on its lawyer-agent acting within the scope of his duties in representing the trustee. When a lawyer is so acting under the ***BIA***, there is an identity of interest between the trustee and its lawyer of the same nature that existed between Kuehne

& Nagel and its employees in **London Drugs** and between the Crown and its agents in **Eldorado**.

[51]      McLean and his law firm are entitled to the protection of s. 215.

INJUNCTIVE RELIEF

[52]      The Applicants seek an injunction to restrain Braich from filing any further actions against them without first obtaining s. 215 leave. They also ask this Court to specifically restrain Braich from pursuing the Washington claim.

[53]      In his affidavit of June 12, 2007 Braich threatens to file suit against numerous individuals. The affidavit contains a lengthy series of allegations against McLean.  Para. 49 contains the threat of a future lawsuit against former KPMG employees Bidulka, Boales as well as Steve Postman who was the former counsel for the petitioning creditor.  At para. 60 Braich refers to future litigation "yet to be launched" against yet two other lawyers, Allan Brown and Shelley Fitzpatrick. At para. 85 he refers again to Fitzpatrick and "another action yet to be filed".  Para. 111 contains reference to acts of libel and slander by KPMG employees, officers and agents and a reference to "lawsuits yet to be filed".

[54]      Braich faced criminal charges related to alleged bankuptcy offences.  He issued numerous witness subpoenas.  On October 2, 2007 I set aside a subpoena issued to Mr. Mickelson on the basis that Braich failed to show that Mickelson had relevant evidence to give and that continuing the subpoena would be an abuse of process.  Additional set aside applications were pending for Mr. McLean and others

when the criminal case was stayed.  These subpoenas would also likely have been set aside had the action not been stayed.

[55]      In his affidavit evidence as well as in his submissions to the Court Braich makes many very serious allegations against many insolvency professionals, members of the bar and others. In the absence of litigation privilege, many of these would no doubt ground defamation claims were the targets of these allegations to be so inclined.

[56]      The question is whether an injunction order should issue at this stage. The Court has been asked to interpret the meaning and reach of s. 215 of the ***BIA***. It has done so. It is this Court's opinion that Braich cannot advance any claims including the Washington claim against any of the Applicants or any other party arising from his bankruptcy without first obtaining leave from this Court as required by the provisions of s. 215 of the ***BIA***.

[57]      I would defer a decision on granting an injunction order to permit Braich to comply with this Court's ruling or until there is some evidence that he has chosen to ignore it. The Washington Claim has been stayed. In the event Braich attempts to proceed in Washington, these reasons will no doubt be brought to the attention of Judge Coughenour.

[58]      The applications for injunctive relief will be adjourned. I will remain seized with this case. The Applicants are at liberty reset their application before me if they consider it necessary to prevent Braich from commencing any other actions without

s. 215 authority from this Court or in the event that the Washington action stay is

lifted and the Washington Claim proceeds.


                                                                 "D. Brenner, CJSC"
                                               The Honourable Chief Justice Brenner